FOX ROTHSCHILD LLP
Paul A. Rosenthal (State Bar No. 338994)
prosenthal@foxrothschild.com
49 Market Street
Morristown, NJ 07960
Telephone:  (973) 548-3388

Attorneys for Petitioner Hi.Q, Inc. d/b/a Health IQ

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HI.Q, INC. D/B/A HEALTH IQ,<br><br>Petitioner,<br><br>v.<br><br>ZEETOGROUP, LLC,<br><br>Respondent. | MISC. ACTION NO.: **'22CV1440 WQHWVG**<br><br>**(RELATED ACTION CIV. NO. 4:21-CV-04875-TLT (N.D.  CAL.))**<br><br>**PETITIONER HI.Q, INC. D/B/A HEALTH IQ'S MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC** |

Pursuant to Rules 37 and 45 of the Federal Rules of Civil Procedure, Hi.Q, Inc. d/b/a Health IQ ("Health IQ") respectfully moves for an Order compelling non-party ZeetoGroup LLC ("ZeetoGroup") to comply with two subpoenas served on ZeetoGroup on July 12, 2022.  The full grounds for the motion can be found within the memorandum of law.

Dated:  September 23, 2022          **FOX ROTHSCHILD LLP**


By:    /s/*Paul A. Rosenthal*
Paul A. Rosenthal
Attorneys for Petitioner
HI.Q, Inc. d/b/a Health IQ

# EXHIBIT 1

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

| | | |
|---|---|---|
| TOBY HOY | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No.  4:21-CV-04875-YGR |
| HI.Q, INC. d/b/a HEALTH IQ | ) | |
| _Defendant_ | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                        ZeetoGroup, LLC

_____
_(Name of person to whom this subpoena is directed)_

☛ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

        See attached Schedule

| Place: Directly to the Undersigned Counsel Electronically, or to Fox Rothschild LLP, Citizens Bank Center, 919 N. Market St., Ste. 300, Wilmington, DE 19899 | Date and Time: August 2, 2022 by 5:00 p.m. Eastern |
|---|---|

❑ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   July 12, 2022

| _CLERK OF COURT_ | | |
|---|---|---|
| | OR | |
| _____ | | /s/ Paul A. Rosenthal |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_   Defendant
Hi.Q., Inc. d/b/a Health IQ _____ , who issues or requests this subpoena, are:

Fox Rothschild LLP, 49 Market Street, Morristown, New Jersey 07960, prosenthal@foxrothschild.com, 973-992-4800

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 4:21-CV-04875-YGR

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

Unless otherwise indicated, the RELEVANT TIME PERIOD for purposes of this Request for Production of Documents is January 1, 2017, to present.

## DEFINITIONS

As used throughout this Request for Production of Documents, the following terms have the following indicated meaning:

1.      "CEGE" means Enfuego Holdings LLC d/b/a Cege Media including any subsidiaries or affiliated enterprises, and its officers, directors, and employees.

2.      "COMMUNICATIONS" means any letter, email, text message, slack, instant message, telephone call recording, voicemail, or other DOCUMENT relaying information between YOU and any third-party or by and between individuals employed by YOU.

3.      "DOCUMENT" or "DOCUMENTS" means the same as set forth in Federal Rule of Civil Procedure 34(a)(1)(A) within YOUR possession, custody, or control, including but not limited to any Electronically Stored Information.

4.      "HEALTH IQ" means Hi.Q., Inc. d/b/a Health IQ Insurance Services including any subsidiaries or affiliated enterprises, and its officers, directors, and employees.

5.      "LITIGATION" means the case filed by PLAINTIFF Toby Hoy pending in the United States District Court for the Northern District of California as the litigation *Toby Hoy v. Hi.Q, Inc. d/b/a Health IQ*, Case No. 4:21-cv-4875-YGR.

6.      "PLAINTIFF" means Plaintiff Toby Hoy, who alleges to be the owner of the telephone number 515-808-0280.

7.      "ROBERT FRUEH" means individual consumer Robert Frueh, previously of 121 S. Central Ave, Laconia, IA, with email address infaith1956@aol.com, and previously the owner of the telephone number 515-808-0280.

8.      "YOU" or "YOUR" means ZeetoGroup, LLC, including any subsidiaries or affiliated enterprises, and its officers, directors, and employees.  This includes but is not limited to GetItFree.us, and any other website(s) owned and/or operated by ZeetoGroup, LLC.  For purposes of these Requests, these terms include the entity Tibrio, LLC, identified as a "sister company" of ZeetoGroup, LLC in the June 29, 2022 Declaration of Shayne Cardwell, and July 1, 2022 Declaration of Shayne Cardwell.

9.      "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope hereof any information (as defined herein) or discovery that might otherwise be construed to be outside the scope of this discovery request.

10.     The terms "all," "each," and "any" shall each be construed as encompassing any and all.

11.     The use of the singular of any word shall include the plural and vice versa, and the use of a verb in any tense or voice shall be construed as the use of that verb in all other tenses and voices, as necessary to bring within the scope of the discovery request all information or responses that might otherwise be construed as outside its scope.

12.     Wherever appropriate herein, the masculine form of a word shall be interpreted as feminine and vice versa.

## **INSTRUCTIONS**

1.      Unless otherwise noted, this set of demands requires the production of documents or tangible things that were prepared, created, written, sent, dated, or received at any time up to

the present.

2.      In responding to these requests, you are required to furnish all documents available to you including, but not limited to, information in the possession or control of your attorneys, experts, advisers, agents, associates, or any other person over whom you have control.

3.      In producing documents or tangible things pursuant to these demands, you must conform to the requirements of Rules 34 and 45 of the Federal Rules of Civil Procedure.

4.      If you withhold any documents or tangible things under a claim of privilege, please furnish with the response to these demands a privilege and/or redaction log identifying each document or tangible thing for which privilege is claimed, including the following information:

      a.      The date, sender, recipient, and subject matter of the document or tangible thing;

      b.      The basis upon which privilege is claimed; and

      c.      The paragraphs, paragraph, or subparts of the demand to which the document or tangible thing corresponds.

5.      Documents not otherwise responsive to this Request shall be produced if such documents mention, discuss, refer to, or explain the documents which are called for by this Request or if such documents are attached to documents called for by this Request and constitute routing slips, transmittal memoranda, letters, comments, evaluations, or similar materials.

### <u>INSTRUCTION REGARDING CERTIFICATION</u>

Please provide a certification under Fed. R. Evid. 902(11) by the custodian or other qualified person that the documents produced by You pursuant to this subpoena meet the requirements of Fed. R. Evid. 803(6)(A)-(C).

## REQUESTS FOR DOCUMENTS AND THINGS

1.      All DOCUMENTS and COMMUNICATIONS relevant to and regarding the March 10, 2022, Declaration of Shayne Cardwell.

2.      All DOCUMENTS and COMMUNICATIONS relevant to and regarding the June 29, 2022, Declaration of Shayne Cardwell.

3.      All DOCUMENTS and COMMUNICATIONS relevant to and regarding the July 1, 2022, Declaration of Shayne Cardwell.

4.      All DOCUMENTS comprising the "coding logs" for the RELEVANT TIME PERIOD, including those reviewed in connection with the statements in Paragraph 10 of the March 10, 2022 Declaration of Shayne Cardwell.

5.      All DOCUMENTS comprising the "coding logs" for the RELEVANT TIME PERIOD, including those reviewed in connection with the statements in Paragraph 7 of the June 29, 2022 Declaration of Shayne Cardwell.

6.      All DOCUMENTS comprising the "coding logs" for the RELEVANT TIME PERIOD, including those reviewed in connection with the statements in Paragraph 7 of the July 1, 2022 Declaration of Shayne Cardwell.

7.      All DOCUMENTS and COMMUNICATIONS relevant to and regarding the statements made in paragraph 6 of the June 29, 2022, Declaration of Shayne Cardwell.

8.      All DOCUMENTS and COMMUNICATIONS relevant to and regarding the statements made in paragraph 12 the June 29, 2022, Declaration of Shayne Cardwell.

9.      All DOCUMENTS and COMMUNICATIONS relevant to and regarding the statements made in paragraph 11 of the July 1, 2022, Declaration of Shayne Cardwell.

10.    DOCUMENTS sufficient to show consent collected by YOU for telemarketing calls including the use of pre-recorded voice messages by or on behalf of HEALTH IQ, during the RELEVANT TIME PERIOD.

11.    All web session data for any lead that YOU sold to Cege.

12.    DOCUMENTS constituting the "coding logs" for YOUR list of marketing partners and/or affiliates on YOUR websites during the RELEVANT TIME PERIOD.

13.    DOCUMENTS sufficient to identify the date(s) that HEALTH IQ was added to YOUR website(s), including GetItFree.us, as an affiliate and/or a marketing partner.

14.    DOCUMENTS sufficient to identify the date(s) that HEALTH IQ was removed from YOUR website(s), including GetItFree.us, as an affiliate and/or a marketing partner.

15.    DOCUMENTS sufficient to show how and why HEALTH IQ was added and/or removed as a marketing partner and/or affiliate from any website that YOU own and/or operate.

16.    Copies of each and any contract, agreement, insertion order, Terms of Use, and/or Terms of Service relevant or related to YOUR relationship with CEGE during the RELEVANT TIME PERIOD.

17.    DOCUMENTS sufficient to identify the relevant consumer and lead information for any web form submissions and/or consumer leads that include the telephone number 515-808-0280.

18.    DOCUMENTS sufficient to identify the relevant consumer and lead information for any web form submission and/or consumer leads relevant to PLAINTIFF Toby Hoy.

19.    DOCUMENTS sufficient to identify the relevant consumer and lead information for any web form submission and/or consumer leads relevant to ROBERT FRUEH.

20.     DOCUMENTS sufficient to show the investigation performed concerning any lead(s) sold to CEGE that included the telephone number 515-808-0280.

21.     DOCUMENTS sufficient to show any investigation performed concerning the leads sold to CEGE that are relevant to PLAINTIFF'S allegations in the LITIGATION, including to show consent for calls by or on behalf of HEALTH IQ.

22.     All COMMUNICATIONS regarding or related to HEALTH IQ.

23.     All COMMUNICATIONS regarding or related to PLAINTIFF.

24.     All COMMUNICATIONS regarding or related to this LITIGATION.

# EXHIBIT 2

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

Northern District of California ▼

| | |
|---|---|
| ZeetoGroup, LLC | ) |
| *Plaintiff* | ) |
| v. | ) |
| HI.Q. INC. d/b/a HEALTH IQ | ) |
| *Defendant* | ) |

Civil Action No.   4:21-CV-04875-YGR

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
ZeetoGroup, LLC

*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: Via remote means (TSG reporting) | Date and Time:<br>August 24, 2022 at 09:00 a.m. Pacific |
|---|---|

The deposition will be recorded by this method:   Video and Transcription (TSG reporting)

❐ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   July 12, 2022

*CLERK OF COURT*

OR

_____     /s/ Paul A. Rosenthal
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Defendant
Hi.Q., Inc. d/b/a Health IQ
, who issues or requests this subpoena, are:

Fox Rothschild LLP, 49 Market Street, Morristown, New Jersey 07960, prosenthal@foxrothschild.com, 973-992-4800

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 4:21-CV-04875-YGR

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
   **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**

   **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
   **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
   **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
   **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

Unless otherwise indicated, the RELEVANT TIME PERIOD for purposes of this Notice of Deposition is January 1, 2017, to present.

## DEFINITIONS

As used throughout this Notice of Deposition, the following terms have the following indicated meaning:

1.      "CEGE" means Enfuego Holdings LLC d/b/a Cege Media including any subsidiaries or affiliated enterprises, and its officers, directors, and employees.

2.      "COMMUNICATIONS" means any letter, email, text message, slack, instant message, telephone call recording, voicemail, or other DOCUMENT relaying information between YOU and any third-party or by and between individuals employed by YOU.

3.      "DOCUMENT" or "DOCUMENTS" means the same as set forth in Federal Rule of Civil Procedure 34(a)(1)(A) within YOUR possession, custody, or control, including but not limited to any Electronically Stored Information.

4.      "HEALTH IQ" means Hi.Q., Inc. d/b/a Health IQ Insurance Services including any subsidiaries or affiliated enterprises, and its officers, directors, and employees.

5.      "LITIGATION" means the case filed by PLAINTIFF Toby Hoy pending in the United States District Court for the Northern District of California as the litigation *Toby Hoy v. Hi.Q, Inc. d/b/a Health IQ*, Case No. 4:21-cv-4875-YGR.

6.      "PLAINTIFF" means Plaintiff Toby Hoy, who alleges to be the owner of the telephone number 515-808-0280.

7.     "ROBERT FRUEH" means individual consumer Robert Frueh, previously of 121 S. Central Ave, Laconia, IA, with email address infaith1956@aol.com, and previously the owner of the telephone number 515-808-0280.

8.     "YOU" or "YOUR" means ZeetoGroup, LLC, including any subsidiaries or affiliated enterprises, and its officers, directors, and employees.  This includes but is not limited to GetItFree.us, and any other website(s) owned and/or operated by ZeetoGroup, LLC.  For purposes of these Topics, the terms "YOU" or "YOUR" include the entity Tibrio, LLC, identified as a "sister company" of ZeetoGroup, LLC in the June 29, 2022 Declaration of Shayne Cardwell and July 1, 2022 Declaration of Shayne Cardwell.

9.     "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope hereof any information (as defined herein) or discovery that might otherwise be construed to be outside the scope of this discovery request.

10.     The terms "all," "each," and "any" shall each be construed as encompassing any and all.

11.     The use of the singular of any word shall include the plural and vice versa, and the use of a verb in any tense or voice shall be construed as the use of that verb in all other tenses and voices, as necessary to bring within the scope of the discovery request all information or responses that might otherwise be construed as outside its scope.

12.     Wherever appropriate herein, the masculine form of a word shall be interpreted as feminine and vice versa.

## **DEPOSITION TOPICS**

Consistent with Federal Rule of Civil Procedure 30(b)(6), ZeetoGroup LLC is hereby directed to designate one or more officers, directors, managing agents, or other person(s) who consent to testify on its behalf about information known or reasonably available to YOU regarding the following topics:

1.      All facts, DOCUMENTS, and COMMUNICATIONS relevant to and regarding the March 10, 2022, Declaration of Shayne Cardwell.

2.      The Jornaya Guardian TCPA Reports produced with the March 10, 2022 Declaration of Shayne Cardwell.

3.      All facts, DOCUMENTS, and COMMUNICATIONS relevant to and regarding the June 29, 2022, Declaration of Shayne Cardwell.

4.      All facts, DOCUMENTS, and COMMUNICATIONS relevant to and regarding the July 1, 2022, Declaration of Shayne Cardwell.

5.      The exhibits produced with the July 1, 2022, Declaration of Shayne Cardwell.

6.      YOUR relationship with CEGE during the RELEVANT TIME PERIOD.

7.      All COMMUNICATIONS between YOU and CEGE concerning HEALTH IQ.

8.      All DOCUMENTS, information, data, investigation, records, and/or COMMUNICATIONS concerning or related to HEALTH IQ.

9.      The sources, including each website, from which YOU obtained leads for CEGE.

10.     The consent disclosure(s) on any website relevant to leads YOU sold to CEGE.

11.     The disclosure of HEALTH IQ on YOUR website(s), including Getitfree.us, as an "affiliate" and/or a "marketing partner."

12.     The investigation and/or methodology used for identifying the date(s) when HEALTH IQ was added and/or removed from YOUR website(s) as a marketing partner and/or an affiliate.

13.     The factual basis for statements by YOU that HEALTH IQ was included as a marketing partner and/or affiliate on YOUR website(s) during the RELEVANT TIME PERIOD.

14.     The factual basis for statements made by YOUR counsel Jacob Gillick, Esq. that HEALTH IQ was included as a marketing partner and/or affiliate on YOUR website(s) during the RELEVANT TIME PERIOD.

15.     All facts, DOCUMENTS, and COMMUNICATIONS concerning the lead(s) YOU sold to CEGE that included the telephone number 515-808-0280.

16.     YOUR investigation concerning the lead(s) YOU sold to CEGE that included PLAINTIFF'S telephone number, 515-808-0280.

17.     All facts, DOCUMENTS, and COMMUNICATIONS concerning any lead that includes personal information for ROBERT FRUEH.

18.     YOUR investigation regarding PLAINTIFF and/or his claims in this LITIGATION.

19.     Any non-privileged COMMUNICATIONS regarding PLAINTIFF and/or his claims in this LITIGATION.

20.     The corporate, financial, and/or contractual relationship between ZeetoGroup LLC and Tibrio LLC as relevant to the claims and/or defenses in the LITIGATION.

21.     The DOCUMENTS and information produced by YOU in response to HEALTH IQ's Subpoena for the Production of Documents and Things.

# EXHIBIT 3

Adam J Schwartz (SBN 251831)
5670 Wilshire Blvd., Suite 1800
Los Angeles, CA 90036
adam@ajschwartzlaw.com
(323) 455-4016

[Additional counsel appear on signature page]

*Attorneys for Plaintiff Toby Hoy and the
Proposed Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| TOBY HOY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HI.Q, INC. d/b/a HEALTH IQ<br><br>Defendant. | Case No. 3:21-cv-04875<br><br>**COMPLAINT FOR INJUNCTION AND DAMAGES**<br><br>**Class Action**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Toby Hoy, by his undersigned counsel, for this class action complaint against defendant HI.Q, INC. d/b/a HEALTH IQ ("Defendant" or "Health IQ"), and its present, former, and future direct and indirect parents, subsidiaries, affiliates, agents, and related entities, alleges as follows:

## I.   INTRODUCTION

1.   As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell

phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (July 6, 2020).

2.  The Plaintiff has alleged that Health IQ marketed its goods and services through the use of a telemarketing campaign despite not having the requisite consent to contact those individuals who, like the Plaintiff, were listed on the National Do Not Call Registry.

3.  Because telemarketing campaigns use technology capable of generating thousands of similar calls per day, Plaintiff has brought suit on behalf of a proposed nationwide class of other persons who received similar calls.

4.  A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## II.    PARTIES

5.  Plaintiff is a natural person.

6.  Plaintiff is a "person" within the meaning of 47 U.S.C. § 153(39).

7.  Plaintiff is a resident of Iowa.

8.  Defendant Health IQ is a Delaware corporation that is registered to do business in California and has a principal place of business in this county.

## III.    JURISDICTION AND VENUE

9.  This Court has federal-question subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute.

10. This Court has personal jurisdiction over Defendant because it has its principal place of business in this country.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the sending of the challenged telemarketing—occurred in this District.

12. Intradistrict Assignment: Assignment to this Division is proper pursuant to Civil Local Rule 3-2(c) because a substantial part of the events or omissions that give rise to Plaintiff's claims—namely, the receipt of the challenged telemarketing—occurred from this Division.

Moreover, Plaintiff received the telemarketing at a phone number bearing an area code from within this Division.

## IV.    FACTS

**A.    The Enactment of the TCPA and the FCC's Regulations Thereunder**

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

14. § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

15. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

16. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

17. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**A.    Health IQ's Telemarketing Conduct**

18. Health IQ makes calls through telemarketing text messages to numbers even though they are on the National Do Not Call Registry.

19. Recipients of these calls, including Plaintiff and proposed class members, had not provided prior express written consent to receive them.

20. Health IQ's calls at issue were not necessitated by an emergency.

21. Health IQ's calls at issue were made to numbers within the United States.

22. Sending these text message calls is profitable for Health IQ because sending scripted *en masse* messages does not take nearly the time and money it would take to lawfully contact each of the call recipients.

23. For every 18 million robocalls, there's only one TCPA lawsuit in federal court. *Compare* Mike Snider, *Robocalls Rang up a New High in 2019. Two or More Daily Is Average in Some States*, USA Today (Jan. 15, 2020), https://www.usatoday.com/story/tech/2020/01/15/robocalls-americans-got-58-5-billion-2019/4476018002/ (58.5 billion robocalls), *with* WebRecon, *WebRecon Stats for Dec 2019 and Year in Review: How Did Your Favorite Statutes Fare?*, https://webrecon.com/webrecon-stats-for-dec-2019-and-year-in-review-how-did-your-favorite-statutes-fare/ (last visited Mar. 25, 2020) (3,267 TCPA complaints).

**B.     Defendant's Telemarketing Robocalls to Plaintiff**

24. Plaintiff is the user of a phone number that begins "(515) 808."  The calls to him described herein were to that number.

25. Health IQ called Plaintiff at least three times using automated text messaging.

26. This included calls on May 24, 26 and June 1, 2021.

27. The May 24, 2021 text message read: "Get a private phone consultation for Life Insurance. Health IQ can help you leave money for your family without health questions of exams. Call (844) 871-9348."

28. The May 26 and June 1 text messages contained similar promotions.

29. Health IQ called Plaintiff while transmitting the caller ID (978) 592-7646.

30. The text messages all promoted HealthIQ insurance services.

31. Plaintiff is not and has never been a customer of either Defendant.

32. Plaintiff has never provided prior express written consent to receive calls from the Defendant.

33. Plaintiff and other putative class members were injured and had their privacy violated by the unsolicited calls.

## V.    CLASS ACTION ALLEGATIONS

34. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

35. Plaintiff brings this action on behalf of himself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23.

36. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> **National Do Not Call Registry Class**: All persons in the United States whose, (1) telephone numbers were on the National Do Not Call Registry for at least 30 days, (2) but received more than one telephone solicitation from or on behalf of Defendant (3) within a 12-month period, (4) from four years prior the filing of the Complaint.

Excluded from the Class are counsel, the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

37. The Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Class as he has no interests that conflict with any of the Class members.

38. Plaintiff and all members of the Class have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy.

39. This Class Action Complaint seeks injunctive relief and money damages.

40. The Class as defined above are identifiable through dialer records, other phone records, and phone number databases.

41. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds in the Class.

42. The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim.

43. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

44. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the claims predominate over questions which may affect individual class members because of the uniformity of the telemarketing conduct.

45. There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

(a) whether multiple telemarketing telephone calls were made promoting the goods or services to members of the National Do Not Call Registry Class;

(b) whether the telemarketing calls at issue were made to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;

(c) whether Defendant's conduct constitutes a violation of the TCPA; and

(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

46. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so.

47. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or their agents.

48. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## VI.    CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. 227, et seq. and 47 C.F.R. §§ 64.1200(c))
### on behalf of the National Do Not Call Registry Class

49. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

50. Defendant violated the TCPA and the Regulations by making, or having their agent make, two or more telemarketing calls within a 12-month period on Defendant's behalf to Plaintiff and the members of the National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

51. As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and National Do Not Call Registry Class members are entitled to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

52. Plaintiff and Class Members are entitled to an award of treble damages if their actions are found to have been knowing or willful.

53. Plaintiff and National Do Not Call Registry Class members are also entitled to and do seek injunctive relief prohibiting the Defendant from advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future.

## VII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.       Injunctive relief prohibiting Defendant from making telephone calls advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future;

B.      As a result of Defendant's negligent, willful and/or knowing violations of 47 C.F.R. § 64.1200(c), Plaintiff seek for himself and each member of the Class up to treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

C.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D.      Such other relief as the Court deems just and proper.

## **DEMAND FOR JURY**

Plaintiff demands a trial by jury for all issues so triable.

## VIII.      SIGNATURE ATTESTATION

The CM/ECF user filing this paper attests that concurrence in its filing has been obtained from its other signatories.

RESPECTFULLY SUBMITTED AND DATED on May 7, 2021.

By: _____
Adam J. Schwartz

Anthony I. Paronich, *Pro Hac Vice Forthcoming*
anthony@bparonichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

*Attorneys for Plaintiff Toby Hoy and the Proposed Class*

# EXHIBIT 4

**KELLEY DRYE & WARREN LLP**
   Nathan T. Jamieson (State Bar No. 333304)
   Becca J. Wahlquist (State Bar No. 215948)
1800 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone:     (310) 712-6100
Facsimile:     (310) 712-6199
njamieson@kelleydrye.com
bwahlquist@kelleydrye.com

Paul A. Rosenthal (*Pro Hac Vice* Pending)
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 07054
Telephone:     (973) 503-5900
Facsimile:     (973) 503-5950
paulrosenthal@kelleydrye.com

Attorneys for Defendant

Hi.Q, Inc. d/b/a Health IQ

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOBY HOY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HI.Q, INC. d/b/a HEALTH IQ<br><br>Defendant. | Case No. 21-CV-4875-YGR<br><br>**DEFENDANT HI. Q, INC.'S RESPONSES TO THE SPECIAL INTERROGATORIES IN PLAINTIFF'S FIRST SET OF DISCOVERY**<br><br>Action Filed:  June 24, 2021<br>Trial Date:  None Set |

PROPOUNDING PARTY:    PLAINTIFF TOBY HOY

RESPONDING PARTY:      DEFENDANT HI.Q, INC. d/b/a HEALTH IQ

SET NO.:      ONE

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and Local Rules of the United States District Court for the Northern District of California, defendant Hi.Q, Inc d/b/a Health IQ ("Health IQ" or "Defendant") hereby provides its responses and objections to the Interrogatories of Plaintiff Toby Hoy's ("Hoy" or "Plaintiff") First Set of Discovery (the "Interrogatories") as follows:

<div align="center">

**PRELIMINARY STATEMENT**

</div>

Health IQ's responses are made without waiver of the following rights but, on the contrary, are intended to reserve and do reserve the following:

1.      Health IQ states that it is responding to the Interrogatories as it interprets and understands them.  If Plaintiff subsequently asserts an interpretation of any Interrogatory that differs from the understanding of Health IQ, Health IQ reserves its right to further supplement its objections and/or responses herein.

2.      Health IQ states that it makes these responses solely for the purpose of, and in relation to, this action.  Each response herein is made subject to all appropriate objections (including, but not limited to, objections concerning authenticity, foundation, competency, relevance, materiality, propriety, privilege and admissibility) that would require the exclusion of any information or thing at any subsequent proceeding in, or trial of, this or any other action.  Health IQ reserves the right to object on any ground to the introduction into evidence of any information produced in response to the Interrogatories.

3.      If Health IQ discloses privileged information in response to the Interrogatories, the disclosure is inadvertent and does not constitute a waiver of any applicable privilege.

4.      The fact that Health IQ responded to an Interrogatory is not intended to, nor shall it be construed as an admission by Health IQ of any fact(s) set forth in or assumed by any Interrogatory.

5.      Health IQ reserves the right to make additional objections or seek protective orders.

DEFENDANT HI.Q, INC.'S RESPONSES TO THE SPECIAL INTERROGATORIES IN PLAINTIFF'S FIRST SET OF DISCOVERY

6.      Health IQ reserves the right to amend or further supplement these responses in the event that any information is omitted or subsequently identified during the course of Health IQ's ongoing discovery efforts.

Health IQ's responses below are further made subject to the following definitions:

A.      "Action" means the lawsuit pending in the United States District Court for the Northern District of California, captioned as *Hoy v. Hi.Q, Inc. d/b/a Health IQ*, No. 4:21-cv-4875-YGR (N.D. Cal.).

B.      "Complaint" means the Complaint filed on June 24, 2021, in the Action.

## GENERAL OBJECTIONS

The following objections apply to and are hereby incorporated into Health IQ's specific objections, which are set forth below:

1.      Health IQ objects to the Interrogatories to the extent that they call for any information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.  Health IQ intends to reserve all privilege or protection objections, and none of the below responses should be construed as a waiver of any such privilege or protection.

2.      Health IQ objects to the Interrogatories to the extent that they seek the disclosure of confidential, proprietary or sensitive business information, or trade secrets.

3.      Health IQ objects to the Interrogatories to the extent that they call for information that is not relevant to the subject matter of the action, are not proportional to the needs of the case, and/or are not reasonably calculated to lead to the discovery of admissible evidence.

4.      Health IQ objects to the Interrogatories to the extent that they invade the privacy of Health IQ's employees or third parties.  Health IQ objects to the Interrogatories to the extent that they seek information protected by a right of privacy under the United States Constitution, the California Constitution, and/or any other applicable legal authority.

5.      Health IQ objects to any implications drawn by Plaintiff's Interrogatories and to any explicit or implicit characterization of facts, events, circumstances, or other issues.  Any response by Health IQ to these Interrogatories does not indicate that Health IQ agrees with the implicit

DEFENDANT HI.Q, INC.'S RESPONSES TO THE SPECIAL INTERROGATORIES IN PLAINTIFF'S FIRST SET OF DISCOVERY

1    characterization of facts, events, circumstances, or issues in the Interrogatories, or that such

2    implications or characterizations are even relevant to this action.

3        6.    Health IQ objects to the Interrogatories to the extent that they are vague, ambiguous,

4    and require Health IQ to speculate as to their intended meaning.

5        7.    Health IQ objects to the Interrogatories to the extent that they are overbroad,

6    unreasonably and unduly burdensome, oppressive and/or harassing.

7        8.    Health IQ objects to the Interrogatories to the extent that the time period covered by

8    the Interrogatories is overbroad.

9        9.    Health IQ objects to the Interrogatories to the extent that the Interrogatories seek

10   information obtained after the date of the Interrogatories.

11       10.    Health IQ objects to the Interrogatories to the extent that Plaintiff's definition of

12   "YOU" aims to include entities that are not explicitly defined.  Health IQ further objects to the

13   extent that Plaintiff's use of the term "YOU" is overbroad and unduly burdensome.  Health IQ's

14   objections and responses are made on behalf of itself only and not part of any other individual or

15   entity.

16       11.    Health IQ objects to the Interrogatories to the extent that Plaintiff's definition of

17   "Telemarketing" calls for a legal conclusion, assumes facts not in evidence, and is overbroad and

18   unduly burdensome.  Health IQ further objects to the definition of "Telemarketing" to the extent

19   that it differs from the definition of such term as used in the Telephone Consumer Protection Act,

20   47 U.S.C. § 227, or the regulations promulgated thereunder.

21       12.    Health IQ objects to the Interrogatories to the extent that Plaintiff's definition of

22   "Vendor" calls for a legal conclusion, assumes facts not in evidence and is overbroad and unduly

23   burdensome.

24       13.    Health IQ objects to the Definitions as set forth in Plaintiff's Interrogatories on the

25   grounds that they assume facts not in evidence, mischaracterize the facts, and/or call for a legal

26   conclusion.

27       14.    Health IQ objects to the extent that the Interrogatories exceed the scope of

28   permissible discovery, by seeking irrelevant information.  Nothing in these responses is intended to

DEFENDANT HI.Q, INC.'S RESPONSES TO THE SPECIAL INTERROGATORIES IN PLAINTIFF'S
FIRST SET OF DISCOVERY

be, or shall be construed to constitute, an admission by Health IQ that any matter referenced in the Interrogatories is relevant to any issue in this action or that it is admissible

15.      Health IQ objects to the Interrogatories to the extent they seek information which is not in Health IQ's possession, custody or control.

16.      Health IQ further objects to the Interrogatories to the extent that they do not define certain terms used.  In responding to these Interrogatories, Health IQ has applied the ordinary understanding of the terms contained therein.

17.      Health IQ objects to the Interrogatories to the extent that they seek the identification of "all" documents or information relating to a particular subject on the grounds that such phrases render the Interrogatories overbroad and unduly burdensome.

18.      Health IQ objects to the Interrogatories and accompanying definitions and instructions to the extent they seek responses inconsistent with, or beyond the scope and requirements of, the Federal Rules of Civil Procedure.

19.      Health IQ objects to the Interrogatories to the extent that they seek information to which the parties have equal access, or to the extent the information has already been provided to Plaintiffs.

20.      To the extent that specific objections are cited herein in response to specific Interrogatories, those specific objections are provided out of an abundance of caution and because they are believed to be particularly applicable to the Interrogatory.  Such specific objections shall not constitute a waiver of the Preliminary Statement or General Objections.

21.      Health IQ objects to the Interrogatories insofar as they are premature in that Health IQ has not yet completed its investigation of the facts, has not yet completed discovery, and has not yet completed its preparation for trial.  Accordingly, Health IQ reserves the right to amend these responses at a later date to reflect, among other things, subsequently discovered evidence relating to the proof of presently known material facts as well as evidence relating to the proof of subsequently discovered facts.  Except for facts expressly stated herein, no admissions of any nature whatsoever are implied or should be inferred.

DEFENDANT HI.Q, INC.'S RESPONSES TO THE SPECIAL INTERROGATORIES IN PLAINTIFF'S FIRST SET OF DISCOVERY

**RESPONSES TO SPECIAL INTERROGATORIES**

**SPECIAL INTERROGATORY NO. 1:**

Identify each person who provided the information to answer interrogatories in this case and specify the interrogatories about which each such person provided information.

**RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

Health IQ hereby incorporates by reference as if set forth fully herein the Preliminary Statement and General Objections. Health IQ further objects to the extent that this Interrogatory seeks information that is protected by the attorney-client privilege, attorney work product doctrine, and/or other applicable privileges.

Subject to and without waiving the foregoing General and specific objections, Health IQ responds: These responses were compiled by counsel with information, assistance, and/or verification of information from:

1.    Raj Vavilala, Chief Marketing Officer.  Mr. Vavilala can be contacted via counsel for Health IQ.

2.    Christine Censon, Compliance Manager.  Ms. Censon can be contacted via counsel for Health IQ.

3.    Enfuego Holdings LLC d/b/a Cege Media ("Cege Media"), 2257 South 1100 East Suite 204, Salt Lake City, UT 84106.


**SPECIAL INTERROGATORY NO. 2:**

Identify all employees involved in sending outbound text messages.

**RESPONSE TO SPECIAL INTERROGATORY NO. 2:**

Health IQ hereby incorporates by reference as if set forth fully herein the Preliminary Statement and General Objections. Health IQ further objects to the extent that this Interrogatory: (1) is neither limited in time nor scope, so the Interrogatory is overbroad, unduly burdensome, and lacks proportionality to the needs of the case; (2) is vague and ambiguous, including because of the term "involved" is undefined; and (3) is overbroad and unduly burdensome to the extent it prematurely seeks information beyond Plaintiff's individual claims.

1  Subject to and without waiving the foregoing General and specific objections, Health IQ

2  responds that employees of Health IQ facilitated the sending of the text messages to Plaintiff on the

3  basis of a specific inquiry for insurance products submitted via web form and purchased by Health

4  IQ from a third-party source.  Health IQ's consumer text message program is overseen by Health

5  IQ's Chief Marketing Officer Raj Vavilala, and Head of Performance Marketing Christopher

6  Treacy.  Technical aspects of Health IQ's use of text messaging are under the control of Health IQ's

7  Chief Technology Officer Tom Schollmeyer, and Associate Vice President Engineering Chandra

8  Sudanthi.  Health IQ further responds that its compliance practices are overseen by its in-house

9  counsel and Compliance Manager Christine Censon.  Discovery is ongoing and Health IQ reserves

10  the right to supplement this response.

11  **SPECIAL INTERROGATORY NO. 3:**

12  Identify and describe the work of each employee.

13  **RESPONSE TO SPECIAL INTERROGATORY NO. 3:**

14  Health IQ hereby incorporates by reference as if set forth fully herein the Preliminary

15  Statement and General Objections. Health IQ further objects to the extent that this Interrogatory:

16  (1) is neither limited in time nor scope, so the Interrogatory is overbroad, unduly burdensome, and

17  lacks proportionality to the needs of the case, including to the extent that it calls for identification

18  and description of the work of every Health IQ employee regardless of relevance to this Action;

19  (2) is vague and ambiguous, including because of its use of the undefined term "employee" that is

20  vague and ambiguous as used herein; and (3) is overbroad and unduly burdensome to the extent it

21  prematurely seeks information beyond Plaintiff's individual claims.

22  **SPECIAL INTERROGATORY NO. 4:**

23  Identify all vendors involved in sending outbound text messages. This includes, but is not

24  limited to, (a) the company that you use to obtain telephone numbers and (b) the dialing system

25  platform or provider used to make those texts.

26  **RESPONSE TO SPECIAL INTERROGATORY NO. 4:**

27  Health IQ hereby incorporates by reference as if set forth fully herein the Preliminary

28  Statement and General Objections. Health IQ further objects to the extent that this Interrogatory: (1)

DEFENDANT HI.Q, INC.'S RESPONSES TO THE SPECIAL INTERROGATORIES IN PLAINTIFF'S FIRST SET OF DISCOVERY

1    is neither limited in time nor scope, so the Interrogatory is overbroad, unduly burdensome, and lacks

2    proportionality to the needs of the case; and (2) is overbroad and unduly burdensome to the extent

3    it prematurely seeks information beyond Plaintiff's individual claims.

4          Subject to and without waiving the foregoing General and specific objections, Health IQ

5    responds: After a reasonable investigation, Health IQ has identified Cege Media as the source of the

6    telephone number, supporting TCPA-compliant consent information, and personal information for

7    Plaintiff that led to the sending of the text messages to Plaintiff at issue in the Action.

8          Health IQ further responds that Health IQ sent the text messages to Plaintiff using an Oracle

9    Eloqua platform and a Telnyx system.

10   **SPECIAL INTERROGATORY NO. 5:**

11         Identify and describe the work of each vendor.

12   **RESPONSE TO SPECIAL INTERROGATORY NO. 5:**

13         Health IQ hereby incorporates by reference as if set forth fully herein the Preliminary

14   Statement and General Objections. Health IQ further objects to the extent that this Interrogatory: (1)

15   is neither limited in time nor scope, so the Interrogatory is overbroad, unduly burdensome, and lacks

16   proportionality to the needs of the case; and (2) is overbroad and unduly burdensome to the extent

17   it prematurely seeks information beyond Plaintiff's individual claims.

18         Subject to and without waiving the foregoing General and specific objections, Health IQ

19   responds: Health IQ has identified Cege Media as its source of Plaintiff's telephone number and

20   provider of the consumer request for information that led to the text messages to Plaintiff's telephone

21   number.

22   **SPECIAL INTERROGATORY NO. 6:**

23         Identify all third parties or sub-vendors used by your vendors to for you.

24   **RESPONSE TO SPECIAL INTERROGATORY NO. 6:**

25         Health IQ hereby incorporates by reference as if set forth fully herein the Preliminary

26   Statement and General Objections. Health IQ further objects to the extent that this Interrogatory: (1)

27   is neither limited in time nor scope, so the Interrogatory is overbroad, unduly burdensome, and lacks

28   proportionality to the needs of the case; (2) is overbroad and unduly burdensome to the extent it

1  prematurely seeks information beyond Plaintiff's individual claims; and (3) seeks information

2  beyond Health IQ's possession, custody, or control.

3      Subject to and without waiving the foregoing General and specific objections, Health IQ

4  responds: After a reasonable investigation it has not identified any sub-vendors (as that term is

5  understood) relevant to the text messages sent to Plaintiff's telephone number.  Discovery is ongoing

6  and Health IQ reserves the right to supplement this response as appropriate.

7  **SPECIAL INTERROGATORY NO. 7:**

8      Identify each of the individuals that spoke with Plaintiff from your company or any of its

9  vendors.

10  **RESPONSE TO SPECIAL INTERROGATORY NO. 7:**

11      Health IQ hereby incorporates by reference as if set forth fully herein the Preliminary

12  Statement and General Objections. Health IQ further objects to the extent that this Interrogatory: (1)

13  is neither limited in time nor scope, so the Interrogatory is overbroad, unduly burdensome, and lacks

14  proportionality to the needs of the case; (2) is overbroad and unduly burdensome to the extent it

15  prematurely seeks information beyond Plaintiff's individual claims; and (3) seeks information

16  beyond Health IQ's possession, custody, or control.

17      Subject to and without waiving the foregoing General and specific objections, Health IQ

18  responds: After a reasonable investigation, it has not found any information responsive to this

19  Request.  Specifically, Health IQ has not identified any calls or meetings between any Health IQ

20  employee and Plaintiff.  Discovery is ongoing and Health IQ reserves the right to supplement this

21  response as appropriate.

22  **SPECIAL INTERROGATORY NO. 8:**

23      If you contend that Plaintiff provided consent to receive solicitation telephone texts, state all

24  facts in support of that contention and identify the date(s) on which and the means by which you

25  contend consent was obtained.

26  **RESPONSE TO SPECIAL INTERROGATORY NO. 8:**

27      Health IQ hereby incorporates by reference as if set forth fully herein the Preliminary

28  Statement and General Objections. Health IQ further objects to the extent that this Interrogatory: (1)

DEFENDANT HI.Q, INC.'S RESPONSES TO THE SPECIAL INTERROGATORIES IN PLAINTIFF'S
FIRST SET OF DISCOVERY

1  is a premature contention interrogatory that asks for conclusions from an investigation that remains

2  ongoing; (2) seeks information protected by the attorney-client privilege, attorney work product

3  doctrine, and/or other applicable privileges; and (3) seeks information beyond the possession,

4  custody, or control of Health IQ.

5    Subject to and without waiving the foregoing General and specific objections, Health IQ

6  responds: After a reasonable investigation, Health IQ has confirmed that the lead containing

7  Plaintiff's telephone number was acquired as part of a contractual agreement with Cege Media that

8  required all consumer leads to be compliant with relevant telemarketing laws and regulations, as

9  appropriate, support by prior express written consent.  A copy of that agreement will be produced

10  after entry of a Protective Order sufficient to protect the confidential and sensitive nature of its

11  terms. Health IQ further responds that Cege Media has provided evidence of consent responsive to

12  this Request.  After entry of a Protective Order, Health IQ will produce such evidence.  Discovery

13  is ongoing and Health IQ reserves the right to supplement this response as appropriate.

14  **SPECIAL INTERROGATORY NO. 9:**

15    Identify by make, model, structure and location the system(s), platform(s), and/or equipment

16  used by you, or any vendor, used to contact the Plaintiff.

17  **RESPONSE TO SPECIAL INTERROGATORY NO. 9:**

18    Health IQ hereby incorporates by reference as if set forth fully herein the Preliminary

19  Statement and General Objections. Health IQ further objects to the extent that this Interrogatory is

20  neither limited in time nor scope, so the Interrogatory is overbroad, unduly burdensome, and lacks

21  proportionality to the needs of the case.

22    Subject to and without waiving the foregoing General and specific objections, Health IQ

23  responds: After a reasonable investigation, Health IQ has identified that the text messages to

24  Plaintiff were sent by Health IQ using an Oracle Eloqua platform and Telnyx system.  After entry

25  of a Protective Order, Health IQ will produce information sufficient to identify its agreements and

26  with Oracle Eloqua and regarding the Telnyx system, as well as documents relevant to Health IQ's

27  use of the platform and system.  Discovery is ongoing and Health IQ reserves the right to supplement

28  this response as appropriate.

1

**SPECIAL INTERROGATORY NO. 10:**

State all facts in support of any affirmative defenses you have raised.

**RESPONSE TO SPECIAL INTERROGATORY NO. 10:**

Health IQ hereby incorporates by reference as if set forth fully herein the Preliminary Statement and General Objections. Health IQ further objects to this Interrogatory to the extent that it: (1) is overbroad and unduly burdensome in seeking "all" facts; (2) seeks information protected by the attorney-client privilege, attorney work product doctrine, and/or any other privilege; (3) prematurely seeks production of information in a manner inconsistent with the Federal Rules, Local Rules, and/or case management schedule in this Action; (4) assumes a legal conclusion; (5) calls for information beyond the possession, custody, or control of Defendant; and (6) is redundant of other written discovery served in this Action.

**SPECIAL INTERROGATORY NO. 11:**

Identify any person (whether employed by you or not) whom you have disciplined, reprimanded, or taken similar action against for engaging in, facilitating, or allowing allegedly unlawful or unauthorized outbound calls using a recorded message to occur. In your answer, please identify all persons involved in any investigation, describe the reasons for your disciplinary action or reprimand, and describe the action taken against the person.

**RESPONSE TO SPECIAL INTERROGATORY NO. 11:**

Health IQ hereby incorporates by reference as if set forth fully herein the Preliminary Statement and General Objections. Health IQ further objects to the extent that this Interrogatory: (1) is neither limited in time nor scope, so the Interrogatory is overbroad, unduly burdensome, and lacks proportionality to the needs of the case; (2) seeks information protected by the attorney-client privilege, attorney work product doctrine, and/or other applicable privileges; and (3) is overbroad and unduly burdensome to the extent it prematurely seeks information beyond Plaintiff's individual claims.

Subject to the foregoing General and specific Objections, Health IQ responds: After a reasonable investigation, Health IQ has not identified any information responsive to this Request.

DEFENDANT HI.Q, INC.'S RESPONSES TO THE SPECIAL INTERROGATORIES IN PLAINTIFF'S FIRST SET OF DISCOVERY

1  Specifically, Health IQ has not disciplined any individual regarding the text messages sent to

2  Plaintiff.

3  **SPECIAL INTERROGATORY NO. 12:**

4         In response to which (if any) requests for production in this case have you produced no

5  responsive documents?

6  **RESPONSE TO SPECIAL INTERROGATORY NO. 12:**

7         Subject to and without waiving the foregoing general and specific objections, and to the

8  extent that Health IQ understands the language in this Interrogatory, Health IQ responds:  See Health

9  IQ's Responses and Objections to Plaintiff's Requests for Production.

10

11

12

13  DATED:  October 4, 2021                     KELLEY DRYE & WARREN LLP
                                                Paul A. Rosenthal
14                                              Becca J. Wahlquist
                                                Nathan T. Jamieson
15
                                            By: */s/ Nathan T. Jamieson*_____
16                                              Nathan T. Jamieson
                                                Attorneys for Defendant Health IQ
17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT HI.Q, INC.'S RESPONSES TO THE SPECIAL INTERROGATORIES IN PLAINTIFF'S
FIRST SET OF DISCOVERY

1

**PROOF OF SERVICE**

2

        I, Nathan T. Jamieson, declare that on October 4, 2021, I was at least 18 years of age and

3

not a party to this action and served the foregoing DEFENDANT HI.Q, INC.'S RESPONSES

4

AND OBJECTIONS TO THE SPECIAL INTERROGATORIES IN PLAINTIFF'S FIRST SET

5

OF DISCOVERY on all counsel of record.

6

7
                                         By: */s/ Nathan T. Jamieson*
                                             Nathan T. Jamieson
8                                            Attorneys for Defendant Health IQ

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3                                    **VERIFICATION**

4          I, Raj Vavilala, certify and declare under penalty of perjury under the laws of the United

5    States that:

6          I am the Chief Marketing Officer of Hi.Q, Inc. d/b/a Health IQ, Defendant in this action and

7    I am authorized to make this verification.

8          I am familiar with the contents of Hi.Q, Inc. d/b/a Health IQ's Responses and Objections to

9    Plaintiff's First Set of Interrogatories, and know its contents. The information supplied therein is

10   based on my own personal knowledge and/or has been supplied by my attorneys or other agents

11   and/or compiled from available documents and is therefore provided as required by law.

12         The information contained in the foregoing document is true, except as to the matter which

13   were provided by my attorneys or other agents or compiled from available documents, including all

14   contentions and opinions, and, as to those matters, I am informed and believe that they are true.

15

16   Executed at _____, on October 1, 2021.
                  St. Augustine, Fl

17

18                                                          DocuSigned by:

19                                                          _Raj Vavilala_
                                                            3C06D919E197445...
                                                            Raj Vavilala

20

21

22

23

24

25

26

27

28

# EXHIBIT 5

1   Christopher S. Morris, Esq., SBN 163188
2   cmorris@morrislawfirmapc.com
    Jacob A. Gillick, Esq. 312336
3   jgillick@morrislawfirmapc.com
4   MORRIS LAW FIRM, APC
    501 West Broadway, Suite 1480
5   San Diego, CA 92101
6   Telephone:  (619) 826-8060
    Facsimile:  (619) 826-8065
7
8   Attorneys for Deponent ZeetoGroup, LLC

9                  UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11  TOBY HOY,                          | Case No. 4:21-cv-04875-YGR

12                      Plaintiff,      | **OBJECTIONS TO SUBPOENA TO**
                                        | **TESTIFY AT A DEPOSITION IN A**
13                                      | **CIVIL MATTER TO ZEETOGROUP,**
14          v.                          | **LLC**

15  HI.Q, INC. d/b/a HEALTH IQ,

16                      Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

                                1

1     Please take notice that given the objections below, Responding Party will not

2     be attending the deposition as scheduled.  Responding Party further objects to this

3     subpoena on the following grounds:

4     <u>**TOPICS**</u>

5     <u>**GET IT FREE Business Structure**</u>

6     1.     The general nature and scope of GET IT FREE'S business and/or

7     services. This subject includes, but is not limited to, GET IT FREE'S business

8     activities, daily operations, portfolio of services offered, and business model.

9     <u>**OBJECTION/RESPONSE:**</u>

10     Responding Party objects that this request is vague, ambiguous, and

11     overbroad as to content, scope, and time and constitutes unwarranted annoyance,

12     embarrassment, and oppression.

13     Responding Party objects that this request seeks disclosure of confidential

14     and proprietary business records/information, including but not limited to financial

15     information and information containing a third party's private information,

16     disclosure of which would violate Article I, Sec. I of the California Constitution.

17     Responding Party further objects that the request is irrelevant to the subject

18     matter, beyond the scope of permissible discovery, and not reasonably calculated to

19     lead to the discovery of admissible evidence.

20

21     <u>**LEAD GENERATION**</u>

22     2.     GET IT FREE'S process for obtaining telephone numbers that were

23     sold to CEGE MEDIA or HEALTH IQ, including where such telephone numbers

24     came from, who acquired them, how they were delivered and any audits or vetting

25     done on them before they were delivered.

26     / / /

27     / / /

28     / / /

2

1 **OBJECTION/RESPONSE:**

2      Responding Party objects that this request is vague, ambiguous, and

3 overbroad as to content, scope, and time and constitutes unwarranted annoyance,

4 embarrassment, and oppression.

5      Responding Party objects that this request seeks disclosure of confidential

6 and proprietary business records/information, including but not limited to financial

7 information and information containing a third party's private information,

8 disclosure of which would violate Article I, Sec. I of the California Constitution.

9      Responding Party further objects that the request is irrelevant to the subject

10 matter, beyond the scope of permissible discovery, and not reasonably calculated to

11 lead to the discovery of admissible evidence.

12      3.    GET IT FREE's knowledge of and participation in the process of

13 receiving and obtaining telephone numbers made by THIRD PARTIES it works

14 with, including, but not limited to, CEGE MEDIA or HEALTH IQ.

15 **OBJECTION/RESPONSE:**

16      Responding Party objects that this request is vague, ambiguous, and

17 overbroad as to content, scope, and time and constitutes unwarranted annoyance,

18 embarrassment, and oppression.

19      Responding Party objects that this request seeks disclosure of confidential

20 and proprietary business records/information, including but not limited to financial

21 information and information containing a third party's private information,

22 disclosure of which would violate Article I, Sec. I of the California Constitution.

23      Responding Party further objects that the request is irrelevant to the subject

24 matter, beyond the scope of permissible discovery, and not reasonably calculated to

25 lead to the discovery of admissible evidence.

26 / / /

27 / / /

28 / / /

OBJECTIONS TO SUBPOENA                                    4:21-CV-04875-YGR

1    **RELATIONSHIP WITH CEGE MEDIA**

2        4.     GET IT FREE's relationship or involvement with CEGE MEDIA,

3 including, but not limited to:

4           a.     The nature and scope of services provided by GET IT FREE to

5 CEGE MEDIA and vice versa;

6           b.     The negotiation, drafting, implementation, and all other aspects

7 of any agreement or scope of work between GET IT FREE and CEGE

8 MEDIA:

9           c.     The day-to-day relationship between GET IT FREE and CEGE

10 MEDIA including, but not limited to, the identities of any GET IT

11 FREE employees who communicate with CEGE MEDIA regarding

12 lead generation, the frequency of any meeting with GET IT FREE

13 regarding lead generation, and the typical content and form of any

14 communications between GET IT FREE and CEGE MEDIA;

15           d.     Any training CEGE MEDIA provided to GET IT FREE related

16 to lead generation;

17           e.     GET IT FREE'S disclosure to CEGE MEDIA regarding the

18 method, manner, and means by which GET IT FREE promoted

19 HEALTH IQ through lead generation;

20           f.     The scope of any access that CEGE MEDIA has to any GET IT

21 FREE computer systems, equipment, or DATABASES used for

22 purposes of lead generation; the type of such computer systems,

23 equipment, or DATABASES to which CEGE MEDIA has access; and

24 the method, manner, and means by which CEGE MEDIA accesses

25 such computer systems, equipment, or DATABASES; and

26           g.     Any financial incentives provided by or payments made by

27 CEGE MEDIA to GET IT FREE.

28 / / /

OBJECTIONS TO SUBPOENA                          4:21-CV-04875-YGR

**OBJECTION/RESPONSE:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

5.      All audits, investigations, inquiries, or studies (collectively "audits") performed by CEGE MEDIA related to lead generation, including but not limited to, when each audit was performed, who performed each audit, why each audit was performed, which PERSONS were audited (YOU, THIRD PARTIES, or VENDORS), why each PERSON was audited, and the results of each audit.

**OBJECTION/RESPONSE:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

/ / /

1    **RELATIONSHIP WITH HEALTH IQ**

2    6.    All aspects of HEALTH IQ'S relationship or involvement with GET

3    IT FREE, including but not limited to:

4    a.    The nature and scope of services provided by GET IT FREE to

5    HEALTH IQ;

6    b.    The negotiation, drafting, implementation, and all other aspects

7    of any agreement or scope of work between HEALTH IQ and Get it

8    Free;

9    c.    The day-to-day relationship between HEALTH IQ and GET IT

10    FREE, including, but not limited to, the identities of any HEALTH IQ

11    employees who communicate with Get it Free regarding lead

12    generation, the identities of employees of GET IT FREE with whom

13    HEALTH IQ communicates regarding lead generation, the frequency

14    of any meetings with GET IT FREE regarding lead generation, and the

15    typical content and form of any communications between HEALTH

16    IQ and GET IT FREE.

17    d.    Any training HEALTH IQ provided to Get it Free related to lead

18    generation;

19    e.    HEALTH IQ'S knowledge of the other third parties that GET IT

20    FREE contracted with for purposes of marketing HEALTH IQ'S

21    products or services;

22    f.    HEALTH IQ'S knowledge of the method, manner, and means

23    by which GET IT FREE acquired leads or prospective customers for

24    HEALTH IQ;

25    g.    The scope of HEALTH IQ'S knowledge or participation in

26    providing leads to GET IT FREE for purposes of lead generation;

27    h.    The scope of any access that GET IT FREE has to any

28    HEALTH IQ computer systems, equipment, or DATABASES used for

6

OBJECTIONS TO SUBPOENA                                    4:21-CV-04875-YGR

purposes of lead generation; the type of such computer systems, equipment, or DATABASES to which GET IT FREE has access; and the method manner, and means by which GET IT FREE accesses such computer systems, equipment, or DATABASES; and

i.    Any financial incentives provided by or payments made by HEALTH IQ to GET IT FREE.

**OBJECTION/RESPONSE:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

7.    All audits, investigations, inquiries, or studies (collectively "audits") performed by YOU or for YOU related to lead generation, including, but not limited to, when each audit was performed, who performed each audit, why each audit was performed, which PERSONS were audited (YOU, THIRD PARTIES, or VENDORS), why each PERSON was audited, and the results of each audit.

**OBJECTION/RESPONSE:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial

7

information and information containing a third party's private information,

disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject

matter, beyond the scope of permissible discovery, and not reasonably calculated to

lead to the discovery of admissible evidence.

**POLICIES**

8.    GET IT FREE'S POLICIES relating to lead generation, including

POLICIES regulating actions by THIRD PARTIES that conduct lead generation for

GET IT FREE.

**OBJECTION/RESPONSE:**

Responding Party objects that this request is vague, ambiguous, and

overbroad as to content, scope, and time and constitutes unwarranted annoyance,

embarrassment, and oppression.

Responding Party objects that this request seeks disclosure of confidential

and proprietary business records/information, including but not limited to financial

information and information containing a third party's private information,

disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject

matter, beyond the scope of permissible discovery, and not reasonably calculated to

lead to the discovery of admissible evidence.

9.    GET IT FREE'S POLICES, practices, and procedures relating to the

Telephone Consumer Protection Act, 47 U.S.C. § 227, including, but not limited to,

the rules, regulations, opinions, advisories, comments or filings of the Federal

Commination Commission that relate to 47 U.S.C. § 227 and 47 C.F.R. §

64.1200(c)(2) & (d).

/ / /

/ / /

**OBJECTION/RESPONSE:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

10.    GET IT FREE'S efforts to ensure TCPA compliance by THIRD PARTIES and VENDORS that conduct lead generation for GET IT FREE, and its own employees (e.g., requiring compliance training, audits, procedures to ensure appropriate consent).

**OBJECTION/RESPONSE:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

/ / /

/ / /

OBJECTIONS TO SUBPOENA                                    4:21-CV-04875-YGR

**COMPLAINTS & DO NOT CALL REQUESTS**

11.    Any complaints, grievances, investigations, or actual or threatened litigation from private individuals, business bureaus (such as BBB), and government entities regarding lead generation to GET IT FREE, and any corresponding response or investigation.

**OBJECTION/RESPONSE:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

12.    GET IT FREE'S POLICIES for responding to complaints, including GET IT FREE'S intake, investigation, and tracking of complaints, and its development and implementation of those POLICIES.  All DATABASES or computer software programs GET IT FREE uses to track complaints.

**OBJECTION/RESPONSE:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

10

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

**THIS LITIGATION**

13.    GET IT FREE'S response to the two subpoenas it has received.

**OBJECTION/RESPONSE:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression. This also constitutes a breach of the attorney-client privilege.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

14.    GET IT FREE'S investigation into the lead(s) it provided related to the PLAINTIFF.

**OBJECTION/RESPONSE:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression. This also constitutes a breach of the attorney-client privilege.

/ / /

/ / /

/ / /

11

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

15.    GET IT FREE's investigation and any communications regarding this litigation with the VENDOR or THIRD PARTY that contacted the PLAINTIFF.

**OBJECTION/RESPONSE:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression. This also constitutes a breach of the attorney-client privilege.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

## REQUESTS

**Request No. 1:**

To the extent you claim that your company obtained permission for automated calls or text messages concerning Defendant, produce all documents that identify:

A.    Any signed writings evidencing that permission;

1        B.     As it relates to any website visits that you assert are being used in

2               place of signed writings:

3            i.     All documents that evidence a clear and conspicuous statement

4                     that informed consumers of their right to withdraw their consent

5                     to receive telemarketing calls;

6            ii.    All documents that evidence a clear and conspicuous statement

7                     that informed consumers of the procedures they must use to

8                     withdraw consent, and the procedures they may use to update

9                     their contact information that was used as a basis for any alleged

10                 consent, and the procedures they may use to update their contact

11                 information that was used as a basis for any alleged consent to

12                 make telemarketing calls to them.

13  **Response to Request No. 1:**

14      Responding Party objects that this request is vague, ambiguous, and

15  overbroad as to content, scope, and time and constitutes unwarranted annoyance,

16  embarrassment, and oppression.  To comply with the request would be an undue

17  burden and expense on Responding Party.  Furthermore, the request is calculated to

18  annoy and harass Responding Party.  Each request should be made with specificity.

19      Responding Party objects that this request seeks disclosure of confidential

20  and proprietary business records/information, including but not limited to financial

21  information and information containing a third party's private information,

22  disclosure of which would violate Article I, Sec. I of the California Constitution.

23      Responding Party further objects that the request is irrelevant to the subject

24  matter, beyond the scope of permissible discovery, and not reasonably calculated to

25  lead to the discovery of admissible evidence.

26      Responding Party also objects that these documents are available from a

27  party Defendant and it is improper to be subpoenaing these documents from a third

28  party.

OBJECTIONS TO SUBPOENA              4:21-CV-04875-YGR

**Request No. 2:**

To the extent you claim that your company obtained permission for automated calls or text messages concerning Defendant via websites:

    A.    Produce documents that identify those website(s) and the specific page(s) on those website(s) that you claim constitute consent or permission.

    B.    For any website identified in response to the prior request produce all access, server and error logs and security and fraud alerts during the period you claim visits to that website constituted consent or permission to contact any putative class member with telemarketing calls.

    C.    For any website identified in response to the prior request, produce all architectural diagrams, wireframes and application mockups.

    D.    Produce all documents that identify the affiliate(s) compensated directly or indirectly by you for each purportedly consenting consumer.

    E.    Produce all documents that identify the referring URL from which each purportedly consenting consumer came to your website.

    F.    If any documents responsive to the request in this Schedule A are in the hands or third parties, produce documents that identify those third parties.

**Response to Request No. 2:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.  To comply with the request would be an undue burden and expense on Responding Party.  Furthermore, the request is calculated to annoy and harass Responding Party.  Each request should be made with specificity.

14

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

Responding Party also objects that these documents are available from a party Defendant and it is improper to be subpoenaing these documents from a third party.

**Request No. 3:**

All contracts or documents representing agreements with third parties, including subcontractors or affiliate companies, utilized to perform services for the Defendant or CEGE.  This includes, but is not limited to, any affiliates that generate traffic at any of your websites.

**Response to Request No. 3:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.  To comply with the request would be an undue burden and expense on Responding Party.  Furthermore, the request is calculated to annoy and harass Responding Party.  Each request should be made with specificity.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

15

Responding Party also objects that these documents are available from a party Defendant and it is improper to be subpoenaing these documents from a third party.

**Request No. 4:**

All internal correspondence regarding Defendant CEGE and the process of making calls, selling leads or selling telephone numbers to them for them.

**Response to Request No. 4:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.  To comply with the request would be an undue burden and expense on Responding Party.  Furthermore, the request is calculated to annoy and harass Responding Party.  Each request should be made with specificity.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

Responding Party also objects that these documents are available from a party Defendant and it is improper to be subpoenaing these documents from a third party.

**Request No. 5:**

All images, proof and other website architecture that the Defendant's name or any of their registered DBAs appeared on the websites for your company.  This includes, but is not limited to, the following websites:

try.getitfree-samples.com

try.getitfreesamples.net

OBJECTIONS TO SUBPOENA                                    4:21-CV-04875-YGR

| | |
|---|---|
| 1 | try.getitfree.us |
| 2 | try.get-itfree-samples.com |
| 3 | try.getitfree-sample.com |
| 4 | try.getyourfree-samples.com |
| 5 | try.get-thefree-samples.com |
| 6 | try.getyourfreesamplesnow.com |
| 7 | try.getyourfreesampletoday.com |
| 8 | try.getitfreesample.com |
| 9 | try.getyourfree-sample.com |
| 10 | try.getitfreessamples.com |
| 11 | try.get-yourfree-sample.com |
| 12 | try.get-it-freesample.com |
| 13 | try.get-it-freesamples.com |
| 14 | try.get-your-freesamples.com |
| 15 | try.getitfree-samples-today.com |
| 16 | try.evenmoresamples.com |
| 17 | try.get-itfree-sample.com |
| 18 | try.getitfreesamples-now.com |
| 19 | try.get-your-free-samples-now.com |
| 20 | try.get-it-free-sample.net |
| 21 | try.getitfree-sample-today.com |
| 22 | try.getitfreesamplestoday.com |
| 23 | try.get-your-free-samples.com |
| 24 | try.get-it-free-samplestoday.com |
| 25 | try.getitfree-samples-now.com |

**26** **Response to Request No. 5:**

27    Responding Party objects that this request is vague, ambiguous, and

28 overbroad as to content, scope, and time and constitutes unwarranted annoyance,

OBJECTIONS TO SUBPOENA                                    4:21-CV-04875-YGR

1    embarrassment, and oppression.  To comply with the request would be an undue

2    burden and expense on Responding Party.  Furthermore, the request is calculated to

3    annoy and harass Responding Party.  Each request should be made with specificity.

4         Responding Party objects that this request seeks disclosure of confidential

5    and proprietary business records/information, including but not limited to financial

6    information and information containing a third party's private information,

7    disclosure of which would violate Article I, Sec. I of the California Constitution.

8         Responding Party further objects that the request is irrelevant to the subject

9    matter, beyond the scope of permissible discovery, and not reasonably calculated to

10   lead to the discovery of admissible evidence.

11        Responding Party also objects that these documents are available from a

12   party Defendant and it is improper to be subpoenaing these documents from a third

13   party.

14   **Response to Request No. 6:**

15        Communications with any third party concerning the litigation captioned on

16   the subpoena.

17   **Response to Request No. 6:**

18         Responding Party objects that this request is vague, ambiguous, and

19   overbroad as to content, scope, and time and constitutes unwarranted annoyance,

20   embarrassment, and oppression.  To comply with the request would be an undue

21   burden and expense on Responding Party.  Furthermore, the request is calculated to

22   annoy and harass Responding Party.  Each request should be made with specificity.

23        Responding Party objects that this request seeks disclosure of confidential

24   and proprietary business records/information, including but not limited to financial

25   information and information containing a third party's private information,

26   disclosure of which would violate Article I, Sec. I of the California Constitution.

27

28

OBJECTIONS TO SUBPOENA                                    4:21-CV-04875-YGR

1    Responding Party further objects that the request is irrelevant to the subject

2  matter, beyond the scope of permissible discovery, and not reasonably calculated to

3  lead to the discovery of admissible evidence.

4    Responding Party also objects that these documents are available from a

5  party Defendant and it is improper to be subpoenaing these documents from a third

6  party.

7                                  **MORRIS LAW FIRM, APC**

8

9  Dated:  January 20, 2022    _____

10                                  Jacob A. Gillick, Esq.
                                   jgillick@morrislawfirmapc.com
11                                  Attorneys for Deponent ZeetoGroup, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OBJECTIONS TO SUBPOENA                              4:21-CV-04875-YGR

# PROOF OF SERVICE

I, the undersigned, am employed in the county of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is 501 West Broadway, Suite 1480, San Diego, CA, 92101.

On January 20, 2022, I caused to be served the following document(s):

- **OBJECTIONS TO SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL MATTER TO ZEETOGROUP, LLC**

on the parties in this action as follows:

| | |
|---|---|
| Anthony Paronich<br>Paronich Law, P.C.<br>350 Lincoln Street, Suite 2400<br>Hingham, MA 02043 | Attorneys for Plaintiff |
| PAUL ROSENTHAL<br>Kelley Drye & Warren LLP | Attorneys for Defendants |

☒    **BY EMAIL** – Based on an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the person at the electronic notification addresses listed above.

I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

Executed on January 20, 2022, at San Diego, California.

Leanna Pierce

PROOF OF SERVICE                                        4:21-CV-04875-YGR

# EXHIBIT 6

Christopher S. Morris, Esq., SBN 163188
cmorris@morrislawfirmapc.com
Jacob A. Gillick, Esq. 312336
jgillick@morrislawfirmapc.com
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone:  (619) 826-8060
Facsimile:  (619) 826-8065

Attorneys for Respondent Zeetogroup, LLC,

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOBY HOY, | Case No. 22cv151-LL-MDD |
| Petitioner, | **DECLARATION OF SHAYNE CARDWELL** |
| v. | |
| ZEETOGROUP, LLC, | |
| Respondent. | |

I, Shayne Cardwell, declare as follows:

1.      I am the Chief Revenue Officer for ZeetoGroup, LLC ("Zeeto").  I base everything in this declaration on my own knowledge.  If called to testify as to the contents of this declaration, I could do so competently.

2.      I have been tasked with verifying Health IQ's disclosure on Zeeto's "path" in response to a lawsuit filed by Anthony Hoy against Health IQ.

3.      By way of background, when a consumer clicks on a relevant advertisement they are immediately taken to a "survey path" where the consumer is asked to provide their contact information, consent to Zeeto's standard disclosures, and then answer a short series of questions.  The answers provided by the consumer may match them with an affiliate or advertiser, such as HealthIQ.

4.      On or around February 15, 2022, counsel for Plaintiff Anthony Hoy provided my attorneys with a list of phone numbers allegedly produced by Cege Media (aka PolicyScout).  I have been told that the over 24,000 phone numbers produced represent the consumers that went down Zeeto's path.

5.      Shortly after receiving the information, I randomly choose 26 different numbers to verify via our third-party vendor, Jornaya.  Jornaya provides a tool that Zeeto integrates with its "survey path" that captures the consumer journey and provides 3rd party certification, called LeadID, that includes a Visual Playback validating the consumer's actions.  The final one is that of the alleged Plaintiff, Anthony Hoy.  Attached hereto as "Exhibit 1" is a true and correct list of the sample consumers randomly chosen by myself.

6.      I chose to sample 26 different consumers due to the burdensome and lengthy process involved in retrieving the verifications.  I also felt a time constraint given Anthony Hoy's filing of a Motion to Compel before providing the 24,000 numbers.

7.      After selecting the random numbers, I requested third party verification reports, including Visual Playback, from Jornaya who specializes in

DECLARATION OF SHAYNE CARDWELL                    22cv151 LL MDD

verifying TCPA consents. A true and correct copy of all Jornaya Reports received in response are attached hereto as "Exhibit 2."

8.      Each of the Jornaya reports attached verify that the consumer identified by Plaintiff's production opted in for marketing communications from Health IQ. Further, each and every report has a link which allows the reviewer to watch a video of the consumer's screen going through the consent process, or Visual Playback.

9.      Included in the consent process is a point where the consumer is given the opportunity to click on a link titled "affiliates." The reviewer of the Jornaya videos can click that link directly from the video to see a list of the affiliates disclosed. I have reviewed these links from the videos and have verified that Health IQ was disclosed at the time the subject consumers provided consent.

10.      In order to further verify that Health IQ was disclosed during the relevant period, I went through our coding logs to see if Health IQ had ever been removed from the disclosed affiliates. It has not. Therefore, during the relevant time period, each and every consumer who went through Zeeto's path would have seen Health IQ listed as an affiliate.

11.      This is the extent of the information available from Zeeto to prove the disclosure (or non-disclosure) of Health IQ during the relevant period. I have reviewed all subpoenas served on Zeeto and believe that strict compliance with the subpoena will cause a large burden on Zeeto without providing any further relevant information.

I declare under penalty of perjury, under the laws of the United States and California that the foregoing is true and correct. Executed this $\underline{\quad 10 \quad}$ th day of March, 2022, in San Diego, California.



Shayne Cardwell

DECLARATION OF SHAYNE CARDWELL                    22cv151 LL MDD

# EXHIBIT 7

| | |
|---|---|
| **From:** | Jacob Gillick |
| **To:** | Anthony Paronich |
| **Cc:** | Rosenthal, Paul A. (NJ); Leanna Pierce; Jennifer Murray |
| **Subject:** | Re: ZeetoGroup Subpoena |
| **Date:** | March 10, 2022 6:19:01 PM |
| **Attachments:** | Cardwell Declaration.docx.pdf |
| | Zeeto Media-7048BB55-B0E6-66F5-95D3-1DA97AC9726F-compliance-report.pdf |
| | Zeeto Media-0A11B61F-33FE-13AC-FAEB-FD74A7176B9E-compliance-report.pdf |
| | Zeeto Media-3CEA60CC-2003-89A4-38C8-1F565E2F4D8A-compliance-report.pdf |
| | Zeeto Media-4E6B7B9E-AAAA-F91F-112B-80CAAA2DD70A-compliance-report.pdf |
| | Zeeto Media-4F410D32-7D51-B3C7-047A-5DA650AE3057-compliance-report.pdf |
| | Zeeto Media-5B1EC6CC-B716-5251-537A-62BD289D8EED-compliance-report.pdf |
| | Zeeto Media-6C4EC912-B121-8452-46CC-3DDBF105C60C-compliance-report.pdf |
| | Zeeto Media-57D8DD15-552B-ED08-D46E-419224A13E2B-compliance-report.pdf |
| | Zeeto Media-115A2FE0-1925-2A77-0BB6-67E575A7EE49-compliance-report.pdf |
| | Zeeto Media-451E4838-2785-C0AC-38AE-F61530CAA94E-compliance-report.pdf |
| | Zeeto Media-837A3000-8D51-0E90-80A1-539F3152BDF2-compliance-report.pdf |
| | Zeeto Media-855D0E68-6C2E-24A8-5481-8F9716ABEF5F-compliance-report.pdf |
| | Zeeto Media-2075D8B2-55F2-B190-E214-E17860479786-compliance-report.pdf |
| | Zeeto Media-2805DCCA-FFD0-5D22-5C05-ADE982CADE53-compliance-report.pdf |
| | Zeeto Media-8743E3D4-F32A-B4C5-23E0-4CCC6739D9EF-compliance-report.pdf |
| | Zeeto Media-46111921-DFDD-BFF1-F7CD-79A660CF7489-compliance-report.pdf |
| | Zeeto Media-A0CD5E23-0782-D9CE-74FE-136A2DB23435-compliance-report.pdf |
| | Zeeto Media-A4BB170D-646A-2945-FB90-C8DDA3C4D8B6-compliance-report.pdf |
| | Zeeto Media-A98BF6F7-5A9A-F6CA-6D42-A0E37E086898-compliance-report.pdf |
| | Zeeto Media-AC3AEBB2-C75F-FE7D-5500-4EF0CF11B953-compliance-report.pdf |
| | Zeeto Media-CD46B41F-F124-E448-A6E9-89B84C97D032-compliance-report.pdf |
| | Zeeto Media-D9935037-159E-230B-6FFC-4449A009079E-compliance-report.pdf |
| | Zeeto Media-DC1A9CE9-0C16-D22E-E84B-0D976012E12C-compliance-report.pdf |
| | Zeeto Media-DFCF2CBC-5CBB-ACBE-E00E-716B40A6B34C-compliance-report.pdf |
| | Zeeto Media-F882CA18-BD4B-A5D8-40D4-0EFAD8AFC823-compliance-report.pdf |
| | Zeeto Media-FD984C57-27A8-09C5-2A3C-75F8D6FC7721-compliance-report.pdf |
| | subpoena_info_leadID_adjusted_v2_03_2022.pdf |

**CAUTION: This message originated outside of Kelley Drye and was sent by:**
**jgillick@morrislawfirmapc.com**

Anthony:

Please see the attached declaration and corresponding production from Zeeto. We just received everything back from Jornaya and I apologize for this production backing up so close to the subpoena's opposition date. It was not intentional.

As you will see, my clients have done everything they reasonable can do to provide the relevant information. There is no doubt that Health IQ was disclosed and included as a marketing partner/affiliate. Outside of the attached, there is nothing else Zeeto can provide which would be relevant or helpful to either party.

I am willing to stipulate to an extension of the subpoena while you review the documents--if you are interested. In the event we are forced to respond on Monday, we will include our regular objections, and also argue that the subpoena is now moot. My clients have also given me authority to seek sanctions for the multiple subpoenas previously served but not enforced. Zeeto is willing to re-consider that position based on Plaintiff's next move.

Please let me know if you have any questions and please let me know how Plaintiff would like to move forward with the subpoena.

Best,

Jacob A. Gillick, Esq.
**MORRIS LAW FIRM, APC**
501 West Broadway, Suite 1480
San Diego, CA 92101
Tel. (619) 826-8060
Fax. (619) 826-8065

CONFIDENTIAL NOTICE: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain information protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges or confidentiality laws or regulations. If you are not an intended recipient, you may not review, use, copy, disclose or distribute this message or any of the information contained in this message to anyone. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of this message and any attachments. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

**From:** Anthony Paronich <anthony@paronichlaw.com>
**Date:** Tuesday, February 15, 2022 at 9:54 AM
**To:** Jacob Gillick <jgillick@morrislawfirmapc.com>
**Cc:** "Rosenthal, Paul A. (NJ)" <PaulRosenthal@kelleydrye.com>, Leanna Pierce <lpierce@morrislawfirmapc.com>, Jennifer Murray <jmurray@terrellmarshall.com>
**Subject:** RE: ZeetoGroup Subpoena

Jacob:

Attached is a list of the phone numbers attributed to the GetitFree websites we have located in the Cege production.

As indicated, we are not amenable to a sampling and believe that a complete production should be made.

While the rest of your e-mail is inaccurate, I'm not sure that it warrants a response other than to indicate that we expect any correspondence relating to this lawsuit will be produced as requested in the subpoena (Request No. 6).


----
Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[c] (508) 221-1510
[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

---

**From:** Jacob Gillick <jgillick@morrislawfirmapc.com>
**Sent:** Tuesday, February 15, 2022 11:18 AM
**To:** Anthony Paronich <anthony@paronichlaw.com>
**Cc:** Rosenthal, Paul A. (NJ) <PaulRosenthal@kelleydrye.com>; Leanna Pierce <lpierce@morrislawfirmapc.com>; Jennifer Murray <jmurray@terrellmarshall.com>
**Subject:** Re: ZeetoGroup Subpoena

I must be lost because in my mind I am offering exactly what you all need but nobody wants it. Do you want to have a call today to discuss today/tomorrow? My understanding is we can prove that consumers saw Health IQ listed when opting into campaigns if we have their phone numbers. I already sent code which shows that Health IQ was disclosed as recently as 2022.

Thanks

> On Feb 14, 2022, at 7:10 PM, Jacob Gillick <jgillick@morrislawfirmapc.com> wrote:
>
> Paul-Can you send us some numbers from the production (including Plaintiffs) so we can produce documents which I understand disclose Health IQ?
>
> I reached out to CEGE and they were pretty upset on how Anthony characterized their production in his motion which may be why he does not want to explore my offer of compromise. We will also send over a declaration for whatever is needed.
>
> I'll just respond to the motion that I produced what I plan on producing here.  I am not concerned. As articulated multiple times- this should be what you need to resolve the issues as it relates to Zeeto. I could have given it earlier had the request been narrowed/articulated.
>
> Thanks!
>
> > On Feb 14, 2022, at 6:55 PM, Anthony Paronich <anthony@paronichlaw.com> wrote:
> >
> > Jacob:

Despite your belief that our position is "silly", we don't agree and you're not answering our question. Does Zeeto contend that the visits are made to Zeeto's own website? The document you produced today identified several publishers.

We are not going to agree to a sampling, but believe any verifications related to the Plaintiff's phone number should be produced as responsive to the request seeking information about the Plaintiff's phone number.

----
Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[c] (508) 221-1510
[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

On Mon, Feb 14, 2022 at 9:48 PM Jacob Gillick <jgillick@morrislawfirmapc.com> wrote:

> To reiterate- my understanding is the verifications will identity Health IQ
>
>> On Feb 14, 2022, at 4:34 PM, Jacob Gillick <jgillick@morrislawfirmapc.com> wrote:
>>
>> Anthony,
>>
>> Your position is silly. That's like saying it's improper to offer expert testimony because the expert doesn't own the company.  Zeeto owns the website. Zeeto will verify

the certifications if you want. They hired a company that will pull records, and most of the time videos, of people opting in on the Zeeto websites to avoid meritless lawsuits from vexatious litigants.

So we will provide  proof of the opt in which was recorded by a third party who you will have to go through first in the event you accuse us of lying.

> On Feb 14, 2022, at 3:53 PM, Anthony Paronich <anthony@paronichlaw.com> wrote:
>
> Jacob:
>
> That's simply not true. You're asking us to commit to something to withdraw a validly issued subpoena and we're trying to understand what is being offered.
>
> I'm not sure what you mean by this, "I sent you the website. You can figure out what the difference is between a verification company and Zeeto." My question was "Isn't Zeeto the owner of the websites that are purportedly visited? Or is Zeeto's position a different one?" If Zeeto is saying that its own the websites that were purportedly visited, we don't want information compiled by a third party, we are entitled to the information from the party that we subpoenaed showing their websites were visited.
>
>
> ----
> Anthony Paronich
> Paronich Law, P.C.
> 350 Lincoln Street, Suite 2400
> Hingham, MA 02043
> [o] (617) 485-0018
> [c] (508) 221-1510
> [f] (508) 318-8100

This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

**From:** Jacob Gillick <jgillick@morrislawfirmapc.com>
**Sent:** Monday, February 14, 2022 6:40 PM
**To:** Anthony Paronich <anthony@paronichlaw.com>
**Cc:** Rosenthal, Paul A. (NJ) <PaulRosenthal@kelleydrye.com>; Leanna Pierce <lpierce@morrislawfirmapc.com>; Jennifer Murray <jmurray@terrellmarshall.com>
**Subject:** Re: ZeetoGroup Subpoena

Anthony- let's get on the phone tomorrow. You seem to be arguing just to argue. I'm offering a solution and your telling me it's improper before looking at anything.

I sent you the website. You can figure out what the difference is between a verification company and Zeeto.

On Feb 14, 2022, at 3:09 PM, Anthony Paronich <anthony@paronichlaw.com> wrote:

Ok, but we still haven't

understood the basis for your
position. You mention that it
was a different report, that's
fine. I'm giving you an
explanation for why relying on
a third parties' data isn't
something we're in a position
to agree to.

We still haven't gotten a
response on this:

> It matters because for
> the leads produced by
> HealthIQ and Enfuego
> with respect to Zeeto
> websites, the
> appropriate source of
> information related to
> whether that visit
> occurred would be with
> Zeeto, the owner of the
> website, as opposed to
> a third party.

Isn't Zeeto the owner of the
websites that are purportedly
visited? Or is Zeeto's position a
different one?


----
Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[c] (508) 221-1510
[f] (508) 318-8100

This email message may contain
legally privileged and/or confidential
information.  If you are not the
intended recipient(s), or the
employee or agent responsible for

delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

---

**From:** Jacob Gillick <jgillick@morrislawfirmapc.com>
**Sent:** Monday, February 14, 2022 5:41 PM
**To:** Anthony Paronich <anthony@paronichlaw.com>; Rosenthal, Paul A. (NJ) <PaulRosenthal@kelleydrye.com>
**Cc:** Leanna Pierce <lpierce@morrislawfirmapc.com>; Jennifer Murray <jmurray@terrellmarshall.com>
**Subject:** RE: ZeetoGroup Subpoena

It was an example from a different matter regarding a different method of communications. I have been told that Zeeto can pull information identifying Health IQ. That is the offer—which has been reiterated multiple times.

Jacob A. Gillick, Esq.
**MORRIS LAW FIRM, APC**
501 West Broadway, Suite 1480
San Diego, CA 92101

Tel. (619) 826-8060
Fax. (619) 826-8065

CONFIDENTIAL NOTICE: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain information protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges or confidentiality laws or regulations. If you are not an intended recipient, you may not review, use, copy, disclose or distribute this message or any of the information contained in this message to anyone. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of this message and any attachments. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

**From:** Anthony Paronich <anthony@paronichlaw.com>
**Sent:** Monday, February 14, 2022 2:36 PM
**To:** Jacob Gillick <jgillick@morrislawfirmapc.com>; Rosenthal, Paul A. (NJ) <PaulRosenthal@kelleydrye.com>
**Cc:** Leanna Pierce <lpierce@morrislawfirmapc.com>; Jennifer Murray <jmurray@terrellmarshall.com>
**Subject:** RE: ZeetoGroup Subpoena

Jacob:

It matters because for the the leads produced by HealthIQ and Enfuego with respect to Zeeto websites, the appropriate source of information related to whether that visit occurred would be with Zeeto, the owner of the website, as opposed to a third party.

Indeed, the following was

contained in the report you just sent:

> Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions.

Verifying what, if any TCPA disclosure language occurred, is certainly relevant.


----

Anthony Paronich

Paronich Law, P.C.

350 Lincoln Street, Suite 2400

Hingham, MA 02043

[o] (617) 485-0018

[c] (508) 221-1510

[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

---

**From:** Jacob Gillick

<jgillick@morrislawfirmapc.co

m>

**Sent:** Monday, February 14, 2022 5:24 PM
**To:** Anthony Paronich <anthony@paronichlaw.com>; Rosenthal, Paul A. (NJ) <PaulRosenthal@kelleydrye.com>
**Cc:** Leanna Pierce <lpierce@morrislawfirmapc.com>; Jennifer Murray <jmurray@terrellmarshall.com>
**Subject:** RE: ZeetoGroup Subpoena

Not sure why it is relevant but Zeeto hires a third party that monitors consumers going through the opt-in process to avoid frivolous lawsuits and overbearing demands. Here is one of those companies:

https://www.jornaya.com/capabilities/compliance-officers/

Jacob A. Gillick, Esq.
**MORRIS LAW FIRM, APC**
501 West Broadway, Suite 1480
San Diego, CA 92101
Tel. (619) 826-8060
Fax. (619) 826-8065

CONFIDENTIAL NOTICE: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain information protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges or confidentiality laws or regulations. If you are not an intended recipient, you may not review, use, copy, disclose or distribute this message or any of the information contained in this message to anyone. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of this message and any attachments. Unintended transmission shall not

constitute waiver of the attorney-client or any other privilege.

---

**From:** Anthony Paronich <anthony@paronichlaw.com>
**Sent:** Monday, February 14, 2022 2:13 PM
**To:** Jacob Gillick <jgillick@morrislawfirmapc.com>; Rosenthal, Paul A. (NJ) <PaulRosenthal@kelleydrye.com>
**Cc:** Leanna Pierce <lpierce@morrislawfirmapc.com>; Jennifer Murray <jmurray@terrellmarshall.com>
**Subject:** RE: ZeetoGroup Subpoena

Jacob:

Zeeto has a third party track visits to Zeeto's own websites? Wouldn't Zeeto be the better source of if, how and when someone visited its website?


----

Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[c] (508) 221-1510
[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are

hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

**From:** Jacob Gillick <jgillick@morrislawfirmapc.com>
**Sent:** Monday, February 14, 2022 3:54 PM
**To:** Anthony Paronich <anthony@paronichlaw.com>; Rosenthal, Paul A. (NJ) <PaulRosenthal@kelleydrye.com>
**Cc:** Leanna Pierce <lpierce@morrislawfirmapc.com>; Jennifer Murray <jmurray@terrellmarshall.com>
**Subject:** RE: ZeetoGroup Subpoena

Yes.

Zeeto has employed a third party company that tracks opti-ins/consent. My understanding is that Zeeto would be able to easily pull the consents for roughly 20 or so numbers. If there are more than 20 numbers, my understanding is that the process becomes much more difficult.

Jacob A. Gillick, Esq.
**MORRIS LAW FIRM,**

**APC**
501 West Broadway, Suite 1480
San Diego, CA 92101
Tel. (619) 826-8060
Fax. (619) 826-8065

CONFIDENTIAL NOTICE: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain information protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges or confidentiality laws or regulations. If you are not an intended recipient, you may not review, use, copy, disclose or distribute this message or any of the information contained in this message to anyone. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of this message and any attachments. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

**From:** Anthony Paronich <anthony@paronichlaw.com>
**Sent:** Monday, February 14, 2022 12:51 PM
**To:** Jacob Gillick <jgillick@morrislawfirmapc.com>; Rosenthal, Paul A. (NJ) <PaulRosenthal@kelleydrye.com>
**Cc:** Leanna Pierce <lpierce@morrislawfirmapc.com>; Jennifer Murray <jmurray@terrellmarshall.com>
**Subject:** RE: ZeetoGroup Subpoena

Ok, thanks. Is this all of the information your client contends it has relating to Mr. Hoy's number?

Also, can you please provide a response to the below:

        So we can understand

your proposal, what do you mean by "pull third party verifications"?


----

Anthony Paronich

Paronich Law, P.C.

350 Lincoln Street, Suite 2400

Hingham, MA 02043

[o] (617) 485-0018

[c] (508) 221-1510

[f] (508) 318-8100


This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.


**From:** Jacob Gillick <jgillick@morrislawfirmapc.com>
**Sent:** Monday, February 14, 2022 3:48 PM
**To:** Anthony Paronich <anthony@paronichlaw.com>; Rosenthal, Paul A. (NJ) <PaulRosenthal@kelleydrye.com>
**Cc:** Leanna Pierce <lpierce@morrislawfirmapc.com>; Jennifer Murray

<jmurray@terrellmarshall.com>

**Subject:** RE: ZeetoGroup Subpoena

Thanks, Anthony. I was told the attached had already been produced to you by Ms. Chu.

Best,

Jacob A. Gillick, Esq.
**MORRIS LAW FIRM, APC**
501 West Broadway, Suite 1480
San Diego, CA 92101
Tel. (619) 826-8060
Fax. (619) 826-8065

CONFIDENTIAL NOTICE: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain information protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges or confidentiality laws or regulations. If you are not an intended recipient, you may not review, use, copy, disclose or distribute this message or any of the information contained in this message to anyone. If you are not the intended recipient, please contact the sender by reply email and any destroy all copies of this message and any attachments. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

**From:** Anthony Paronich <anthony@paronichlaw.com>
**Sent:** Monday, February 14, 2022 12:40 PM
**To:** Jacob Gillick <jgillick@morrislawfirmapc.com>; Rosenthal, Paul A. (NJ) <PaulRosenthal@kelleydrye.com>
**Cc:** Leanna Pierce <lpierce@morrislawfirmapc.com>; Jennifer Murray <jmurray@terrellmarshall.com>

>

**Subject:** RE: ZeetoGroup Subpoena

Jacob:

So we can understand your proposal, what do you mean by "pull third party verifications"?

Also, I don't understand how your client could be objecting to providing any information it has regarding Mr. Hoy or his telephone number. We believe that information should be supplemented without condition.


Regards,

----

Anthony Paronich

Paronich Law, P.C.

350 Lincoln Street, Suite 2400

Hingham, MA 02043

[o] (617) 485-0018

[c] (508) 221-1510

[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

**From:** Jacob Gillick <[jgillick@morrislawfirmapc.com](mailto:jgillick@morrislawfirmapc.com)>
**Sent:** Monday, February 14, 2022 3:29 PM
**To:** Rosenthal, Paul A. (NJ) <[PaulRosenthal@KelleyDrye.com](mailto:PaulRosenthal@KelleyDrye.com)>; Anthony Paronich <[anthony@paronichlaw.com](mailto:anthony@paronichlaw.com)>
**Cc:** Leanna Pierce <[lpierce@morrislawfirmapc.com](mailto:lpierce@morrislawfirmapc.com)>
**Subject:** RE: ZeetoGroup Subpoena

Also, if you want to send over around 20 numbers from whatever time frame, we can pull third party verifications which, to my understanding, will include the list of Marketing Partners, including Health IQ.

Jacob A. Gillick, Esq.
**MORRIS LAW FIRM, APC**
501 West Broadway, Suite 1480
San Diego, CA 92101
Tel. (619) 826-8060
Fax. (619) 826-8065

CONFIDENTIAL NOTICE: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain information protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges or confidentiality laws or regulations. If you are not an intended recipient, you may not review, use, copy, disclose or distribute this message or any of the information contained in this message to anyone. If you are not the intended recipient,

please contact the sender by reply email and destroy all copies of this message and any attachments. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

**From:** Jacob Gillick
**Sent:** Monday, February 14, 2022 12:05 PM
**To:** 'Rosenthal, Paul A. (NJ)' <PaulRosenthal@KelleyDrye.com>; Anthony Paronich <anthony@paronichlaw.com>
**Cc:** Leanna Pierce <lpierce@morrislawfirmapc.com>
**Subject:** RE: ZeetoGroup Subpoena

All,

Please see the attached. This is a screenshot of logged code which includes Marketing Partners data listing Health IQ as recently as January 2022. This means that any user on Zeeto's sites that clicked into the Marketing Partners link would be directed to that page and HealthIQ would have been included on the list of disclosed partners.

Please let me know if you would like an accompanying declaration and if this is sufficient to dismiss the MTC.

Best,

Jacob A. Gillick, Esq.
**MORRIS LAW FIRM, APC**
501 West Broadway, Suite 1480
San Diego, CA 92101

Tel. (619) 826-8060
Fax. (619) 826-8065

CONFIDENTIAL NOTICE: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain information protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges or confidentiality laws or regulations. If you are not an intended recipient, you may not review, use, copy, disclose or distribute this message or any of the information contained in this message to anyone. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of this message and any attachments. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

**From:** Rosenthal, Paul A. (NJ) <PaulRosenthal@KelleyDrye.com>
**Sent:** Monday, February 7, 2022 4:10 PM
**To:** Jacob Gillick <jgillick@morrislawfirmapc.com>; Anthony Paronich <anthony@paronichlaw.com>
**Cc:** Leanna Pierce <lpierce@morrislawfirmapc.com>
**Subject:** RE: ZeetoGroup Subpoena

Jacob,

I know Anthony may have additional context or input, but I want to try and interject to see if I can help this conversation along by clarifying the information that I understand Plaintiff is seeking. Put simply, Plaintiff is looking for consent records for consumers (#1) and evidence that Health IQ would have been

disclosed as a marketing partner to certain consumers (#2).  To put a little more color on it:

Topic 1 is seeking consent records for the bulk leads that Zeeto sold to Cege and that ultimately were sold to Health IQ.  If we could provide you with a list of consumers' telephone numbers identified by Cege as having come from a Zeeto website, could your client provide consent records/evidence for each?

Topic 2 is seeking evidence that Health IQ was in the list of marketing partners for leads that would have been sold to Cege.  As I understand it, the flow information is solely in the possession of Zeeto, and may be "dynamic" so there isn't one clear flow that we could re-create ourselves; however, the parties are looking for some evidence and confirmation of when/how Health IQ would have been listed as a marketing partner within the flow for consumers.  Is that something that your client can confirm?  Depending on the format, this might be subsumed by #1, but perhaps not.

Happy to set up a call if it would be helpful to discuss further.

Thanks,
Paul

**PAUL ROSENTHAL**

**Kelley Drye & Warren LLP**
Tel: (973) 503-5943

---

**From:** Jacob Gillick
<jgillick@morrislawfirmapc.com>
**Sent:** Monday, February 7,
2022 6:07 PM
**To:** Anthony Paronich
<anthony@paronichlaw.com>
**Cc:** Leanna Pierce
<lpierce@morrislawfirmapc.com>; Rosenthal, Paul A. (NJ)
<PaulRosenthal@KelleyDrye.com>
**Subject:** RE: ZeetoGroup
Subpoena

| CAUTION: This message originated outside of Kelley Drye and was sent by: jgillick@morrislawfirmapc.com |
| --- |

---

Mr. Paronich:

1. What would the purpose of producing you a bunch of redacted records? I guess I do not understand what you want to see specifically or why it needs to come from us/cannot come from a party to the action.
2. The second request is quite a work pill that does not appear necessary from a non-party.

Thanks,

Jacob A. Gillick, Esq.
**MORRIS LAW FIRM, APC**
501 West Broadway, Suite 1480
San Diego, CA 92101
Tel. (619) 826-8060
Fax. (619) 826-8065

CONFIDENTIAL NOTICE: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain information protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges or confidentiality laws or regulations. If you are not an intended recipient, you may not review, use, copy, disclose or distribute this message or any of the information contained in this message to anyone. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of this message and any attachments. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

**From:** Anthony Paronich <anthony@paronichlaw.com>
**Sent:** Friday, February 4, 2022 1:43 PM
**To:** Jacob Gillick <jgillick@morrislawfirmapc.com>
**Cc:** Leanna Pierce <lpierce@morrislawfirmapc.com>; Rosenthal, Paul A. (NJ) <PaulRosenthal@kelleydrye.com>
**Subject:** Re: ZeetoGroup Subpoena

Mr. Gillick:

As we have prepared the motion we wanted to follow up on two items:

1. Would your client be

amenable to making the
biographical data (name and
any address) anonymous and
producing it? Hopefully those
would cure the privacy rights
raised.
2. I'm not sure I understand
why the objection to
production of the list of
marketing partners and
associated screenshots. Those
documents do not implicate
privacy rights at all of
individuals and by their nature
were available on the website.
If we could come to an
agreement on that issue, it
would limit the number of
requests and topics in dispute.

Have a good weekend,

Regards,

----
Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[c] (508) 221-1510
[f] (508) 318-8100

This email message may
contain legally privileged
and/or confidential
information.  If you are not the
intended recipient(s), or the
employee or agent responsible
for delivery of this message to
the intended recipient(s), you
are hereby notified that any
dissemination, distribution or
copying of this e-mail message
is strictly prohibited. If you have

received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

On Thu, Feb 3, 2022 at 1:14 PM Jacob Gillick <jgillick@morrislawfirmapc.com> wrote:

> Mr. Paronich,
>
> My clients will continue standing by their objections. No disclosure is proper from GetitFree at this time.
>
> Best,
>
> Jacob A. Gillick, Esq.
> **MORRIS LAW FIRM, APC**
> 501 West Broadway, Suite 1480
> San Diego, CA 92101
> Tel. (619) 826-8060
> Fax. (619) 826-8065
>
> CONFIDENTIAL NOTICE: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain information protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges or confidentiality laws or regulations. If you are not an intended recipient, you may not review, use, copy, disclose or distribute this message or any of the information contained in this message to anyone. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of this message and any attachments. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

---

**From:** Anthony Paronich <anthony@paronichlaw.com>
**Sent:** Tuesday, February 1,

2022 10:43 AM
**To:** Jacob Gillick
<[jgillick@morrislawfirmapc.c
om](jgillick@morrislawfirmapc.com)>
**Cc:** Leanna Pierce
<[lpierce@morrislawfirmapc.c
om](lpierce@morrislawfirmapc.com)>; Rosenthal, Paul A. (NJ)
<[PaulRosenthal@kelleydrye.
com](PaulRosenthal@kelleydrye.com)>
**Subject:** RE: ZeetoGroup
Subpoena

Ok, thanks. I'll wait to hear.

---

**From:** Jacob Gillick
<[jgillick@morrislawfirmapc.c
om](jgillick@morrislawfirmapc.com)>
**Sent:** Tuesday, February 1,
2022 12:24 PM
**To:** Anthony Paronich
<[anthony@paronichlaw.com](anthony@paronichlaw.com)
>
**Cc:** Leanna Pierce
<[lpierce@morrislawfirmapc.c
om](lpierce@morrislawfirmapc.com)>; Rosenthal, Paul A. (NJ)
<[PaulRosenthal@kelleydrye.
com](PaulRosenthal@kelleydrye.com)>
**Subject:** Re: ZeetoGroup
Subpoena

Should hear back EOD. Will
have an answer for you
tomorrow. We will likely
stand firm on our position
but need to go over
everything.

> On Feb 1, 2022,
> at 9:06 AM,
> Anthony
> Paronich
> <[anthony@par
> onichlaw.com](anthony@paronichlaw.com)>
> wrote:

Thanks, Jacob. When do you expect to know?


----

Anthony Paronich

Paronich Law, P.C.

350 Lincoln Street, Suite 2400

Hingham, MA 02043

[o] (617) 485-0018

[c] (508) 221-1510

[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have

received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

**From:** Jacob Gillick <jgillick@morrislawfirmapc.com>
**Sent:** Monday, January 31, 2022 6:43 PM
**To:** Anthony Paronich <anthony@paronichlaw.com>
**Cc:** Leanna Pierce <lpierce@morrislawfirmapc.com>; Rosenthal, Paul A. (NJ) <PaulRosenthal@kelleydrye.com>
**Subject:** RE: ZeetoGroup Subpoena

Hey Anthony,

I am still waiting for one more call.

Best,

Jacob A. Gillick, Esq.
**MORRIS LAW FIRM, APC**
501 West Broadway, Suite 1480
San Diego, CA 92101
Tel. (619) 826-8060
Fax. (619) 826-8065

CONFIDENTIAL NOTICE: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain information protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges or confidentiality laws or regulations. If you are not an intended recipient, you may not review, use, copy, disclose or distribute this message or any of the information contained in this message to anyone. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of this message and any attachments. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

**From:** Anthony Paronich <anthony@paronichlaw.com>
**Sent:** Monday, January 31, 2022 12:14 PM

**To:** Jacob Gillick <[jgillick@morris lawfirmapc.com](mailto:jgillick@morrislawfirmapc.com)>

**Cc:** Leanna Pierce <[lpierce@morri slawfirmapc.co m](mailto:lpierce@morrislawfirmapc.com)>; Rosenthal, Paul A. (NJ) <[PaulRosenthal @kelleydrye.co m](mailto:PaulRosenthal@kelleydrye.com)>

**Subject:** Re: ZeetoGroup Subpoena

Hello, Jacob. I wanted to follow up on our meet and confer to see if your client had a final position?

----

Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[c] (508) 221-1510
[f] (508) 318-8100

This email message may contain legally

privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

On Mon, Jan 24, 2022 at 7:07 PM Anthony Paronich <anthony@paronichlaw.com> wrote:

> Thanks, can I

call at 4:00 PST?

---

**From:** Jacob Gillick <jgillick@morrislawfirmapc.com>
**Sent:** Monday, January 24, 2022 11:28 AM
**To:** Anthony Paronich <anthony@paronichlaw.com>
**Cc:** Leanna Pierce <lpierce@morrislawfirmapc.com>; PaulRosenthal@kelleydrye.com
**Subject:** Re: ZeetoGroup Subpoena

Late is fine. My cell is 760-805-5507 so let me know when your ready.

Best,

Jake Gillick

On

Jan 24, 2022, at 10:25 AM, Anthony Paronich <anthony@

paronichlaw.com> wrote:

Yup, but I, m in a mediation

,
s
o
l
a
t
e
r
i
s
p
r
o
b
a
b
l
y
b
e
t
t
e
r
u
n
l
e
s
s
i
t
,
s
e
a
r
l
y
y
o
u
r
t
i

me.

**From:** Jacob Gillick <jgillick@morrislawfirma

p
c
.
c
o
m
>
**Sent:**
Monday, January 24, 2022 11:14 AM
**To:**
An

thonyParonich<anthony@paronichlaw.com>;Leanna

Pierce<[pierce@morrislawfirmapc.com](pierce@morrislawfirmapc.com)>; [Paul Rose](Paul Rose)

nthal@kelleydrive.com **Subject:** Re: Zeeto Group Subp

oena

Sure. I s Wednesday ok? I am traveling tomorrow.

Jacob A. Gillick, Esq.
**MORRIS LAW FIRM, APC**
501 West Broadw

ay, Suite 1480 San Diego, CA 92101 Tel. (619) 826-8060 Fax. (

619)826-8065

CONFIDENTIAL NOTICE: This email message, including a

n y attachments, is for the sole use of the intended recipient(s) and may conta

in information protected by the attorney-client privilege, the attorney wo

rk product doctrine or other applicable privileges or confidentiality laws

or regulations. If you are not an intended recipient, you may not review, use,

copy, disclose or distribute this message or any of the information contains

d in this message to anyone. If you are not the intended recipient, please cont

a
c
t
t
h
e
s
e
n
d
e
r
b
y
r
e
p
l
y
e
m
a
i
l
a
n
d
d
e
s
t
r
o
y
a
l
l
c
o
p
i
e
s
o
f
t
h
i
s
m
e
s
s
a
g
e
a
n
d
a
n
y
a
t
t

achments.

Unintended transmissions shall not constitute waiver of the atto

rney-client or any other privilege.

**From:** Anthony Paronic

h
<anthony@paronichlaw.com>
**Date:** Saturday, J

anuary 22, 2022 at 1:49 PM **To:** Leann apierce <[lpie](#)

rce@moorrislawfirmapc.com>, "Paul Rosenthal@

kelleydryve.com"<PaulRosenthal@kelleydryve.

c
o
m
>
**C**
**c**
**:**
J
a
c
o
b
G
i
l
l
i
c
k
<
j
g
i
l
l
i
c
k
@
m
o
r
r
i
s
l
a
w
f
i
r

[m](#)
[a](#)
[p](#)
[c](#)
[.](#)
[c](#)
[o](#)
[m](#)
>
**S**
**u**
**b**
**j**
**e**
**c**
**t**
**:**
R
E
:
Z
e
e
t
o
G
r
o
u
p
S
u
b
p
o
e
n
a

T
h

ankyou. Jacob, can we please set up a time for a short ca

ll to finish our meet and confer?

Anthony

**From:** Lean

napierce<lpierce@morrislawfirmapc.com> **Sent:** Th

ursday, January 20, 2022 6:07 PM

**To:** Paul Rosenthal@K

elleyDrye.com; anthony@paronichlaw.com

**Subject:**

Zeeto Group Subpoena

Dear Counsel,

Please find a

t
t
a
c
h
e
d
Z
e
e
t
o
G
r
o
u
p
,
L
L
C
,
s
o
b
j
e
c
t
i
o
n
s
t
o
t
h
e
s
u
b

poenafordeposition.

Pleasebeadvisedthatwe

will not be producing a witness on January 24, 202

2, for deposition.

Thank you.

*Leanna Pie*

*ree* Legal Assistant **MORRIS LAW FIRM APC** 501 West Broadway, Suite 1

480 San Diego, CA 92101 Tel: (619) 826-8060 Fax (619) 826-8065 lpie

rce@morrislawfirmapc.comhttps://www.morrislawfirmapc.com

CONFIDENTIAL NOTICE: This email message, including any attachments, is

f
o
r
t
h
e
s
o
l
c
u
s
e
o
f
t
h
e
i
n
t
e
n
d
e
d
r
e
c
i
p
i
e
n
t
(
s
)
a
n
d
m
a
y
c
o
n
t
a
i
n
i
n
f
o
r
m
a
t
i
o
n
p
r
o

tected by the attorney-client privilege, the attorney work product doctrin

e o r o t h e r a p p l i c a b l e p r i v i l e g e s o r c o n f i d e n t i a l i t y l a w s o r r e g u l a t i o n s . I f

y
o
u
a
r
e
n
o
t
a
n
i
n
t
e
n
d
e
d
r
e
c
i
p
i
e
n
t
,
y
o
u
m
a
y
n
o
t
r
e
v
i
e
w
,
u
s
e
,
c
o
p
y
,
d
i
s
c
l
o
s
e
o
r
d

istribute this message or any of the information contained in this message to

a
n
y
o
n
e
.
I
f
y
o
u
a
r
e
n
o
t
t
h
e
i
n
t
e
n
d
e
d
r
e
c
i
p
i
e
n
t
,
p
l
e
a
s
e
c
o
n
t
a
c
t
t
h
e
s
e
n
d
e
r
b
y
r
e

ply email and destroy all copies of this message and any attachments.

Uninte

nded transmission shall not constitute waiver of the attorney-client or any

o
t
h
e
r
p
r
i
v
i
l
e
g
e
.

This message is subject to Kelley Drye & Warren LLP's email communication policy. KDW-Disclaimer

Christopher S. Morris, Esq., SBN 163188
cmorris@morrislawfirmapc.com
Jacob A. Gillick, Esq. 312336
jgillick@morrislawfirmapc.com
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone:  (619) 826-8060
Facsimile:  (619) 826-8065

Attorneys for Respondent Zeetogroup, LLC,

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| TOBY HOY, | Case No. 22cv151-LL-MDD |
|---|---|
| Petitioner, | **DECLARATION OF SHAYNE CARDWELL** |
| v. | |
| ZEETOGROUP, LLC, | |
| Respondent. | |

1    I, Shayne Cardwell, declare as follows:

2    1.    I am the Chief Revenue Officer for ZeetoGroup, LLC ("Zeeto").  I

3    base everything in this declaration on my own knowledge.  If called to testify as to

4    the contents of this declaration, I could do so competently.

5    2.    I have been tasked with verifying Health IQ's disclosure on Zeeto's

6    "path" in response to a lawsuit filed by Anthony Hoy against Health IQ.

7    3.    By way of background, when a consumer clicks on a relevant

8    advertisement they are immediately taken to a "survey path" where the consumer is

9    asked to provide their contact information, consent to Zeeto's standard disclosures,

10    and then answer a short series of questions.  The answers provided by the consumer

11    may match them with an affiliate or advertiser, such as HealthIQ.

12    4.    On or around February 15, 2022, counsel for Plaintiff Anthony Hoy

13    provided my attorneys with a list of phone numbers allegedly produced by Cege

14    Media (aka PolicyScout).  I have been told that the over 24,000 phone numbers

15    produced represent the consumers that went down Zeeto's path.

16    5.    Shortly after receiving the information, I randomly choose 26 different

17    numbers to verify via our third-party vendor, Jornaya.  Jornaya provides a tool that

18    Zeeto integrates with its "survey path" that captures the consumer journey and

19    provides 3rd party certification, called LeadID, that includes a Visual Playback

20    validating the consumer's actions.  The final one is that of the alleged Plaintiff,

21    Anthony Hoy.  Attached hereto as "Exhibit 1" is a true and correct list of the

22    sample consumers randomly chosen by myself.

23    6.    I chose to sample 26 different consumers due to the burdensome and

24    lengthy process involved in retrieving the verifications.  I also felt a time constraint

25    given Anthony Hoy's filing of a Motion to Compel before providing the 24,000

26    numbers.

27    7.    After selecting the random numbers, I requested third party

28    verification reports, including Visual Playback, from Jornaya who specializes in

DECLARATION OF SHAYNE CARDWELL                    22cv151 LL MDD

1  verifying TCPA consents.  A true and correct copy of all Jornaya Reports received

2  in response are attached hereto as "Exhibit 2."

3      8.    Each of the Jornaya reports attached verify that the consumer

4  identified by Plaintiff's production opted in for marketing communications from

5  Health IQ.  Further, each and every report has a link which allows the reviewer to

6  watch a video of the consumer's screen going through the consent process, or

7  Visual Playback.

8      9.    Included in the consent process is a point where the consumer is given

9  the opportunity to click on a link titled "affiliates."  The reviewer of the Jornaya

10  videos can click that link directly from the video to see a list of the affiliates

11  disclosed.  I have reviewed these links from the videos and have verified that

12  Health IQ was disclosed at the time the subject consumers provided consent.

13      10.    In order to further verify that Health IQ was disclosed during the

14  relevant period, I went through our coding logs to see if Health IQ had ever been

15  removed from the disclosed affiliates.  It has not.  Therefore, during the relevant

16  time period, each and every consumer who went through Zeeto's path would have

17  seen Health IQ listed as an affiliate.

18      11.    This is the extent of the information available from Zeeto to prove the

19  disclosure (or non-disclosure) of Health IQ during the relevant period.  I have

20  reviewed all subpoenas served on Zeeto and believe that strict compliance with the

21  subpoena will cause a large burden on Zeeto without providing any further relevant

22  information.

23      I declare under penalty of perjury, under the laws of the United States and

24  California that the foregoing is true and correct. Executed this ___10___ th day of

25  March, 2022, in San Diego, California.

26



27

28      Shayne Cardwell

3

| Date | Advertiser Name | Campaign Name | Campaign Type | Property Name | Visit ID | concat | First Name | Last Name | Phone | Email | Device IP | Gender | Dob | Address | City | State | Zip Code | LeadID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/19/21 | policycscout | final expense disability | soi phone | getitfree | 607465306f745416a9a75bb5 | final expense disability_607465306f745416a9a75bb5_607465306f745416a9a75bb4 | sandra | jackson | 2022102773 | maejackson1981@gmail.com | 2607:fb90:68e7:4b6b:7ca3:6037:6006:da33 | female | 5/9/95 | 13125 larchdale rd | laurel | md | 20807 | 6c4ec912-b121-8452-46cc-3ddbf105c60c |
| 6/10/21 | policyscout | gif - ciage - final expense (m-f) | soi phone | getitfree | 60cae2c0cdb7c50ba2243a4c | gif - ciage - final expense (m-f)_60cae2c0cdb7c50ba2243a4c_60cae2c0cdb7c50ba2243a4b | mike | seston | 2767804782 | sestonmike46@gmail.com | 67.234.58.175 | male | 4/1/68 | 119 kessee lane | chilhowie | va | 24319 | 4e6b7b9e-aaaa-f91f-112b-80caaa2d070a |
| 5/14/21 | policyscout | final expense disability | soi phone | getitfree | 609ebf8d27e1d033502e35d1 | final expense disability_609ebf8d27e1d033502e35d1_609ebf8d27e1d033502e35d0 | james | martinez | 3013122092 | jm1306201@gmail.com | 173.66.175.37 | male | 6/22/54 | 605 burgundy drive | rockville | md | 20850 | 280fddcce-fb60-5d22-5c05-ade982cade53 |
| 1/3/21 | policyscout | gif - ciage - final expense (m-f) | soi phone | getitfree | 5ff20659f7ec2e75a30aef25 | gif - ciage - final expense (m-f)_5ff20659f7ec2e75a30aef25_5ff20597ec2e75a303e25d5 | brenda | marquez | 3035071540 | bbfamily@gmail.com | 172.103.36.97 | female | 10/11/60 | 900 s. 1st street #32 | montrose | co | 81401 | 855d6e68-6c2e-24a8-5481-8f9716e6ef5f |
| 2/4/21 | policyscout | gif - ciage - medicare supplement (m-f) v2 | soi phone | getitfree | 601c73d88d2e765cd794fc98 | gif - ciage - medicare supplement (m-f) v2_601c73d88d2e765cd794fc98_601c73d88d2e765cd794fc96 | beverly | anderson | 3604702931 | anderson.beverly650@yahoo.com | 2601:600:4380:90f0:2cb6:1ffa:1c0:1674 | female | 5/5/48 | 9 poplar rd. #18 | montesano | wa | 98563 | fd98a9c7-25a8-09c5-2a3c-75f8d0fc7721 |
| 4/14/21 | policyscout | final expense disability | soi phone | getitfree | 60776bece4766b0c61c6a99 | final expense disability_60776bece4766b0c61c6a99_60776bece4766b0c61c6a98 | dana | gilbert | 4055508530 | dana.gilbert7956@icloud.com | 8.48.251.84 | male | 7/9/56 | 2602 s w 54th place | oklahoma city | ok | 73119 | 207b88b2-55f2-b190-e214-e176b0479786 |
| 7/25/21 | policyscout | gif - ciage - medicare supplement (m-f) v2 | soi phone | getitfree | 60fd524955f9a63c6881f14 | gif - ciage - medicare supplement (m-f) v2_60fd524955f9a63c6881f14_60fd524955f9a63c6881f13 | charles | rupert | 4195621041 | chuckrain13@gmail.com | 2603:6011:1203:a800:e911:ffd5:b50b:8e45 | male | 11/20/55 | 1065 e beat ave | bucyrus | oh | 44820 | 115a3fd0-1925-2a77-0866-67e575a7ee49 |
| 4/28/21 | policyscout | gif - ciage - final expense (m-f) | soi phone | getitfree | 608fe753df5ca49b8d749ee | gif - ciage - final expense (m-f)_608fe753df5ca49b8d749ee_608fe753df5ca49b8d749ed | david | butler | 4789521982 | davebutler80@gmail.com | 216.119.59.247 | male | 12/20/66 | 725 south harris st. | sandersville | ga | 31082 | 57d8b815-552b-ed08-d4de-419224a13e2b |
| 6/7/21 | policyscout | gif - ciage - medicare supplement (m-f) v2 | soi phone | getitfree | 60bdefd5d5d62165cc839c1 | gif - ciage - medicare supplement (m-f) v2_60bdefd5d5d62165cc839c1_60bdefd5d5d62165cc839c0 | roni | lyons | 5078846933 | dandylyons73@hotmail.com | 97.91.91.178 | female | 6/23/55 | 14-11th ave se | rochester | mn | 55904 | 0a11bb3f-13fe-13ac-fae9-fd74a7176b9e |
| 5/20/21 | policyscout | gif - ciage - medicare companion (m-f) | linkout | getitfree | 60a6801e27e1d033509b7361 | gif - ciage - medicare companion (m-f)_60a6801e27e1d033509b7361_60a6801e27e1d033509b735c | joe | sparrow | 5138315013 | sparrowjoe74@gmail.com | 2603:6010:6e00:c6de:b1a9:4b7d:cb67:5629 | male | 1/24/44 | 5604 kay dr | milford | oh | 45150 | e88bf0f7-5a7a-f0ca-6d42-a0e37e06d898 |
| 2/5/21 | policyscout | gif - ciage - medicare companion (m-f) | soi phone | getitfree | 601d924420f8ac203c9cc175 | gif - ciage - medicare companion (m-f)_601d924420f8ac203c9cc175_601d924420f8ac203c9cc174 | joe | sparrow | 5138315013 | sparrowjoe74@gmail.com | 98.28.176.7 | male | 1/24/44 | 5604 kay dr | milford | oh | 45150 | d9955037-150e-230b-6ffc-444fad09079e |
| 9/8/20 | policyscout | gif - ciage - medicare companion (m-f) | linkout | getitfree | 5f57f7d8824094088a65b6f9 | gif - ciage - medicare companion (m-f)_5f57f7d8824094088a65b6f9_5f57f7d8824094088a65b6f7 | joe | sparrow | 5138315013 | sparrowjoe74@gmail.com | 2605:a000:1317:a095:10f7:9e0a:5ad5:55fd | male | 1/24/44 | 5604 kay dr | milford | oh | 45150 | 5b1ec6cc-b71b-5251-537e-62bd289d8eed |
| 5/11/21 | policyscout | gif - ciage - medicare supplement (m-f) v2 | soi phone | getitfree | 609b3b943c762949b830073 | gif - ciage - medicare supplement (m-f) v2_609b3b943c762949b830073_609b3b943c762949b8630072 | linda | barton | 5405814028 | lbarton50@cox.net | 2600:8806:a60c:9d00:59f1:757a:c25:72b4 | female | 9/14/47 | 5952 sierra drive | roanoke | va | 24012 | |
| 9/6/21 | policyscout | gif - ciage - medicare supplement (m-f) v2 | soi phone | getitfree | 6136e3c6f71dea2c35370f86 | gif - ciage - medicare supplement (m-f) v2_6136e3c6f71dea2c35370f86_6136e3c6f71dea2c35370f85 | fallie | cobbs | 6014153886 | falliecobbs@aim.com | 2603:8000:4500:925c:59b3:1c97:7216:49a7 | female | 8/5/41 | | whittier | ca | 90601 | 49433032-7d51-b3c7-047a-5de650ae3057 |
| 1/5/21 | policyscout | final expense disability | soi phone | getitfree | 5ff500e718c6331e00fcf0ba | final expense disability_5ff500e718c6331e00fcf0ba_5ff500e718c6331e00fcf0b9 | john | martinez | 6572768733 | jmgabe7125@gmail.com | 2607:fb90:bf78:6e0a:0:f:813d:e401 | male | 10/23/63 | 1120 acalea dr | alhambra | ca | 91801 | 3cea60cc-2003-89a4-38c8-1f565e2f4d8a |
| 1/5/21 | policyscout | gif - ciage - final expense (m-f) | soi phone | getitfree | 5ff500e718c6331e00fcf0ba | gif - ciage - final expense (m-f)_5ff500e718c6331e00fcf0ba_5ff500e718c6331e00fcf0b9 | john | martinez | 6572768733 | jmgabe7125@gmail.com | 2607:fb90:bf78:6e0a:0:f:813d:e401 | male | 10/23/63 | 1120 acalea dr | alhambra | ca | 91801 | 3cea60cc-2003-89a4-38c8-1f565e2f4d8a |
| 5/8/21 | policyscout | gif - ciage - final expense (m-f) | soi phone | getitfree | 6097742325b21dd1e1c0d4dc | gif - ciage - final expense (m-f)_6097742325b21dd1e1c0d4dc_6097742325b21dd1e1c0d4db | john | gardner | 6624914055 | gardnerservice@ymail.com | 2607:fb90:d050:8153a:86d9:fc0f:ad07:791b | male | 12/8/64 | 382 rd 2890 | baldwyn | ms | 38824 | 451e6838-2785-c0ac-38ae-f61530aca94e |
| 12/6/20 | policyscout | gif - ciage - medicare supplement (m-f) v2 | soi phone | getitfree | 5fcce3fddc9e796a3170e7d9 | gif - ciage - medicare supplement (m-f) v2_5fcce3fddc9e796a3170e7d9_5fcce3fddc9e796a3170e7d8 | danny | richard | 7153058040 | cdrichard215@charter.net | 174.82.195.135 | male | 2/24/48 | 215 s state ave | marshfield | wi | 54449 | ac1aeda2-c75f-fe7d-5500-4bf5d71bb53 |
| 1/8/21 | policyscout | gif - ciage - medicare supplement (m-f) v2 | soi phone | getitfree | 5ff8c08b7ec2e75a308dae43 | gif - ciage - medicare supplement (m-f) v2_5ff8c08b7ec2e75a308dae43_5ff8c08b7ec2e75a308dae42 | jim | ascher | 7577182210 | 11d1jim84@gmail.com | 2600:1009:b153:b8d:b60b:66c7:5e16:9a7c | male | 3/14/41 | 376 coleman rd | marshfield | wi | 54403 | 87d3e364-f32a-b4c5-23e0-4ccd739bf6ef |
| 5/10/21 | policyscout | gif - ciage - medicare supplement (m-f) v2 | soi phone | getitfree | 6099bbce37bcb697e7c5dd01d | gif - ciage - medicare supplement (m-f) v2_6099bbce37bcb697e7c5dd01d_6081000de47f4c60cdf8b6c4 | ronica | hite | 8606340872 | rhite40@hotmail.com | 75.134.232.133 | female | 9/25/40 | 291 jackson street | willimantic | ct | 6226 | 46311921-dfd8-bff1-f7cd-79a66abf7489 |
| 11/28/20 | policyscout | gif - ciage - medicare supplement (m-f) v2 | soi phone | getitfree | 5fc3236cdc9e796a31966b0d | gif - ciage - medicare supplement (m-f) v2_5fc3236cdc9e796a31966b0d_5fe2157109fbd95ef6400c1e0 | ronica | hite | 8606340872 | rhite40@hotmail.com | 75.134.232.133 | female | 9/25/40 | 291 jackson street | willimantic | ct | 6226 | dbf1cbc-5cbb-acbe-e00e-71bb40a6b34c |
| 1/2/21 | policyscout | final expense disability | soi phone | getitfree | 5ff10657d52935ede965f8c | final expense disability_5ff10657d52935ede965f8c_5ff10657d52935ede965f8b | mitzi | medsker | 8705653337 | medskermitzi52@gmail.com | 174.250.196.149 | female | 6/28/65 | 2363 state hwy 108 | arbyrd | mo | 63821 | cd6041f-f124-e44b-ade9-89b84c97d032 |
| 3/10/21 | policyscout | gif - ciage - final expense (m-f) | soi phone | getitfree | 6048fa438178558fa5eaa77 | gif - ciage - final expense (m-f)_6048fa438178558fa5eaa77_6048fa438178558fa5eaa76 | patricia | sperry | 9286998198 | psperry1373@cableone.net | 24.117.134.44 | female | 11/24/39 | 1750 knoll dr. | prescott | az | 86301 | a0c35e23-0782-d9ce-74fe-136a2db23435 |
| 1/21/21 | policyscout | gif - ciage - final expense (m-f) | soi phone | getitfree | 6009ce7118c631e00df0bcb | gif - ciage - final expense (m-f)_6009ce7118c631e00df0bcb_6009ce7118c631e00df0bca | david | eaton | 9794177822 | eaton0701@outlook.com | 2607:fb90:5f95:c5ef:f49b:bf50:5492:f45c | male | 12/20/65 | 2895 cr 353 | brazoria | tx | 77422 | f882ca18-bebb-d5e8-60d6-0efe8e4fd23 |
| 11/10/20 | policyscout | gif - ciage - medicare supplement (m-f) v2 | soi phone | getitfree | 5fb6fccb3ed18a4fb6f66be2 | gif - ciage - medicare supplement (m-f) v2_5fb6fccb3ed18a4fb6f66be2_5fb6fccb3ed18a4fb6f66be1 | bonnie | bluemlein | 9896469302 | mybuddy611@yahoo.com | 2001:5b0:46c1:6308:f032:515a:41b1:3355 | female | 8/15/43 | 6111 nine mile rd | bentley | mi | 48613 | a4b61700-646a-2945-f590-c8dda3c4d6b6 |



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

| Lead Event Information: | |
|---|---|
| Universal LeadiD | 0A11B61F-33FE-13AC-FAEB-FD74A7176B9E |
| Event Date | 06/07/2021 |
| Event Time | 06:05:01 AM EDT |
| IP Address | 97.91.91.178 |
| Location (as indicated by IP address) | Rochester,MN |

| Disclosure Information: | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/0A11B61F-33FE-13AC-FAEB-FD74A7176B9E?key=1623060302481

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center. Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

| Lead Event Information: | |
|---|---|
| Universal LeadiD | 3CEA60CC-2003-89A4-38C8-1F565E2F4D8A |
| Event Date | 01/05/2021 |
| Event Time | 07:11:50 PM EST |
| IP Address | 172.58.21.185 |
| Location (as indicated by IP address) | Anaheim,CA |

| Disclosure Information: | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/3CEA60CC-2003-89A4-38C8-1F565E2F4D8A?key=1609891921245

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center. Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

JORNAYA

| Lead Event Information: | |
|---|---|
| Universal LeadiD | 4E6B7B9E-AAAA-F91F-112B-80CAAA2DD70A |
| Event Date | 03/24/2017 |
| Event Time | 12:32:23 PM EDT |
| IP Address | 50.149.221.237 |
| Location (as indicated by IP address) | Clintwood,VA |

| Disclosure Information: | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | BY SUBMITTING YES, I CONSENT TO HAVE A REPRESENTATIVE FROM CREDIT PROS AND THEIR PARTNERS CONTACT ME AT THIS NUMBER I UNDERSTAND THESE CALLS MAY BE GENERATED USING AN AUTOMATED DIALER AND THAT MY CONSENT IS NOT REQUIRED AS A PRECONDITION FOR PURCHASING OR RECEIVING ANY PROPERTY, GOODS OR SERVICE. |
| Labeled TCPA Disclosure Statement captured at the lead event: | BY SUBMITTING YES, I GIVE REVOCABLE PERMISSION TO SHARE MY INFORMATION WITH YOUR DIABETIC SOURCE, DIABETIC SPECIALIST, DIABETIC CARE DELIVERED, DIABETIC DISCOUNT CLUB, ASSIST DIABETICS AND CONSULTING PHYSICIANS TO PROCESS MY REQUEST AND TO CALL ME BACK AT THIS NUMBER USING AN AUTOMATED TELEPHONE DIALING SYSTEM, EMAIL AND PRE-RECORDED MESSAGES. CONSENT IS NOT A CONDITION OF PURCHASE. |
| Labeled TCPA Disclosure Statement captured at the lead event: | BY SUBMITTING YES, I CONSENT TO HAVE A REPRESENTATIVE FROM BETTER HEALTH KARE CONTACT ME AT THIS NUMBER I UNDERSTAND THESE CALLS MAY BE GENERATED USING AN AUTOMATED DIALER AND THAT MY CONSENT IS NOT REQUIRED AS A PRECONDITION FOR PURCHASING OR RECEIVING ANY PROPERTY, GOODS OR SERVICE. *STD. CELL RATES MAY APPLY |
| Labeled TCPA Disclosure Statement captured at the lead event: | BY SUBMITTING YES, I CONSENT TO HAVE A REPRESENTATIVE FROM DEBT.COM CONTACT ME AT THIS NUMBER I UNDERSTAND THESE CALLS MAY BE GENERATED USING AN AUTOMATED DIALER AND THAT MY CONSENT IS NOT REQUIRED AS A PRECONDITION FOR PURCHASING OR RECEIVING ANY PROPERTY, GOODS OR SERVICE. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



| Labeled TCPA Disclosure Statement captured at the lead event: | BY SUBMITTING YES, I CONSENT TO HAVE A REPRESENTATIVE FROM HOME CARE DELIVERED CONTACT ME AT THIS NUMBER I UNDERSTAND THESE CALLS MAY BE GENERATED USING AN AUTOMATED DIALER AND THAT MY CONSENT IS NOT REQUIRED AS A PRECONDITION FOR PURCHASING OR RECEIVING ANY PROPERTY, GOODS OR SERVICE. |
|---|---|

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/4E6B7B9E-AAAA-F91F-112B-80CAAA2DD70A?key=1490373140622

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center. Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

| Lead Event Information: | |
|---|---|
| Universal LeadiD | 4F410D32-7D51-B3C7-047A-5DA650AE3057 |
| Event Date | 09/06/2021 |
| Event Time | 11:58:02 PM EDT |
| IP Address | 76.90.252.0 |
| Location (as indicated by IP address) | Hacienda Heights,CA |

| Disclosure Information: | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/4F410D32-7D51-B3C7-047A-5DA650AE3057?key=1630987083501

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center. Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

| Lead Event Information: | |
|---|---|
| Universal LeadiD | 5B1EC6CC-B716-5251-537A-62BD289D8EED |
| Event Date | 05/20/2021 |
| Event Time | 11:20:14 AM EDT |
| IP Address | 98.28.176.7 |
| Location (as indicated by IP address) | Milford,OH |

| Disclosure Information: | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/5B1EC6CC-B716-5251-537A-62BD289D8EED?key=1621524014961

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**JORNAYA**

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | 6C4EC912-B121-8452-46CC-3DDBF105C60C |
| Event Date | 04/19/2021 |
| Event Time | 07:08:05 AM EDT |
| IP Address | 172.58.220.177 |
| Location (as indicated by IP address) | Chelsea,MA |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/6C4EC912-B121-8452-46CC-3DDBF105C60C?key=1618830491679



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center. Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

| Lead Event Information: | |
|---|---|
| Universal LeadiD | 57D8DB15-552B-ED08-D46E-419224A13E2B |
| Event Date | 04/28/2021 |
| Event Time | 06:49:20 PM EDT |
| IP Address | 216.119.59.247 |
| Location (as indicated by IP address) | Sandersville,GA |

| Disclosure Information: | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/57D8DB15-552B-ED08-D46E-419224A13E2B?key=1619650175138

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | 115A2FE0-1925-2A77-0BB6-67E575A7EE49 |
| Event Date | 07/25/2021 |
| Event Time | 05:45:06 AM EDT |
| IP Address | 69.135.166.104 |
| Location (as indicated by IP address) | Bucyrus,OH |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/115A2FE0-1925-2A77-0BB6-67E575A7EE49?key=1627206327145

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center. Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

| Lead Event Information: | |
|---|---|
| Universal LeadiD | 451E4838-2785-C0AC-38AE-F61530CAA94E |
| Event Date | 05/09/2021 |
| Event Time | 02:10:19 AM EDT |
| IP Address | 172.58.145.22 |

| Disclosure Information: | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/451E4838-2785-C0AC-38AE-F61530CAA94E?key=1620540619458

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

## What is a lead?

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

## Who is Jornaya?

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

## How does Jornaya help keep companies TCPA Compliant?

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

| Lead Event Information: | |
|---|---|
| Universal LeadiD | 837A3000-8D51-0E90-80A1-539F3152BDF2 |
| Event Date | 07/28/2020 |
| Event Time | 09:26:28 AM EDT |
| IP Address | 184.53.0.248 |

| Disclosure Information: | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/837A3000-8D51-0E90-80A1-539F3152BDF2?key=1595942790963

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center. Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

| Lead Event Information: | |
|---|---|
| Universal LeadiD | 855D0E68-6C2E-24A8-5481-8F9716ABEF5F |
| Event Date | 01/03/2021 |
| Event Time | 12:58:33 PM EST |
| IP Address | 172.103.36.97 |
| Location (as indicated by IP address) | Norwood,CO |

| Disclosure Information: | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/855D0E68-6C2E-24A8-5481-8F9716ABEF5F?key=1609696725799

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

## What is a lead?

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

## Who is Jornaya?

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

## How does Jornaya help keep companies TCPA Compliant?

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

• Was a TCPA disclosure displayed or provided to the consumer?
• If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
• Did the disclosure language match the company's compliance standards?
• Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

| Lead Event Information: | |
|---|---|
| Universal LeadiD | 2075D8B2-55F2-B190-E214-E17860479786 |
| Event Date | 04/14/2021 |
| Event Time | 11:17:03 PM EDT |
| IP Address | 8.48.251.84 |

| Disclosure Information: | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

**Visual Playback Link:**

https://vp.leadid.com/playback/2075D8B2-55F2-B190-E214-E17860479786?key=1618456624063

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center. Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

| Lead Event Information: | |
|---|---|
| Universal LeadiD | 2805DCCA-FFD0-5D22-5C05-ADE982CADE53 |
| Event Date | 05/14/2021 |
| Event Time | 02:17:57 PM EDT |
| IP Address | 173.66.175.37 |
| Location (as indicated by IP address) | Rockville,MD |

| Disclosure Information: | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/2805DCCA-FFD0-5D22-5C05-ADE982CADE53?key=1621016278044

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center. Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | 7048BB55-B0E6-66F5-95D3-1DA97AC9726F |
| Event Date | 03/16/2021 |
| Event Time | 12:33:55 PM EDT |
| IP Address | 173.184.133.254 |
| Location (as indicated by IP address) | Albia,IA |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/7048BB55-B0E6-66F5-95D3-1DA97AC9726F?key=1615912437865

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center. Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | 8743E3D4-F32A-B4C5-23E0-4CCC6739D9EF |
| Event Date | 01/08/2021 |
| Event Time | 03:25:56 PM EST |
| IP Address | 174.233.135.219 |
| Location (as indicated by IP address) | West Chester,OH |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/8743E3D4-F32A-B4C5-23E0-4CCC6739D9EF?key=1610137566730



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

**Guardian TCPA Report**

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

• Was a TCPA disclosure displayed or provided to the consumer?
• If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
• Did the disclosure language match the company's compliance standards?
• Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

| Lead Event Information: | |
|---|---|
| Universal LeadiD | 46111921-DFDD-BFF1-F7CD-79A660CF7489 |
| Event Date | 05/10/2021 |
| Event Time | 11:15:06 AM EDT |
| IP Address | 75.134.232.133 |
| Location (as indicated by IP address) | Coventry,CT |

| Disclosure Information: | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/46111921-DFDD-BFF1-F7CD-79A660CF7489?key=1620659753328

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center. Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

| Lead Event Information: | |
|---|---|
| Universal LeadiD | A0CD5E23-0782-D9CE-74FE-136A2DB23435 |
| Event Date | 03/10/2021 |
| Event Time | 11:51:55 AM EST |
| IP Address | 24.117.134.44 |
| Location (as indicated by IP address) | Prescott Valley,AZ |

| Disclosure Information: | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/A0CD5E23-0782-D9CE-74FE-136A2DB23435?key=1615395115584

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

## What is a lead?

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

## Who is Jornaya?

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

## How does Jornaya help keep companies TCPA Compliant?

As a neutral, 3rd party witness to the events that take place on the website or a call center. Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

JORNAYA

| Lead Event Information: | |
|---|---|
| Universal LeadiD | A4BB170D-646A-2945-FB90-C8DDA3C4D6B6 |
| Event Date | 11/19/2020 |
| Event Time | 06:13:43 PM EST |
| IP Address | 184.53.0.70 |

| Disclosure Information: | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/A4BB170D-646A-2945-FB90-C8DDA3C4D6B6?key=1605827628996

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center. Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | A98BF6F7-5A9A-F6CA-6D42-A0E37E086898 |
| Event Date | 02/05/2021 |
| Event Time | 01:44:31 PM EST |
| IP Address | 98.28.176.7 |
| Location (as indicated by IP address) | Milford,OH |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/A98BF6F7-5A9A-F6CA-6D42-A0E37E086898?key=1612550671903

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

| Lead Event Information: | |
|---|---|
| Universal LeadiD | AC3AEBB2-C75F-FE7D-5500-4EF0CF11B953 |
| Event Date | 12/06/2020 |
| Event Time | 08:58:38 AM EST |
| IP Address | 174.82.195.135 |
| Location (as indicated by IP address) | Marshfield,WI |

| Disclosure Information: | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/AC3AEBB2-C75F-FE7D-5500-4EF0CF11B953?key=1607263119039

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center. Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

• Was a TCPA disclosure displayed or provided to the consumer?
• If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
• Did the disclosure language match the company's compliance standards?
• Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

| Lead Event Information: | |
|---|---|
| Universal LeadiD | CD46B41F-F124-E448-A6E9-89B84C97D032 |
| Event Date | 01/02/2021 |
| Event Time | 06:47:18 PM EST |
| IP Address | 174.250.196.149 |
| Location (as indicated by IP address) | Springfield,MO |

| Disclosure Information: | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/CD46B41F-F124-E448-A6E9-89B84C97D032?key=1609631238858

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center. Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

| Lead Event Information: | |
|---|---|
| Universal LeadiD | D9935037-159E-230B-6FFC-4449A009079E |
| Event Date | 09/08/2020 |
| Event Time | 05:18:06 PM EDT |
| IP Address | 98.28.176.7 |
| Location (as indicated by IP address) | Loveland,OH |

| Disclosure Information: | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/D9935037-159E-230B-6FFC-4449A009079E?key=1599599886710

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

JORNAYA

| Lead Event Information: | |
|---|---|
| Universal LeadiD | DC1A9CE9-0C16-D22E-E84B-0D976012E12C |
| Event Date | 06/15/2021 |
| Event Time | 02:52:19 PM EDT |
| IP Address | 73.115.253.98 |
| Location (as indicated by IP address) | Houston,TX |

| Disclosure Information: | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | BY SUBMITTING YES, I CONSENT TO HAVE A REPRESENTATIVE FROM PERFECT HOME DEFENSE AN AUTHORIZED ADT, & FRONTPOINT DEALER CONTACT ME AT THIS NUMBER: 8328825259 I UNDERSTAND THESE CALLS MAY BE GENERATED USING AN AUTOMATED DIALER AND THAT MY CONSENT IS NOT REQUIRED AS A PRECONDITION FOR PURCHASING OR RECEIVING ANY PROPERTY, GOODS OR SERVICE. |
| Labeled TCPA Disclosure Statement captured at the lead event: | BY SUBMITTING THIS FORM, I AGREE THAT I AM 18+ YEARS OF AGE AND AGREE TO THIS WEBSITE'S PRIVACY POLICY (HTTPS://EQUOTO.COM/PRIVACY-POLICY) AND TERMS & CONDITIONS (HTTPS://EQUOTO.COM/TERMS-CONDITIONS) AND I ALSO HEREBY GIVE MY EXPRESS WRITTEN CONSENT TO RECEIVE MARKETING COMMUNICATIONS REGARDING A FINAL EXPENSE QUOTE VIA AUTODIALED CALLS AND/OR SMS/MMS, AND/OR PRE-RECORDED OR ARTIFICIAL VOICE CALLS EQUOTO AND/OR ONE OR MORE OF ITS MARKETING PARTNERS (HTTPS://EQUOTO.COM/PARTNERS) AT 8328825259 AND/OR E-MAIL ADDRESS PROVIDED TO US, INCLUDING WIRELESS NUMBERS, IF APPLICABLE, EVEN IF I HAVE PREVIOUSLY REGISTERED THE PROVIDED NUMBER ON THE DO NOT CALL REGISTRY. CARRIER SMS/MMS AND DATA MESSAGING RATES MAY APPLY. THIS CONSENT IS NOT REQUIRED AS A CONDITION TO PURCHASE SERVICES OR PRODUCTS. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

| Labeled TCPA Disclosure Statement captured at the lead event: | BY CLICKING THE "YES" BUTTON BELOW, I AGREE TO THIS WEBSITE'S PRIVACY POLICY, AND PROVIDE MY SIGNATURE EXPRESSLY AUTHORIZING UP TO THREE INSURANCE COMPANIES OR THEIR AGENTS OR PARTNER COMPANIES INCLUDING CEGE MEDIA, GUIDETOINSURE, INSUREALIFE AND POLICYSCOUT TO CONTACT ME AT THE EMAIL ADDRESS OR 8328825259 WITH INSURANCE QUESTIONS OR TO MARKET THEIR PRODUCTS OR SERVICES. I AGREE TO RECEIVE COMMUNICATIONS VIA LIVE, AUTOMATED TELEPHONE DIALING SYSTEM, PRERECORDED MESSAGE, OR TEXT MESSAGE AND ACKNOWLEDGE THAT CONSENT IS NOT A CONDITION TO PURCHASE GOODS OR SERVICE. |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | BY CLICKING YES, I CONSENT TO BE CONTACTED BY PHONE, TEXT MESSAGE OR EMAIL BY PATHEMA GX LAB, PATHEMA RX AND/OR PATHEMA DME FOR THE PURPOSE OF COORDINATING HEALTH SERVICES. I WILL RECEIVE TREATMENT FROM A NETWORK PARTICIPANT ONLY IF MEDICALLY NECESSARY. I CONSENT TO RECEIVING A MONITORED AND RECORDED PHONE CALL, TEXT, OR EMAIL IN CONNECTION WITH MY REQUEST AT THE EMAIL AND/OR PHONE NUMBER PROVIDED8328825259 (WHICH MAY INCLUDE A LANDLINE OR CELLULAR NUMBER) GENERATED FROM AN AUTOMATED DIALING SYSTEM USING PRE-RECORDED MESSAGES TO THE PHONE NUMBER PROVIDED REGARDLESS OF MY INCLUSION ON ANY STATE OR FEDERAL DO NOT CALL LISTS. I CONSENT TO ALL PHONE CALLS BEING RECORDED AND MONITORED FOR QUALITY ASSURANCE. YOU ARE NOT REQUIRED TO PURCHASE ANY GOODS OR SERVICES AND CONSENT IS NOT A CONDITION OF PURCHASE FROM A NETWORK PARTICIPANT. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/DC1A9CE9-0C16-D22E-E84B-0D976012E12C?key=1623783145981

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

| Lead Event Information: | |
| --- | --- |
| Universal LeadiD | DFCF2CBC-5CBB-ACBE-E00E-716B40A6B34C |
| Event Date | 11/28/2020 |
| Event Time | 11:23:50 PM EST |
| IP Address | 75.134.232.133 |
| Location (as indicated by IP address) | Coventry,CT |

| Disclosure Information: | |
| --- | --- |
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/DFCF2CBC-5CBB-ACBE-E00E-716B40A6B34C?key=1606623858586

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

JORNAYA

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center. Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

• Was a TCPA disclosure displayed or provided to the consumer?
• If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
• Did the disclosure language match the company's compliance standards?
• Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | F882CA18-BD4B-A5D8-40D4-0EFAD8AFC823 |
| Event Date | 01/21/2021 |
| Event Time | 01:54:41 PM EST |
| IP Address | 172.58.100.146 |
| Location (as indicated by IP address) | Houston,TX |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/F882CA18-BD4B-A5D8-40D4-0EFAD8AFC823?key=1611255284695

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center. Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | FD984C57-27A8-09C5-2A3C-75F8D6FC7721 |
| Event Date | 09/16/2018 |
| Event Time | 07:56:40 PM EDT |
| IP Address | 98.225.54.0 |
| Location (as indicated by IP address) | Montesano,WA |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | BY SUBMITTING YES, I CERTIFY THAT I GIVE PERMISSION TO BE CONTACTED FOR MARKETING PURPOSES BY A REPRESENTATIVE FROM LEGACY QUOTE, GERBER LIFE INSURANCE COMPANY, ALLIED INSURANCE SERVICES, AND/OR ANY THIRD PARTY PARTNERS, REGARDLESS OF MY STATUS ON ANY STATE OR FEDERAL DO NOT CALL LIST, BY AUTOMATED CALLS, PRE-RECORDED MESSAGES, AND/OR BY EMAIL. CONSENT IS NOT A CONDITION OF PURCHASE AND I AGREE TO THE PRIVACY POLICY AND TERMS OF USE I UNDERSTAND THESE CALLS MAY BE GENERATED USING AN AUTOMATED DIALER AND THAT MY CONSENT IS NOT REQUIRED AS A PRECONDITION FOR PURCHASING OR RECEIVING ANY PROPERTY, GOODS OR SERVICE. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/FD984C57-27A8-09C5-2A3C-75F8D6FC7721?key=1537142204228

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

# EXHIBIT 8

1   Beth E. Terrell, CSB #178181
     Email: bterrell@terrellmarshall.com
2   Attorney for Petitioner
     TERRELL MARSHALL LAW GROUP PLLC
3   936 North 34th Street, Suite 300
     Seattle, Washington 98103
4   Telephone: (206) 816-6603

5   [Additional Counsel Appear on Signature Page]

6

7           UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 8  TOBY HOY, individually and on behalf all others similarly situated, | Case No. |
| 9           Petitioner, | **PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL** |
| 10     v. | **COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC** |
| 11  ZEETOGROUP, LLC, | |
| 12         Respondent. | |

13

14

15

16

17

18

19

20     PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ............................................................................. 1

II.   FACTUAL BACKGROUND ............................................................. 4

      A.    The TCPA prohibits "telephone solicitations" to
            telephone numbers registered on the national
            do-not-call registry without prior express written
            permission ........................................................................ 4

      B.    Health IQ and Enfuego failed to produce evidence
            of consent ......................................................................... 6

      C.    Get It Free has objected to producing any documents
            or a witness for a deposition ............................................ 8

III.  AUTHORITY AND ARGUMENT ................................................... 11

      A.    Get it Free should be ordered to fully respond to
            Plaintiffs' subpoena and appear at a deposition ........................... 11

      B.    Get it Free has not articulated any undue burden
            and its confidentiality objections provide no basis
            for refusing to respond to a valid subpoena ................................ 16

      C.    This motion may be transferred to the Northern
            District of California ......................................................... 18

IV.   CONCLUSION ............................................................................ 22

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC - i

1

## <u>TABLE OF AUTHORITIES</u>

**Page**

2   *Abante Rooter and Plumbing, Inc. v. Alarm.com Inc.*,
          No. 15-cv-06314-YGR,
3          2018 WL 3707283 (N.D. Cal. Aug. 3, 2018) .................................... 4, 15, 20

4   *Agincourt Gaming, LLC v. Zynga Inc.*,
          No. 14-cv-0708,
5          2014 WL 4079555, (D. Nev. Aug. 15, 2014) ............................................ 19

6   *Apple, Inc. v. Samsung Elecs. Co. Ltd.*,
          No. 12-cv-0630-LHK (PSG),
7          2013 WL 1942163, (N.D. Cal. May 9, 2013) ............................................ 15

8   *Chem-Aqua, Inc. v. Nalco Co.*,
          No. 14-mc-71,
9          2014 WL 2645999, (N.D. Tex. June 13, 2014) .................................... 21, 22

10  *Chinitz v. Intero Real Estate Servs.*,
          No. A-20-MC-0081-LY,
11         2020 WL 806177, (W.D. Tex. Feb. 14, 2020)........................................... 21

12  *E4 Strategic Sols., Inc. v. Pebble Limited P'ship*,
          No. SA MC 150999220, DIC (DFMx),
13         2015 WL 12746706 (C.D. Cal. Oct. 23, 2015) .......................................... 21

14  *Fuller v. Insys Therapeutics, Inc., Baier v. Princeton Office Park, L.P.*,
          No. 3:08-CV-5296 PGS DEA,
15         2018 WL 5253288, (D.N.J. Oct. 22, 2018) ................................................ 16

16  *Hancock v. Credit Pros Int'l Corp.*,
          2021 WL 2948154, (D.N.J. Jul. 13, 2021)........................................... 15, 18

17
    *Heard v. Costco Wholesale Corp.*,
18         No. 2:19-cv-00673, 2020 WL 515841, (D. Nev. Jan. 31, 2020)................. 12

19

*Hoy v. Hi Q., Inc.*,
No. 4:21-cv-04875 (N.D. Cal. filed June 24, 2021) ..................................... 1

*Mantha v. Quotewizard.com, LLC*,
No. 19-12235-LTS1, 2021 WL 6061919, (D. Mass. Dec. 13, 2021) ........... 13

*Medina v. Enhanced Recovery Co., LLC*,
No. 15-14342-CIV-MARTINEZ/MAYNARD,
2017 WL 5196093 (S.D. Fla. Nov. 9, 2017) ................................................ 15

*Miller Constr. Equip. Sales, Inc. v. Clark Equip. Co.*,
No. 15-cv-00007, 2016 WL 447717, (S.D. Ga. Feb. 4, 2016) .................... 22

*Painters Join Committee v. Employee Painters Trust health & Welfare Fund*,
No. 2:10-cv-1385-JCM-PAL,
2011 WL 4573349, (D. Nev. Sept. 29, 2011) ............................................ 16

*Perez v. Rash Curtis & Assocs.*,
No. 4:16-cv-03396, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) ............. 20

*Rogers v. Giurbino*,
288 F.R.D. 469 (S.D. Cal. 2012) ................................................................ 12

*Scientific Games Corp. v. AGS LLC*,
No. 2:17-cv-00343-JAD-NJK,
2017 WL 3013251 (D. Nev. Jul. 13, 2017) .......................................... 12, 16

*Shell Energy N. Am. (US), LP*, ---
F.Supp.3d ---, 2021 WL 4477626, (D. Mass. Sept. 30, 2021) .................... 16

*Symantec Corp. v. Sidman*,
No. 14-mc-80094, 2014 WL 1652921 (N.D. Cal. Apr. 24, 2014) ............... 18

*Taylor v. Universal Auto Grp. I, Inc.*,
No. 14-mc-50, 2015 WL 1810316, (S.D. Ohio Apr. 17, 2015) ................... 14

1

*US Plywood Integrity Coalition v. PFS Corp.*,
    2021 WL 409968, (W.D. Wash. Feb. 5, 2021) ..................................... 20, 21

2

*Waymo LLC v. Uber Tech., Inc.*,
    No. 17-cv-00939, 2017 WL 2929439 (N.D. Cal. Jul. 7, 2017).................... 11

3

4

*Williams v. Pillpack LLC*,
    C19-5282, 2021 WL 535215, (W.D. Wash. Feb. 21, 2021) ...............*Passim*

5

**FEDERAL RULES AND STATUTES**

6

Fed. R. Civ. P. 26(b)(1)............................................................................. 11, 12
Fed. R. Civ. P. 45...................................................................................... 11, 19
Fed. R. Civ. P. 45(c)(1) ................................................................................... 17
Fed. R. Civ. P. 45(f) ............................................................................ 18, 19, 22

7

8

9

47 C.F.R. §§ 64.1200(c) ..................................................................................... 1
47 U.S.C. § 227 .................................................................................................. 1
47 U.S.C. § 227(c)(1)......................................................................................... 5
47 U.S.C. § 227(c)(5)....................................................................................... 12
47 U.S.C. § 227(c)(3)......................................................................................... 4
47 C.F.R. § 1200.64(c)(2) ................................................................................. 4
47 C.F.R. § 1200.64(f)(15) ................................................................................ 5
47 C.F.R. § 1200.64(c)(2)(ii)............................................................................. 5
47 C.F.R. § 1200.64(f)(10) ................................................................................ 5

10

11

12

13

14

15

16

17

18

19

20

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC - iv

# I.    INTRODUCTION

This is a subpoena-related action. The defendant in the underlying action, Hi Q., Inc. (Health IQ), is an insurance broker that markets insurance products tailored for seniors, including through large-scale telemarketing campaigns. Petitioner Toby Hoy, who is the plaintiff in the underlying action, received three unwanted text messages promoting life insurance services sold by Health IQ. Because Mr. Hoy's telephone number is on the national do-not-call registry, he sued Health IQ for violations of the Telephone Consumer Protection Act's Do Not Call Regulations, 47 U.S.C. § 227, et seq. and 47 C.F.R. §§ 64.1200(c) (TCPA). Mr. Hoy brought the case as a class action. It is currently pending in the United States District Court for the Northern District of California. *See Hoy v. Hi Q., Inc.*, No. 4:21-cv-04875 (N.D. Cal. filed June 24, 2021).

Health IQ has asserted as an affirmative defense that it had express or implied consent to send text messages to Mr. Hoy and other class members. Health IQ has evidence that the "lead" for the call to Mr. Hoy's telephone number was generated through a website owned by Respondent Zeeto Group LLC, a company that operates under the trade name "Get It Free." And Health IQ has evidence that visitors to that website ostensibly consented to receive calls from Cege Media, GuideToInsure and/or InsureaLife. Health IQ does not have evidence

1  that Mr. Hoy or any other class member consented to receive calls from Health IQ

2  through a Get It Free website.

3       Mr. Hoy sent a subpoena to the marketing vendor with which Health IQ

4  contracted to generate leads, Cege Media. Cege Media does business using the

5  trade name Enfuego. Enfuego produced data purporting to show that proposed

6  class members consented to receive the calls and texts at issue in this case. But

7  Mr. Hoy was unable to identify from Enfuego's data a single person who

8  consented to receive calls from Health IQ through a Get It Free website.

9       Mr. Hoy served Get It Free with a deposition and document subpoena

10 seeking information sufficient to confirm that Mr. Hoy and other visitors to Get It

11 Free's websites did not consent to receive calls from Health IQ during the class

12 period. Get It Free has refused to produce a single document and has refused to

13 produce a witness for a deposition on any topic. The objections Get It Free served

14 consist of the same boilerplate burden and overbreadth, confidentiality, and

15 relevancy objections to every single deposition topic and document request,

16 without any explanation of how those objections apply. Even after several meet

17 and confer sessions, Get It Free has not altered its position, forcing Mr. Hoy to file

18 this action to enforce the subpoena.

19

20 PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-
PARTY ZEETOGROUP, LLC - 2

1    Get It Free should be compelled to fully respond to Mr. Hoy's subpoena. In

2    opposition to Mr. Hoy's forthcoming motion for class certification, Health IQ will

3    argue that class certification is not appropriate because individualized issues of

4    consent will predominate at trial. But Mr. Hoy believes common evidence will

5    show that proposed class members who purportedly opted in to receive calls

6    through a Get It Free website did not consent to receive calls from Health IQ as

7    the TCPA requires. To substantiate this position, Mr. Hoy needs to review the

8    form and content of the websites class members purportedly visited. If Health

9    IQ's name is not in the list of businesses from which class members purportedly

10   consented to receive calls, then there was no valid consent to receive calls

11   promoting Health IQ. *See Williams v. Pillpack LLC*, C19-5282, 2021 WL 535215, at

12   *6 (W.D. Wash. Feb. 21, 2021) (valid consent under the TCPA requires consent

13   from the seller and not the telemarketing vendor because "the regulations

14   expressly require that callers inform the called parties that their consent will

15   'authorize[] the *seller* to deliver *or cause to be delivered* telemarketing calls"

16   (citation omitted) (emphasis in original)).

17   Contrary to Get It Free's objections, the information Mr. Hoy seeks cannot

18   be obtained from Health IQ or Enfuego because they do not have it. Any privacy

19   interests implicated by the data production can be protected through the

20   PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-
PARTY ZEETOGROUP, LLC - 3

1    stipulated protective order entered in the underlying litigation. And Get It Free's

2    assertions of burden are wholly unsubstantiated and insufficient to prevent the

3    discovery sought here. For all these reasons, Mr. Hoy's motion should be granted.

4        In the alternative, Mr. Hoy respectfully requests that the Court transfer this

5    motion to the Northern District of California, which is the Court that issued the

6    subpoena. Judge Gonzalez Rogers is familiar with the issues in this case, including

7    the type of evidence a plaintiff needs to certify a class and prevail at trial.

8    Declaration of Anthony Paronich ("Paronich Decl."), Ex. 1 (Transcript of

9    Proceedings) at 11:11–25; *see also, e.g.*, *Abante Rooter and Plumbing, Inc. v.*

10   *Alarm.com Inc.*, No. 15-cv-06314-YGR, 2018 WL 3707283 (N.D. Cal. Aug. 3, 2018).

11   Judge Gonzalez Rogers already has ruled that discovery is not bifurcated and that

12   Mr. Hoy is entitled to develop evidence relating to proposed class members

13   before filing his motion to certify a class.

14           **II.    FACTUAL BACKGROUND**

15   **A.    The TCPA prohibits "telephone solicitations" to telephone numbers
     registered on the national do-not-call registry without prior express
16   written permission.**

17       The TCPA and its implementing regulations prohibit (among other things)

18   "telephone solicitations" to any residential telephone subscriber registered on the

19   national do-not-call registry. 47 U.S.C. § 227(c)(3); 47 C.F.R. § 1200.64(c)(2). The

20   PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
     MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-
     PARTY ZEETOGROUP, LLC - 4

1  purpose of the do-not-call registry is to "protect residential telephone

2  subscribers' privacy rights to avoid receiving telephone solicitations to which they

3  object." 47 U.S.C. § 227(c)(1).

4      A "telephone solicitation" is "the initiation of a telephone call or message

5  for the purpose of encouraging the purchase or rental of, or investment in,

6  property, goods, or services, which is transmitted to any person." 47 C.F.R.

7  § 1200.64(f)(15). Health IQ's first text message to Mr. Hoy read: "Get a private

8  phone consultation for Life Insurance. Health IQ can help you leave money for

9  your family without health questions or exams. Call (844) 871-9348." Dkt. No. 1

10 (Compl.) ¶ 27. The second and third text messages contained similar promotions.

11 *Id.* ¶ 28.

12      An entity is not liable for calling a number listed on the national-do-not-call

13 registry if the entity has the telephone subscriber's prior express permission to

14 make the call. 47 C.F.R. § 1200.64(c)(2)(ii). Such permission "must be evidenced

15 by a signed written agreement between the consumer and the seller." *Id*. But a

16 "seller" is "the person or entity on whose behalf a telephone call or message is

17 initiated for the purpose of encouraging the purchase or rental of, or investment

18 in, property, goods, or services, which is transmitted to any person." 47 C.F.R.

19 § 1200.64(f)(10). Because the texts were sent for the purpose of encouraging the

20 PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-
PARTY ZEETOGROUP, LLC - 5

1  purchase of Health IQ's insurance services, Health IQ is the relevant "seller." As

2  such, Mr. Hoy and proposed class members consented to calls only if they agreed,

3  in writing, to receive calls from Health IQ. *See Williams* 2021 WL 535215, at *6.

4  **B.    Health IQ and Enfuego failed to produce evidence of consent.**

5  Discovery has commenced in the underlying action and the court

6  authorized Mr. Hoy to proceed with both individual and class discovery. Paronich

7  Decl., Ex. 1 (Transcript of Proceedings) at 2:14–20. The court also entered the

8  parties' stipulated protective order, which protects confidential information

9  produced in the litigation—including information produced by non-parties—from

10 disclosure. Paronich Decl. ¶ 3, Ex. 2  § 7.1. (*Hoy*, No. 4:21-cv-04875, ECF No. 27).

11 Health IQ produced records of more than 100 million calls it placed during

12 the Class period as a result of leads it obtained from Enfuego. Mr. Hoy's expert

13 analyzed that data and identified more than three million unique phone numbers

14 (including Mr. Hoy's) that received these calls. Paronich Decl. ¶ 4. Health IQ also

15 produced a document purporting to include information about the "lead" that led

16 to the call to Mr. Hoy. The document suggests that a person named Robert Frueh

17 entered Mr. Hoy's telephone number onto a form on a website with the URL

18 www.getitfree.us. Paronich Decl. ¶ 5, Ex. 3. The document states that consumers

19 visiting that website purportedly agreed to the following:

20 PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-
PARTY ZEETOGROUP, LLC - 6

1

2

3

4

        TCPA Language: By submitting Yes, I consent to have a representative from Cege Media, GuideToInsure and/or InsureaLife contact me at this number [phone]. I understand these calls may be generated using an automated dialer and that my consent is not required as a precondition for purchasing or receiving an [sic] property, goods or service.

5

6

7

Paronich Decl., Ex. 3. Health IQ failed to produce any evidence that Mr. Hoy or any other proposed class member consented to receive calls from Health IQ through a Get It Free website.

8

9

10

11

12

13

14

15

16

17

18

19

       During the meet and confer process, Health IQ told Mr. Hoy that it had contracted with Enfuego to provide the telephone numbers for the calls and that Enfuego would have more complete evidence of any consent to calls from Health IQ that Mr. Hoy and proposed class members may have provided. Paronich Decl. ¶ 6. Mr. Hoy sent a subpoena to Enfuego, who produced documents indicating that Mr. Hoy's telephone number ostensibly was generated through a webform on the www.getitfree.us website. *Id.* ¶ 7. Enfuego also produced a list of all the various websites through which Enfuego obtained leads. Multiple websites owned by Get It Free were on this list. *Id.* And Enfuego produced data showing that hundreds of thousands of leads were generated exclusively through Get It Free websites with the same "consent" language allegedly associated with Mr. Hoy's lead. *Id.* ¶ 9.

20

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC - 7

1

**C.      Get It Free has objected to producing any documents or a witness for a deposition.**

2

3      Enfuego produced a small number of documents purporting to show that

4   some class members may have consented to receive calls from Health IQ through

5   a Get It Free website. Paronich Decl. ¶ 10. But the documents Enfuego produced

6   are undated and unauthenticated, and do not include server and web logs, or the

7   historical website images, architecture and marketing partner lists Mr. Hoy now

8   seeks from Get It Free. *Id*. It is entirely possible that Enfuego's records of Get It

9   Free's website are not complete and that, at some points during the class period,

10  Health IQ's name was added to or removed from the list of companies from

11  whom visitors to a Get It Free website consented to receive calls. Get It Free is the

12  only entity who can provide complete information. Accordingly, Mr. Hoy served

13  Get It Free with a deposition and document subpoena targeting information

14  related to the lead generation Get It Free performed in connection with Health

15  IQ's telemarketing campaigns. Paronich Decl. ¶ 11, Ex. 5.

16      The deposition subpoena identifies fifteen topics for oral examination, all of

17  which seek information about Get It Free's lead generation activities for Enfuego

18  and Health IQ. Topics 1, 2, and 3 seek information about Get It Free's business

19  model and lead generation practices as they relate to Enfuego and Health IQ.

20  Paronich Decl., Ex. 5 at Exhibit A. Topics 4, 5, and 6 seek information regarding

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-
PARTY ZEETOGROUP, LLC - 8

1  Get It Free's business relationship with Enfuego and Health IQ as well as any

2  audits or investigations performed in connection with Get It Free's lead

3  generation activities for those companies. *Id.* Topics 7-10 seek information

4  relating to Get It Free's policies relating to lead generation, including policies

5  relating to TCPA compliance. *Id.* Topics 11 and 12 relate to any complaints Get It

6  Free may have received regarding its lead generation practices. *Id.* Topics 13- 15

7  relate to any investigation Get It Free did responding to the subpoena. *Id.* All of

8  these topics are typical of topics ordinarily covered in a third-party deposition in a

9  TCPA case.

10       Mr. Hoy's subpoena also demanded that Get It Free produce documents in

11  advance of the deposition. Paronich Decl., Ex. 5 at Exhibit B. The document

12  subpoena seeks information from Get It Free about its websites (Request Nos. 1,

13  2, 5), including the marketing partner lists, server and web logs, and historical

14  website images and architecture. *See id.* Those requests are crucial to the primary

15  factual issue in the underlying litigation: Whether Health IQ's name appeared in

16  the TCPA consent language on any of Get It Free's websites at any time during the

17  class period. Mr. Hoy's subpoena also seeks consent records for the leads that Get

18  It Free sold to Enfuego and that Enfuego ultimately sold to Health IQ. *See id.*

19  (Request No. 1). As with the website information, the substance and form of that

20  PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-
PARTY ZEETOGROUP, LLC - 9

1  information will be critical to a determination of whether Health IQ's consent

2  defense can be litigated on a class wide basis.

3      Despite its plain relevance to the underlying litigation, Get It Free objected

4  to Mr. Hoy's subpoena, refusing to produce any documents or a witness for

5  deposition. Paronich Decl. ¶ 12, Ex. 6. For each of the deposition topics and

6  document requests, Get It Free asserted the same four boiler plate objections: (1)

7  complying with the requests would impose an undue burden and expense on Get

8  It Free; (2) the requests seek disclosure of confidential information and

9  proprietary business records, including information regarding third parties'

10 private information the disclosure of which would violate Article I, Section I of the

11 California Constitution; (3) the requests were not reasonably calculated to lead to

12 the discovery of admissible evidence; and (4) the information was available from

13 Health IQ. *See generally id.*

14     The parties met and conferred by telephone and in writing on multiple

15 occasions, including on January 24, 2022. During the call, Mr. Hoy's counsel

16 explained the key relevance of the documents and testimony sought by the

17 subpoena, and why the information needed to be sought from Get It Free.

18 Paronich Decl. ¶ 13. Get It Free also strenuously objected to producing

19 information about proposed Class members on the basis of customer privacy. But,

20 PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC - 10

1  as Mr. Hoy's counsel explained, the protective order entered in the underlying

2  litigation would apply to any confidential information Get It Free produced and

3  should alleviate any privacy concerns. *Id*. Finally, Mr. Hoy's counsel reiterated that

4  a classwide production is necessary now because Judge Gonzalez Rogers refused

5  to bifurcate discovery. *Id*. On February 3, 2022, Get It Free's counsel informed Mr.

6  Hoy by email that "[m]y clients will continue standing by their objections. No

7  disclosure is proper from GetitFree as this time." *Id.* ¶¶ 14–15, Ex. 7.

8        Before filing this motion, Mr. Hoy followed up with Get It Free's counsel to

9  inquire whether it would agree to produce anonymized information about

10  proposed Class members' alleged consent, but Get It Free rejected the offer to

11  compromise. *Id*. Health IQ's counsel also followed up, explaining the relevance of

12  the documents and why the information could only be obtained from Get It Free.

13  *Id*.

14                  **III.    AUTHORITY AND ARGUMENT**

15  **A.    Get it Free should be ordered to fully respond to Plaintiffs' subpoena and appear at a deposition.**

16        "The scope of discovery under Rule 45 is the same as under Rule 26."

17  *Waymo LLC v. Uber Tech., Inc.*, No. 17-cv-00939, 2017 WL 2929439 (N.D. Cal. Jul.

18  7, 2017). Rule 45, like Rule 26(b)(1), "provides for broad and liberal discovery" of

19  "any nonprivileged matter that is relevant to any party's claim or defense and

20

1  proportional to the needs of the case." *Heard v. Costco Wholesale Corp.*, No. 2:19-

2  cv-00673, 2020 WL 515841, at *1 (D. Nev. Jan. 31, 2020) (quoting Fed. R. Civ. P.

3  26(b)(1)). Whether discovery is proportional to the needs of the case depends on

4  "the importance of the issues at stake in the action, the amount in controversy,

5  the parties' relative access to relevant information, the parties' resources, the

6  importance of the discovery in resolving the issues, and whether the burden or

7  expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P.

8  26(b)(1). "To the extent responsive documents do not exist for any particular

9  discovery request [in a subpoena], the responding party must make that

10  representation along with a detailed explanation of the search for documents

11  that was conducted." *Scientific Games Corp. v. AGS LLC*, No. 2:17-cv-00343-JAD-

12  NJK, 2017 WL 3013251, at *2 (D. Nev. Jul. 13, 2017) (citing *Rogers v. Giurbino*, 288

13  F.R.D. 469, 485 (S.D. Cal. 2012)). Because the discovery Mr. Hoy seeks is relevant

14  and proportional to the needs of the case, the Court should grant his motion to

15  compel.

16      With nearly 100,000,000 calls and texts received by Class members, the

17  amount in controversy in the underlying litigation is billions of dollars, *before* the

18  potential for treble statutory damages is considered. *See* 47 U.S.C. § 227(c)(5) (call

19  recipients are entitled to receive up to $500 for each violation of the TCPA and

20  PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-
PARTY ZEETOGROUP, LLC - 12

1  allowing courts to award up to treble damages for knowing or willful violations).

2  The testimony and documents Mr. Hoy seeks about Get it Free's websites and

3  lead generation activity cannot be obtained from Health IQ or Enfuego (or

4  anywhere else) and bear directly on a central affirmative defense in the

5  underlying litigation that could impact the claims of tens of thousands of Class

6  members. Whether the consent forms used by Get It Free comply with the TCPA

7  by listing Health IQ as a "Marketing Partner," and the process Get It Free uses to

8  collect contact information and generate leads are potentially dispositive of the

9  issue of consent. *See, e.g.*, *Mantha v. Quotewizard.com, LLC*, No. 19-12235-LTS1,

10  2021 WL 6061919, at *7–9 (D. Mass. Dec. 13, 2021) (alleged consent was not

11  "TCPA-compliant" because the lead generator's consent form did not include the

12  defendant's name or provide the disclosures required by the e-sign act).

13       Perhaps most importantly at this stage of the case, the information is

14  relevant to class certification questions. At class certification, Mr. Hoy must

15  establish that common issues predominate over individualized ones. Health IQ

16  will likely argue that individualized issues about whether Class members

17  consented to receive calls from Health IQ prevent certification. Documents and

18  testimony from lead generators like Get it Free about their involvement in the

19  offending telemarketing campaigns, the leads they generated for Health IQ,

20  PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-
PARTY ZEETOGROUP, LLC - 13

1   complaints and investigations, and their policies regarding lead generation are

2   relevant to refuting that argument and establishing that common issues

3   predominate. *See Williams v. Pillpack LLC*, No. C19-5282 TSZ, 2021 WL 535215, at

4   *6 (W.D. Wash. Feb. 12, 2021) (finding predominance satisfied and certifying class

5   where the validity of consent obtained through website opt-in forms "would not

6   require case-by-case analysis" because "there is little or no variation in the

7   consent method"). The information lead generators like Get It Free possess has

8   potentially drastic implications on whether a TCPA class can be certified. *See*

9   *Williams v. Pillpack LLC*, No. 19-5282 RJB, 2021 WL 5113467, at *6–7 (W.D. Wash.

10   Nov. 3, 2021) (decertifying class based on evidence produced by lead generators).

11         Given the clear relevance of the documents and testimony Mr. Hoy seeks, it

12   is unsurprising that courts have routinely compelled non-parties to respond to

13   similar subpoenas in connection with TCPA class actions. *See, e.g.*, *Taylor v.*

14   *Universal Auto Grp. I, Inc.*, No. 14-mc-50, 2015 WL 1810316, at *5 (S.D. Ohio Apr.

15   17, 2015) (compelling production of phone numbers, policies and procedures, and

16   documents relating to lead generation, complaints, and prior express consent);

17   *Hancock v. Credit Pros Int'l Corp.*, 2021 WL 2948154, at *8–11 (D.N.J. Jul. 13,

18   2021) (compelling production of call records, identities of third-party vendors,

19   documents related to prior express consent, and vendor agreements,); *see also*

20   PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC - 14

1  *Medina v. Enhanced Recovery Co., LLC*, No. 15-14342-CIV-MARTINEZ/MAYNARD,

2  2017 WL 5196093 (S.D. Fla. Nov. 9, 2017) ("[H]ow [defendant] obtained the

3  telephone number of a proposed class member is relevant evidence of whether

4  that person provided prior express consent.").

5       Depositions of non-parties relating to leads generated for the defendant

6  are also routine components of TCPA litigation, including in cases in front of Judge

7  Gonzalez-Rogers. *See, e.g.*, *Williams v. Pillpack*, 19-5282 RJB, 2021 WL 5113467, at

8  *3–4 (W.D. Wash. Nov. 3, 2021) (describing third-party call center and lead

9  generator depositions); *Abante Rooter and Plumbing, Inc. v. Alarm.com Inc.*, No.

10  15-cv-06134-YGR, 2018 WL 558844, at *3 (N.D. Cal. Jan. 25, 2018) (describing

11  vendor deposition that "confirmed" the call records produced were complete).

12  There is no basis for Get It Free's refusal to respond.

13       "Third-party status does not confer a right to obfuscation or obstinacy."

14  *Apple, Inc. v. Samsung Elecs. Co. Ltd.*, No. 12-cv-0630-LHK (PSG), 2013 WL

15  1942163, at *3 (N.D. Cal. May 9, 2013). Get It Free cannot simply refuse to comply

16  with a subpoena. The testimony and documents Mr. Hoy seeks are relevant and

17  proportional to the needs of the case. Accordingly, the Court should order Get It

18  Free to produce responsive documents and a corporate designee for deposition.

19

20

**B.  Get it Free has not articulated any undue burden and its confidentiality objections provide no basis for refusing to respond to a valid subpoena.**

Get it Free has not demonstrated that the subpoena is unduly burdensome or otherwise improper. *See Fuller v. Insys Therapeutics, Inc.*,  *Baier v. Princeton Office Park, L.P.*, No. 3:08-CV-5296 PGS DEA, 2018 WL 5253288, at *4 (D.N.J. Oct. 22, 2018) (the subpoenaed party must "clarify and explain its objections" and "specifically show how each discovery request is objectionable (citation omitted)). "It is not enough to merely assert overbreadth, burden, or oppression." *Katz v. Shell Energy N. Am. (US), LP*, --- F.Supp.3d ---, 2021 WL 4477626, at *2 (D. Mass. Sept. 30, 2021). "Conclusory or speculative statements of harm, inconvenience, or expense are plainly insufficient." *Scientific Games Corp.*, 2017 WL 3013251, at *2. Instead, "the party opposing discovery [by subpoena] bears the burden of showing the discovery is overly broad and [un]duly burdensome, or not relevant," by "specifically detail[ing]" the basis for each objection. *Painters Join Committee v. Employee Painters Trust health & Welfare Fund*, No. 2:10-cv-1385-JCM-PAL, 2011 WL 4573349, at *5 (D. Nev. Sept. 29, 2011).

Get It Free was unable to provide anything beyond conclusory explanations of the burden that would be imposed if it were forced to produce documents and a corporate witness. Both Mr. Hoy and Health IQ took steps to address Get it Free's primary objections and concerns, but Get it Free refused to produce

1   documents or a witness anyway. Fed. R. Civ. P. 45(c)(1) (requiring counsel to take

2   "reasonable steps to avoid imposing undue burden or expense on a person

3   subject to that subpoena"). Mr. Hoy's need for the documents and testimony

4   requested by the subpoena substantially outweighs the unspecified burden Get It

5   Free claims that responding would impose. The evidence Mr. Hoy seeks relates to

6   central (and in some cases dispositive) issues in the underlying litigation. Get It

7   Free has failed to explain the burden that purportedly justifies its lack of response

8   and its objection should therefore be overruled.

9        Get It Free's confidentiality objections likewise provide no basis for its

10  refusal to respond to the subpoena. To begin, some of the information Mr. Hoy

11  seeks, like the lists of marketing partners, were made publicly available and Mr.

12  Hoy is only seeking the lists consumers could access on Get It Free's websites. Mr.

13  Hoy offered to accept anonymized biographical data (i.e. without names and

14  addresses) prior to class certification to address any privacy issues, but Get It Free

15  refused. Moreover, any confidential material produced by Get It Free is covered

16  by the protective order in the underlying litigation, which specifically covers

17  information produced by non-parties. Mr. Hoy has provided Get It Free's counsel

18  with that order and confirmed that Get It Free can utilize the protections for

19  confidential information that it contains. Paronich Decl. ¶ 13. Courts encountering

20  PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
    MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-
    PARTY ZEETOGROUP, LLC - 17

1    similar privacy and confidentiality-related objections to those Get It Free raises

2    here "routinely overrule [them] where . . . confidentiality orders are in place."

3    *Hancock*, 2021 WL 2948154, at *9 (citing *Medina*, 2017 WL 5196093 and

4    *Symantec Corp. v. Sidman*, No. 14-mc-80094, 2014 WL 1652921 (N.D. Cal. Apr. 24,

5    2014)). The Court should do the same here.

6    **C.    This motion may be transferred to the Northern District of California.**

7    　　　　In the alternative, to avoid inconsistent rulings and promote efficiency, Mr.

8    Hoy respectfully requests that the Court transfer this motion to the court that

9    issued the subpoena, the Northern District of California. A subpoena-related

10    motion may be transferred "[w]hen the court where compliance is required did

11    not issue the subpoena" and the "person subject to the subpoena consents" or

12    the court "finds exceptional circumstances." Fed. R. Civ. P. 45(f). The Advisory

13    Committee note explains the exceptional circumstances standard:

14    　　　　　　In the absence of consent, the court may transfer in
    　　　　　　exceptional circumstances, and the proponent of transfer
15    　　　　　　bears the burden of showing that such circumstances are
    　　　　　　present. The prime concern should be avoiding burdens
16    　　　　　　on local nonparties subject to subpoenas, and it should
    　　　　　　not be assumed that the issuing court is in a superior
17    　　　　　　position to resolve subpoena-related motions. In some
    　　　　　　circumstances, however, transfer may be warranted in
18    　　　　　　order to avoid disrupting the issuing court's management
    　　　　　　of the underlying litigation, as when the court has already
19    　　　　　　ruled on issues presented by the motion or the same

20    PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
    MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-
    PARTY ZEETOGROUP, LLC - 18

issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

Fed. R. Civ. P. 45(f) advisory committee's note (2013).

When determining whether "exceptional circumstances" exist, courts "consider factors such as judicial economy, docket management, and the risk of inconsistent rulings." *Agincourt Gaming, LLC v. Zynga Inc*., No. 14-cv-0708, 2014 WL 4079555, at *6 (D. Nev. Aug. 15, 2014). "Whether 'exceptional circumstances' exist for a transfer turns on the particular facts of each case." *Agincourt Gaming*, 2014 WL 4079555 at *6. Courts considering subpoena-related motions "may find it helpful to consult with the judge in the issuing court presiding over the underlying case while addressing subpoena-related motions." Fed. R. Civ. P. 45 adv comm. notes (2013).

Exceptional circumstances exist here. First, Judge Gonzalez Rogers is familiar with the parties and the issues in the underlying litigation, including the type of evidence a plaintiff needs to certify a class and prevail at trial. *See* Paronich Decl., Ex. 1 (Transcript of Proceedings) at 11:11–25; *see also, e.g.*, *Perez v. Rash Curtis & Assocs.*, No. 4:16-cv-03396, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) (denying post-trial motion to alter or amend $267,349,000.00 TCPA judgment); *Abante Rooter and Plumbing, Inc. v. Alarm.com Inc.*, No. 15-cv-06314-

1   YGR, 2017 WL 1806583 (N.D. Cal. May 5, 2017) (certifying do-not-call registry

2   class). This is a complex TCPA action that involves numerous third-party vendors

3   and sub-vendors located across the United States. Judge Gonzalez Rogers ruled

4   on the scope of discovery when she refused to bifurcate the action. If the Court

5   does not grant Mr. Hoy's motion, it should transfer the motion to the Northern

6   District of California to avoid potentially "disrupting the issuing court's

7   management of the underlying litigation." *See US Plywood Integrity Coalition v.*

8   *PFS Corp.*, 2021 WL 409968, at *3 (W.D. Wash. Feb. 5, 2021)

9       Second, absent transfer, there is a risk of inconsistent rulings on the scope

10  of third-party discovery. Get It Free objects to producing classwide discovery, but

11  Judge Gonzalez Rogers has considered similar arguments from Health IQ and

12  rejected them, which weighs in favor of transfer. *See US Plywood*, 2021 WL

13  409968, at *3 (explaining that the issuing court's ruling on similar legal arguments

14  raised in support of quashing the subpoena weighed in favor of transfer).

15  Moreover, Enfuego purchased the leads it sold to Health IQ from multiple

16  companies that operate all over the United States (and abroad). Paronich Decl.

17  ¶ 8. This motion is likely to be the first of several disputes, across multiple

18  districts, relating to the scope of third-party discovery. Transfer is appropriate,

19  because rulings from multiple courts have "the potential to disrupt the . . .

20

1  management of the underlying case, both procedurally and substantively." *Chinitz*

2  *v. Intero Real Estate Servs.*, No. A-20-MC-0081-LY, 2020 WL 806177, at *2 (W.D.

3  Tex. Feb. 14, 2020). And "[u]niformity of discovery rulings in a case of this

4  complexity is critical to achieving fairness to the parties and non-parties." *Id*.

5  (transferring TCPA class-action); *see also E4 Strategic Sols., Inc. v. Pebble Limited*

6  *P'ship*, No. SA MC 150999220, DIC (DFMx), 2015 WL 12746706 (C.D. Cal. Oct. 23,

7  2015) (finding exceptional circumstances where multiple "virtually identical"

8  subpoenas were served on third-parties in multiple districts).

9          Exceptional circumstances should be weighed against the "burdens on local

10  nonparties subject to subpoenas." *Chem-Aqua, Inc. v. Nalco Co*., No. 14-mc-71,

11  2014 WL 2645999, at *1 (N.D. Tex. June 13, 2014) (quoting Fed. R. Civ. P. 45(f),

12  2013 note). However, these burdens must be significant, and "an unsupported

13  statement that litigating" in the issuing court's district "would be burdensome

14  and expensive" is insufficient to outweigh the burden on local nonparties. *Id*. at

15  *3 (internal quotes omitted). Here, transfer to another district in California will

16  not burden Get it Free.

17          The possibility that Get it Free may incur additional costs litigating the

18  motion to compel in the issuing court rather than its home forum is insufficient

19  for a finding of prejudice. *See Chem-Aqua*, 2014 WL 2645999, at *3 (ordering

20  PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-
PARTY ZEETOGROUP, LLC - 21

1  transfer despite arguments about burden). This is particularly true here because

2  the hearing on Mr. Hoy's motion to compel may be held by video, eliminating the

3  burden of traveling to the hearing altogether. In similar circumstances, courts

4  have ordered a motion transferred. *See Miller Constr. Equip. Sales, Inc. v. Clark*

5  *Equip. Co.*, No. 15-cv-00007, 2016 WL 447717, at *5 (S.D. Ga. Feb. 4, 2016) (noting

6  "the internet enables easy access" to other federal court dockets and "Rule 45(f)

7  goes out of its way to minimize" the effects of "distance litigation" following a

8  transfer).

9  <p align="center">**IV.   CONCLUSION**</p>

10  Mr. Hoy respectfully requests that the Court grant his motion and compel

11  Get it Free to produce responsive documents and testify at a remote deposition.

12  In the alternative, if the Court is not inclined to rule on the motion, Mr. Hoy

13  requests that the motion be transferred to the Northern District of California to

14  be heard as part of the underlying action.

15  //

16  //

17  //

18  //

19  //

20  PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC - 22

1

RESPECTFULLY SUBMITTED AND DATED this 11th day of February, 2022.

2

3

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Beth E. Terrell, CSB #178181

4

Beth E. Terrell, CSB #178181
Email: bterrell@terrellmarshall.com

5

Jennifer Rust Murray, *Pro Hac Vice Forthcoming*
Email: jmurray@terrellmarshall.com

6

936 North 34th Street, Suite 300
Seattle, Washington 98103

7

Telephone: (206) 816-6603
Facsimile: (206) 319-5450

8

Anthony I. Paronich, *Pro Hac Vice Forthcoming*

9

Email: anthony@paronichlaw.com
PARONICH LAW, P.C.

10

350 Lincoln Street, Suite 2400
Hingham, MA 02043

11

Telephone: (617) 485-0018
Facsimile: (508) 318-8100

12

*Attorneys for Petitioner*

13

14

15

16

17

18

19

20

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC - 23

# EXHIBIT 9

Christopher S. Morris, Esq., SBN 163188
cmorris@morrislawfirmapc.com
Jacob A. Gillick, Esq. 312336
jgillick@morrislawfirmapc.com
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone: (619) 826-8060
Facsimile: (619) 826-8065

Attorneys for Respondent Zeetogroup, LLC,

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOBY HOY,<br><br>                    Petitioner,<br><br>    v.<br><br>ZEETOGROUP, LLC,<br><br>                    Respondent. | Case No. 22cv151-LL-MDD<br><br>**OPPOSITION TO MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC** |

OPPOSITION TO MOTION TO COMPEL COMPLIANCE       22cv151 LL MDD

# I.

## __INTRODUCTION__

Petitioner and Plaintiff Toby Hoy's ("Petitioner" or "Mr. Hoy") Motion to Compel an Out-of-District Subpoena is moot, deficient, and purposefully leaves out relevant information.  At the outset, Mr. Hoy's representation that "Get it Free has refused to produce a single document and has refused to produce a witness for a deposition on any topic" is untrue.  On March 10, 2022, third party Respondent ZeetoGroup, LLC ("Zeeto" or "Respondent") produced "video" proving that consumers opted in to having their information shared with Zeeto's customer, Policyscout, whom Defendant Health IQ contracted with.  Zeeto also produced a declaration before requesting the parties discuss the production before moving forward with motion practice.  Mr. Hoy refused without explanation.

The production by Zeeto proves that Policyscout hired Zeeto to run a campaign whereby Zeeto connected consumers with Policyscout through a "free sample" offer.  As seen by the Jornaya reports, upon entering their phone numbers, consumers were informed that the information would be shared with companies like Policyscout.  Zeeto was never made privy to what was done with the leads after that.  Nonetheless, Plaintiff complains that he did not consent to being contacted by Health IQ (who acquired contact information from Policyscout) and now seeks documents from Zeeto to prove "lack of consent."  Zeeto has done what it can, but Policyscout and Health IQ are the proper parties to be seeking discovery from.

Petitioner fails to discuss each individual request in its motion because it is seeking a complete document dump from a third-party which would cost hundreds of man hours without producing anything of value.  Zeeto has provided what it can and requested further discussions with Petitioner on what else could be disclosed. Petitioner refused to discuss the production.  Based on the subpoena being rendered moot by the March 10, 2022, production, and Petitioner's failure to sufficiently compel documents—Respondent Zeeto requests the Motion be denied.

OPPOSITION TO MOTION TO COMPEL COMPLIANCE        22cv151 LL MDD

## II.

### <u>Petitioner's Motion is Procedurally Insufficient</u>

"The motion must include a certification that the movant has in good faith conferred or attempted to confer."  Fed. R. Civ. Proc., R. 37(a)(1).  As discussed below, Zeeto disclosed multiple documents on March 10, 2022.  Gillick Decl., Exhibit 11.  Instead of discussing the production or what else may be discoverable, Petitioner decided to move forward with the motion without meeting and conferring.  *Id.* at Exhibit 10.  Zeeto contends that the March 10, 2022, production, combined with Petitioner's failure to meet and confer in good-faith renders the motion deficient and therefore requests the motion be denied.

## III.

### <u>The Parties</u>

Petitioner fails to sufficiently explain the relationship between the parties in an attempt to receive a complete document dump from Zeeto—which will be unproductive and overly burdensome.  It should be very clear that Defendant Health IQ is *<u>not</u>* a client of Zeeto.  Third party Policyscout (referred to as "Cege" and "En Fuego" by Petitioner) is Zeeto's client who dealt exclusively with Health IQ.  As described below, Policyscout asked Zeeto to sell samples of products in exchange for consumer's information.  Zeeto was simply connecting Policyscout with consumers and has no say, nor idea, of what Policyscout did with that information.

## IV.

### <u>Procedural History</u>

Plaintiff's counsel's Declaration is woefully deficient of the facts surrounding the dispute to date.  Petitioner is moving on his *<u>fourth</u>* nearly identical subpoena to Zeeto.

On September 7, 2021, Petitioner executed his first subpoena on Zeeto.  *Id.* at Exhibit 1.  On September 20, 2021, Zeeto objected.  *Id.* at Exhibit 2.  Petitioner did not move to compel the subpoena.  On October 20, 2021, Petitioner again asked

Zeeto to accept service of a subpoena but then went "radio silent."  *Id.* at Exhibit 3.
On November 29, 2021, after confirming Zeeto will accept services, counsel for
Mr. Hoy sent over a "Schedule A" which he attempted to pass off as a subpoena.
*Id.* at Exhibits 4-5.

On December 9, 2021, Mr. Hoy executed his third subpoena.  *Id.* at Exhibit
6.  On December 20, 2021, Zeeto responded with the same objections.  *Id.* at
Exhibit 7.  Again, Petitioner made no attempt to dispute the objections or compel
the subpoena.  On January 9, 2022, Plaintiff Hoy served his fourth subpoena on
Zeeto with the same objections being asserted on January 22, 2022. *Id.* at Exhibits
8-9; Dkt. 1-10.  On or around February 11, 2022, Mr. Hoy filed a motion to compel.

Despite the assertions of Mr. Hoy's counsel, at no point was a protective
order sent, or even a copy of the Complaint.  Nonetheless, in order to assist in
resolving the dispute, Zeeto requested the identifying information of consumers in
order to contact Jornaya and research the issue.  Mr. Hoy's counsel inexplicably
refused this request until February 15, 2022, when it sent over a list of over 24,000
numbers supposedly produced by Policyscout.  *Id.* at Exhibit 9.  Immediately
thereafter, Zeeto contacted Jornaya.

## V.

## Zeeto's Production

On March 10, 2022, Zeeto produced a declaration of Shayne Cardwell along
with 26 different reports from Jornaya.  Gillick Decl., Exhibits 10-11.  Jornaya
utilizes a tool which converts code into a "visual playback" depicting what would
have been seen by the consumer upon entering their information.  Zeeto selected 26
different phone numbers at random to investigate given the extensive process this
procedure requires, and the close deadline imposed by Petitioner who filed the
motion before disclosing the phone numbers.

After reviewing the "video playback," it was uncovered that Policyscout ran
the type of campaigns where they used Zeeto as a catalyst to provide free samples

1   to consumers in exchange for phone numbers.  Zeeto has no idea what Policyscout

2   did with the consumers information after receiving it because that was not the

3   relationship.  However, each and every "video playback" included a disclosure that

4   the information would be shared with Zeeto's partners—which includes

5   Policyscout.  Zeeto was hired to offer free samples on behalf of Policyscout and

6   there is nothing further Zeeto can provide without a complete dump of its entire

7   business as described below.

8        After providing the reports, Zeeto requested Petitioner stipulate to an

9   extension of the Motion to Compel but was denied without explanation.  *Id.* at

10  Exhibit 10.  Even the substance of Mr. Hoy's motion fails to specifically

11  differentiate between what has been produced, why it may be insufficient, and what

12  other reasonable information may be produced.  A detailed examination by the

13  Court based on the motion alone would be a waste of resources as Petitioner has not

14  addressed the production.

15       Petitioner failed to sufficiently meet and confer regarding Zeeto's production.

16  Further, "[a] party or attorney responsible for issuing and serving a subpoena must

17  take reasonable steps to avoid imposing undue burden or expense on a person

18  subject to the subpoena.  The court for the district where compliance is required

19  must enforce this duty and impose an appropriate sanction—which may include lost

20  earnings and reasonable attorney's fees—on a party or attorney who fails to

21  comply."  Fed. R. Civ. Proc., Rule 45(d)(1).  Those efforts have not been made here

22  through four different subpoenas and a refusal to discuss the production.  Finally,

23  an "order must protect a person who is neither a party nor a party's officer from

24  significant expense resulting from compliance."  *Id.* at (d)(2)(B)(ii).  An order

25  compelling disclosure of every vague request would be devastating to Zeeto.

26  / / /

27  / //

28  / / /

5

OPPOSITION TO MOTION TO COMPEL COMPLIANCE        22cv151 LL MDD

# VI.

## Specific Requests

Plaintiff has requested a deposition regarding the following items:

(1)   Daily operations.

(2)   Portfolio services offered.

(3)   Process of receiving and obtaining telephone numbers made by Third Parties it works with.

(4)   All audits, investigations, inquiries, or studies performed by CEGE Media.

(5)   All aspects of Health IQ's relationship or involvement with Get it Free.

(6)   All audits, investigations, inquiries, or studies related to lead generation, including, but not limited to, when each audit was performed.

(7)   Any complaints, grievances, investigations, or actual or threatened litigation from private individuals, BBB, and government entities regarding lead generation to Get it Free.

(8)   Get it Free's policies for responding to complaints, including Get it Free's intake, investigation, and tacking of complaints, and its development and implementations of those policies.

(9)   Get it Free's response to the two subpoenas it has received.

(10)  Get it Free's investigation into the leads it provided related to the Plaintiff.

(11)  Get it Free's investigation and any communications regarding this litigation with the vendor or third party that contacted the plaintiff.

Gillick Decl., Exhibit 9. Petitioner's counsel fails to discuss any of these topics in detail and instead focuses on broad demands for anything and everything without sufficiently connecting the requests with its claims.  Zeeto is extremely concerned

6

that Mr. Hoy is on a "fishing expedition" and does not know exactly what he wants, but knows he wants everything, including Better Business Bureau reports for some reason and documents evidencing every single time CEGE asked Zeeto a question (inquiry). Zeeto has produced all information it has related to the Plaintiff, the class, and its relationship with Policyscout. Zeeto is happy to work out the details of what is available, reasonable, and helpful. Unfortunately, Petitioner has ignored these requests and opted to harass Zeeto with overbroad and unspecific requests.

With regards to the documents requested, Petitioner demands:

(1) To the extent you claim that your company obtained permission for automated calls or text messages concerning Defendant produce signed writings.

(2) To the extent you claim that your company obtained permission for automated calls or text messages concerning Defendant.

(3) All contracts or documents representing agreements with third parties, including subcontractors or affiliate companies, utilized to perform services for the Defendant or CEGE.

(4) All internal correspondence regarding Defendant CEGE and the process of making calls, selling leads or selling telephone numbers to them or for them.

(5) All images, proof and other website architecture that the Defendant's name or any of their registered DBAs appeared on the websites for your company.

(6) Communication with any third party concerning the litigation captions on the subpoena.

Gillick Decl., Exhibit 9. The first two requests seek responses to a "claim" which does not exist because Zeeto is not a party to the litigation. The third request seeks unfettered access to every single contract and communication with all companies Zeeto works with to run its business. The fourth request seeks documents it should

7

1    have sought from Policyscout but are not relevant to what consumers saw during

2    the consent process. The fifth requests seeks the entire "architecture" of the

3    company which again would provide no benefit and would cost hundreds of man

4    hours to produce.  No effort has been made to explain how this is not a burdensome

5    production.

6        Overall, Petitioner has failed to discuss the requests and how they will

7    provide the benefit it contends it will without harassing Zeeto.  In the event

8    Respondent is compelled to provide a full production, Zeeto would be disclosing

9    third party information, trade secrets, information equally available from

10    Policyscout or Health IQ, and spending a large amount of man hours compiling the

11    information without any clear benefit to either party of the litigation.  Zeeto has

12    offered further discussion but Respondent has refused—demanding all or nothing.

13    Therefore, Zeeto requests the Motion be denied.

14 <div align="center">**VII.**</div>

15 <div align="center">**<u>Transfer</u>**</div>

16        In the alternative to a denial of Petitioner's motion, he invites this Court to

17    give him a second "bite at the apple" by transferring the matter to the Northern

18    District.  If done, this would constitute the fifth time Zeeto is required to defend an

19    overly broad subpoena.  Further, Respondent has complete faith that this Court can

20    understand the issues and law to make a fair ruling.

21        Finally, "[a] motion for an order to a party must be made in the court where

22    the action is pending.  A motion for an order to a nonparty must be made in the

23    court where the discovery is or will be taken."  Fed. R. Civ. Proc., Rule 37(a)(2).

24    Therefore, Zeeto requests the matter not be transferred.

25 <div align="center">**VIII.**</div>

26 <div align="center">**<u>Conclusion</u>**</div>

27        As the evidence attached to the Declaration of Jacob Gillick show, there was

28    no clear explanation on what documents, outside of a complete dump of all

<div align="center">8</div>

1  company information, would assist in litigation of the case.  Further, Zeeto has
2  produced documents responsive to the subpoena while making itself available for
3  further discussions.  Given Petitioner's failure to sufficiently discuss each request,
4  the production, and why further discovery should be compelled, Respondent
5  respects Petitioner's motion be denied.

6                                         **MORRIS LAW FIRM, APC**

7

8  Dated:  March 14, 2022              *s/ Jacob A. Gillick*
9                                       Jacob A. Gillick, Esq.
                                        jgillick@morrislawfirmapc.com
10                                      Attorneys for Respondent Zeetogroup, LLC

OPPOSITION TO MOTION TO COMPEL COMPLIANCE        22cv151 LL MDD

1  Christopher S. Morris, Esq., SBN 163188
2  cmorris@morrislawfirmapc.com
   Jacob A. Gillick, Esq. 312336
3  jgillick@morrislawfirmapc.com
4  MORRIS LAW FIRM, APC
   501 West Broadway, Suite 1480
5  San Diego, CA 92101
6  Telephone:  (619) 826-8060
   Facsimile:  (619) 826-8065
7
8  Attorneys for Respondent Zeetogroup, LLC,

9           UNITED STATES DISTRICT COURT

10        SOUTHERN DISTRICT OF CALIFORNIA

11 TOBY HOY,                        | Case No. 22cv151-LL-MDD

12                    Petitioner,   | **DECLARATION OF JACOB A.**
                                     | **GILLICK IN SUPPORT OF**
13                                   | **OPPOSITION TO MOTION TO**
14     v.                            | **COMPEL COMPLIANCE WITH OUT-**
                                     | **OF-DISTRICT SUBPOENA TO NON-**
15 ZEETOGROUP, LLC,                 | **PARTY ZEETOGROUP, LLC**
16                                   |
                     Respondent.    |
17
18
19
20
21
22
23
24
25
26
27
28

                          1

I, Jacob A. Gillick, declare as follows:

I am an Associate Attorney with Morris Law Firm, APC and represent Respondent ZeetoGroup, LLC, ("Zeeto") I have personal knowledge of the facts contained in this declaration and, if called as a witness, could and would testify as such.

1.     A true and correct copy of the September 7, 2021, subpoena is attached hereto as "Exhibit 1." A true and correct copy of ZeetoGroup, LLC's ("Zeeto") objections is attached hereto as "Exhibit 2."

2.     A true and correct copy of Petitioner's counsel's request that Zeeto accept service of a subpoena in October and November, is attached hereto as "Exhibit 3." A true and correct copy of Zeeto's response is attached hereto as "Exhibit 4."

3.     A true and correct copy of the "Schedule A" propounded on Zeeto \ is attached hereto as "Exhibit 5."

4.     A true and correct copy of the December 9, 2021, subpoena is attached hereto as "Exhibit 6." A true and correct copy of Zeeto's objections are attached hereto as "Exhibit 7."

5.     A true and correct copy of the January 24, 2022, subpoena is attached hereto as "Exhibit 8."

6.     Attached hereto as "Exhibit 9" is a true and correct copy of the e-mail where Petitioner discloses the contact information Zeeto had been requesting and is at issue.

7.     Attached hereto as "Exhibit 10" is the correspondence between Petitioner's counsel and Zeeto's counsel exchanging information. This includes Petitioner's refusal to further meet and confer.

/ / /

/ / /

/ / /

DEC IN OPPOSITION TO MOTION TO COMPEL          22cv151 LL MDD

8.   A true and correct copy of Zeeto's production to Petitioner is attached hereto as "Exhibit 11."

I declare under penalty of perjury, under the laws of the United States and California that the foregoing is true and correct. Executed this 14th day of March, 2022, in San Diego, California.

s/ Jacob A. Gillick
Jacob A. Gillick

DEC IN OPPOSITION TO MOTION TO COMPEL                    22cv151 LL MDD

# EXHIBIT 1

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of California

| | | |
|---|---|---|
| TOBY HOY | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No. 4:21-cv-04875-YGR |
| | ) | |
| HI.Q, INC. d/b/a HEALTH IQ | ) | |
| _Defendant_ | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                    Get it Free

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See the attached Schedule A.

| Place: DIRECTLY TO THE UNDERSIGNED COUNSEL ELECTRONICALLY or to Rockstar Process Serving San Diego, CA | Date and Time: 09/24/2021 5:00 pm |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 09/07/2021

_CLERK OF COURT_

OR

_____                    /s/ Anthony I. Paronich
_Signature of Clerk or Deputy Clerk_                    _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
Plaintiff                                                    , who issues or requests this subpoena, are:

Paronich Law, P.C., 350 Lincoln St., Suite 2400, Hingham, MA 02043, anthony@paronichlaw.com, (508) 221-1510

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
   **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
   **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
   **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
   **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
   **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## INSTRUCTIONS

1.   You are required to search not only for hard copy documents, but for electronically generated, maintained or stored information, including data that exist on your computers' hard drives, on computer servers to which you have access, in email accounts, in text messaging accounts, and all other places in which responsive electronic data may be stored.

2.   Where possible, all electronically generated, maintained or stored information should be produced in its native format and in a format compatible to litigation-support databases and review systems. Where possible, such documents should contain searchable text and searchable metadata in a load file format. File fidelity and resolution should not be downgraded; for instance, electronic files should not be printed and then scanned.

## DEFINITIONS

1.        When used in these Requests, "Defendant" means HI.Q, Inc. d/b/a Health IQ, including any subsidiaries or affiliated enterprises, and its officers, directors and employees.

2.        When used in these Requests, "you" or "your" (or synonyms thereof) means Get it Free, including any subsidiaries or affiliated enterprises, and its officers, directors and employees. This includes, but is not limited to, https://getitfree.us/.

3.        Unless otherwise instructed, the requests are seeking documents from January 1, 2018 to the present.

## REQUESTS

**Request No. 1:** To the extent you claim that your company obtained permission for automated calls or text messages concerning Defendant to the Plaintiff produce all documents that identify:

336354

A.      Any signed writings evidencing that permission;

B.      As it relates to any website visits that you assert are being used in place of signed writings:

> i.      All documents that evidence a clear and conspicuous statement that informed consumers of their right to withdraw their consent to receive telemarketing calls;
>
> ii.      All documents that evidence a clear and conspicuous statement that informed consumers of the procedures they must use to withdraw consent, and the procedures they may use to update their contact information that was used as a basis for any alleged consent to make telemarketing calls to them.

**Request No. 2:** To the extent you claim that your company obtained permission for automated calls or text messages to the Plaintiff concerning Defendant via websites:

A.      Produce documents that identify those website(s) and the specific page(s) on those website(s) that you claim constitute consent or permission.

B.      For any website identified in response to the prior request, produce all access, server and error logs and security and fraud alerts during the period you claim visits to that website constituted consent or permission to contact any putative class member with telemarketing calls.

C.      For any website identified in response to the prior request, produce all architectural diagrams, wireframes and application mockups.

D.      Produce all documents that identify the affiliate(s) compensated directly or indirectly by you for each purportedly consenting consumer.

E.      Produce all documents that identify the referring URL from which each purportedly consenting consumer came to your website.

F.      If any documents responsive to the requests in this Schedule A are in the hands of third parties, produce documents that identify those third parties

**Request No. 3:** All documents relating to the plaintiff or the phone number (515) 808-0280.

**Request No. 4:** Communications with any third party concerning the litigation captioned on the subpoena.

# EXHIBIT 2

## NON-PARTY GET IT FREE'S OBJECTIONS AND RESPONSE TO PLAINTIFF'S SUBPOENA *DUCES TECUM*

Pursuant to Fed. R. Civ. P. 45(d), non-party Get it Free, by and through its undersigned counsel, hereby objects to the subpoena *duces tecum* (the "Subpoena") issued by plaintiff Toby Hoy ("Plaintiff") in the action styled *Toby Hoy v. Hi. Q, Inc. d/b/a Health IQ*, Civil Action No. 4:21-cv-04875-YGR pending in the United States District Court for the Northern District of California ("the Underlying Action").

## FACTUAL BACKGROUND

Get it Free is an Internet marketing website containing information regarding free samples, coupons, and similar deals and is a non-party to the Underlying Action – an action between Plaintiff and Hi. Q, Inc. d/b/a Health IQ ("Health IQ") for alleged violations of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Given the nature of Plaintiff's claims against Health IQ, as set forth in Plaintiff's Complaint, it appears that Get it Free's business records and information have no relevance to the Underlying Action.

Specifically, Plaintiff's Complaint alleges that Plaintiff received at least three automated text messaging calls from Health IQ on May 24, 26, and June 1, 2021, despite Plaintiff's telephone number beginning with "(515) 808" being registered on the National Do Not Call Registry. Complaint ¶¶ 24-26.   Plaintiff's Complaint contends that the calls received from Health IQ were made in violation of the TCPA, and Plaintiff seeks to represent himself and a putative class of individuals that allegedly received similar autodialed calls from Health IQ.

Get it Free did not call Plaintiff or attempt to call Plaintiff at all, let alone on behalf of Health IQ. Nor did Get it Free call putative class members on behalf of Health IQ.   Plaintiff's Subpoena to Get it Free requests the production of broad categories of documents.  These documents, to the extent they exist in Get it Free's records, are irrelevant to the core issue in Plaintiff's case *against Health IQ*, which is whether *Health IQ* had Plaintiff's and putative class members' prior express

consent to receive the alleged calls. Get it Free's affiliates, wireframes, architectural diagrams, and application mockups are completely unrelated to the Underlying Action.

Moreover, the requested documents necessarily exist in the files of Health IQ, the defendant in the Underlying Action alleged to have made the calls. Health IQ undoubtedly has records showing any prior express consent to receive those calls. Fed. R. Civ. P. 45 and 26(b)(2)(C)(1) requires Plaintiff to seek the requested documents from Health IQ instead of imposing significant undue burden and cost on non-party Get it Free.

## <u>GENERAL OBJECTIONS</u>

Plaintiff has failed to comply with Fed. R. Civ. P. 45(d)(1), which requires that the party issuing a subpoena "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1). "'[A]n evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party.'" *Moon v. SCP Pool Corp.,* 232 F.R.D. 633, 637 (C.D. Cal. 2005) (quoting *Travelers Indem. Co. v. Metropolitan Life Insur. Co.,* 228 F.R.D. 111, 113 (D. Conn. 2005)). In particular, in evaluating undue burden, courts consider

> 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'

*Id.* (quoting *Travelers Indem.,* 228 F.R.D. at 113). Looking to all of these factors, Plaintiff's Subpoena imposes an undue burden.

First, to the extent that Plaintiff needs the requested documents, it must seek them from Defendant Health IQ, the party to the case that is alleged to have been called. Specifically, among other documents, Plaintiff's Subpoena seeks information regarding "permission" to make automated calls or text messages concerning Health IQ. This information is within the files of Health IQ, not non-party Get it Free. Courts routinely quash subpoenas like Plaintiff's where the information

sought is available from another source, including the opposing party in the underlying litigation. *See Moon,* 232 F.R.D. at 638 ("Moreover, these requests all pertain to defendant, who is a party, and, thus, plaintiffs can more easily and inexpensively obtain the documents from defendant, rather than from [the subpoenaed] nonparty); *In re Motion to Compel Compliance With Subpoena Directed to Dept. of Veteran Affairs,* 257 F.R.D. 12, (D.D.C. April 28, 2009) (granting motion to quash where information sought from non-party was available from party defendant in underlying suit and holding that "even modifying the subpoena to seek [] limited information [would be] unduly burdensome because of the absence of any showing that the information sought is not available from other sources.").

Plaintiff's Subpoena also improperly seeks internal documents, which are not only irrelevant but also maintained as confidential by Get it Free, including, but not limited to, Get it Free's access, server, and error logs; security fraud and fraud alerts; architectural diagrams, wireframes, and application mockups; affiliate identities; vendors for visitor traffic reporting; and website host identities. *See Allen v. Howmedica Leibinger, GmhH*, 190 F.R.D. 518, 526 (W.D. Tenn. 1999) ("Dr. Allen has failed to demonstrate that the information it seeks from Danek, a nonparty, is relevant and necessary to the pending Delaware action, discovery would impose an undue burden on Danek, and there is a substantial risk of harm from disclosure of confidential information."); *Moon,* 232 F.R.D. at 638 (quashing subpoena requesting production of commercial information). To the extent that Get it Free agrees to produce any information that it maintains as confidential information, it will only do so after entry of an appropriate protective order in the United States District Court Northern District of California, the place of compliance designated in the Subpoena. *See* FED. R. CIV. P. 45(d).

Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure. *See Moon*, 232 F.R.D. at 637. Further, "the burden is on the party seeking information to establish a need for the breadth of the information sought in response to a nonparty's

*prima facie* showing that the discovery would be burdensome." *Musarra v. Digital Dish, Inc.,* Civ. No. 2:05-cv-545, 2008 WL 4758699, at *1 (S.D. Ohio Oct. 30, 2008). If the requests are "overwhelming," a court need not balance the equities of the respective parties and may simply quash the subpoena. 9 James Wm. Moore, *Moore's Federal Practice*, § 45.32 (3d ed. 2009). A subpoena is overwhelming if (1) it requests information of limited relevance to the underlying action, or (2) the requested information covers an unreasonable period of time. *Id.* Plaintiff's Subpoena is objectionable for all of the above reasons.

<div align="center">

**SPECIFIC OBJECTIONS TO DOCUMENT REQUESTS**

</div>

The foregoing General Objections are incorporated by reference herein with respect to the Specific Objections to each request.

**REQUEST NO. 1:** To the extent you claim that your company obtained permission for automated calls concerning Defendant to the Plaintiff produce all documents that identify:

(A) Any signed writings evidencing that permission;

(B) As it relates to any website visits that you assert are being used in place of signed writings:

(i) All documents that evidence a clear and conspicuous statement that informed consumers of their right to withdraw their consent to receive telemarketing calls.

(ii) All documents that evidence a clear and conspicuous statement that informed consumers of the procedures they must use to withdraw consent, and the procedures they may use to update their contact information that was used as a basis for any alleged consent to make telemarketing calls to them.

**OBJECTIONS TO REQUEST NO. 1:**

Get it Free objects to this request on the grounds that it is overbroad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

This request attempts to impose legal obligations that do not exist for Get it Free. Get it Free did not call the Plaintiff on behalf of Health IQ. It is not Get it Free's obligation to prove it obtained "permission for automated calls". Get it Free's documents relating to its communications with Get it Free's own consumers is irrelevant to the Underlying Action.

To the extent these documents are relevant to Plaintiff's claims against Health IQ, Plaintiff is required to seek production of them from Health IQ instead of attempting to subject non-party Get it Free to significant undue burden, cost, and business disruption.

Notwithstanding the foregoing objections, and without waiving them, Get it Free does not have any responsive documents relating to this request as Get it Free does not claim to have obtained permission for automated calls or text messages from Plaintiff concerning the Defendant and thus does not have any signed writings from Plaintiff concerning Defendant.

**REQUEST NO. 2:** To the extent that you claim that your company obtained permission for automated calls or text messages to the Plaintiff concerning Defendant via websites:

(A) Produce documents that identify those website(s) and the specific page(s) on those website(s) that you claim constitute consent or permission.

(B) For any website identified in response to the prior request, produce all access, server, and error logs and security and fraud alerts during the period you claim visits to that website constituted consent or permission to contact any putative class member with telemarketing calls.

(C) For any website identified in response to the prior request, produce all architectural diagrams, wireframes, and application mockups.

(D) Produce all documents that identify the affiliate(s) compensated directly or indirectly by you for each purportedly consenting consumer.

(E) Produce all documents that identify the referring URL from which each purportedly consenting consumer came to your website.

(F) If any documents responsive to the request in this Schedule A are in the hands of third parties, produce documents that identify those third parties.

**OBJECTIONS TO REQUEST NO. 2:**

Get it Free objects to this request on the grounds that it is overbroad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Again, this request attempts to impose legal obligations that do not exist for Get it Free. Get it Free did not call the Plaintiff on behalf of Health IQ. It is not Get it Free's obligation to prove it obtained "permission for automated calls".

Get it Free further objects to the request to the extent it seeks disclosure of proprietary and/or confidential information of Get it Free. There is no connection between Plaintiff being called by Health IQ and Get it Free's architectural diagrams, vendors for visitor traffic, error logs, website host, or bandwidth usage. The request does not appear to seek any document that would be relevant to any fact in issue with Plaintiff's claims against Health IQ.

To the extent these documents are relevant to Plaintiff's claims against Health IQ, Plaintiff is required to seek production of them from Health IQ instead of attempting to subject non-party Get it Free to significant undue burden, cost, and business disruption.

Notwithstanding the foregoing objections, and without waiving them, Get it Free does not have any responsive documents relating to this request as Get it Free does not claim to have obtained permission for automated calls or text messages from Plaintiff concerning the Defendant and thus does not have any signed writings from Plaintiff concerning Defendant.

**REQUEST NO. 3:** All documents relating to the plaintiff or the phone number (515) 808-0280.

**OBJECTIONS TO REQUEST FOR PRODUCTION NO. 3:**

Get it Free objects to this request on the grounds that it is overbroad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

The request does not appear to seek any document that would be relevant to any fact in issue with Plaintiff's claims against Health IQ. Get it Free further objects to this request as seeking production of information that Get it Free maintains in the ordinary course of its business as confidential information.

Get it Free further objects to the request to the extent it seeks disclosure of proprietary and/or confidential information of Get it Free. There is no connection between Plaintiff being called by Health IQ and Get it Free's documents relating to the Plaintiff or the phone number (515) 808-0280. The request does not appear to seek any document that would be relevant to any fact in issue with Plaintiff's claims against Health IQ.

**REQUEST NO. 4:** Communications with any third party concerning the litigation captioned on the subpoena.

**OBJECTIONS TO REQUEST NO. 4:**

Get it Free objects to this request on the grounds that it is overbroad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding the foregoing objections, and without waiving them, Get it Free does not have any responsive documents relating to this request.

Date: September 20, 2021                          Respectfully submitted,

                                                 */s/ Elizabeth Cole*
                                                 Elizabeth Cole
                                                 Counsel for Get it Free
                                                 Telephone: (619) 496-6476
                                                 E-mail: legal@getitfree.us

                                                 *Attorney for Non-Party*

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2021, I caused a true and correct copy of the foregoing

**NON-PARTY GET IT FREE'S OBJECTIONS AND RESPONSES TO PLAINTIFFS'**

**SUBPOENA *DUCES TECUM*** to be served on the following counsel for the subpoenaing party by

electronic mail:

> Paronich Law, P.C.
> 350 Lincoln Street, Suite 2400
> Hingham, MA 02043
> Phone: (508) 221-1510
> E-mail: anthony@paronichlaw.com

*/s/ Elizabeth Cole*

# **EXHIBIT 3**

**Subject:** Fwd: Get it Free
**Date:** Friday, November 26, 2021 at 11:27:52 AM Pacific Standard Time
**From:** Anthony Paronich
**To:** Jacob Gillick

Mr. Gillick:

I wanted to confirm that you're able to accept the subpoena mentioned below. If so, can you please provide availability for you and your client in December?


Regards,

----
Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[c] (508) 221-1510
[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.


---------- Forwarded message ---------
From: **Legal Department GetItFree** <legal@getitfree.us>
Date: Wed, Oct 27, 2021 at 12:43 AM
Subject: Re: Get it Free
To: Anthony Paronich <anthony@paronichlaw.com>
Cc: Rosenthal, Paul A. (NJ) <PaulRosenthal@kelleydrye.com>


Hello Mr. Paronich

Unfortunately I am unable to accept service for this type of subpoena, but Get it Free has other outside counsel that is able to accept service. Please send the subpoena to Jacob Gillick at jgillick@morrislawfirmapc.com.

Thank you,
Elizabeth Cole
On Wed, Oct 20, 2021 at 8:54 AM Anthony Paronich <anthony@paronichlaw.com> wrote:

> Ms. Cole:
>
>
> I hope all is well. We intend to issue a deposition for a subpoena to Get it Free. Can you please advise if you can accept service via e-mail?

We'd also be happy to coordinate dates. Can you let us know your availability in early December. We intend to take the deposition remotely.

----

Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400

Hingham, MA 02043
[o] (617) 485-0018

[c] (508) 221-1510
[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

# EXHIBIT 4

**Subject:** Re: Get it Free

**Date:** Monday, November 29, 2021 at 8:15:29 PM Pacific Standard Time

**From:** Anthony Paronich

**To:** Jacob Gillick

**Attachments:** Deposition Schedule A to Get it Free.docx

Thank you, and the same to you. A Schedule A is attached. With this information, I assume you will be able to figure out the deponent(s) and provide some December availability. If that's not the case, please let me know.

Regards,

----
Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[c] (508) 221-1510
[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

On Sun, Nov 28, 2021 at 2:54 PM Jacob Gillick <jgillick@morrislawfirmapc.com> wrote:

> Mr. Paronich,
>
>
> Hope you had a happy Thanksgiving. I will accept service. Let me review the subpoena to determine the correct employee to produce. I am just coming into this matter.
>
>
> Best,
>
>
> Jacob A. Gillick, Esq.
>
> **MORRIS LAW FIRM, APC**
>
> 501 West Broadway, Suite 1480
>
> San Diego, CA 92101
>
> Tel. (619) 826-8060
>
> Fax. (619) 826-8065

# EXHIBIT 5

## EXHIBIT A

Unless otherwise indicated, the RELEVANT TIME PERIOD for the purposes of this Notice of Deposition is from four years prior to the filing of the Complaint in this matter to the present.

As used throughout this Notice of Deposition, the following terms have the following indicated meanings:

1.    The term "DOCUMENT" or "DOCUMENTS" as used herein shall refer to all writings as defined in Fed. R. Civ. P. 34(a)(1)(A), however produced or reproduced or archived or stored, within YOUR possession or subject to YOUR control, of which YOU have knowledge or to which YOU now have or previously had access, including all ELECTRONICALLY STORED INFORMATION.

2.    "ELECTRONICALLY STORED INFORMATION" ("ESI") as used herein means any electronic DOCUMENT or WRITTEN COMMUNICATION and includes, without limitation, the following:

a.    Activity listings of electronic mail receipts and/or transmittals;

b.    Output resulting from the use of any software program, including without limitation word processing DOCUMENTS, spreadsheets, DATABASE files, charts, graphs and outlines, electronic mail, text messages, AOL Instant Messenger (or similar program) or bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether such electronic data exist in an active file, deleted file, or file fragment; and

c.    Any and all items stored on computer memories, hard disks, network servers, individual computer workstations or clients, thumb drives, jump drives, CDs, DVDs, cloud servers, floppy disks, CD-ROM, magnetic tape, microfiche, or on any other vehicle for digital

data storage and/or transmittal, including without limitation a personal digital assistant, smartphone and/or tablet, e.g., iPhone, Droid, Blackberry, Galaxy, HTC, iPad, iPod, Kindle, Nook or other device. PLAINTIFF requests that ESI be processed and produced in a manner that preserves all metadata and that the parties confer regarding the production of metadata and the form or any electronic production prior to the gathering or processing of ESI.

3. "DATABASE" or "DATABASES" includes any collection of data defined so that it can be reorganized and accessed in a number of different ways; any collection of data for one or more purposes, usually in digital form; a comprehensive collection of related data organized for convenient access, generally in a computer; a collection of information that is organized so that it can easily be accessed, managed, and updated; or a structured set of data held in a computer

4. "POLICY" or "POLICIES" means any instruction(s), practice, procedure, directive, routine, guideline, rule, course of conduct or code of conduct, written or unwritten, formal or informal, recorded or unrecorded, which were or have been recognized, adopted, issued or followed by YOU.

5. "HEALTH IQ" means defendant HI.Q, INC. d/b/a HEALTH IQ, as well as any of its divisions, affiliates, subsidiaries, successors, predecessors, present or former partners, officers, directors, employees, agents, attorneys or representatives.

6. "GET IT FREE" means Get it Free Media, as well as any of its divisions, affiliates, subsidiaries, successors, predecessors, present or former partners, officers, directors, employees, agents, attorneys or representatives.

7. "PLAINTIFF" means the Plaintiff in this action.

8. "PERSON" or "PERSONS" means any individual, partnership, association, corporation, joint venture, governmental or administrative body, or other business or legal entities.

9. "THIRD PARTY" or "THIRD PARTIES" or "OTHER PARTY" means any individual, partnership, association, corporation, joint venture, or other business or legal entity

not owned or controlled by YOU, or any PERSON that does not receive an annual salary from YOU, including but not limited to affiliates, agents, and subsidiaries of YOU.

10. "VENDOR" or "VENDORS" is a subset of THIRD PARTY and when used in this deposition notice means any THIRD PARTY under contract with, hired by, employed by, paid by, or working for YOU for purposes of telemarketing activities or services, including, but not limited to, generating leads, warm transfers, hot transfers, any other call transfers, making outbound calls, and the tracking or aggregation of data related to same. VENDORS specifically includes, but is not limited to, the entity that provided the PLAINTIFF's lead or called the PLAINTIFF.

11. Topics that include the creation (including any sources of information or ESI), modification, use, ARCHITECTURE, and FUNCTIONALITY of any and all DATABASES include, but are not limited to, the following subtopics:

    a.    The name of the system, its version, and platform on which it runs;

    b.    Whether the systems store information on premises or on the cloud or a hybrid;

    c.    The custodian of the data (GET IT FREE, or any VENDOR or THIRD PARTY);

    d.    The data used with each system;

    e.    How stored data is accessed;

    f.    Whether the systems archive information;

    g.    Where the archives are stored;

    h.    How data is archived;

    i.    What reporting or analytics features do the systems have;

    j.    What export features do the products have;

    k.    What data fields do the products maintain; and

    l.    Who is responsible for maintaining the systems.

12. All other words shall have their ordinary definition as defined by Merriam-Webster's online dictionary, located at http://www.merriam-webster.com/ (last visited June 2, 2021).

## **TOPICS**

GET IT FREE is hereby directed to designate one or more officers, directors, managing agents, or other PERSONS to testify regarding the following topics:

**GET IT FREE'S Business Structure**

1.      The general nature and scope of GET IT FREE'S business and/or services.  This subject includes, but is not limited to, GET IT FREE'S business activities, daily operations, portfolio of services offered, and business model.

## **LEAD GENERATION**

2.      GET IT FREE'S process for obtaining telephone numbers that were sold to HEALTH IQ or CEGE MEDIA, including where such telephone numbers came from, who acquired them, how they were delivered and any audits or vetting done on them before they were delivered.

3.      GET IT FREE's knowledge of and participation in the process of receiving and obtaining telephone numbers by the THIRD PARTIES it works with, including, but not limited to, any entities involved in the getitfree.us website.

## **RELATIONSHIP WITH CEGE MEDIA**

4.      GET IT FREE'S relationship or involvement with CEGE MEDIA, including, but not limited to:

a.      The nature and scope of services provided by GET IT FREE to CEGE MEDIA and vice versa;

4

b.      The negotiation, drafting, implementation, and all other aspects of any agreement or scope of work between GET IT FREE and CEGE MEDIA;

c.      The day-to-day relationship between GET IT FREE and CEGE MEDIA, including, but not limited to, the identities of any GET IT FREE employees who communicate with CEGE MEDIA regarding lead generation, the identities of employees of CEGE MEDIA with whom GET IT FREE communicates regarding lead generation, the frequency of any meetings with CEGE MEDIA regarding lead generation, and the typical content and form of any communications between GET IT FREE and CEGE MEDIA;

d.      Any training CEGE MEDIA provided to GET IT FREE related to lead generation;

e.      GET IT FREE'S disclosure to CEGE MEDIA regarding the method, manner, and means by which GET IT FREE promoted CEGE MEDIA through lead generation;

f.      The scope of any access that CEGE MEDIA has to any GET IT FREE computer systems, equipment, or DATABASES used for purposes of lead generation; the type of such computer systems, equipment, or DATABASES to which CEGE MEDIA has access; and the method, manner, and means by which CEGE MEDIA accesses such computer systems, equipment, or DATABASES; and

g.      Any financial incentives provided by or payments made by GET IT FREE to CEGE MEDIA.

5.      All audits, investigations, inquiries, or studies (collectively "audits") performed by CEGE MEDIA related to lead generation, including, but not limited to, when each audit was performed, who performed each audit, why each audit was performed, which PERSONS were audited (YOU, THIRD PARTIES, or VENDORS), why each PERSON was audited, and the results of each audit.

6.      DATABASES to which GET IT FREE has access; and the method, manner, and means by which GET IT FREE accesses such computer systems, equipment, or DATABASES.

## POLICIES

7.      GET IT FREE'S POLICIES relating to lead generation, including any POLICIES regulating actions by THIRD PARTIES that conduct lead generation for GET IT FREE.

8.      GET IT FREE'S POLICIES, practices, and procedures relating to the Telephone Consumer Protection Act, 47 U.S.C. § 227, including, but not limited to, the rules, regulations, opinions, advisories, comments, or filings of the Federal Communications Commission that relate to 47 U.S.C. § 227 and 47 C.F.R. § 64.1200(c)(2) & (d).

9.      GET IT FREE'S efforts to ensure TCPA compliance by THIRD PARTIES and VENDORS that conduct lead generation for GET IT FREE, and its own employees (*e.g.*, requiring compliance training, audits, procedures to ensure appropriate consent).

## COMPLAINTS & DO NOT CALL REQUESTS

10.      Any complaints, grievances, investigations, or actual or threatened litigation from private individuals, business bureaus (such as the BBB), and government entities regarding lead generation relating to GET IT FREE, and any corresponding response or investigation.

11.      GET IT FREE'S POLICIES for responding to complaints, including GET IT FREE'S intake, investigation, and tracking of complaints, and its development and implementation of those POLICIES.  All DATABASES or computer software programs GET IT FREE uses to track complaints.

## THIS LITIGATION

12.      GET IT FREE'S response to the subpoena it has received.

13.      GET IT FREE'S investigation into the calls placed to PLAINTIFF.

14.    GET IT FREE's investigation and any communications regarding this litigation with the VENDOR or THIRD PARTY that contacted the PLAINTIFF.

# EXHIBIT 6

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

| | |
|---|---|
| TOBY HOY | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  4:21-cv-04875-YGR |
| | ) |
| HI.Q, INC. d/b/a HEALTH IQ | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: GETITFREE.US

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See the attached Schedule A.

| Place:  Magna Legal Services via remote means | Date and Time: |
|---|---|
| | 12/23/2021 9:00 AM MST |

The deposition will be recorded by this method:  Videographer and/or Stenographer

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:
     All documents responsive to the previoulsy served subpoenas.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  12/09/2021

| CLERK OF COURT | | |
|---|---|---|
| | OR | |
| | | /s/ Anthony I. Paronich |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Plaintiffs
_____ , who issues or requests this subpoena, are:
Paronich Law, P.C., 350 Lincoln Street, Suite 2400, Hingham, MA 02043, anthony@paronichlaw.com, (617) 485-0018

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) For Other Discovery.** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) Command to Produce Materials or Permit Inspection.**
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) Quashing or Modifying a Subpoena.**

    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) Claiming Privilege or Protection.**
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

Unless otherwise indicated, the RELEVANT TIME PERIOD for the purposes of this Notice of Deposition is from four years prior to the filing of the Complaint in this matter to the present.

As used throughout this Notice of Deposition, the following terms have the following indicated meanings:

1.       The term "DOCUMENT" or "DOCUMENTS" as used herein shall refer to all writings as defined in Fed. R. Civ. P. 34(a)(1)(A), however produced or reproduced or archived or stored, within YOUR possession or subject to YOUR control, of which YOU have knowledge or to which YOU now have or previously had access, including all ELECTRONICALLY STORED INFORMATION.

2.       "ELECTRONICALLY STORED INFORMATION" ("ESI") as used herein means any electronic DOCUMENT or WRITTEN COMMUNICATION and includes, without limitation, the following:

a.       Activity listings of electronic mail receipts and/or transmittals;

b.       Output resulting from the use of any software program, including without limitation word processing DOCUMENTS, spreadsheets, DATABASE files, charts, graphs and outlines, electronic mail, text messages, AOL Instant Messenger (or similar program) or bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether such electronic data exist in an active file, deleted file, or file fragment; and

c.       Any and all items stored on computer memories, hard disks, network servers, individual computer workstations or clients, thumb drives, jump drives, CDs, DVDs, cloud servers, floppy disks, CD-ROM, magnetic tape, microfiche, or on any other vehicle for digital

data storage and/or transmittal, including without limitation a personal digital assistant, smartphone and/or tablet, e.g., iPhone, Droid, Blackberry, Galaxy, HTC, iPad, iPod, Kindle, Nook or other device. PLAINTIFF requests that ESI be processed and produced in a manner that preserves all metadata and that the parties confer regarding the production of metadata and the form or any electronic production prior to the gathering or processing of ESI.

3. "DATABASE" or "DATABASES" includes any collection of data defined so that it can be reorganized and accessed in a number of different ways; any collection of data for one or more purposes, usually in digital form; a comprehensive collection of related data organized for convenient access, generally in a computer; a collection of information that is organized so that it can easily be accessed, managed, and updated; or a structured set of data held in a computer

4. "POLICY" or "POLICIES" means any instruction(s), practice, procedure, directive, routine, guideline, rule, course of conduct or code of conduct, written or unwritten, formal or informal, recorded or unrecorded, which were or have been recognized, adopted, issued or followed by YOU.

5. "HEALTH IQ" means defendant HI.Q, INC. d/b/a HEALTH IQ, as well as any of its divisions, affiliates, subsidiaries, successors, predecessors, present or former partners, officers, directors, employees, agents, attorneys or representatives.

6. "CEGE MEDIA" means the company you interact with regarding www.GET IT FREE.us, as well as any of its divisions, affiliates, subsidiaries, successors, predecessors, present or former partners, officers, directors, employees, agents, attorneys or representatives.

7. "PLAINTIFF" means the Plaintiff in this action.

8. "PERSON" or "PERSONS" means any individual, partnership, association, corporation, joint venture, governmental or administrative body, or other business or legal entities.

9. "THIRD PARTY" or "THIRD PARTIES" or "OTHER PARTY" means any individual, partnership, association, corporation, joint venture, or other business or legal entity

2

not owned or controlled by YOU, or any PERSON that does not receive an annual salary from YOU, including but not limited to affiliates, agents, and subsidiaries of YOU.

10. "VENDOR" or "VENDORS" is a subset of THIRD PARTY and when used in this deposition notice means any THIRD PARTY under contract with, hired by, employed by, paid by, or working for YOU for purposes of telemarketing activities or services, including, but not limited to, generating leads, warm transfers, hot transfers, any other call transfers, making outbound calls, and the tracking or aggregation of data related to same. VENDORS specifically includes, but is not limited to, the entity that provided the PLAINTIFF's lead or called the PLAINTIFF.

11. Topics that include the creation (including any sources of information or ESI), modification, use, ARCHITECTURE, and FUNCTIONALITY of any and all DATABASES include, but are not limited to, the following subtopics:

a. The name of the system, its version, and platform on which it runs;

b. Whether the systems store information on premises or on the cloud or a hybrid;

c. The custodian of the data (CEGE, or any VENDOR or THIRD PARTY);

d. The data used with each system;

e. How stored data is accessed;

f. Whether the systems archive information;

g. Where the archives are stored;

h. How data is archived;

i. What reporting or analytics features do the systems have;

j. What export features do the products have;

k. What data fields do the products maintain; and

l. Who is responsible for maintaining the systems.

12. All other words shall have their ordinary definition as defined by Merriam-Webster's online dictionary, located at http://www.merriam-webster.com/.

3

## <u>TOPICS</u>

GET IT FREE.US is hereby directed to designate one or more officers, directors, managing agents, or other PERSONS to testify regarding the following topics:

**GET IT FREE Business Structure**

1.      The general nature and scope of GET IT FREE'S business and/or services.  This subject includes, but is not limited to, GET IT FREE'S business activities, daily operations, portfolio of services offered, and business model.

**LEAD GENERATION**

2.      GET IT FREE'S process for obtaining telephone numbers that were sold to CEGE MEDIA or HEALTH IQ, including where such telephone numbers came from, who acquired them, how they were delivered and any audits or vetting done on them before they were delivered.

3.      GET IT FREE's knowledge of and participation in the process of receiving and obtaining telephone numbers made by THIRD PARTIES it works with, including, but not limited to, CEGE MEDIA or HEALTH IQ.

**RELATIONSHIP WITH CEGE MEDIA**

4.      GET IT FREE's relationship or involvement with CEGE MEDIA, including, but not limited to:

                a.      The nature and scope of services provided by GET IT FREE to CEGE MEDIA and vice versa;

                b.      The negotiation, drafting, implementation, and all other aspects of any agreement or scope of work between GET IT FREE and CEGE MEDIA;

4

c.      The day-to-day relationship between GET IT FREE and CEGE MEDIA, including, but not limited to, the identities of any GET IT FREE employees who communicate with CEGE MEDIA regarding lead generation, the identities of employees of CEGE MEDIA with whom GET IT FREE communicates regarding lead generation, the frequency of any meetings with GET IT FREE regarding lead generation, and the typical content and form of any communications between GET IT FREE and CEGE MEDIA;

d.      Any training CEGE MEDIA provided to GET IT FREE related to lead generation;

e.      GET IT FREE'S disclosure to CEGE MEDIA regarding the method, manner, and means by which GET IT FREE promoted HEALTH IQ through lead generation;

f.      The scope of any access that CEGE MEDIA has to any GET IT FREE computer systems, equipment, or DATABASES used for purposes of lead generation; the type of such computer systems, equipment, or DATABASES to which CEGE MEDIA has access; and the method, manner, and means by which CEGE MEDIA accesses such computer systems, equipment, or DATABASES; and

g.      Any financial incentives provided by or payments made by CEGE MEDIA to GET IT FREE.

5.      All audits, investigations, inquiries, or studies (collectively "audits") performed by CEGE MEDIA related to lead generation, including, but not limited to, when each audit was performed, who performed each audit, why each audit was performed, which PERSONS were audited (YOU, THIRD PARTIES, or VENDORS), why each PERSON was audited, and the results of each audit.

**RELATIONSHIP WITH HEALTH IQ**

6.      All aspects of HEALTH IQ'S relationship or involvement with GET IT FREE, including, but not limited to:

        a.      The nature and scope of services provided by GET IT FREE to HEALTH IQ;

        b.      The negotiation, drafting, implementation, and all other aspects of any agreement or scope of work between HEALTH IQ and Get it Free;

        c.      The day-to-day relationship between HEALTH IQ and GET IT FREE, including, but not limited to, the identities of any HEALTH IQ employees who communicate with Get it Free regarding lead generation, the identities of employees of GET IT FREE with whom HEALTH IQ communicates regarding lead generation, the frequency of any meetings with GET IT FREE regarding lead generation, and the typical content and form of any communications between HEALTH IQ and GET IT FREE;

        d.      Any training HEALTH IQ provided to Get it Free related to lead generation;

        e.      HEALTH IQ'S knowledge of the other third parties that GET IT FREE contracted with for purposes of marketing HEALTH IQ'S products or services;

        f.      HEALTH IQ'S knowledge of the method, manner, and means by which GET IT FREE acquired leads or prospective customers for HEALTH IQ;

        g.      The scope of HEALTH IQ'S knowledge or participation in providing leads to GET IT FREE for purposes of lead generation;

        h.      The scope of any access that GET IT FREE has to any HEALTH IQ computer systems, equipment, or DATABASES used for purposes of lead generation; the type of such computer systems, equipment, or DATABASES to which GET IT FREE has access; and the method, manner, and means by which GET IT FREE accesses such computer systems, equipment, or DATABASES; and

6

i.      Any financial incentives provided by or payments made by HEALTH IQ to GET IT FREE.

7.      All audits, investigations, inquiries, or studies (collectively "audits") performed by YOU or for YOU related to lead generation, including, but not limited to, when each audit was performed, who performed each audit, why each audit was performed, which PERSONS were audited (YOU, THIRD PARTIES, or VENDORS), why each PERSON was audited, and the results of each audit.

## POLICIES

8.      GET IT FREE'S POLICIES relating to lead generation, including any POLICIES regulating actions by THIRD PARTIES that conduct lead generation for GET IT FREE.

9.      GET IT FREE'S POLICIES, practices, and procedures relating to the Telephone Consumer Protection Act, 47 U.S.C. § 227, including, but not limited to, the rules, regulations, opinions, advisories, comments, or filings of the Federal Communications Commission that relate to 47 U.S.C. § 227 and 47 C.F.R. § 64.1200(c)(2) & (d).

10.     GET IT FREE'S efforts to ensure TCPA compliance by THIRD PARTIES and VENDORS that conduct lead generation for GET IT FREE, and its own employees (*e.g.*, requiring compliance training, audits, procedures to ensure appropriate consent).

## COMPLAINTS & DO NOT CALL REQUESTS

11.     Any complaints, grievances, investigations, or actual or threatened litigation from private individuals, business bureaus (such as the BBB), and government entities regarding lead generation relating to GET IT FREE, and any corresponding response or investigation.

12.     GET IT FREE'S POLICIES for responding to complaints, including GET IT FREE'S intake, investigation, and tracking of complaints, and its development and

implementation of those POLICIES.  All DATABASES or computer software programs GET IT FREE uses to track complaints.

**THIS LITIGATION**

13.     GET IT FREE'S response to the two subpoenas it has received.

14.     GET IT FREE'S investigation into the lead(s) it provided related to the PLAINTIFF.

15.     GET IT FREE's investigation and any communications regarding this litigation with the VENDOR or THIRD PARTY that contacted the PLAINTIFF.

# EXHIBIT 7

1   Christopher S. Morris, Esq., SBN 163188
2   cmorris@morrislawfirmapc.com
    Jacob A. Gillick, Esq. 312336
3   jgillick@morrislawfirmapc.com
4   MORRIS LAW FIRM, APC
    501 West Broadway, Suite 1480
5   San Diego, CA 92101
6   Telephone: (619) 826-8060
    Facsimile: (619) 826-8065
7
8   Attorneys for Deponent GETITFREE.US

9                  UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11  TOBY HOY,                          | Case No. 4:21-cv-04875-YGR

12                      Plaintiff,     | **OBJECTIONS TO SUBPOENA TO**
                                       | **TESTIFY AT A DEPOSITION IN A**
13          v.                         | **CIVIL MATTER TO GETITFREE.US**

14
15  HI.Q, INC. d/b/a HEALTH IQ,

16                      Defendants.

17
18
19
20
21
22
23
24
25
26
27
28

                              1
OBJECTIONS TO SUBPOENA                    4:21-CV-04875-YGR

Please take notice that given the objections below, Responding Party will not be attending the deposition as scheduled. Responding Party further objects to this subpoena on the following grounds:

**DOCUMENT REQUEST:**

All documents responsive to the previously [sic] served subpoenas.

**RESPONSE TO DOCUMENT REQUEST:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression. To comply with the request would be an undue burden and expense on Responding Party. Furthermore, the request is calculated to annoy and harass Responding Party. Each request should be made with specificity.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

Responding Party also objects that these documents are available from a party Defendant and it is improper to be subpoenaing these documents from a third party.

## **TOPICS**

**GET IT FREE Business Structure**

1.    The general nature and scope of GET IT FREE'S business and/or services. This subject includes, but is not limited to, GET IT FREE'S business activities, daily operations, portfolio of services offered, and business model.

/ / /

/ / /

2

**OBJECTION/RESPONSE:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

**LEAD GENERATION**

2.      GET IT FREE'S process for obtaining telephone numbers that were sold to CEGE MEDIA or HEALTH IQ, including where such telephone numbers came from, who acquired them, how they were delivered and any audits or vetting done on them before they were delivered.

**OBJECTION/RESPONSE:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

OBJECTIONS TO SUBPOENA                                                    4:21-CV-04875-YGR

3. GET IT FREE's knowledge of and participation in the process of receiving and obtaining telephone numbers made by THIRD PARTIES it works with, including, but not limited to, CEGE MEDIA or HEALTH IQ.

**OBJECTION/RESPONSE:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

**RELATIONSHIP WITH CEGE MEDIA**

4. GET IT FREE's relationship or involvement with CEGE MEDIA, including, but not limited to:

a. The nature and scope of services provided by GET IT FREE to CEGE MEDIA and vice versa;

b. The negotiation, drafting, implementation, and all other aspects of any agreement or scope of work between GET IT FREE and CEGE MEDIA:

c. The day-to-day relationship between GET IT FREE and CEGE MEDIA including, but not limited to, the identities of any GET IT FREE employees who communicate with CEGE MEDIA regarding lead generation, the identities of employees of CEGE MEDIA with whom GET IT FREE communicates regarding lead generation, the

4

frequency of any meeting with GET IT FREE regarding lead generation, the frequency of any meetings with GET IT FREE regarding lead generation, and the typical content and form of any communications between GET IT FREE and CEGE MEDIA;

d.       Any training CEGE MEDIA provided to GET IT FREE related to lead generation;

e.       GET IT FREE'S disclosure to CEGE MEDIA regarding the method, manner, and means by which GET IT FREE promoted HEALTH IQ through lead generation;

f.       The scope of any access that CEGE MEDIA has to any GET IT FREE computer systems, equipment, or DATABASES used for purposes of lead generation; the type of such computer systems, equipment, or DATABASES to which CEGE MEDIA has access; the method, manner, and means by which CEGE MEDIA accesses such computer systems, equipment, or DATABASES; and

g.       Any financial incentives provided by or payments made by CEGE MEDIA to GET IT FREE.

**OBJECTION/RESPONSE:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

5

5.    All audits, investigations, inquiries, or studies (collectively "audits")
performed by CEGE MEDIA related to lead generation, including but not limited
to, when each audit was performed, who performed each audit, why each audit was
performed, which PERSONS were audited (YOU, THIRD PARTIES, or
VENDORS), why each PERSON was audited, and the results of each audit.

**OBJECTION/RESPONSE:**

Responding Party objects that this request is vague, ambiguous, and
overbroad as to content, scope, and time and constitutes unwarranted annoyance,
embarrassment, and oppression.

Responding Party objects that this request seeks disclosure of confidential
and proprietary business records/information, including but not limited to financial
information and information containing a third party's private information,
disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject
matter, beyond the scope of permissible discovery, and not reasonably calculated to
lead to the discovery of admissible evidence.

**RELATIONSHIP WITH HEALTH IQ**

6.    All aspects of HEALTH IQ'S relationship or involvement with GET
IT FREE, including but not limited to:

a.    The nature and scope of services provided by GET IT FREE to
HEALTH IQ;

b.    The negotiation, drafting, implementation, and all other aspects
of any agreement or scope of work between HEALTH IQ and Get it
Free;

c.    The day-to-day relationship between HEALTH IQ and GET IT
FREE, including, but not limited to, the identities of any HEALTH IQ
employees who communicate with Get it Free regarding lead

OBJECTIONS TO SUBPOENA                                    4:21-CV-04875-YGR

generation, the identities of employees of GET IT FREE with whom
HEALTH IQ communicates regarding lead generation, the frequency
of any meetings with GET IT FREE regarding lead generation, and the
typical content and form of any communications between HEALTH
IQ and GET IT FREE.

d.     Any training HEALTH IQ provided to Get it Free related to lead
generation;

e.     HEALTH IQ'S knowledge of the other third parties that GET IT
FREE contracted with for purposes of marketing HEALTH IQ'S
products or services;

f.     HEALTH IQ'S knowledge of the method, manner, and means
by which GET IT FREE acquired leads or prospective customers for
HEALTH IQ;

g.     The scope of HEALTH IQ'S knowledge or participation in
providing leads to GET IT FREE for purposes of lead generation;

h.     The scope of any access that GET IT FREE has to any
HEALTH IQ computer systems, equipment, or DATABASES to
which GET IT FREE has access; the method, manner, and means by
which GET IT FREE has access; and the method, manner, and means
by which GET IT FREE accesses such computer systems, equipment,
or DATABASES; and

i.     Any financial incentives provided by or payments made by
HEALTH IQ to GET IT FREE.

**OBJECTION/RESPONSE:**

Responding Party objects that this request is vague, ambiguous, and
overbroad as to content, scope, and time and constitutes unwarranted annoyance,
embarrassment, and oppression.

/ / /

OBJECTIONS TO SUBPOENA                                    4:21-CV-04875-YGR

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

7.    All audits, investigations, inquiries, or studies (collectively "audits") performed by YOU or for YOU related to lead generation, including, but not limited to, when each audit was performed, who performed each audit, why each audit was performed, which PERSONS were audited (YOU, THIRD PARTIES, or VENDORS), why each PERSON was audited, and the results of each audit.

**OBJECTION/RESPONSE:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.


**POLICIES**

8.    GET IT FREE'S POLICIES relating to lead generation, including POLICIES regulating actions by THIRD PARTIES that conduct lead generation for GET IT FREE.

OBJECTIONS TO SUBPOENA                                    4:21-CV-04875-YGR

**OBJECTION/RESPONSE:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

9. GET IT FREE'S POLICES, practices, and procedures relating to the Telephone Consumer Protection Act, 47 U.S.C. § 227, including, but not limited to, the rules, regulations, opinions, advisories, comments or filings of the Federal Commination Commission that relate to 47 U.S.C. § 227 and 47 C.F.R. § 64.1200(c)(2) & (d).

**OBJECTION/RESPONSE:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

///

OBJECTIONS TO SUBPOENA                                    4:21-CV-04875-YGR

1       10.   GET IT FREE'S efforts to ensure TCPA compliance by THIRD

2   PARTIES and VENDORS that conduct lead generation for GET IT FREE, and its

3   own employees (e.g., requiring compliance training, audits, procedures to ensure

4   appropriate consent).

5   **OBJECTION/RESPONSE:**

6       Responding Party objects that this request is vague, ambiguous, and

7   overbroad as to content, scope, and time and constitutes unwarranted annoyance,

8   embarrassment, and oppression.

9       Responding Party objects that this request seeks disclosure of confidential

10   and proprietary business records/information, including but not limited to financial

11   information and information containing a third party's private information,

12   disclosure of which would violate Article I, Sec. I of the California Constitution.

13       Responding Party further objects that the request is irrelevant to the subject

14   matter, beyond the scope of permissible discovery, and not reasonably calculated to

15   lead to the discovery of admissible evidence.

16

17   **COMPLAINTS & DO NOT CALL REQUESTS**

18       11.   Any complaints, grievances, investigations, or actual or threatened

19   litigation from private individuals, business bureaus (such as BBB), and

20   government entities regarding lead generation to GET IT FREE, and any

21   corresponding response or investigation.

22   **OBJECTION/RESPONSE:**

23       Responding Party objects that this request is vague, ambiguous, and

24   overbroad as to content, scope, and time and constitutes unwarranted annoyance,

25   embarrassment, and oppression.

26   / / /

27   / / /

28   / / /

OBJECTIONS TO SUBPOENA             4:21-CV-04875-YGR

1   Responding Party objects that this request seeks disclosure of confidential

2   and proprietary business records/information, including but not limited to financial

3   information and information containing a third party's private information,

4   disclosure of which would violate Article I, Sec. I of the California Constitution.

5   Responding Party further objects that the request is irrelevant to the subject

6   matter, beyond the scope of permissible discovery, and not reasonably calculated to

7   lead to the discovery of admissible evidence.

8   12.   GET IT FREE'S POLICIES for responding to complaints, including

9   GET IT FREE'S intake, investigation, and tracking of complaints, and its

10  development and implementation of those POLICIES.  All DATABASES or

11  computer software programs GET IT FREE uses to track complaints.

12  **OBJECTION/RESPONSE:**

13  Responding Party objects that this request is vague, ambiguous, and

14  overbroad as to content, scope, and time and constitutes unwarranted annoyance,

15  embarrassment, and oppression.

16  Responding Party objects that this request seeks disclosure of confidential

17  and proprietary business records/information, including but not limited to financial

18  information and information containing a third party's private information,

19  disclosure of which would violate Article I, Sec. I of the California Constitution.

20  Responding Party further objects that the request is irrelevant to the subject

21  matter, beyond the scope of permissible discovery, and not reasonably calculated to

22  lead to the discovery of admissible evidence.

23

24  **THIS LITIGATION**

25  13.   GET IT FREE'S response to the two subpoenas it has received.

26  **OBJECTION/RESPONSE:**

27  Responding Party objects that this request is vague, ambiguous, and

28  overbroad as to content, scope, and time and constitutes unwarranted annoyance,

11

embarrassment, and oppression. This also constitutes a breach of the attorney-client privilege.

     Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

     Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

     14.    GET IT FREE'S investigation into the lead(s) it provided related to the PLAINTIFF.

**OBJECTION/RESPONSE:**

     Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression. This also constitutes a breach of the attorney-client privilege.

     Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

     Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

     15.    GET IT FREE's investigation and any communications regarding this litigation with the VENDOR or THIRD PARTY that contacted the PLAINTIFF.

**OBJECTION/RESPONSE:**

     Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance,

OBJECTIONS TO SUBPOENA             4:21-CV-04875-YGR

1  embarrassment, and oppression. This also constitutes a breach of the attorney-client
2  privilege.

3      Responding Party objects that this request seeks disclosure of confidential
4  and proprietary business records/information, including but not limited to financial
5  information and information containing a third party's private information,
6  disclosure of which would violate Article I, Sec. I of the California Constitution.

7      Responding Party further objects that the request is irrelevant to the subject
8  matter, beyond the scope of permissible discovery, and not reasonably calculated to
9  lead to the discovery of admissible evidence.

**MORRIS LAW FIRM, APC**

Dated: December 20, 2021          _____

Jacob A. Gillick, Esq.
jgillick@morrislawfirmapc.com
Attorneys for Deponent GETITFREE.US

---

13

**PROOF OF SERVICE**

I, the undersigned, am employed in the county of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is 501 West Broadway, Suite 1480, San Diego, CA, 92101.

On December 20, 2021, I caused to be served the following document(s):

- **OBJECTIONS TO SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL MATTER TO GETITFREE.US**

on the parties in this action as follows:

| | |
|---|---|
| Anthony Paronich<br>Paronich Law, P.C.<br>350 Lincoln Street, Suite 2400<br>Hingham, MA 02043 | Attorneys for Plaintiff |
| PAUL ROSENTHAL<br>Kelley Drye & Warren LLP | Attorneys for Defendants |

☒  **BY EMAIL** – Based on an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the person at the electronic notification addresses listed above.

I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

Executed on December 20, 2021, at San Diego, California.

_____
Leanna Pierce

2

PROOF OF SERVICE                                                4:21-CV-04875-YGR

# EXHIBIT 8

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| TOBY HOY | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   4:21-cv-04875-YGR |
| | ) |
| HI.Q, INC. d/b/a HEALTH IQ | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                ZEETOGROUP, LLC

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See the attached Schedule A.

| Place:   Magna Legal Services via remote means | Date and Time: |
|---|---|
| | 1/24/2022 9:00 AM PST |

        The deposition will be recorded by this method:    Videographer and/or Stenographer

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:
          See the attached Schedule B.

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    1/09/2022

| *CLERK OF COURT* | |
|---|---|
| | OR |
| | /s/ Anthony I. Paronich |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Plaintiffs
                                                    , who issues or requests this subpoena, are:
Paronich Law, P.C., 350 Lincoln Street, Suite 2400, Hingham, MA 02043, anthony@paronichlaw.com, (617) 485-0018

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## DEPOSITION TOPICS SCHEDULE A

Unless otherwise indicated, the RELEVANT TIME PERIOD for the purposes of this Notice of Deposition is from four years prior to the filing of the Complaint in this matter to the present.

As used throughout this Notice of Deposition, the following terms have the following indicated meanings:

1.      The term "DOCUMENT" or "DOCUMENTS" as used herein shall refer to all writings as defined in Fed. R. Civ. P. 34(a)(1)(A), however produced or reproduced or archived or stored, within YOUR possession or subject to YOUR control, of which YOU have knowledge or to which YOU now have or previously had access, including all ELECTRONICALLY STORED INFORMATION.

2.      "ELECTRONICALLY STORED INFORMATION" ("ESI") as used herein means any electronic DOCUMENT or WRITTEN COMMUNICATION and includes, without limitation, the following:

a.      Activity listings of electronic mail receipts and/or transmittals;

b.      Output resulting from the use of any software program, including without limitation word processing DOCUMENTS, spreadsheets, DATABASE files, charts, graphs and outlines, electronic mail, text messages, AOL Instant Messenger (or similar program) or bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether such electronic data exist in an active file, deleted file, or file fragment; and

c.      Any and all items stored on computer memories, hard disks, network servers, individual computer workstations or clients, thumb drives, jump drives, CDs, DVDs, cloud servers, floppy disks, CD-ROM, magnetic tape, microfiche, or on any other vehicle for digital

data storage and/or transmittal, including without limitation a personal digital assistant, smartphone and/or tablet, e.g., iPhone, Droid, Blackberry, Galaxy, HTC, iPad, iPod, Kindle, Nook or other device.  PLAINTIFF requests that ESI be processed and produced in a manner that preserves all metadata and that the parties confer regarding the production of metadata and the form or any electronic production prior to the gathering or processing of ESI.

3.      "DATABASE" or "DATABASES" includes any collection of data defined so that it can be reorganized and accessed in a number of different ways; any collection of data for one or more purposes, usually in digital form; a comprehensive collection of related data organized for convenient access, generally in a computer; a collection of information that is organized so that it can easily be accessed, managed, and updated; or a structured set of data held in a computer

4.      "POLICY" or "POLICIES" means any instruction(s), practice, procedure, directive, routine, guideline, rule, course of conduct or code of conduct, written or unwritten, formal or informal, recorded or unrecorded, which were or have been recognized, adopted, issued or followed by YOU.

5.      "HEALTH IQ" means defendant HI.Q, INC. d/b/a HEALTH IQ, as well as any of its divisions, affiliates, subsidiaries, successors, predecessors, present or former partners, officers, directors, employees, agents, attorneys or representatives.

6.      "CEGE MEDIA" means the company you interact with regarding www.GET IT FREE.us, as well as any of its divisions, affiliates, subsidiaries, successors, predecessors, present or former partners, officers, directors, employees, agents, attorneys or representatives.

7.      "PLAINTIFF" means the Plaintiff in this action.

8.      "PERSON" or "PERSONS" means any individual, partnership, association, corporation, joint venture, governmental or administrative body, or other business or legal entities.

9.      "THIRD PARTY" or "THIRD PARTIES" or "OTHER PARTY" means any individual, partnership, association, corporation, joint venture, or other business or legal entity

2

not owned or controlled by YOU, or any PERSON that does not receive an annual salary from YOU, including but not limited to affiliates, agents, and subsidiaries of YOU.

10.     "VENDOR" or "VENDORS" is a subset of THIRD PARTY and when used in this deposition notice means any THIRD PARTY under contract with, hired by, employed by, paid by, or working for YOU for purposes of telemarketing activities or services, including, but not limited to, generating leads, warm transfers, hot transfers, any other call transfers, making outbound calls, and the tracking or aggregation of data related to same.  VENDORS specifically includes, but is not limited to, the entity that provided the PLAINTIFF's lead or called the PLAINTIFF.

11.     Topics that include the creation (including any sources of information or ESI), modification, use, ARCHITECTURE, and FUNCTIONALITY of any and all DATABASES include, but are not limited to, the following subtopics:

a.     The name of the system, its version, and platform on which it runs;

b.     Whether the systems store information on premises or on the cloud or a hybrid;

c.     The custodian of the data (CEGE, or any VENDOR or THIRD PARTY);

d.     The data used with each system;

e.     How stored data is accessed;

f.     Whether the systems archive information;

g.     Where the archives are stored;

h.     How data is archived;

i.     What reporting or analytics features do the systems have;

j.     What export features do the products have;

k.     What data fields do the products maintain; and

l.     Who is responsible for maintaining the systems.

12.     All other words shall have their ordinary definition as defined by Merriam-Webster's online dictionary, located at http://www.merriam-webster.com/.

## TOPICS

GET IT FREE.US is hereby directed to designate one or more officers, directors, managing agents, or other PERSONS to testify regarding the following topics:

**GET IT FREE Business Structure**

1.      The general nature and scope of GET IT FREE'S business and/or services.  This subject includes, but is not limited to, GET IT FREE'S business activities, daily operations, portfolio of services offered, and business model.

**LEAD GENERATION**

2.      GET IT FREE'S process for obtaining telephone numbers that were sold to CEGE MEDIA or HEALTH IQ, including where such telephone numbers came from, who acquired them, how they were delivered and any audits or vetting done on them before they were delivered.

3.      GET IT FREE's knowledge of and participation in the process of receiving and obtaining telephone numbers made by THIRD PARTIES it works with, including, but not limited to, CEGE MEDIA or HEALTH IQ.

**RELATIONSHIP WITH CEGE MEDIA**

4.      GET IT FREE's relationship or involvement with CEGE MEDIA, including, but not limited to:

                a.      The nature and scope of services provided by GET IT FREE to CEGE MEDIA and vice versa;

                b.      The negotiation, drafting, implementation, and all other aspects of any agreement or scope of work between GET IT FREE and CEGE MEDIA;

c. The day-to-day relationship between GET IT FREE and CEGE MEDIA, including, but not limited to, the identities of any GET IT FREE employees who communicate with CEGE MEDIA regarding lead generation, the identities of employees of CEGE MEDIA with whom GET IT FREE communicates regarding lead generation, the frequency of any meetings with GET IT FREE regarding lead generation, and the typical content and form of any communications between GET IT FREE and CEGE MEDIA;

d. Any training CEGE MEDIA provided to GET IT FREE related to lead generation;

e. GET IT FREE'S disclosure to CEGE MEDIA regarding the method, manner, and means by which GET IT FREE promoted HEALTH IQ through lead generation;

f. The scope of any access that CEGE MEDIA has to any GET IT FREE computer systems, equipment, or DATABASES used for purposes of lead generation; the type of such computer systems, equipment, or DATABASES to which CEGE MEDIA has access; and the method, manner, and means by which CEGE MEDIA accesses such computer systems, equipment, or DATABASES; and

g. Any financial incentives provided by or payments made by CEGE MEDIA to GET IT FREE.

5. All audits, investigations, inquiries, or studies (collectively "audits") performed by CEGE MEDIA related to lead generation, including, but not limited to, when each audit was performed, who performed each audit, why each audit was performed, which PERSONS were audited (YOU, THIRD PARTIES, or VENDORS), why each PERSON was audited, and the results of each audit.

**RELATIONSHIP WITH HEALTH IQ**

6.      All aspects of HEALTH IQ'S relationship or involvement with GET IT FREE, including, but not limited to:

> a.      The nature and scope of services provided by GET IT FREE to HEALTH IQ;

> b.      The negotiation, drafting, implementation, and all other aspects of any agreement or scope of work between HEALTH IQ and Get it Free;

> c.      The day-to-day relationship between HEALTH IQ and GET IT FREE, including, but not limited to, the identities of any HEALTH IQ employees who communicate with Get it Free regarding lead generation, the identities of employees of GET IT FREE with whom HEALTH IQ communicates regarding lead generation, the frequency of any meetings with GET IT FREE regarding lead generation, and the typical content and form of any communications between HEALTH IQ and GET IT FREE;

> d.      Any training HEALTH IQ provided to Get it Free related to lead generation;

> e.      HEALTH IQ'S knowledge of the other third parties that GET IT FREE contracted with for purposes of marketing HEALTH IQ'S products or services;

> f.      HEALTH IQ'S knowledge of the method, manner, and means by which GET IT FREE acquired leads or prospective customers for HEALTH IQ;

> g.      The scope of HEALTH IQ'S knowledge or participation in providing leads to GET IT FREE for purposes of lead generation;

> h.      The scope of any access that GET IT FREE has to any HEALTH IQ computer systems, equipment, or DATABASES used for purposes of lead generation; the type of such computer systems, equipment, or DATABASES to which GET IT FREE has access; and the method, manner, and means by which GET IT FREE accesses such computer systems, equipment, or DATABASES; and

i.      Any financial incentives provided by or payments made by HEALTH IQ to GET IT FREE.

7.      All audits, investigations, inquiries, or studies (collectively "audits") performed by YOU or for YOU related to lead generation, including, but not limited to, when each audit was performed, who performed each audit, why each audit was performed, which PERSONS were audited (YOU, THIRD PARTIES, or VENDORS), why each PERSON was audited, and the results of each audit.

**POLICIES**

8.      GET IT FREE'S POLICIES relating to lead generation, including any POLICIES regulating actions by THIRD PARTIES that conduct lead generation for GET IT FREE.

9.      GET IT FREE'S POLICIES, practices, and procedures relating to the Telephone Consumer Protection Act, 47 U.S.C. § 227, including, but not limited to, the rules, regulations, opinions, advisories, comments, or filings of the Federal Communications Commission that relate to 47 U.S.C. § 227 and 47 C.F.R. § 64.1200(c)(2) & (d).

10.     GET IT FREE'S efforts to ensure TCPA compliance by THIRD PARTIES and VENDORS that conduct lead generation for GET IT FREE, and its own employees (*e.g.*, requiring compliance training, audits, procedures to ensure appropriate consent).

**COMPLAINTS & DO NOT CALL REQUESTS**

11.     Any complaints, grievances, investigations, or actual or threatened litigation from private individuals, business bureaus (such as the BBB), and government entities regarding lead generation relating to GET IT FREE, and any corresponding response or investigation.

12.     GET IT FREE'S POLICIES for responding to complaints, including GET IT FREE'S intake, investigation, and tracking of complaints, and its development and

implementation of those POLICIES.  All DATABASES or computer software programs GET IT

FREE uses to track complaints.

**THIS LITIGATION**

13.     GET IT FREE'S response to the two subpoenas it has received.

14.     GET IT FREE'S investigation into the lead(s) it provided related to the

PLAINTIFF.

15.     GET IT FREE's investigation and any communications regarding this litigation

with the VENDOR or THIRD PARTY that contacted the PLAINTIFF.

## SCHEDULE A

### INSTRUCTIONS

1.  You are required to search not only for hard copy documents, but for electronically generated, maintained or stored information, including data that exist on your computers' hard drives, on computer servers to which you have access, in email accounts, in text messaging accounts, and all other places in which responsive electronic data may be stored.

2.  Where possible, all electronically generated, maintained or stored information should be produced in its native format and in a format compatible to litigation-support databases and review systems. Where possible, such documents should contain searchable text and searchable metadata in a load file format. File fidelity and resolution should not be downgraded; for instance, electronic files should not be printed and then scanned.

### DEFINITIONS

1.  When used in these Requests, "Defendant" means HI.Q, Inc. d/b/a Health IQ, including any subsidiaries or affiliated enterprises, and its officers, directors and employees.

2.  When used in these Requests, "you" or "your" (or synonyms thereof) means ZeetoGroup, LLC, including any subsidiaries or affiliated enterprises, and its officers, directors and employees. This includes, but is not limited to, Getitfree.us, and other websites owned by ZeetoGroup.

3.  "CEGE" means Enfuego Holdings LLC d/b/a Cege Media LLC, including any subsidiaries or affiliated enterprises, and its officers, directors and employees.

4.  Unless otherwise instructed, the requests are seeking documents from January 1, 2018 to the present.

336354

## REQUESTS

**Request No. 1:** To the extent you claim that your company obtained permission for automated calls or text messages concerning Defendant, produce all documents that identify:

      A.      Any signed writings evidencing that permission;

      B.      As it relates to any website visits that you assert are being used in place of signed writings:

            i.      All documents that evidence a clear and conspicuous statement that informed consumers of their right to withdraw their consent to receive telemarketing calls;

            ii.      All documents that evidence a clear and conspicuous statement that informed consumers of the procedures they must use to withdraw consent, and the procedures they may use to update their contact information that was used as a basis for any alleged consent to make telemarketing calls to them.

**Request No. 2:** To the extent you claim that your company obtained permission for automated calls or text messages concerning Defendant via websites:

      A.      Produce documents that identify those website(s) and the specific page(s) on those website(s) that you claim constitute consent or permission.

      B.      For any website identified in response to the prior request, produce all access, server and error logs and security and fraud alerts during the period you claim visits to that website constituted consent or permission to contact any putative class member with telemarketing calls.

      C.      For any website identified in response to the prior request, produce all architectural diagrams, wireframes and application mockups.

      D.      Produce all documents that identify the affiliate(s) compensated directly or indirectly by you for each purportedly consenting consumer.

      E.      Produce all documents that identify the referring URL from which each purportedly consenting consumer came to your website.

      F.      If any documents responsive to the requests in this Schedule A are in the hands of third parties, produce documents that identify those third parties

**Request No. 3:** All contracts or documents representing agreements with third parties, including subcontractors or affiliate companies, utilized to perform services for the Defendant or CEGE. This includes, but is not limited to, any affiliates that generate traffic at any of your websites.

**Request No. 4:** All internal correspondence regarding the Defendant or CEGE and the process of making calls, selling leads or selling telephone numbers to them or for them.

**Request No. 5:** All images, proof and other website architecture that demonstrates that the Defendant's name or any of their registered DBAs appeared on the websites for your company. This includes, but is not limited to, the following websites:

      try.getitfree-samples.com
      try.getitfreesamples.net
      try.getitfree.us
      try.get-itfree-samples.com
      try.getitfree-sample.com
      try.getyourfree-samples.com
      try.get-thefree-samples.com
      try.getyourfreesamplesnow.com
      try.getyourfreesampletoday.com
      try.getitfreesample.com

try.getyourfree-sample.com
try.getitfreessamples.com
try.get-yourfree-sample.com
try.get-it-freesample.com
try.get-it-freesamples.com
try.get-your-freesamples.com
try.getitfree-samples-today.com
try.evenmoresamples.com
try.get-itfree-sample.com
try.getitfreesamples-now.com
try.get-your-free-samples-now.com
try.get-it-free-sample.net
try.getitfree-sample-today.com
try.getitfreesamplestoday.com
try.get-your-free-samples.com
try.get-it-free-samplestoday.com
try.getitfree-samples-now.com

**Request No. 6:** Communications with any third party concerning the litigation captioned

on the subpoena.

# EXHIBIT 9

**Subject:** RE: ZeetoGroup Subpoena

**Date:** Tuesday, February 15, 2022 at 9:53:40 AM Pacific Standard Time

**From:** Anthony Paronich

**To:** Jacob Gillick

**CC:** Rosenthal, Paul A. (NJ), Leanna Pierce, Jennifer Murray

**Attachments:** GetItFree - Phone Numbers.xlsx

Jacob:

Attached is a list of the phone numbers attributed to the GetItFree websites we have located in the Cege production.

As indicated, we are not amenable to a sampling and believe that a complete production should be made.

While the rest of your e-mail is inaccurate, I'm not sure that it warrants a response other than to indicate that we expect any correspondence relating to this lawsuit will be produced as requested in the subpoena (Request No. 6).


----

Anthony Paronich

Paronich Law, P.C.

350 Lincoln Street, Suite 2400

Hingham, MA 02043

[o] (617) 485-0018

[c] (508) 221-1510

[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

---

**From:** Jacob Gillick <jgillick@morrislawfirmapc.com>

**Sent:** Tuesday, February 15, 2022 11:18 AM

**To:** Anthony Paronich <anthony@paronichlaw.com>

**Cc:** Rosenthal, Paul A. (NJ) <PaulRosenthal@kelleydrye.com>; Leanna Pierce <lpierce@morrislawfirmapc.com>; Jennifer Murray <jmurray@terrellmarshall.com>

**Subject:** Re: ZeetoGroup Subpoena

I must be lost because in my mind I am offering exactly what you all need but nobody wants it. Do you want to have a call today to discuss today/tomorrow? My understanding is we can prove that consumers saw Health IQ listed when opting into campaigns if we have their phone numbers. I already sent code which shows that Health IQ was disclosed as recently as 2022.

Thanks

# **EXHIBIT 10**

**Subject:** Re: ZeetoGroup Subpoena
**Date:** Friday, March 11, 2022 at 2:09:27 PM Pacific Standard Time
**From:** Anthony Paronich
**To:** Jacob Gillick
**CC:** Rosenthal, Paul A. (NJ), Leanna Pierce, Jennifer Murray

Jacob:

Thank you for providing this information. However, we do still intend to move forward with the motion unless your client makes a complete production to each of the document requests. The subpoena is not moot.

----
Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[c] (508) 221-1510
[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

On Thu, Mar 10, 2022 at 6:19 PM Jacob Gillick <jgillick@morrislawfirmapc.com> wrote:

Anthony:


Please see the attached declaration and corresponding production from Zeeto. We just received everything back from Jornaya and I apologize for this production backing up so close to the subpoena's opposition date. It was not intentional.


As you will see, my clients have done everything they reasonable can do to provide the relevant information. There is no doubt that Health IQ was disclosed and included as a marketing partner/affiliate. Outside of the attached, there is nothing else Zeeto can provide which would be relevant or helpful to either party.


I am willing to stipulate to an extension of the subpoena while you review the documents--if you are interested. In the event we are forced to respond on Monday, we will include our regular objections, and also argue that the subpoena is now moot. My clients have also given me authority to seek sanctions for the multiple subpoenas previously served but not enforced. Zeeto is willing to re-consider that position based on Plaintiff's next move.


Please let me know if you have any questions and please let me know how Plaintiff would like to move forward

# EXHIBIT 11

Christopher S. Morris, Esq., SBN 163188
cmorris@morrislawfirmapc.com
Jacob A. Gillick, Esq. 312336
jgillick@morrislawfirmapc.com
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone:  (619) 826-8060
Facsimile:  (619) 826-8065

Attorneys for Respondent Zeetogroup, LLC,

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

TOBY HOY,

                    Petitioner,

     v.

ZEETOGROUP, LLC,

                  Respondent.

Case No. 22cv151-LL-MDD

**DECLARATION OF SHAYNE CARDWELL**

DocuSign Envelope ID: 553182AA-AFAD-4ED2-B786-2CDEB857F497

1    I, Shayne Cardwell, declare as follows:

2    1.    I am the Chief Revenue Officer for ZeetoGroup, LLC ("Zeeto").  I

3    base everything in this declaration on my own knowledge.  If called to testify as to

4    the contents of this declaration, I could do so competently.

5    2.    I have been tasked with verifying Health IQ's disclosure on Zeeto's

6    "path" in response to a lawsuit filed by Anthony Hoy against Health IQ.

7    3.    By way of background, when a consumer clicks on a relevant

8    advertisement they are immediately taken to a "survey path" where the consumer is

9    asked to provide their contact information, consent to Zeeto's standard disclosures,

10   and then answer a short series of questions.  The answers provided by the consumer

11   may match them with an affiliate or advertiser, such as HealthIQ.

12   4.    On or around February 15, 2022, counsel for Plaintiff Anthony Hoy

13   provided my attorneys with a list of phone numbers allegedly produced by Cege

14   Media (aka PolicyScout).  I have been told that the over 24,000 phone numbers

15   produced represent the consumers that went down Zeeto's path.

16   5.    Shortly after receiving the information, I randomly choose 26 different

17   numbers to verify via our third-party vendor, Jornaya.  Jornaya provides a tool that

18   Zeeto integrates with its "survey path" that captures the consumer journey and

19   provides 3rd party certification, called LeadID, that includes a Visual Playback

20   validating the consumer's actions.  The final one is that of the alleged Plaintiff,

21   Anthony Hoy.  Attached hereto as "Exhibit 1" is a true and correct list of the

22   sample consumers randomly chosen by myself.

23   6.    I chose to sample 26 different consumers due to the burdensome and

24   lengthy process involved in retrieving the verifications.  I also felt a time constraint

25   given Anthony Hoy's filing of a Motion to Compel before providing the 24,000

26   numbers.

27   7.    After selecting the random numbers, I requested third party

28   verification reports, including Visual Playback, from Jornaya who specializes in

2

1  verifying TCPA consents. A true and correct copy of all Jornaya Reports received
2  in response are attached hereto as "Exhibit 2."

3      8.      Each of the Jornaya reports attached verify that the consumer
4  identified by Plaintiff's production opted in for marketing communications from
5  Health IQ. Further, each and every report has a link which allows the reviewer to
6  watch a video of the consumer's screen going through the consent process, or
7  Visual Playback.

8      9.      Included in the consent process is a point where the consumer is given
9  the opportunity to click on a link titled "affiliates." The reviewer of the Jornaya
10 videos can click that link directly from the video to see a list of the affiliates
11 disclosed. I have reviewed these links from the videos and have verified that
12 Health IQ was disclosed at the time the subject consumers provided consent.

13     10.     In order to further verify that Health IQ was disclosed during the
14 relevant period, I went through our coding logs to see if Health IQ had ever been
15 removed from the disclosed affiliates. It has not. Therefore, during the relevant
16 time period, each and every consumer who went through Zeeto's path would have
17 seen Health IQ listed as an affiliate.

18     11.     This is the extent of the information available from Zeeto to prove the
19 disclosure (or non-disclosure) of Health IQ during the relevant period. I have
20 reviewed all subpoenas served on Zeeto and believe that strict compliance with the
21 subpoena will cause a large burden on Zeeto without providing any further relevant
22 information.

23     I declare under penalty of perjury, under the laws of the United States and
24 California that the foregoing is true and correct. Executed this __10__ th day of
25 March, 2022, in San Diego, California.

26

27  

28                                        Shayne Cardwell

| Date | Advertiser Name | Campaign Name | Campaign Type | Property Name | Visit ID | concat | First Name | Last Name | Phone | Email | Device IP | Gender | Dob | Address | City | State | Zip Code | LeadID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/19/21 | policycout | final expense disability | soi phone | getitfree | 607d65306f745416a9a75bb5 | final expense disability_607d65306f745416a9a75bb5_607d65306f745416a9a75bb4 | sandra | jackson | 2022322773 | maejackson1981@gmail.com | 2607:fb90:68e7:4b6b:7ca3:6037:6006:da33 | female | 5/9/55 | 13125 larchdale rd | laurel | md | 20807 | 6c4ec912-b121-8452-46cc-3ddbf105c60c |
| 6/16/21 | policycout | gif - cege - final expense (m-f) | soi phone | getitfree | 60cee2c0cdb7c50ba2243a4c | gif - cege - final expense (m-f)_60cee2c0cdb7c50ba2243a4c_60cee2c0cdb7c50ba2243a4b | mike | sexton | 2767804782 | sextonmike46@gmail.com | 67.234.58.175 | male | 4/1/68 | 119 keisee lane | chilhowie | va | 24319 | 4e6b7b9e-aaaa-f91f-112b-80caaa2d070a |
| 5/14/21 | policycout | final expense disability | soi phone | getitfree | 609ebf8d27e1d033502e35d1 | final expense disability_609ebf8d27e1d033502e35d1_609ebf8d27e1d033502e35d0 | james | martinez | 3013122092 | jm1306201@gmail.com | 173.66.175.37 | male | 6/22/54 | 605 burgundy drive | rockville | md | 20850 | 2805dcce-ffd0-5d22-5c05-ade982cade53 |
| 1/3/21 | policycout | gif - cege - final expense (m-f) | soi phone | getitfree | 5ff206597ec2e75a303e25d6 | gif - cege - final expense (m-f)_5ff206597ec2e75a303e25d6_5ff206597ec2e75a303e25d5 | brenda | marquez | 3035071540 | bbbfamily@gmail.com | 172.103.36.97 | female | 10/11/60 | 900 s.1st street #32 | montrose | co | 81401 | 85da9e68-6c2e-24a8-5481-8f971bd6ef5f |
| 2/4/21 | policycout | gif - cege - medicare supplement (m-f) v2 | soi phone | getitfree | 601c73d86d2e765cd7845f98 | gif - cege - medicare supplement (m-f) v2_601c73d86d2e765cd7845f98_601c73d86d2e765cd7845f97 | beverly | anderson | 3604702931 | anderson.beverly850@yahoo.com | 2600:4380:90f0:2c66:1ffa:1cf:c674 | female | 5/5/48 | 9 poplar rd. #18 | montesano | wa | 98563 | f0984c57-27a8-0fc5-2a3c-75f86f6c7721 |
| 4/14/21 | policycout | final expense disability | soi phone | getitfree | 607760ece47f4c6bc61c6a99 | final expense disability_607760ece47f4c6bc61c6a99_607760ece47f4c6bc61c6a98 | dana | gilbert | 4055508530 | dana.gilbert7956@icloud.com | 8.48.251.84 | female | 7/9/56 | 2602 s.w 54th place | oklahoma city | ok | 73119 | 207dd6b2-55f2-b190-e214-e1786047978b |
| 7/25/21 | policycout | gif - cege - medicare supplement (m-f) v2 | soi phone | getitfree | 60fd2452495f9a63c6881f14 | gif - cege - medicare supplement (m-f) v2_60fd2452495f9a63c6881f14_60fd2452495f9a63c6881f13 | charles | rupert | 4195621041 | chuckraisic13@gmail.com | 2603:6011:1203:a800:a911:ffd5:b50b:8e45 | male | 11/20/55 | 1061-4 teel ave | bucyrus | oh | 44820 | 115a2fe0-1925-2a77-0b66-b7e575a7ee49 |
| 4/28/21 | policycout | gif - cege - final expense (m-f) | soi phone | getitfree | 6089e753df5ca406806749ee | gif - cege - final expense (m-f)_6089e753df5ca406806749ee_6089e753df5ca406806749ed | david | butler | 4789521982 | davebutler80@gmail.com | 216.119.59.247 | male | 12/20/66 | 725 south harris st. | sandersville | ga | 31082 | 57d8b815-552b-ed08-d46e-419224a13e2b |
| 6/7/21 | policycout | gif - cege - medicare supplement (m-f) v2 | soi phone | getitfree | 60bdef5d05d621b5cc839c1 | gif - cege - medicare supplement (m-f) v2_60bdef5d05d621b5cc839c1_60bdef5d05d621b5cc839c0 | roni | lyons | 5078846933 | dandyspns73@hotmail.com | 97.91.91.178 | female | 6/23/55 | 14-11th ave se | rochester | mn | 55904 | 0a11bb1f-109e-13ac-fae6-fd74a71766fe |
| 5/20/21 | policycout | gif - cege - medicare companion (m-f) | linkout | getitfree | 60a6801e27e1d033509b7361 | gif - cege - medicare companion (m-f)_60a6801e27e1d033509b7361_60a6801e27e1d033509b735c | joe | sparrow | 5138315013 | sparrowjoe74@gmail.com | 2603:6010:6e00:c6de:b1a9:4b7d:cb67:5629 | male | 1/24/44 | 5604 kay dr | milford | oh | 45150 | e88fdf07-5afa-f6ca-6d42-a0e37e6b8898 |
| 2/5/21 | policycout | gif - cege - medicare companion (m-f) v2 | soi phone | getitfree | 601df2442083ac203c9cc175 | gif - cege - medicare companion (m-f) v2_601df2442083ac203c9cc175_601df2442083ac203c9cc174 | joe | sparrow | 5138315013 | sparrowjoe74@gmail.com | 98.28.176.7 | male | 1/24/44 | 5604 kay dr | milford | oh | 45150 | d993f1037-159e-230b-6ffc-44bfed906079e |
| 9/8/20 | policycout | gif - cege - medicare companion (m-f) | linkout | getitfree | 5f57f1d98240904886a50df8 | gif - cege - medicare companion (m-f)_5f57f1d98240904886a50df8_5f57f1d98240904886a50df7 | joe | sparrow | 5138315013 | sparrowjoe74@gmail.com | 2605:a000:1317:a095:10f7:bc0a:5ad5:559d | male | 1/24/44 | 5604 kay dr | milford | oh | 45150 | 1b1ec6cc-b716-5251-537a-6d2a89fd8eed |
| 5/11/21 | policycout | gif - cege - medicare supplement (m-f) v2 | soi phone | getitfree | 609b3bd43c76294f86630073 | gif - cege - medicare supplement (m-f) v2_609b3bd43c76294f86630073_609b3bd43c76294f86630072 | linda | barton | 5405814028 | lbarton50@cox.net | 2600:8806:a60c:9d00:5912:757a:c25:72b4 | female | 9/14/47 | 5952 sierra drive | roanoke | va | 24012 | |
| 9/6/21 | policycout | gif - cege - medicare supplement (m-f) v2 | soi phone | getitfree | 6136e3cbf71dea2c35370866 | gif - cege - medicare supplement (m-f) v2_6136e3cbf71dea2c35370866_6136e3cbf71dea2c35370865 | follie | cobbs | 6014151886 | folliecobbs@aim.com | 2603:8000:4500:925c:59b3:1c97:721b:49a7 | female | 8/5/41 | | whittier | ca | 90601 | 494104b2-7d51-52d7-047a-54eb50ae3057 |
| 1/5/21 | policycout | final expense disability | soi phone | getitfree | 5ff500e718c6331e00fcf08a | final expense disability_5ff500e718c6331e00fcf08a_5ff500e718c6331e00fcf08a | john | martinez | 6572768733 | jmgabe7125@gmail.com | 2607:fb90:6978:6a5e:0:7:8131:e401 | male | 10/23/63 | 1120 acalea dr | alhambra | ca | 91801 | 3cea60cc-2003-89a4-38c8-1fd5ce2f4a9a |
| 1/5/21 | policycout | gif - cege - final expense (m-f) | soi phone | getitfree | 5ff500e718c6331e00fcf0bd | gif - cege - final expense (m-f)_5ff500e718c6331e00fcf0bd_5ff500e718c6331e00fcf0c8 | john | martinez | 6572768733 | jmgabe7125@gmail.com | 2607:fb90:6978:6a5e:0:7:8131:e401 | male | 10/23/63 | 1120 acalea dr | alhambra | ca | 91801 | 3cea60cc-2003-89a4-38c8-1fd5ce2f4a9a |
| 5/8/21 | policycout | gif - cege - final expense (m-f) | soi phone | getitfree | 6097742225b21d41e1d4d4dc | gif - cege - final expense (m-f)_6097742225b21d41e1d4d4dc_6097742225b21d41e1d4d4db | johnny | gardner | 6624914055 | gardnerservaire@gmail.com | 2607:fb90:d030:815a:84d9:fc8f:aa07:791b | male | 12/8/64 | 382 rd 2890 | baldwyn | ms | 38824 | 451e6838-2785-c9ac-38ae-f61530caa94e |
| 12/6/20 | policycout | gif - cege - medicare supplement (m-f) v2 | soi phone | getitfree | 5fce3ffda9e796a31707e3d8 | gif - cege - medicare supplement (m-f) v2_5fce3ffda9e796a31707e3d8_5fce3ffda9e796a31707e3d7 | danny | richardson | 7153058335 | drichard215@charter.net | 174.79.82.32 | female | 2/24/48 | 215 s state ave | marshfield | wi | 54449 | ac3a44d2-c75f-fe7d-5500-4ef0cf118953 |
| 1/8/21 | policycout | gif - cege - medicare supplement (m-f) v2 | soi phone | getitfree | 5ff9c08b7ec2e75a308dae43 | gif - cege - medicare supplement (m-f) v2_5ff9c08b7ec2e75a308dae43_5ff9c08b7ec2e75a308dae42 | jim | ascher | 7577182210 | 11612jim4@gmail.com | 2600:1009:b015:fdd4:b60b:6bc7:5e16:9a7c | male | 3/14/41 | 578 common rd | marshfield | wi | 44903 | 8743e5d4-f32a-b4c5-23e0-4ccc6739dbef |
| 5/10/21 | policycout | gif - cege - medicare companion (m-f) v2 | soi phone | getitfree | 60994ee37bc6697e7c5dd01d | gif - cege - medicare companion (m-f) v2_60994ee37bc6697e7c5dd01d_60994ee37bc6697e7c5dd01c | ronica | hite | 8606340872 | rhite40@hotmail.com | 75.134.232.133 | female | 9/25/40 | 291 jackson street | willimantic | ct | 6226 | 4611c921-dfd1-bff1-f7dd-79a660cf7489 |
| 11/28/20 | policycout | gif - cege - medicare supplement (m-f) v2 | soi phone | getitfree | 5fc3236cdc9e7f6a31966b0d | gif - cege - medicare supplement (m-f) v2_5fc3236cdc9e7f6a31966b0d_5fc3236cdc9e7f6a31966b0c | ronica | hite | 8606340872 | rhite40@hotmail.com | 75.134.232.133 | female | 9/25/40 | 291 jackson street | willimantic | ct | 6226 | 4fcf32dc-5cbb-acbe-e00e-71b4a0a6b34c |
| 1/2/21 | policycout | final expense disability | soi phone | getitfree | 5ff10657d52935ede965f8bc | final expense disability_5ff10657d52935ede965f8bc_5ff10657d52935ede965f8bb | mitzi | meddaier | 8705633137 | mm.meddermitz52@gmail.com | 174.250.196.149 | female | 6/28/65 | 2363 state hwy 108 | arbyrd | mo | 63821 | cdddd41f-f124-e48b-abe9-89b0c97d032 |
| 3/10/21 | policycout | gif - cege - medicare supplement (m-f) v2 | soi phone | getitfree | 60485438178565886a5eaa77 | gif - cege - medicare supplement (m-f) v2_60485438178565886a5eaa77_60485438178565886a5eaa76 | patricia | sperry | 9288998198 | psperry1373@cableone.net | 24.117.134.44 | female | 11/24/39 | 1750 knoll dr. | prescott | az | 86301 | a0a5ce23-0782-d9ce-74fe-136a2db23435 |
| 1/21/21 | policycout | gif - cege - final expense (m-f) | soi phone | getitfree | 6009ce711bcb31e00df0bcb | gif - cege - final expense (m-f)_6009ce711bcb31e00df0bcb_6009ce711bcb31e00df0bca | david | eaton | 9794177822 | eaton0701@outlook.com | 2607:fb90:5f95:c5ef:f49b:bf50:5492:f45c | male | 12/20/65 | 2895 cr 353 | brazoria | tx | 77422 | f882ca18-bddb-e5d8-60dd-0efadbafc823 |
| 11/19/20 | policycout | gif - cege - medicare supplement (m-f) v2 | soi phone | getitfree | 5fb6fcb3ed18a4fbbf66be2 | gif - cege - medicare supplement (m-f) v2_5fb6fcb3ed18a4fbbf66be2_5fb6fcb3ed18a4fbbf66be1 | bonnie | bluemlein | 9898469302 | mybuddy6111@yahoo.com | 2001:5b0:4bc1:6308:f032:515a:41b1:3355 | female | 8/15/43 | 6111 nine mile rd | bentley | mi | 48613 | e4bb1700-646a-2945-f690-c8ddab3cb6b6 |



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center. Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | 0A11B61F-33FE-13AC-FAEB-FD74A7176B9E |
| Event Date | 06/07/2021 |
| Event Time | 06:05:01 AM EDT |
| IP Address | 97.91.91.178 |
| Location (as indicated by IP address) | Rochester,MN |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/0A11B61F-33FE-13AC-FAEB-FD74A7176B9E?key=1623060302481

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

JORNAYA

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | 3CEA60CC-2003-89A4-38C8-1F565E2F4D8A |
| Event Date | 01/05/2021 |
| Event Time | 07:11:50 PM EST |
| IP Address | 172.58.21.185 |
| Location (as indicated by IP address) | Anaheim,CA |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/3CEA60CC-2003-89A4-38C8-1F565E2F4D8A?key=1609891921245

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | 4E6B7B9E-AAAA-F91F-112B-80CAAA2DD70A |
| Event Date | 03/24/2017 |
| Event Time | 12:32:23 PM EDT |
| IP Address | 50.149.221.237 |
| Location (as indicated by IP address) | Clintwood,VA |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | BY SUBMITTING YES, I CONSENT TO HAVE A REPRESENTATIVE FROM CREDIT PROS AND THEIR PARTNERS CONTACT ME AT THIS NUMBER I UNDERSTAND THESE CALLS MAY BE GENERATED USING AN AUTOMATED DIALER AND THAT MY CONSENT IS NOT REQUIRED AS A PRECONDITION FOR PURCHASING OR RECEIVING ANY PROPERTY, GOODS OR SERVICE. |
| Labeled TCPA Disclosure Statement captured at the lead event: | BY SUBMITTING YES, I GIVE REVOCABLE PERMISSION TO SHARE MY INFORMATION WITH YOUR DIABETIC SOURCE, DIABETIC SPECIALIST, DIABETIC CARE DELIVERED, DIABETIC DISCOUNT CLUB, ASSIST DIABETICS AND CONSULTING PHYSICIANS TO PROCESS MY REQUEST AND TO CALL ME BACK AT THIS NUMBER USING AN AUTOMATED TELEPHONE DIALING SYSTEM, EMAIL AND PRE-RECORDED MESSAGES. CONSENT IS NOT A CONDITION OF PURCHASE. |
| Labeled TCPA Disclosure Statement captured at the lead event: | BY SUBMITTING YES, I CONSENT TO HAVE A REPRESENTATIVE FROM BETTER HEALTH KARE CONTACT ME AT THIS NUMBER I UNDERSTAND THESE CALLS MAY BE GENERATED USING AN AUTOMATED DIALER AND THAT MY CONSENT IS NOT REQUIRED AS A PRECONDITION FOR PURCHASING OR RECEIVING ANY PROPERTY, GOODS OR SERVICE. *STD. CELL RATES MAY APPLY |
| Labeled TCPA Disclosure Statement captured at the lead event: | BY SUBMITTING YES, I CONSENT TO HAVE A REPRESENTATIVE FROM DEBT.COM CONTACT ME AT THIS NUMBER I UNDERSTAND THESE CALLS MAY BE GENERATED USING AN AUTOMATED DIALER AND THAT MY CONSENT IS NOT REQUIRED AS A PRECONDITION FOR PURCHASING OR RECEIVING ANY PROPERTY, GOODS OR SERVICE. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

| Labeled TCPA Disclosure Statement captured at the lead event: | BY SUBMITTING YES, I CONSENT TO HAVE A REPRESENTATIVE FROM HOME CARE DELIVERED CONTACT ME AT THIS NUMBER I UNDERSTAND THESE CALLS MAY BE GENERATED USING AN AUTOMATED DIALER AND THAT MY CONSENT IS NOT REQUIRED AS A PRECONDITION FOR PURCHASING OR RECEIVING ANY PROPERTY, GOODS OR SERVICE. |
|---|---|

**Visual Playback Link:**

https://vp.leadid.com/playback/4E6B7B9E-AAAA-F91F-112B-80CAAA2DD70A?key=1490373140622



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

| Lead Event Information: | |
|---|---|
| Universal LeadiD | 4F410D32-7D51-B3C7-047A-5DA650AE3057 |
| Event Date | 09/06/2021 |
| Event Time | 11:58:02 PM EDT |
| IP Address | 76.90.252.0 |
| Location (as indicated by IP address) | Hacienda Heights,CA |

| Disclosure Information: | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/4F410D32-7D51-B3C7-047A-5DA650AE3057?key=1630987083501

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDERNTAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | 5B1EC6CC-B716-5251-537A-62BD289D8EED |
| Event Date | 05/20/2021 |
| Event Time | 11:20:14 AM EDT |
| IP Address | 98.28.176.7 |
| Location (as indicated by IP address) | Milford,OH |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

**Visual Playback Link:**

https://vp.leadid.com/playback/5B1EC6CC-B716-5251-537A-62BD289D8EED?key=1621524014961

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | 6C4EC912-B121-8452-46CC-3DDBF105C60C |
| Event Date | 04/19/2021 |
| Event Time | 07:08:05 AM EDT |
| IP Address | 172.58.220.177 |
| Location (as indicated by IP address) | Chelsea,MA |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/6C4EC912-B121-8452-46CC-3DDBF105C60C?key=1618830491679

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | 57D8DB15-552B-ED08-D46E-419224A13E2B |
| Event Date | 04/28/2021 |
| Event Time | 06:49:20 PM EDT |
| IP Address | 216.119.59.247 |
| Location (as indicated by IP address) | Sandersville,GA |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/57D8DB15-552B-ED08-D46E-419224A13E2B?key=1619650175138

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | 115A2FE0-1925-2A77-0BB6-67E575A7EE49 |
| Event Date | 07/25/2021 |
| Event Time | 05:45:06 AM EDT |
| IP Address | 69.135.166.104 |
| Location (as indicated by IP address) | Bucyrus,OH |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/115A2FE0-1925-2A77-0BB6-67E575A7EE49?key=1627206327145

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | 451E4838-2785-C0AC-38AE-F61530CAA94E |
| Event Date | 05/09/2021 |
| Event Time | 02:10:19 AM EDT |
| IP Address | 172.58.145.22 |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/451E4838-2785-C0AC-38AE-F61530CAA94E?key=1620540619458

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORN AYA

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | 837A3000-8D51-0E90-80A1-539F3152BDF2 |
| Event Date | 07/28/2020 |
| Event Time | 09:26:28 AM EDT |
| IP Address | 184.53.0.248 |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/837A3000-8D51-0E90-80A1-539F3152BDF2?key=1595942790963

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | 855D0E68-6C2E-24A8-5481-8F9716ABEF5F |
| Event Date | 01/03/2021 |
| Event Time | 12:58:33 PM EST |
| IP Address | 172.103.36.97 |
| Location (as indicated by IP address) | Norwood,CO |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/855D0E68-6C2E-24A8-5481-8F9716ABEF5F?key=1609696725799

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center. Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

| Lead Event Information: | |
|---|---|
| Universal LeadiD | 2075D8B2-55F2-B190-E214-E17860479786 |
| Event Date | 04/14/2021 |
| Event Time | 11:17:03 PM EDT |
| IP Address | 8.48.251.84 |

| Disclosure Information: | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/2075D8B2-55F2-B190-E214-E17860479786?key=1618456624063

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | 2805DCCA-FFD0-5D22-5C05-ADE982CADE53 |
| Event Date | 05/14/2021 |
| Event Time | 02:17:57 PM EDT |
| IP Address | 173.66.175.37 |
| Location (as indicated by IP address) | Rockville,MD |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/2805DCCA-FFD0-5D22-5C05-ADE982CADE53?key=1621016278044

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | 7048BB55-B0E6-66F5-95D3-1DA97AC9726F |
| Event Date | 03/16/2021 |
| Event Time | 12:33:55 PM EDT |
| IP Address | 173.184.133.254 |
| Location (as indicated by IP address) | Albia,IA |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/7048BB55-B0E6-66F5-95D3-1DA97AC9726F?key=1615912437865

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using the service and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

JORNAYA

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

| **Lead Event Information:** | |
|---|---|
| Universal LeadiD | 8743E3D4-F32A-B4C5-23E0-4CCC6739D9EF |
| Event Date | 01/08/2021 |
| Event Time | 03:25:56 PM EST |
| IP Address | 174.233.135.219 |
| Location (as indicated by IP address) | West Chester,OH |

| **Disclosure Information:** | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/8743E3D4-F32A-B4C5-23E0-4CCC6739D9EF?key=1610137566730



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | 46111921-DFDD-BFF1-F7CD-79A660CF7489 |
| Event Date | 05/10/2021 |
| Event Time | 11:15:06 AM EDT |
| IP Address | 75.134.232.133 |
| Location (as indicated by IP address) | Coventry,CT |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

**Visual Playback Link:**

https://vp.leadid.com/playback/46111921-DFDD-BFF1-F7CD-79A660CF7489?key=1620659753328



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | A0CD5E23-0782-D9CE-74FE-136A2DB23435 |
| Event Date | 03/10/2021 |
| Event Time | 11:51:55 AM EST |
| IP Address | 24.117.134.44 |
| Location (as indicated by IP address) | Prescott Valley,AZ |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

[https://vp.leadid.com/playback/A0CD5E23-0782-D9CE-74FE-136A2DB23435?key=1615395115584](https://vp.leadid.com/playback/A0CD5E23-0782-D9CE-74FE-136A2DB23435?key=1615395115584)

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

JORNAYA

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

| Lead Event Information: | |
|---|---|
| Universal LeadiD | A4BB170D-646A-2945-FB90-C8DDA3C4D6B6 |
| Event Date | 11/19/2020 |
| Event Time | 06:13:43 PM EST |
| IP Address | 184.53.0.70 |

| Disclosure Information: | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/A4BB170D-646A-2945-FB90-C8DDA3C4D6B6?key=1605827628996

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | A98BF6F7-5A9A-F6CA-6D42-A0E37E086898 |
| Event Date | 02/05/2021 |
| Event Time | 01:44:31 PM EST |
| IP Address | 98.28.176.7 |
| Location (as indicated by IP address) | Milford,OH |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/A98BF6F7-5A9A-F6CA-6D42-A0E37E086898?key=1612550671903

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

JORNAYA

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

• Was a TCPA disclosure displayed or provided to the consumer?
• If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
• Did the disclosure language match the company's compliance standards?
• Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | AC3AEBB2-C75F-FE7D-5500-4EF0CF11B953 |
| Event Date | 12/06/2020 |
| Event Time | 08:58:38 AM EST |
| IP Address | 174.82.195.135 |
| Location (as indicated by IP address) | Marshfield,WI |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

**Visual Playback Link:**

https://vp.leadid.com/playback/AC3AEBB2-C75F-FE7D-5500-4EF0CF11B953?key=1607263119039



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using the service and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

**JORNAYA**

| Lead Event Information: | |
|---|---|
| Universal LeadiD | CD46B41F-F124-E448-A6E9-89B84C97D032 |
| Event Date | 01/02/2021 |
| Event Time | 06:47:18 PM EST |
| IP Address | 174.250.196.149 |
| Location (as indicated by IP address) | Springfield,MO |

| Disclosure Information: | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/CD46B41F-F124-E448-A6E9-89B84C97D032?key=1609631238858

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center. Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | D9935037-159E-230B-6FFC-4449A009079E |
| Event Date | 09/08/2020 |
| Event Time | 05:18:06 PM EDT |
| IP Address | 98.28.176.7 |
| Location (as indicated by IP address) | Loveland,OH |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/D9935037-159E-230B-6FFC-4449A009079E?key=1599599886710

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

**JORNAYA**

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | DC1A9CE9-0C16-D22E-E84B-0D976012E12C |
| Event Date | 06/15/2021 |
| Event Time | 02:52:19 PM EDT |
| IP Address | 73.115.253.98 |
| Location (as indicated by IP address) | Houston,TX |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | BY SUBMITTING YES, I CONSENT TO HAVE A REPRESENTATIVE FROM PERFECT HOME DEFENSE AN AUTHORIZED ADT, & FRONTPOINT DEALER CONTACT ME AT THIS NUMBER: 8328825259 I UNDERSTAND THESE CALLS MAY BE GENERATED USING AN AUTOMATED DIALER AND THAT MY CONSENT IS NOT REQUIRED AS A PRECONDITION FOR PURCHASING OR RECEIVING ANY PROPERTY, GOODS OR SERVICE. |
| Labeled TCPA Disclosure Statement captured at the lead event: | BY SUBMITTING THIS FORM, I AGREE THAT I AM 18+ YEARS OF AGE AND AGREE TO THIS WEBSITE'S PRIVACY POLICY (HTTPS://EQUOTO.COM/PRIVACY-POLICY) AND TERMS & CONDITIONS (HTTPS://EQUOTO.COM/TERMS-CONDITIONS) AND I ALSO HEREBY GIVE MY EXPRESS WRITTEN CONSENT TO RECEIVE MARKETING COMMUNICATIONS REGARDING A FINAL EXPENSE QUOTE VIA AUTODIALED CALLS AND/OR SMS/MMS, AND/OR PRE-RECORDED OR ARTIFICIAL VOICE CALLS EQUOTO AND/OR ONE OR MORE OF ITS MARKETING PARTNERS (HTTPS://EQUOTO.COM/PARTNERS) AT 8328825259 AND/OR E-MAIL ADDRESS PROVIDED TO US, INCLUDING WIRELESS NUMBERS, IF APPLICABLE, EVEN IF I HAVE PREVIOUSLY REGISTERED THE PROVIDED NUMBER ON THE DO NOT CALL REGISTRY. CARRIER SMS/MMS AND DATA MESSAGING RATES MAY APPLY. THIS CONSENT IS NOT REQUIRED AS A CONDITION TO PURCHASE SERVICES OR PRODUCTS. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

| Labeled TCPA Disclosure Statement captured at the lead event: | BY CLICKING THE "YES" BUTTON BELOW, I AGREE TO THIS WEBSITE'S PRIVACY POLICY, AND PROVIDE MY SIGNATURE EXPRESSLY AUTHORIZING UP TO THREE INSURANCE COMPANIES OR THEIR AGENTS OR PARTNER COMPANIES INCLUDING CEGE MEDIA, GUIDETOINSURE, INSUREALIFE AND POLICYSCOUT TO CONTACT ME AT THE EMAIL ADDRESS OR 8328825259 WITH INSURANCE QUESTIONS OR TO MARKET THEIR PRODUCTS OR SERVICES. I AGREE TO RECEIVE COMMUNICATIONS VIA LIVE, AUTOMATED TELEPHONE DIALING SYSTEM, PRERECORDED MESSAGE, OR TEXT MESSAGE AND ACKNOWLEDGE THAT CONSENT IS NOT A CONDITION TO PURCHASE GOODS OR SERVICE. |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | BY CLICKING YES, I CONSENT TO BE CONTACTED BY PHONE, TEXT MESSAGE OR EMAIL BY PATHEMA GX LAB, PATHEMA RX AND/OR PATHEMA DME FOR THE PURPOSE OF COORDINATING HEALTH SERVICES. I WILL RECEIVE TREATMENT FROM A NETWORK PARTICIPANT ONLY IF MEDICALLY NECESSARY. I CONSENT TO RECEIVING A MONITORED AND RECORDED PHONE CALL, TEXT, OR EMAIL IN CONNECTION WITH MY REQUEST AT THE EMAIL AND/OR PHONE NUMBER PROVIDED8328825259 (WHICH MAY INCLUDE A LANDLINE OR CELLULAR NUMBER) GENERATED FROM AN AUTOMATED DIALING SYSTEM USING PRE-RECORDED MESSAGES TO THE PHONE NUMBER PROVIDED REGARDLESS OF MY INCLUSION ON ANY STATE OR FEDERAL DO NOT CALL LISTS. I CONSENT TO ALL PHONE CALLS BEING RECORDED AND MONITORED FOR QUALITY ASSURANCE. YOU ARE NOT REQUIRED TO PURCHASE ANY GOODS OR SERVICES AND CONSENT IS NOT A CONDITION OF PURCHASE FROM A NETWORK PARTICIPANT. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/DC1A9CE9-0C16-D22E-E84B-0D976012E12C?key=1623783145981

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | DFCF2CBC-5CBB-ACBE-E00E-716B40A6B34C |
| Event Date | 11/28/2020 |
| Event Time | 11:23:50 PM EST |
| IP Address | 75.134.232.133 |
| Location (as indicated by IP address) | Coventry,CT |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

**Visual Playback Link:**

https://vp.leadid.com/playback/DFCF2CBC-5CBB-ACBE-E00E-716B40A6B34C?key=1606623858586

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | F882CA18-BD4B-A5D8-40D4-0EFAD8AFC823 |
| Event Date | 01/21/2021 |
| Event Time | 01:54:41 PM EST |
| IP Address | 172.58.100.146 |
| Location (as indicated by IP address) | Houston,TX |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

**Visual Playback Link:**

https://vp.leadid.com/playback/F882CA18-BD4B-A5D8-40D4-0EFAD8AFC823?key=1611255284695

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY



CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using theservice and information provided hereunder, you represent and warrant that (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

JORNAYA

# Guardian TCPA Report

**Prepared for Zeeto Media**

**What is a lead?**

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

**Who is Jornaya?**

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

**How does Jornaya help keep companies TCPA Compliant?**

As a neutral, 3rd party witness to the events that take place on the website or a call center, Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

## Lead Event Information:

| | |
|---|---|
| Universal LeadiD | FD984C57-27A8-09C5-2A3C-75F8D6FC7721 |
| Event Date | 09/16/2018 |
| Event Time | 07:56:40 PM EDT |
| IP Address | 98.225.54.0 |
| Location (as indicated by IP address) | Montesano,WA |

## Disclosure Information:

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | BY SUBMITTING YES, I CERTIFY THAT I GIVE PERMISSION TO BE CONTACTED FOR MARKETING PURPOSES BY A REPRESENTATIVE FROM LEGACY QUOTE, GERBER LIFE INSURANCE COMPANY, ALLIED INSURANCE SERVICES, AND/OR ANY THIRD PARTY PARTNERS, REGARDLESS OF MY STATUS ON ANY STATE OR FEDERAL DO NOT CALL LIST, BY AUTOMATED CALLS, PRE-RECORDED MESSAGES, AND/OR BY EMAIL. CONSENT IS NOT A CONDITION OF PURCHASE AND I AGREE TO THE PRIVACY POLICY AND TERMS OF USE I UNDERSTAND THESE CALLS MAY BE GENERATED USING AN AUTOMATED DIALER AND THAT MY CONSENT IS NOT REQUIRED AS A PRECONDITION FOR PURCHASING OR RECEIVING ANY PROPERTY, GOODS OR SERVICE. |

**Visual Playback Link:**

https://vp.leadid.com/playback/FD984C57-27A8-09C5-2A3C-75F8D6FC7721?key=1537142204228

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

# EXHIBIT 10

Beth E. Terrell, CSB #178181
Email: bterrell@terrellmarshall.com
Attorney for Petitioner
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603

[Additional Counsel Appear on Signature Page]

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOBY HOY, individually and on behalf all others similarly situated,<br><br>                    Petitioner,<br><br>        v.<br><br>ZEETOGROUP, LLC,<br><br>                    Respondent. | Case No. 3:22-cv-00151-LL-MDD<br><br>**REPLY IN SUPPORT OF PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC.**<br><br>JUDGE:        HON. MITCHELL D. DEMBIN<br>DATE:        TBD<br>TIME:        TBD<br>COURTROOM:  SUITE 1180 |

REPLY IN SUPPORT OF PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH
OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC.

1       **I.      INTRODUCTION**

2           On March 10, 2022, a month after Petitioner Toby Hoy filed his motion to

3   compel, Respondent ZeetoGroup, LLC (Zeeto) produced a declaration from its

4   Chief Revenue Officer, Shayne Cardwell, attaching twenty-six individual lead

5   reports that Zeeto claims moot Mr. Hoy's motion and prove Health IQ was on the

6   list of marketing partners. But Mr. Cardwell's declaration is riddled with

7   inaccuracies and Zeeto's production of documents cannot moot a request for

8   deposition. The twenty-six lead reports show nothing about the more than

9   244,000 (not 24,000) other leads that originated on Zeeto's website.

10          Zeeto offers a hodgepodge of additional objections to producing

11  documents and a corporate designee, none of which have merit. First, Mr. Hoy

12  conferred extensively with Zeeto before and after this motion was filed. And

13  during those conferences, Zeeto declined to identify responsive documents or

14  discuss how to efficiently produce the information Mr. Hoy needs. Second,

15  Zeeto's burden objections are wholly unsubstantiated and entirely insufficient to

16  preclude the discovery Mr. Hoy seeks. Finally, Zeeto's confidentiality objections

17  provide no basis for refusing to respond to valid subpoena. The protective order

18  in the underlying litigation will shield any confidential information from

19  disclosure.

20          The Court should overrule Zeeto's objections and order it to produce

21  responsive documents and appear at a deposition.

22          **II.      REPLY**

23          The underlying litigation is a proposed TCPA class action with millions of

24
REPLY IN SUPPORT OF PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH
OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC - 1

1   proposed class members. Health IQ has asserted as an affirmative defense that it

2   had express or implied consent to send text messages to the class. Mr. Hoy issued

3   subpoenas to Zeeto after Health IQ and its marketing partner, Enfuego, produced

4   evidence that the lead for Mr. Hoy—and the alleged consent that accompanied

5   that lead—originated from Zeeto's websites. Neither Health IQ nor Enfuego have

6   evidence that Mr. Hoy (or any other class member whose lead originated through

7   a Zeeto website) consented to receive texts from Health IQ, as the TCPA requires.

8   The evidence establishing what class members consented to resides with Zeeto,

9   the owner of the websites where the leads originated.

10      Whether proposed class members consented to receive calls from Health

11   IQ and how that consent was obtained will be central issues in the underlying

12   litigation, both at class certification and on the merits. *See Williams v. Pillpack LLC*,

13   C19-5282, 2021 WL 535215, at *6 (W.D. Wash. Feb. 21, 2021) (finding

14   predominance satisfied because there was "little or no variation" in the method

15   of consent). And Enfuego's records show that more than 244,000 (not 24,000)

16   leads Health IQ used to text proposed class members originated from Zeeto's

17   websites. ECF No. 7 (Health IQ's Response) at 2; *see also* ECF No. 1-3 (Paronich

18   Decl.) ¶ 9. Zeeto has sole possession of information that could significantly impact

19   the claims of hundreds of thousands of proposed class members. Health IQ

20   agrees. *See* ECF No. 7 at 2 ("[Zeeto's] production confirms that ZeetoGroup has

21   unique evidence relevant to the claims and defenses at issue in the underlying

22   litigation."). A classwide production is necessary now, because the fact discovery

23   cut off is set for July 1, 2022, *Hoy v. Hi Q., Inc.*, No. 4:21-cv-04875, ECF No. 41,

24

REPLY IN SUPPORT OF PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH
OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC - 2

(N.D. Cal. Jan. 26, 2022), and the court in the underlying litigation declined to bifurcate discovery. Zeeto should be ordered to fully and promptly respond to the subpoena and appear for a remote deposition.

**A. Mr. Hoy met and conferred with Zeeto before and after the motion to compel was filed.**

Mr. Hoy met and conferred with Zeeto by telephone and in writing on multiple occasions. Zeeto made clear on February 3, 2022, that it would not produce documents or a corporate witness in response to the subpoena and was unwilling to negotiate. ECF No. 1-10 (Paronich Decl., Ex. 7) at 62–63. Even after Zeeto ended the discussion, Mr. Hoy tried to narrow the issues that would need to be addressed by motion. *Id*. at 61–62. To no avail. On February 7, Zeeto's counsel responded that he still did not see "why [this discovery] needs to come from us/cannot come from a party to the action." *Id*. at 60–61. HealthIQ's counsel answered that question clearly: "the [lead] flow information is solely in the possession of Zeeto, and may be 'dynamic' so there isn't one clear flow that we could re-create ourselves." *Id*. at 59–60. And when Zeeto did not respond, Mr. Hoy filed his motion to compel on February 11, 2022.

Zeeto's response avoids any mention of Mr. Hoy's extensive efforts to confer prior to filing his motion. Instead, Zeeto argues that Mr. Hoy's motion is deficient because he did not meet and confer regarding the documents Zeeto produced a month after his motion was filed. But Mr. Hoy *did* confer with Zeeto regarding its proposal to produce the Jornaya reports. On February 14, 2022, presumably after reviewing Mr. Hoy's motion, Zeeto offered, for the first time, to

1   produce what it called third party verifications for around 20 telephone numbers.

2   Supplemental Declaration of Anthony I. Paronich (Supp. Paronich Decl.) ¶ 2; *see*

3   *also* ECF No. 8-1 at 78–187 (Gillick Decl., Ex. 11). Zeeto requested that Mr. Hoy

4   send over some telephone numbers, and on February 15, Mr. Hoy provided Zeeto

5   with the full list of numbers attributed to Zeeto's websites. Supp. Paronich Decl.

6   ¶ 2.

7         After inquiring about the details of Zeeto's proposal, Mr. Hoy rejected it. *Id*.

8   ¶ 3. A sample of 20 third-party reports from the more than 244,000 leads that

9   originated on Zeeto's websites is simply not sufficient. *Id*. And Zeeto's counsel

10  declined to do more, replying that he would just respond to Mr. Hoy's motion

11  that Zeeto had produced the sample Mr. Hoy rejected, which is exactly what

12  Zeeto did. *Id*. ¶ 4. The parties are at impasse. No further efforts to confer were

13  required.

14  **B.    Mr. Hoy did not serve four "nearly identical" subpoenas.**

15        Zeeto's suggestion that Mr. Hoy served multiple, substantively identical

16  subpoenas is false. On September 7, 2021, while Health IQ's request for

17  bifurcation was pending, Plaintiff served a subpoena seeking documents relating

18  to Mr. Hoy and his telephone number. ECF No. 8-1 at 4–9 (Gillick Decl., Ex. 1). On

19  September 20, 2021, despite the limited scope of the subpoena, Zeeto's served

20  objections and refused to produce any documents. ECF No. 8-1 at 10–18 (Gillick

21  Decl., Ex. 2). Zeeto did not move to quash or for a protective order.

22        After the Court denied Health IQ's request for bifurcation, Mr. Hoy asked

23  Zeeto's outside counsel to accept service of a deposition subpoena. Counsel

24

REPLY IN SUPPORT OF PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH
OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC - 4

1  responded that he would accept service and "determine the correct employee to

2  produce." Supp. Paronich Decl., Ex. 8 at 77.

3      On November 29, 2022, Mr. Hoy sent Zeeto the deposition topics to allow

4  Zeeto to identify a deponent and provide availability in advance of service.

5  Zeeto's claim that Mr. Hoy attempted to pass off the topics as a subpoena is a

6  fabrication. *Id*. at 74–75 ("I was working with you to coordinate a date before

7  sending the formal subpoena over, which is why I sent the Schedule A so you

8  could know what witness or witnesses you would need to produce in order to

9  work on scheduling."). On December 8, 2021, after reviewing the topics, Zeeto

10  conveyed that it felt a deposition on any topic was improper and that Mr. Hoy

11  should serve the subpoena and set a reasonable date so that Zeeto could object.

12  *Id*. at 74–75.

13      Mr. Hoy served the subpoena on December 9 and set the deposition for

14  December 23, 2021. ECF No. 8-1 at 33 (Gillick Decl., Ex. 6). Zeeto objected on

15  December 20, 2021, and refused to produce documents or a corporate witness.

16  *Id*. at 44–57 (Gillick Decl., Ex. 7)

17      On January 9, 2021, Mr. Hoy served the subpoena at issue in this

18  enforcement action. The subpoena seeks both documents and a deposition

19  relating to class members whose leads originated on Zeeto's website. Zeeto again

20  refused to produce any documents or a corporate witness.

21  **C.    Zeeto's post-motion production is deficient on its face and does not moot
        any part of Mr. Hoy's subpoena.**
22

23  Zeeto's production consists of twenty-six lead verification reports from

24

1  Lead Intelligence, Inc. dba Jornaya, a third party company that ostensibly tracks

2  "the origin and history of a lead event." *See* ECF No. 8-1 at 83 (Gillick Decl., Ex.

3  11). Zeeto argues that these reports purportedly prove that proposed class

4  members "opted in to have their information shared with . . . *Policyscout*," ECF

5  No. 8 at 2 (emphasis added). Zeeto notably does not say that proposed class

6  members opted in to be called by Health IQ. ECF No. 8 at 2. Mr. Cardwell's

7  declaration takes a different position, claiming—incorrectly—that the 26 Jornaya

8  reports confirm that "each and every consumer" consented to be called by Health

9  IQ. But the reports don't even establish that the consumers for whom the reports

10  were generated provided such consent. And they have nothing to say about the

11  alleged consent provided by any of the more than 244,000 other leads that

12  originated on Zeeto's websites.

13       Mr. Cardwell's declaration is deeply flawed. **First**, while Mr. Cardwell claims

14  that he randomly selected 26 different consumers as a sample, the list of leads

15  that were "randomly" selected includes multiple duplicates. *See* ECF No. 8-1 at 81

16  (Gillick Decl., Ex. 11). **Second**, the Jornaya report that Mr. Cardwell claims

17  establishes Mr. Hoy provided consent includes completely different consent

18  language than the lead produced by Enfuego. *Compare* ECF No. 8-1 at 186 (Gillick

19  Decl., Ex. 11) *with* ECF No. 1-7 at 2 (Paronich Decl., Ex 4). Mr. Cardwell's cursory

20  explanation of how Jornaya's "tool" is "integrate[d]" in its "survey path" provides

21  no information that would explain this mismatch. ECF No. 8-1 at 80 (Gillick Decl.,

22  Ex. 11) ¶ 5.

23       **Third**, Mr. Cardwell's statement that he reviewed the videos, clicked on the

24

1    marketing partners link for each, and verified that Health IQ was disclosed

2    appears to be false. Twenty-one of the twenty-six Jornaya report "videos" Zeeto

3    produced *do not* have an accessible marketing partners list that includes Health

4    IQ. The link to the video in one Jornaya report leads to an error message, so the

5    video could not be reviewed. Declaration of Jodi Nuss Schexnaydre ¶¶ 5–6.

6    Sixteen videos do not have a marketing partners link in the TCPA consent

7    language at all. *Id*. ¶ 7, Exs. 2–17. Two videos ended before the TCPA consent

8    language was presented to the consumer. *Id*. ¶ 8. And two videos included links

9    to an marketing partners list, but gave an error code when the link was clicked. *Id*.

10    ¶ 9.

11    **Fourth**, for the 5 recordings with links to a marketing partners list that

12    includes Health IQ, it appears that one or more of the linked lists were modified

13    to add Health IQ after the January 9 subpoena was served. In late January 2022,

14    Mr. Hoy captured screenshots of the marketing partner links for many of Zeeto's

15    websites. *Id*. ¶ 11. All of the links Mr. Hoy captured in late January linked to a

16    marketing partners list that did not include Health IQ. *Id*. ¶ 18. Yet, at least one

17    the Jornaya videos that originate from links Mr. Hoy captured now includes

18    Health IQ as a partner. *Id*. ¶¶ 12–17; *compare id*., Ex. 21 *with* Ex. 24; and Ex. 22

19    *with* Ex. 23. If Zeeto's "coding logs" establish that Health IQ was never removed

20    from the marketing partner list as Mr. Cardwell testifies, ECF No. 8-1 at 79 (Gillick

21    Decl., Ex. 11) ¶ 10, the most logical explanation for the discrepancy is that Health

22    IQ was added to the list *after* the screenshots were taken. Notably, Mr. Cardwell's

23    declaration does not identify when Health IQ was added to the list.

24

Mr. Hoy's motion is anything but moot. Zeeto ignores that the subpoena requires it to appear for deposition, an obligation documents cannot fulfill. And Zeeto's deficient production raises many more questions than it answers. At best, Mr. Cardwell's declaration is misleading. There is nothing in the Jornaya reports to support Zeeto's position that "each and every consumer" saw Health IQ listed as a marketing partner. Mr. Cardwell's declaration underscores the need for a full production and a comprehensive corporate deposition to explore Zeeto's lead generation processes.

**D.      Zeeto has not established undue burden and its confidentiality objections should be overruled.**

Zeeto complains that "[n]o effort has been made to explain how this is not a burdensome production." ECF No. 8 at 8. But it is Zeeto's burden to "specifically show how each request for production is . . . overbroad, burdensome or oppressive." *Katz v. Shell Energy N. Am. (US), LP*, --- F.Supp.3d ---, 2021 WL 4477626, at *2 (D. Mass. Sept. 30, 2021) (granting motion to enforce subpoena). Zeeto's conclusory allegations that responding would be "burdensome" and take "hundreds of man hours" do not satisfy that burden. *See Scientific Games Corp. v. AGS LLC,* 2017 WL 3013251, at *2 (D. Nev. Jul. 13, 2017) (explaining that "[c]onclusory or speculative statements of harm, inconvenience, or expense are plainly insufficient" to satisfy the objecting party's burden of persuasion when responding to a subpoena.).

Moreover, Zeeto has consistently refused to provide any explanation of what information it has that might be responsive, much less how it could be

1    produced. As a prime example, Mr. Cardwell's declaration describes "coding logs"

2    that are clearly relevant and responsive to the subpoena, but were never

3    identified. Zeeto has simply refused to engage in any meaningful discussion about

4    how to efficiently produce the information Mr. Hoy needs. It cannot now

5    complain that Mr. Hoy failed to take reasonable steps to avoid undue burden by

6    seeking a complete response. Zeeto has a significant relationship to a class action

7    with billions of dollars in controversy. it cannot simply refuse to respond to a valid

8    subpoena. *Apple, Inc. v. Samsung Elecs. Co. Ltd.*, 2013 WL 1942163, at *3 (N.D.

9    Cal. May 9, 2013) ("Third-party status does not confer a right to obfuscation or

10   obstinacy.").

11        Zeeto's confidentiality objections fair no better. The protective order in the

12   underlying litigation explicitly protects information produced by non-parties.

13   There is simply no basis to withhold documents on confidentiality grounds. The

14   court should overrule Zeeto's conclusory objections. *See Hancock v. Credit Pros*

15   *Int'l Corp.*, 2021 WL 2948154, at *8–11 (D.N.J. Jul. 13, 2021) (explaining that

16   courts "routinely overrule" confidentiality objections when protective orders are

17   in place).

18   **E.    In the alternative, transfer is appropriate.**

19        Rather than address Mr. Hoy's argument that exceptional circumstances

20   exist, Zeeto argues that transfer would improperly give Mr. Hoy a second bite at

21   the apple. This argument ignores the substance of Mr. Hoy's request. Mr. Hoy

22   asks that the Court allow Judge Gonzalez Rogers to rule on appropriate scope of

23   the subpoena if the Court intends to meaningfully limit Mr. Hoy's access to

24

REPLY IN SUPPORT OF PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH
OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC - 9

discovery. Allowing Judge Gonzalez Rodgers to rule on how, if at all, the subpoena should be narrowed will promote the "uniformity of discovery rulings . . . critical to achieving fairness" for both parties and non-parties in complex litigation. *Chinitz v. Intero Real Estate Servs.*, 2020 WL 806177, at \*2 (W.D. Tex. Feb. 14, 2020).

### III. CONCLUSION

For the foregoing reasons, Mr. Hoy respectfully asks the Court to grant his motion to compel and order Zeeto to produce responsive documents and testify at a remote deposition.

RESPECTFULLY SUBMITTED AND DATED this 21st day of March, 2022.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Beth E. Terrell, CSB #178181
    Beth E. Terrell, CSB #178181
    Email: bterrell@terrellmarshall.com
    Jennifer Rust Murray, *Pro Hac Vice Forthcoming*
    Email: jmurray@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103
    Telephone: (206) 816-6603

    Anthony I. Paronich, *Pro Hac Vice Forthcoming*
    Email: anthony@paronichlaw.com
    PARONICH LAW, P.C.
    350 Lincoln Street, Suite 2400
    Hingham, MA 02043
    Telephone: (617) 485-0018
    Facsimile: (508) 318-8100

    *Attorneys for Petitioner*

REPLY IN SUPPORT OF PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC - 10

CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on March 21, 2022, I caused true and

correct copies of the foregoing to be served via CM/ECF notification upon the

following:

       Paul A. Rosenthal (State Bar No. 338994)
       KELLEY DRYE & WARREN LLP
       One Jefferson Road, 2nd Floor
       Parsippany, NJ 07054
       Telephone: (973) 503-5943
       Facsimile: (973) 503-5950
       Email: paulrosenthal@kelleydrye.com

       *Attorneys for Hi.Q, Inc. d/b/a Health IQ*

DATED this 21st day of March, 2022.

       By: /s/ Beth E. Terrell, CSB #178181
          Beth E. Terrell, CSB #178181

REPLY IN SUPPORT OF PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH
OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC - 11

# EXHIBIT 11

**KELLEY DRYE & WARREN LLP**
Paul A. Rosenthal (State Bar No. 338994)
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 10178
Telephone:    (973) 503-5900
paulrosenthal@kelleydrye.com

Attorneys for Hi.Q, Inc. d/b/a Health IQ

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOBY HOY, individually and on behalf all others similarly situated,<br><br>        Petitioner,<br><br>   v.<br><br>ZEETOGROUP, LLC,<br><br>        Respondent. | Case No. 3:22-cv-00151-LL-MDD<br><br>**HI.Q, INC. D/B/A HEALTH IQ'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH AN OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC** |

Hi.Q, Inc. d/b/a Health IQ ("Health IQ"), by and through its below counsel, respectfully submits this response to Plaintiff Toby Hoy's Motion to Compel Compliance with an Out-of-District Subpoena to Non-Party ZeetoGroup LLC. (ECF No. 1.)

Health IQ is the sole defendant in the underlying action for which Plaintiff seeks discovery, *Hoy v. Hi.Q, Inc.,* Case No. 4:21-cv-04875 (N.D. Cal). Health IQ submits this response in support of the request that non-party ZeetoGroup, LLC ("ZeetoGroup") be compelled to produce non-privileged documents and data located after a reasonable search that are relevant to the claims and defenses in the underlying action.

Evidence produced in the underlying action suggests that Health IQ's vendor Enfuego Holdings LLC d/b/a Cege Media ("Cege") sold Health IQ over 244,000 leads during the relevant time period that originated from ZeetoGroup. Each of those leads, pursuant to operative contractual agreements with Health IQ, was required to be supported by prior express written consent for Health IQ to place telemarketing calls to each specific telephone number. Such consent would be dispositive on the claims of Plaintiff and the putative class asserted in the underlying action.

Health IQ has met and conferred via email with counsel for Plaintiff and ZeetoGroup in an effort to assist with obtaining evidence concerning consent for Health IQ to place telemarketing calls to Plaintiff and members of the putative class. *See, e.g.,* Pl's Exhibit 7, at p. 59-60. Health IQ understands that ZeetoGroup has possession of evidence of consent obtained from Plaintiff and members of the putative class to receive telemarketing calls from Health IQ. *Id.* On March 10, 2022, ZeetoGroup produced a declaration with evidence relevant to twenty-six (26) of those leads relevant to the underlying action. That production confirms that ZeetoGroup has unique evidence relevant to claims and defenses at issue in the underlying litigation.

To the extent that Plaintiff's motion seeks information relevant to the claims and defenses in the underlying *Hoy* action that may be solely within the possession of ZeetoGroup, Health IQ asserts that the collection and production of that evidence would be relevant, responsive, and proportional to the needs of the case; thus, Health IQ respectfully requests that this Court compel the production of that information in as timely and efficient a manner as possible.

---

HEALTH IQ'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL RESPONSE TO
OUT-OF-DISTRICT SUBPOENA TO ZEETOGROUP LLC

1                                   Respectfully submitted,

2                                   KELLEY DRYE & WARREN LLP

3                        By:   */s/ Paul A. Rosenthal*

4                              Paul A. Rosenthal (State Bar No. 338994)

5                              One Jefferson Road, 2nd Floor
                              Parsippany, NJ 07054

6                              Telephone:  (973) 503-5943
                              Facsimile:  (973) 503-5950

7                              Email:  paulrosenthal@kelleydrye.com
                              *Attorneys for Hi.Q, Inc. d/b/a Health IQ*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 12

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| TOBY HOY, individually and on behalf all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HI Q., INC. d/b/a HEALTH IQ,<br><br>Defendant. | Case No. 4:21-cv-04875-YGR<br><br>**DECLARATION OF SHAYNE CARDWELL** |

I, Shayne Cardwell, declare the following:

1. My name is Shayne Cardwell. I am the Chief Revenue Officer at ZeetoGroup, LLC ("Zeeto"). I am over 18 years old and competent to make this declaration.

2. This declaration is based on personal knowledge or upon my review of records over which I have care, custody or control. If called to testify as to the contents of this declaration, I could do so competently.

3. ZeetoGroup, LLC and its sister company Tibrio, LLC, collectively referred to herein as Zeeto ("Zeeto"), is in the business of building data discovery technology, using questions to discover data about users, and showing ads against that data. When a consumer visits one of Zeeto's advertisements for a specific sample, they are taken to a "survey path"

DocuSign Envelope ID: 409589D8-AD50-4C8C-B708-537D2CB1E12C

1   where the consumer answers a survey, provides contact information for the free sample, and a

2   consents to disclosure of their information.

3       4.      Among other things, Zeeto asks consumers to consent to be contacted by certain

4   affiliates or marketing partners listed on the webform or included in an "affiliates" hyperlink.

5       5.      The list of marketing partners disclosed in the affiliates link is the same across

    each of Zeeto's paths. Zeeto's computer programmers maintain the list. When a marketing

6   partner is to be added or removed from the list, a Zeeto programmer makes a change to the

7   computer code and the change appears on all of the websites that Zeeto operates.

8       6.      On or about January of 2022 a Zeeto employee received a slack message from

9   Caleb Krambule with Cege Media (aka Enfuego and PolicyScout) requesting that HealthIQ be

    added to Zeeto's Marketing Partner's list. Zeeto confirmed and added HealthIQ to its marketing

10  partners list by adding a line to the pages' code. This added Health IQ to the list of disclosed

11  marketing partners or affiliates on all of Zeeto's websites.

12      7.      In the regular course of business, Zeeto maintains coding logs that identify,

13  among other things, when each marketing partner was added to or removed from the list of

    companies disclosed as affiliates. Zeeto retains coding logs for its websites for at least three

14  years. Attached as Exhibit 1 is a true and correct screenshot of Zeeto's coding logs, reflecting

15  the addition of Health IQ to the list of marketing partners on or around January of 2022.

16      8.      Attached as Exhibit 2 is a true and correct screenshot of the list of marketing

17  partners as it appeared on Zeeto's websites on or around January 24, 2022, showing Health IQ

    listed as an affiliate. This screenshot was taken when amending the list of marketing partners.

18      9.      I have reviewed Zeeto's coding logs and have verified that Health IQ did not

19  appear on the marketing partner list or otherwise on Zeeto's websites between June 24, 2017,

20  and December of 2021.

21      10.     Attached as Exhibit 3 is a true and correct screenshot of the list of marketing

22  partners as it appeared on Zeeto's websites on or around September 23, 2021, showing that

23  Health IQ was not listed as an affiliate. This screenshot was taken after making amendments to

DECLARATION OF SHAYNE CARDWELL - 2
Case No. 4:21-cv-04875-YGR

1   the path.

2       11.     I submitted a declaration in *Hoy v. ZeetoGroup, LLC*, 22-cv-00151-LL-MDD, Dkt.

3   No. 8-1 (Filed March, 14 2022). In paragraph 10 of the declaration, I stated that "during the

4   relevant time period, each and every consumer who went through Zeeto's path would have

    seen Health IQ listed as an affiliate."
5
        12.     To clarify, I went through and did a sampling of the 24,000 numbers I received.
6
    Upon review of the sample, I believed that each and every consumer went through
7
    Zeeto's path and saw Health IQ. In the previous declaration, I stated that I limited the scope of
8
    my review to 26 randomly selected records, pulled Jornaya LeadID's for each, and checked to
9
    see if HealthIQ was disclosed on the marketing partners list, which they were. I also stated that
10  HealthIQ had never been removed from the Marketing Partners list. This declaration may still

    be helpful regarding details surrounding the link and managing the companies listed.
11
        I, Shayne Cardwell, declare under penalty of perjury under the laws of the United States
12
    that I have read the foregoing declaration and know the contents thereof, and that the matters
13
    contained in the declaration are true to my own knowledge.
14
                        29               June
15      Executed on this _____ day of _____, 2022.

16                          DocuSign by:

                        By: Shayne Cardwell          _____
17                           ADEC6D1B6A814FC...

18

19

20

21

22

23

    DECLARATION OF SHAYNE CARDWELL - 3
    Case No. 4:21-cv-04875-YGR

# EXHIBIT 13

1

2

3

4

5

6          UNITED STATES DISTRICT COURT
7     FOR THE NORTHERN DISTRICT OF CALIFORNIA
            OAKLAND DIVISION

8  TOBY HOY, individually and on behalf all
   others similarly situated,
                                              Case No. 4:21-cv-04875-YGR
9                  Plaintiff,
                                              **DECLARATION OF SHAYNE CARDWELL**
10      v.

11 HI Q., INC. d/b/a HEALTH IQ,

12                 Defendant.

13

14

       I, Shayne Cardwell, declare the following:
15
       1.      My name is Shayne Cardwell. I am the Chief Revenue Officer at ZeetoGroup, LLC
16 ("Zeeto"). I am over 18 years old and competent to make this declaration.

17     2.      This declaration is based on personal knowledge or upon my review of records

18 over which I have care, custody or control. If called to testify as to the contents of this

   declaration, I could do so competently.
19
       3.      ZeetoGroup, LLC and its sister company Tibrio, LLC, collectively referred to
20 herein as Zeeto ("Zeeto"), is in the business of building data discovery technology, using

21 questions to discover data about users, and showing ads against that data.  When a consumer

22 visits one of Zeeto's advertisements for a specific sample, they are taken to a "survey path"

23

DECLARATION OF SHAYNE CARDWELL - 1
Case No. 4:21-cv-04875-YGR

DocuSign Envelope ID: 6352FFB4-4895-486C-9072-84775A895266

where the consumer answers a survey, provides contact information for the free sample, and consents to disclosure of their information.

4.      Among other things, Zeeto asks consumers to consent to be contacted by certain affiliates or marketing partners listed on the webform or included in an "affiliates" hyperlink.

5.      The list of marketing partners disclosed in the affiliates link is the same across each of Zeeto's paths. Zeeto's computer programmers maintain the list. When a marketing partner is to be added or removed from the list, a Zeeto programmer makes a change to the computer code and the change appears on all of the websites that Zeeto operates.

6.      On or about January of 2022 a Zeeto employee received a slack message from Caleb Krambule with Cege Media (aka Enfuego and PolicyScout) requesting that HealthIQ be added to Zeeto's Marketing Partner's list. Zeeto confirmed and added HealthIQ to its marketing partners list by adding a line to the pages' code. This added Health IQ to the list of disclosed marketing partners or affiliates on all of Zeeto's websites.

7.      In the regular course of business, Zeeto maintains coding logs that identify, among other things, when each marketing partner was added to or removed from the list of companies disclosed as affiliates. Zeeto retains coding logs for its websites for at least three years. Attached as Exhibit 1 is a true and correct screenshot of Zeeto's coding logs, reflecting the addition of Health IQ to the list of marketing partners on or around January of 2022.

8.      Attached as Exhibit 2 is a true and correct screenshot of the list of marketing partners as it appeared on Zeeto's websites on or around January 24, 2022, showing Health IQ listed as an affiliate. This screenshot was taken when amending the list of marketing partners.

9.      I have reviewed Zeeto's coding logs and have verified that Health IQ did not appear on the marketing partner list or otherwise on Zeeto's websites between June 24, 2017, and December of 2021.

10.     Attached as Exhibit 3 is a true and correct screenshot of the list of marketing partners as it appeared on Zeeto's websites on or around September 23, 2021, showing that Health IQ was not listed as an affiliate. This screenshot was taken after making amendments to

DocuSign Envelope ID: 6352FFB4-4895-486C-9072-84775A895266

the path.

11.    I submitted a declaration in *Hoy v. ZeetoGroup, LLC*, 22-cv-00151-LL-MDD, Dkt. No. 8-1 (Filed March, 14 2022). I hereby withdraw that declaration on the basis of newly discovered information (the coding logs) and a further understanding of what the parties' dispute was.

I, Shayne Cardwell, declare under penalty of perjury under the laws of the United States that I have read the foregoing declaration and know the contents thereof, and that the matters contained in the declaration are true to my own knowledge.

Executed on this ___1___ day of ___July_____, 2022.

By: _____

DECLARATION OF SHAYNE CARDWELL - 3
Case No. 4:21-cv-04875-YGR

# **<u>EXHIBIT 1</u>**

Content Performance
Dashboard
Posts
WP Quiz
Media
Review Monster
**Pages**
All Pages
Add New

Comments
ClickFunnels
Most Popular
Products
Most Popular – Individual
Popunder Goodies
Sponsored Content
Faqs
Photo Link Ads
Goodies
Token Deals
Mobile Category Tap Units
Content.ad

Appearance
Plugins
Users
Tools
Settings
Pretty Links
XYZ Html
Push Settings
Cross Post
Product Updater
WP to Twitter
Collapse menu

Help ▾

## Compare Revisions of "Related Advertisers"

Thank you for using Block wp-login plugin

Can you spare some change for a poor web developer? You can help him survive the winter, feed his children and keep him off the streets. His eyes are dim. He cannot see. He's just a poor old man. His legs are grey. His ears are gnarled. His eyes are old and bent. He ears are grizzled ...

Donate to Block wp-login | Already Donated!

Like WP Quiz plugin? You will LOVE WP Quiz Pro!

← Go to editor

☐ Compare any two revisions

Previous | Next

Revision by Carley
3 months ago (12 Jan @ 14:04)

Restore This Revision

**Title**

Related Advertisers | Related Advertisers

**Content**

Removed | Added

| Removed | Added |
|---|---|
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>ADT</p>` | `<p>ADT</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>ADT Solar</p>` | `<p>ADT Solar</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>Cege</p>` | `<p>Cege</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>Enfuego Holdings, LLC</p>` | `<p>Enfuego Holdings, LLC</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>CallBlade</p>` | `<p>CallBlade</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>Crisp Marketing</p>` | `<p>Crisp Marketing</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>Crisp Connections</p>` | `<p>Crisp Connections</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>Digital Media Solutions</p>` | `<p>Digital Media Solutions</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>GrabYourItems</p>` | `<p>GrabYourItems</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>Salt Media Group</p>` | `<p>Salt Media Group</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>What If Media Group</p>` | `<p>What If Media Group</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>Calltrader.com</p>` | `<p>Calltrader.com</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>Madera Media, LLC</p>` | `<p>Madera Media, LLC</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>What If Holdings, LLC</p>` | `<p>What If Holdings, LLC</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>Boost Health Insurance</p>` | `<p>Boost Health Insurance</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>Ford Direct</p>` | `<p>Ford Direct</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>Happy Money</p>` | `<p>Happy Money</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>Hello Fresh.</p>` | `<p>Hello Fresh.</p>` |
|  | `+ <!-- wp:paragraph -->` |
|  | `+ <!-- wp:paragraph -->` |
|  | `+ <p>HealthIQ</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>The Savvy Sampler</p>` | `<p>The Savvy Sampler</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>Sunpro</p>` | `<p>Sunpro</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>OkWow</p>` | `<p>OkWow</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>Policy Scout</p>` | `<p>Policy Scout</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>The Smart Saver</p>` | `<p>The Smart Saver</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |
| `<!-- wp:paragraph -->` | `<!-- wp:paragraph -->` |
| `<p>Ok Hooray</p>` | `<p>Ok Hooray</p>` |
| `<!-- /wp:paragraph -->` | `<!-- /wp:paragraph -->` |

# EXHIBIT 2



# Related Advertisers

- ADT
- ADT Solar
- Cege
- CallBlade
- Crisp Marketing
- Crisp Connections
- Digital Media Solutions
- GrabYourItems
- Salt Media Group
- What If Media Group
- Calltrader.com
- Madera Media, LLC
- What If Holdings, LLC
- Boost Health Insurance
- Ford Direct
- Happy Money
- Hello Fresh.
- HealthIQ
- Insurealife
- The Savvy Sampler
- Sunpro
- OkWow
- Policy Scout
- The Smart Saver
- Ok Hooray

# EXHIBIT 3



Come back daily for new freebies!

# Related Advertisers

- Cege
- Enfuego Holdings, LLC
- CallBlade
- Crisp Marketing
- Crisp Connections
- Digital Media Solutions, Inc
- GrabYourItems
- Salt Media Group
- What If Media Group
- Calltrader.com
- Madera Media, LLC
- What If Holdings, LLC
- Boost Health Insurance
- Ford Direct
- Happy Money
- Hello Fresh.

# EXHIBIT 14

**D. M. PROFESSIONAL SERVICES**
501 SILVERSIDE RD, STE 72
WILMINGTON, DE 19809
302-792-0558



Invoice #: 300530
Date: 07/13/2022
Federal Tax ID#: 51-0302413

PAUL A. ROSENTHAL, FOX ROTHSCHILD LLP
49 MARKET STREET

MORRISTOWN, NJ 07960-5122

## INVOICE FOR SERVICE

| | |
|---|---|
| Service #402086: ZEETOGROUP, LLC TOBY HOY v. HI.Q, INC. D/B/A HEALTH IQ | Your File# 349018.00004 (Hi.Q. Inc. â ¢ Toby Hoy matter) |
| | Court Case #: 4:21-CV-04875-YGR |
| RUSH-SERVICE | $65.00 |
| Service #402087: ZEETOGROUP, LLC TOBY HOY v. HI.Q, INC. D/B/A HEALTH IQ | Your File# 349018.00004 (Hi.Q. Inc. â ¢ Toby Hoy matter) |
| | Court Case #: 4:21-CV-04875-YGR |
| RUSH-SERVICE | $32.50 |

**TOTAL CHARGES:**                              **$97.50**

**BALANCE:**                                    **$97.50**

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 4:21-cv-04875-YGR

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* ZEETOGROUP, LLC

on *(date)*    07/12/2022    .

☑ I served the subpoena by delivering a copy to the named person as follows:    Nadia Bellamy

The Corporation Trust Company, 1209 Orange St, WIlmington DE 19801

served at 2:18 pm    on *(date)*    07/12/2022    ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $            for travel and $            for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date:    07/12/2022

*Server's signature*

Adam Golden

*Printed name and title*

DM Professional Services
501 SIlverside Rd, Ste 72
Wilmington DE 19809

*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 7/12/2022

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* ZEETOGROUP, LLC

on *(date)*    07/12/2022    .

☑ I served the subpoena by delivering a copy to the named individual as follows: Nadia Bellamy

The Corporation Trust Company, 1209 Orange St, Wilmington DE 19801

served at 2:18pm        on *(date)*    07/12/2022    ; or

☐ I returned the subpoena unexecuted because:                                                                                              .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$                        .

My fees are $                    for travel and $                    for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date:    07/12/2022

*Server's signature*

Adam Golden
*Printed name and title*
HPS Process & Investigations
1669 Jefferson
Kansas City. MO 64108

*Server's address*

Additional information regarding attempted service, etc.:

# EXHIBIT 15

| | |
|---|---|
| **From:** | Rosenthal, Paul A. |
| **To:** | Jacob Gillick |
| **Cc:** | Jennifer Murray; Ben Drachler; Anthony Paronich |
| **Subject:** | RE: Hoy v. Health IQ - ZeetoGroup |
| **Date:** | June 30, 2022 3:35:24 PM |

Jacob,

Your objections and allegations are meritless and improper, but I do not see it as productive to engage in a point-by-point discussion with you at this stage.  Since Health IQ is not a party to the motion and has not served any prior subpoena on ZeetoGroup, "what we hear from the Judge" is irrelevant to any subpoena that Health IQ might serve and is certainly irrelevant to the question of whether you're authorized to accept service of those subpoenas.  Thus, please do let us know whether you are authorized to accept service or Health IQ needs to go through the formal service process for its subpoenas to ZeetoGroup.

Paul

**Paul Rosenthal**
Partner
**Fox Rothschild LLP**
(973) 548-3388 - direct
PRosenthal@foxrothschild.com
www.foxrothschild.com

---

**From:** Jacob Gillick <jgillick@morrislawfirmapc.com>
**Sent:** June 30, 2022 2:48 PM
**To:** Rosenthal, Paul A. <PRosenthal@foxrothschild.com>
**Cc:** Jennifer Murray <jmurray@terrellmarshall.com>; Ben Drachler <bdrachler@terrellmarshall.com>; Anthony Paronich <anthony@paronichlaw.com>
**Subject:** [EXT] RE: Hoy v. Health IQ - ZeetoGroup

Let me check with my client—I also think it depends on what we hear from the Judge. I am curious if your e-mail was a coordinated plan for a second bite at the apple? In the alternative-- I am sorry you are upset about the results of the investigation-- but harassing Zeeto on a withdrawn declaration instead of looking through the Jornaya reports is knowingly improper. Please go get the Jornaya reports and re-focus back on your case.

Jacob A. Gillick, Esq.
**PHG Law Group**
501 West Broadway, Suite 1480
San Diego, CA 92101
Tel. (619) 826-8060
Fax. (619) 826-8065

CONFIDENTIAL NOTICE: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain information protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges or confidentiality laws or regulations. If you are not an intended recipient, you may not review, use, copy, disclose or distribute this message or any of the information contained in this message to anyone. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of this message and any attachments. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

**From:** Rosenthal, Paul A. <PRosenthal@foxrothschild.com>
**Sent:** Thursday, June 30, 2022 9:06 AM
**To:** Jacob Gillick <jgillick@morrislawfirmapc.com>
**Cc:** Jennifer Murray <jmurray@terrellmarshall.com>; Ben Drachler <bdrachler@terrellmarshall.com>; Anthony Paronich <anthony@paronichlaw.com>
**Subject:** Hoy v. Health IQ - ZeetoGroup

Jacob,

Are you authorized to accept service on behalf of ZeetoGroup LLC of a Subpoena for Production of Documents and Subpoena for the Deposition of a Corporate Representative?

Thanks,
Paul

**Paul Rosenthal**
Partner
**Fox Rothschild LLP**
(973) 548-3388 - direct
PRosenthal@foxrothschild.com
www.foxrothschild.com

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

# EXHIBIT 16

| | |
|---|---|
| **From:** | Rosenthal, Paul A. |
| **To:** | Jacob Gillick |
| **Cc:** | Jennifer Murray; Ben Drachler; Anthony Paronich |
| **Subject:** | Hoy v. Health IQ - ZeetoGroup |
| **Date:** | July 6, 2022 12:24:57 PM |

Jacob,

Further to my June 30 requests, please confirm whether you are authorized to accept service on behalf of ZeetoGroup LLC of a Subpoena for Production of Documents and Subpoena for the Deposition of a Corporate Representative?  If not, we will proceed with formal service.

Thanks,
Paul


**Paul Rosenthal**
Partner
**Fox Rothschild LLP**
(973) 548-3388 - direct
PRosenthal@foxrothschild.com
www.foxrothschild.com

# EXHIBIT 17

1   Jacob A. Gillick, Esq. 312336
2   jgillick@PHGLawGroup.com
    PHG Law Group
3   501 West Broadway, Suite 1480
4   San Diego, CA 92101
    Telephone:  (619) 826-8060
5   Facsimile:  (619) 826-8065

6
    Attorneys for Deponent ZeetoGroup, LLC
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10  TOBY HOY,                          Case No. 4:21-cv-04875-YGR

11              Plaintiff,             **OBJECTIONS TO SUBPOENA TO**
                                       **PRODUCE DOCUMENTS,**
12                                     **INFORMATION, OR OBJECTS OR**
                                       **TO PERMIT INSPECTION OF**
13       v.                            **PREMISES IN A CIVIL ACTION**

14  HI.Q, INC. d/b/a HEALTH IQ,

15              Defendants.
16

17

18

19

20

21

22

23

24

25

26

27

28

                                    1

1    Responding Party objects to this subpoena on the grounds that the custodian

2    is located more than 100 miles from the place of production.  Responding Party

3    further objects to the specific document requests as follows:

4    **DOCUMENT REQUEST 1:**

5    All DOCUMENTS and COMMUNICATIONS relevant to and regarding the

6    March 10, 2022, Declaration of Shayne Cardwell.

7    **RESPONSE TO DOCUMENT REQUEST 1:**

8    Responding Party objects that this request is overbroad as to content, scope,

9    and time and constitutes unwarranted annoyance, embarrassment, and oppression.

10    To comply with the request would be an undue burden and expense on Responding

11    Party.   Furthermore, the request is calculated to annoy and harass Responding

12    Party.

13    Responding Party further objects that the request seeks information subject to

14    the attorney-client privilege and attorney work-product doctrine.

15    Responding Party further objects that the request is irrelevant to the subject

16    matter, beyond the scope of permissible discovery, and not reasonably calculated to

17    lead to the discovery of admissible evidence from a third party.

18    **DOCUMENT REQUEST 2:**

19    All DOCUMENTS and COMMUNICATIONS relevant to and regarding the

20    June 29, 2022, Declaration of Shayne Cardwell.

21    **RESPONSE TO DOCUMENT REQUEST 2:**

22    Responding Party objects that this request is overbroad as to content, scope,

23    and time and constitutes unwarranted annoyance, embarrassment, and oppression.

24    To comply with the request would be an undue burden and expense on Responding

25    Party.  Furthermore, the request is calculated to annoy and harass Responding

26    Party.

27    Responding Party further objects that the request seeks information subject to

28    the attorney-client privilege and attorney work-product doctrine.

2

1    Responding Party further objects that the request is irrelevant to the subject

2    matter, beyond the scope of permissible discovery, and not reasonably calculated to

3    lead to the discovery of admissible evidence from a third party.

4    **DOCUMENT REQUEST 3:**

5    All DOCUMENTS and COMMUNICATIONS relevant to and regarding the

6    July 1, 2022, Declaration of Shayne Cardwell.

7    **RESPONSE TO DOCUMENT REQUEST 3:**

8    Responding Party objects that this request is overbroad as to content, scope,

9    and time and constitutes unwarranted annoyance, embarrassment, and oppression.

10   To comply with the request would be an undue burden and expense on Responding

11   Party.  Furthermore, the request is calculated to annoy and harass Responding

12   Party.

13   Responding Party further objects that the request seeks information subject to

14   the attorney-client privilege and attorney work-product doctrine.

15   Responding Party further objects that the request is irrelevant to the subject

16   matter, beyond the scope of permissible discovery, and not reasonably calculated to

17   lead to the discovery of admissible evidence from a third party.

18   **DOCUMENT REQUEST 4:**

19   All DOCUMENTS compromising the "coding logs" for the RELEVANT

20   TIME PERIOD, including those reviewed in connection with the statements in

21   Paragraph 10 of the March 10, 2022 Declaration of Shayne Cardwell.

22   **RESPONSE TO DOCUMENT REQUEST 4:**

23   Responding Party objects that this request is vague, ambiguous, and

24   overbroad as to content, scope, and time and constitutes unwarranted annoyance,

25   embarrassment, and oppression.  To comply with the request would be an undue

26   burden and expense on Responding Party.  Furthermore, the request is calculated to

27   annoy and harass Responding Party.

28   / / /

3

1    Responding Party objects that this request seeks disclosure of confidential

2    and proprietary business records/information, including but not limited to financial

3    information and information containing a third party's private information,

4    disclosure of which would violate Article I, Sec. I of the California Constitution.

5    Responding Party further objects that the request is irrelevant to the subject

6    matter, beyond the scope of permissible discovery, and not reasonably calculated to

7    lead to the discovery of admissible evidence.

8    **DOCUMENT REQUEST 5:**

9    All DOCUMENTS compromising the "coding logs" for the RELEVANT

10   TIME PERIOD, including those reviewed in connection with the statements in

11   Paragraph 7 of the June 29, 2022 Declaration of Shayne Cardwell.

12   **RESPONSE TO DOCUMENT REQUEST 5:**

13   Responding Party objects that this request is vague, ambiguous, and

14   overbroad as to content, scope, and time and constitutes unwarranted annoyance,

15   embarrassment, and oppression.  To comply with the request would be an undue

16   burden and expense on Responding Party.  Furthermore, the request is calculated to

17   annoy and harass Responding Party.

18   Responding Party objects that this request seeks disclosure of confidential

19   and proprietary business records/information, including but not limited to financial

20   information and information containing a third party's private information,

21   disclosure of which would violate Article I, Sec. I of the California Constitution.

22   Responding Party further objects that the request is irrelevant to the subject

23   matter, beyond the scope of permissible discovery, and not reasonably calculated to

24   lead to the discovery of admissible evidence.

25   **DOCUMENT REQUEST 6:**

26   All DOCUMENTS compromising the "coding logs" for the RELEVANT

27   TIME PERIOD, including those reviewed in connection with the statements in

28   Paragraph 7 of the July 1, 2022 Declaration of Shayne Cardwell.

OBJECTIONS TO SUBPOENA                                    4:21-CV-04875-YGR

**RESPONSE TO DOCUMENT REQUEST 6:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.  To comply with the request would be an undue burden and expense on Responding Party.  Furthermore, the request is calculated to annoy and harass Responding Party.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

**DOCUMENT REQUEST 7:**

All DOCUMENTS and COMMUNICATIONS relevant to and regarding the statements made in paragraph 6 of the June 29, 2022, Declaration of Shayne Cardwell.

**RESPONSE TO DOCUMENT REQUEST 7:**

Responding Party objects that this request is overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.  To comply with the request would be an undue burden and expense on Responding Party.  Furthermore, the request is calculated to annoy and harass Responding Party.

Responding Party further objects that the request seeks information subject to the attorney-client privilege and attorney work-product doctrine.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence from a third party.

OBJECTIONS TO SUBPOENA                    4:21-CV-04875-YGR

**DOCUMENT REQUEST 8:**

All DOCUMENTS and COMMUNICATIONS relevant to and regarding the statements made in paragraph 12 of the June 29, 2022, Declaration of Shayne Cardwell.

**RESPONSE TO DOCUMENT REQUEST 8:**

Responding Party objects that this request is overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression. To comply with the request would be an undue burden and expense on Responding Party. Furthermore, the request is calculated to annoy and harass Responding Party.

Responding Party further objects that the request seeks information subject to the attorney-client privilege and attorney work-product doctrine.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence from a third party.

**DOCUMENT REQUEST 9:**

All DOCUMENTS and COMMUNICATIONS relevant to and regarding the statements made in paragraph 11 of the July 1, 2022, Declaration of Shayne Cardwell.

**RESPONSE TO DOCUMENT REQUEST 9:**

Responding Party objects that this request is overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression. To comply with the request would be an undue burden and expense on Responding Party. Furthermore, the request is calculated to annoy and harass Responding Party.

Responding Party further objects that the request seeks information subject to the attorney-client privilege and attorney work-product doctrine.

/ / /

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence from a third party.

**DOCUMENT REQUEST 10:**

All DOCUMENTS sufficient to show consent collected by YOU for telemarketing calls including the use of pre-recorded voice messages by or on behalf of HEALTH IQ, during the RELEVANT TIME PERIOD.

**RESPONSE TO DOCUMENT REQUEST 10:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.  To comply with the request would be an undue burden and expense on Responding Party.  Furthermore, the request is calculated to annoy and harass Responding Party. Each request should be made with specificity.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

**DOCUMENT REQUEST 11:**

All web session data for any lead that YOU sold to Cege.

**RESPONSE TO DOCUMENT REQUEST 11:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.  To comply with the request would be an undue burden and expense on Responding Party.  Furthermore, the request is calculated to annoy and harass Responding Party. Each request should be made with specificity.

1   Responding Party objects that this request seeks disclosure of confidential

2   and proprietary business records/information, including but not limited to financial

3   information and information containing a third party's private information,

4   disclosure of which would violate Article I, Sec. I of the California Constitution.

5   Responding Party further objects that the request is irrelevant to the subject

6   matter, beyond the scope of permissible discovery, and not reasonably calculated to

7   lead to the discovery of admissible evidence.

8   **DOCUMENT REQUEST 12:**

9   DOCUMENTS constituting the "coding logs" for YOUR list of marketing

10  partners and/or affiliates on YOUR websites during  the RELEVANT TIME

11  PERIOD.

12  **RESPONSE TO DOCUMENT REQUEST 12:**

13  Responding Party objects that this request is vague, ambiguous, and

14  overbroad as to content, scope, and time and constitutes unwarranted annoyance,

15  embarrassment, and oppression.  To comply with the request would be an undue

16  burden and expense on Responding Party.  Furthermore, the request is calculated to

17  annoy and harass Responding Party.  Each request should be made with specificity.

18  Responding Party objects that this request seeks disclosure of confidential

19  and proprietary business records/information, including but not limited to financial

20  information and information containing a third party's private information,

21  disclosure of which would violate Article I, Sec. I of the California Constitution.

22  Responding Party further objects that the request is irrelevant to the subject

23  matter, beyond the scope of permissible discovery, and not reasonably calculated to

24  lead to the discovery of admissible evidence.

25  **DOCUMENT REQUEST 13:**

26  DOCUMENTS sufficient to identify the date(s) that HEALTH IQ was added

27  to YOUR website(s), including the GetItFree.us, as an affiliate and/or marketing

28  partner.

8

OBJECTIONS TO SUBPOENA                                                4:21-CV-04875-YGR

**RESPONSE TO DOCUMENT REQUEST 13:**

Responding Party has already produced these documents. Therefore, Responding Party objects on the grounds of harassment.

**DOCUMENT REQUEST 14:**

DOCUMENTS sufficient to identify the date(s) HEALTH IQ was removed from YOUR website(s), including GetItFree.us, as an affiliate and/or marketing partner.

**RESPONSE TO DOCUMENT REQUEST 14:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression. To comply with the request would be an undue burden and expense on Responding Party. Furthermore, the request is calculated to annoy and harass Responding Party. Each request should be made with specificity.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

**DOCUMENT REQUEST 15:**

DOCUMENTS sufficient to show how and why HEALTH IQ was added and/or removed as a marketing partner and/or affiliate from any website that YOU own and/or operate.

**RESPONSE TO DOCUMENT REQUEST 15:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression. To comply with the request would be an undue

9

burden and expense on Responding Party.  Furthermore, the request is calculated to annoy and harass Responding Party.  Each request should be made with specificity.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

**DOCUMENT REQUEST 16:**

Copies of each and every contract, agreement, insertion order, Terms of Use, and/or Terms of Service relevant or related to YOUR relationship with CEGE during the RELEVANT TIME PERIOD.

**RESPONSE TO DOCUMENT REQUEST 16:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.  To comply with the request would be an undue burden and expense on Responding Party.  Furthermore, the request is calculated to annoy and harass Responding Party.  Each request should be made with specificity.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

/ / /

/ / /

10

**DOCUMENT REQUEST 17:**

DOCUMENTS sufficient to identify the relevant consumer and lead information from any web form submissions and/or consumer leads that include the telephone number 515-808-0280.

**RESPONSE TO DOCUMENT REQUEST 17:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression. To comply with the request would be an undue burden and expense on Responding Party. Furthermore, the request is calculated to annoy and harass Responding Party. Each request should be made with specificity.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

**DOCUMENT REQUEST 18:**

DOCUMENTS sufficient to identify the relevant consumer and lead information for any web form submission and/or consumer leads relevant to PLAINTIFF Toby Hoy.

**RESPONSE TO DOCUMENT REQUEST 18:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression. To comply with the request would be an undue burden and expense on Responding Party. Furthermore, the request is calculated to annoy and harass Responding Party. Each request should be made with specificity.

/ / /

11

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

**DOCUMENT REQUEST 19:**

DOCUMENTS sufficient to identify the relevant consumer and led information for any web form submission and/or consumer leads relevant to ROBERT FRUEH.

**RESPONSE TO DOCUMENT REQUEST 19:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.  To comply with the request would be an undue burden and expense on Responding Party.  Furthermore, the request is calculated to annoy and harass Responding Party.  Each request should be made with specificity.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

**DOCUMENT REQUEST 20:**

DOCUMENTS sufficient to show the investigation performed concerning any lead(s) sold to CEGE that included the telephone number 515-808-0280.

/ / /

OBJECTIONS TO SUBPOENA                                    4:21-CV-04875-YGR

**RESPONSE TO DOCUMENT REQUEST 20:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.  To comply with the request would be an undue burden and expense on Responding Party.  Furthermore, the request is calculated to annoy and harass Responding Party. Each request should be made with specificity.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

Responding Party also objects that these documents are available from Defendant and it is improper to be subpoenaing these documents from a third party.

**DOCUMENT REQUEST 21:**

DOCUMENTS sufficient to show any investigation performed concerning the leads sold to CEGE that are relevant to PLAINTIFF'S allegations in the LITIGATION, including to show consent for calls by or on behalf of HEALTH IQ.

**RESPONSE TO DOCUMENT REQUEST 21:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.  To comply with the request would be an undue burden and expense on Responding Party.  Furthermore, the request is calculated to annoy and harass Responding Party. Each request should be made with specificity.

/ / /

/ / /

/ / /

13

1     Responding Party objects that this request seeks disclosure of confidential

2     and proprietary business records/information, including but not limited to financial

3     information and information containing a third party's private information,

4     disclosure of which would violate Article I, Sec. I of the California Constitution.

5     Responding Party further objects that the request is irrelevant to the subject

6     matter, beyond the scope of permissible discovery, and not reasonably calculated to

7     lead to the discovery of admissible evidence.

8     **DOCUMENT REQUEST 22:**

9     All COMMUNICATIONS regarding or related to HEALTH IQ.

10    **RESPONSE TO DOCUMENT REQUEST 22:**

11    Responding Party objects that this request is vague, ambiguous, and

12    overbroad as to content, scope, and time and constitutes unwarranted annoyance,

13    embarrassment, and oppression.  To comply with the request would be an undue

14    burden and expense on Responding Party.  Furthermore, the request is calculated to

15    annoy and harass Responding Party.  Each request should be made with specificity.

16    Responding Party objects that this request seeks disclosure of confidential

17    and proprietary business records/information, including but not limited to financial

18    information and information containing a third party's private information,

19    disclosure of which would violate Article I, Sec. I of the California Constitution.

20    Responding Party further objects that the request is irrelevant to the subject

21    matter, beyond the scope of permissible discovery, and not reasonably calculated to

22    lead to the discovery of admissible evidence.

23    Responding Party further objects on the grounds that this request violates the

24    attorney-client, and work-product, doctrines.

25    **DOCUMENT REQUEST 23:**

26    All COMMUNICATIONS regarding or related to PLAINTIFF.

27    / / /

28    / / /

14

**RESPONSE TO DOCUMENT REQUEST 23:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.  To comply with the request would be an undue burden and expense on Responding Party.  Furthermore, the request is calculated to annoy and harass Responding Party.  Each request should be made with specificity.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

Responding Party further objects on the grounds that this request violates the attorney-client, and work-product, doctrines.

**DOCUMENT REQUEST 24:**

All COMMUNICATIONS regarding or related to this LITIGATION.

**RESPONSE TO DOCUMENT REQUEST 24:**

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.  To comply with the request would be an undue burden and expense on Responding Party.  Furthermore, the request is calculated to annoy and harass Responding Party.  Each request should be made with specificity.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

/ / /

15

1        Responding Party further objects that the request is irrelevant to the subject

2   matter, beyond the scope of permissible discovery, and not reasonably calculated to

3   lead to the discovery of admissible evidence.

4        Responding Party further objects on the grounds that this request violates the

5   attorney-client, and work-product, doctrines.

6

7                                    **PHG Law Group**

8

9   Dated:  July 29, 2022          _____

10                                  Jacob A. Gillick, Esq.
                                    jgillick@phglawgroup.com
11                                  Attorneys for Deponent Zeetogroup, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OBJECTIONS TO SUBPOENA                                    4:21-CV-04875-YGR

# PROOF OF SERVICE

I, the undersigned, am employed in the county of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is 501 West Broadway, Suite 1480, San Diego, CA, 92101.

On July 29, 2021, I caused to be served the following document(s):

- **OBJECTIONS TO SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

on the parties in this action as follows:

| | |
|---|---|
| Anthony Paronich<br>Paronich Law, P.C.<br>350 Lincoln Street, Suite 2400<br>Hingham, MA 02043 | Attorneys for Plaintiff |
| PAUL ROSENTHAL<br>Kelley Drye & Warren LLP | Attorneys for Defendants |

☒     **BY EMAIL** – Based on an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the person at the electronic notification addresses listed above.

I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

Executed on July 29, 2022, at San Diego, California.

Leanna Pierce

PROOF OF SERVICE                                        4:21-CV-04875-YGR

# EXHIBIT 18

| | |
|---|---|
| **From:** | Rosenthal, Paul A. |
| **To:** | Jacob Gillick |
| **Subject:** | RE: Hoy v. Health IQ - Subpoena to Produce Documents to ZeetoGroup |
| **Date:** | August 11, 2022 4:02:23 PM |

Jacob,

I tried to reach you at the number in your signature block and got your voicemail.  Please let me know if there is another number where you can be reached or another time when we can reschedule the meet and confer.

Thanks,
Paul

**Paul Rosenthal**
Partner
**Fox Rothschild LLP**
(973) 548-3388 - direct
PRosenthal@foxrothschild.com
www.foxrothschild.com

---

**From:** Rosenthal, Paul A. <PRosenthal@foxrothschild.com>
**Sent:** August 11, 2022 1:15 PM
**To:** Jacob Gillick <jgillick@phglawgroup.com>; Leanna Pierce <lpierce@phglawgroup.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>; Adrienne McEntee <amcentee@terrellmarshall.com>; Jennifer Murray <jmurray@terrellmarshall.com>; Ensor, Kieran <KEnsor@foxrothschild.com>
**Subject:** RE: Hoy v. Health IQ - Subpoena to Produce Documents to ZeetoGroup

Jacob,

We're only discussing these issues because you flagged them in your email as additional bases upon which you seem to be objecting to the subpoena or defending your client's failure to provide a timely response to either of the addresses in the Subpoena.

Without waiver of any argument, we remain ready to meet and confer in hopes of finding a mutually agreeable path forward to obtain the relevant and responsive information in your client's custody. Or at least to better understand your client's positions. However, I do ask that you refrain from further allegations of "embarrassment," "harassment" or "retaliation" that are as meritless are they are inappropriate in response to the substantive and legitimate positions and requests presented by this case and the Subpoenas.

As you suggest, I will call you at 1 PT.

Paul

**Paul Rosenthal**
Partner
**Fox Rothschild LLP**
(973) 548-3388 - direct
PRosenthal@foxrothschild.com
www.foxrothschild.com

---

**From:** Jacob Gillick <jgillick@phglawgroup.com>
**Sent:** August 11, 2022 12:51 PM
**To:** Rosenthal, Paul A. <PRosenthal@foxrothschild.com>; Leanna Pierce <lpierce@phglawgroup.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>; Adrienne McEntee <amcentee@terrellmarshall.com>; Jennifer Murray <jmurray@terrellmarshall.com>; Ensor, Kieran <KEnsor@foxrothschild.com>
**Subject:** [EXT] RE: Hoy v. Health IQ - Subpoena to Produce Documents to ZeetoGroup

Hi Paul,

It seems like you spent a lot of time on these procedural issues that pose no prejudice. Is that all you wish to discuss? Once we got a kick back from your e-mail address at the old firm we forwarded the same documents onto the recommended contact. If you want to try and embarrass my staff in front of the Court with your client's money—that is your prerogative. You also know that the principle place of business for ZeetoGroup is in California. That is indisputable. Are you saying you served the subpoena in DE as a harassment/retaliation tactic?

I am available at 1pm PT if you wish to discuss the substantive issues. I would prefer we discuss what you need to resolve the subpoena. Please feel free to call my office when you are ready.

Best,

Jacob A. Gillick, Esq.
**PHG Law Group**
501 West Broadway, Suite 1480
San Diego, CA 92101
Tel. (619) 826-8060
Fax. (619) 826-8065

CONFIDENTIAL NOTICE: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain information protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges or confidentiality laws or regulations. If you are not an intended recipient, you may not review, use, copy, disclose or distribute this message or any of the information contained in this message to anyone. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of this message and any attachments. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

---

**From:** Rosenthal, Paul A. <PRosenthal@foxrothschild.com>
**Sent:** Thursday, August 11, 2022 5:30 AM
**To:** Jacob Gillick <jgillick@phglawgroup.com>; Leanna Pierce <lpierce@phglawgroup.com>

**Cc:** Anthony Paronich <anthony@paronichlaw.com>; Adrienne McEntee
<amcentee@terrellmarshall.com>; Jennifer Murray <jmurray@terrellmarshall.com>; Ensor, Kieran
<KEnsor@foxrothschild.com>
**Subject:** RE: Hoy v. Health IQ - Subpoena to Produce Documents to ZeetoGroup


Jacob,

I did not receive any response to my proposed times for a meet and confer. Please confirm whether
you are available this afternoon from 2-4 ET. If that window does not work for you, please let me
know if there are times tomorrow that would work.

Thanks,
Paul

**Paul Rosenthal**
Partner
**Fox Rothschild LLP**
(973) 548-3388 - direct
PRosenthal@foxrothschild.com
www.foxrothschild.com

---

**From:** Rosenthal, Paul A. <PRosenthal@foxrothschild.com>
**Sent:** August 10, 2022 3:39 PM
**To:** Jacob Gillick <jgillick@phglawgroup.com>; Leanna Pierce <lpierce@phglawgroup.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>; Adrienne McEntee
<amcentee@terrellmarshall.com>; Jennifer Murray <jmurray@terrellmarshall.com>; Ensor, Kieran
<KEnsor@foxrothschild.com>
**Subject:** RE: Hoy v. Health IQ - Subpoena to Produce Documents to ZeetoGroup

Jacob,

Are you available tomorrow between 2-4 ET to meet and confer? In addition to understanding
ZeetoGroup's position concerning the Subpoenas, we would like to better understand the logistical
arguments raised by your email:

First, can you please explain your comment that you "made immediate attempts to resolve the
issues." I am not aware of any steps to rectify the failure to properly serve timely objections. As
detailed below, I received a copy of your document from Plaintiff's counsel and today's email (over a
week later) is your first response to my raising the failure to properly respond or preserve
objections.

Second, your client's knowledge of the proper contact information for service of a response to the
Subpoenas is not disputable. My change in firms occurred a month before the July 12 service of the

Subpoenas, both of which include my current contact information as well as a local address for hard copy service. In addition, you personally had notice of my change of firm when I wrote you on June 10 to provide my updated contact information (attached) and, subsequent to my move, I have a couple dozen emails that include you and my new email address in connection with ZeetoGroup's response to Plaintiff's subpoenas, and the related motion practice, in this case.

Third, we would like to better understand your service objection. As detailed in the email below, ZeetoGroup LLC was identified to be a Delaware corporation and, because you would not agree to accept service, the subpoenas were served on its Delaware agent with a response requested to be served at our firm's Wilmington, DE office. Are you saying that your client is not a Delaware corporation? Or that the service was not on your client's proper agent for service?

We look forward to better understanding your client's position on both the Subpoenas and these additional questions in hopes that the parties can eliminate, or at least narrow, the need for motion practice concerning Health IQ's Subpoenas to ZeetoGroup. Please let me know if the times tomorrow work or, if not, please propose alternative times.

Paul

**Paul Rosenthal**
Partner
**Fox Rothschild LLP**
(973) 548-3388 - direct
PRosenthal@foxrothschild.com
www.foxrothschild.com

---

**From:** Jacob Gillick <jgillick@phglawgroup.com>
**Sent:** August 10, 2022 2:43 PM
**To:** Rosenthal, Paul A. <PRosenthal@foxrothschild.com>; Leanna Pierce <lpierce@phglawgroup.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>; Adrienne McEntee <amcentee@terrellmarshall.com>; Jennifer Murray <jmurray@terrellmarshall.com>; Ensor, Kieran <KEnsor@foxrothschild.com>
**Subject:** [EXT] Re: Hoy v. Health IQ - Subpoena to Produce Documents to ZeetoGroup

Hi Paul,

Do you have time to hop on a call this week? We did not realize that you had moved firms and made immediate attempts to resolve the issues. I would be happy to get on a call to discuss exactly what is needed with regards to the substantive requests. As stated in the objections, we also believe your subpoena is procedurally deficient as to the place of production.

Let me know your availability and I look forward to speaking with you!

Best,

Jacob Gillick

---

**From:** "Rosenthal, Paul A." <PRosenthal@foxrothschild.com>
**Date:** Tuesday, August 2, 2022 at 6:41 AM
**To:** Leanna Pierce <lpierce@phglawgroup.com>, Jacob Gillick <jgillick@morrislawfirmapc.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>, Adrienne McEntee <amcentee@terrellmarshall.com>, Jennifer Murray <jmurray@terrellmarshall.com>, "Ensor, Kieran" <KEnsor@foxrothschild.com>
**Subject:** Hoy v. Health IQ - Subpoena to Produce Documents to ZeetoGroup
**Resent-From:** <jgillick@morrislawfirmapc.com>


Ms. Pierce and Mr. Gillick:

I just learned that your office circulated a response to the third-party Subpoena to Produce Documents that Hi.Q, Inc. d/b/a Health IQ ("Health IQ") served on your firm's client ZeetoGroup LLC on July 12, 2022 in connection with the case *Toby Hoy v. Hi.Q, Inc d/b/a Health IQ,* Case No. 4:21-cv-04875-YGR (N.D. Cal.). Apparently a copy of that response was emailed to counsel for Toby Hoy, but was not sent to either of the address options noted on the Subpoena itself for a valid response. For ease of reference, I have attached to this message a copy of your email (as forwarded today by Plaintiff's counsel) along with a copy of the Subpoena for Documents with Proof of Service.

Service on ZeetoGroup was formally and properly completed on July 12, 2022. ZeetoGroup is a Delaware company and, because your office refused to accept service of the subpoenas, Health IQ formally served a Subpoena for Documents and Subpoena for Deposition on ZeetoGroup's Delaware-based agent for service. ZeetoGroup's response and any objections were required to be returned to counsel for Health IQ's Wilmington, DE office or (for convenience of the subpoena recipient), we offered to accept responses electronically by email at prosenthal@foxrothschild.com. ZeetoGroup failed to send any objections to either of these locations and, therefore has not timely served any objections to the Subpoena for Documents.

ZeetoGroup appears to have attempted to email a response to an expired email address for me at my prior firm; however, that email never reached me and you should have received a bounce-back email confirming that I am no longer employed by Kelley Drye. And your firm is well-aware of my transition to Fox Rothschild and current contact information based on extensive correspondence and multiple court appearances in connection with Plaintiff's subpoena and the motion to compel that recently concluded, including that post-dated my transition to Fox in mid-June (a month before the Subpoenas were served). Regardless, that Kelley Drye email address was not one of the options on the Subpoena for proper service of a response.

While ZeetoGroup still has not properly served any objections in response to either Subpoena, we

are now in receipt of a copy of ZeetoGroup's response to the Subpoena to Produce Documents from counsel for Toby Hoy. Based on that response, and despite waiver of ZeetoGroup's objections, it appears that ZeetoGroup is refusing to produce any documents in response to Health IQ's subpoena. Is that correct?

Given ZeetoGroup's failure to execute service of its response and our desire to obtain relevant information that is solely within the possession of your client, we urge you to reconsider. To the extent your position remains unchanged, please let me know your availability to meet and confer within the next week to determine whether there are any issues that can be resolved without need to seek relief from the Court.

Paul

**Paul Rosenthal**
Partner
**Fox Rothschild LLP**
(973) 548-3388 - direct
PRosenthal@foxrothschild.com
www.foxrothschild.com

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

# EXHIBIT 19



Fox Rothschild LLP
ATTORNEYS AT LAW

49 Market Street
Morristown, NJ 07960-5122
Tel 973.992.4800 Fax 973.992.9125
www.foxrothschild.com

PAUL A. ROSENTHAL
Direct No: 973.548.3388
Email: PRosenthal@FoxRothschild.com

August 12, 2022

**VIA E-MAIL**

Jacob Gillick, Esq.
PHG Law Group
501 West Broadway, Ste 1480
San Diego, CA 92101
jgillick@phglawgroup.com

Re:    ***Hoy v. Hi.Q, Inc. d/b/a Health IQ,*** **Case No. 4:21-cv-04875-YGR**
       **ZeetoGroup LLC Response to Third-Party Subpoena to Produce Documents**

Dear Jacob:

We write on behalf of Hi.Q, Inc. d/b/a Health IQ in an effort to meet and confer regarding ZeetoGroup LLC's response to Health IQ's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action to ZeetoGroup, LLC served July 12, 2022 (the "Subpoena") in the above-referenced case.

Because ZeetoGroup failed to timely serve objections, Health IQ's position is that all objections to the Subpoena are waived; however, in a good faith effort to understand ZeetoGroup's substantive positions before proceeding with motion practice, we are continuing to try and meet and confer on ZeetoGroup's responses. Unfortunately, you failed to appear for our scheduled telephonic meet and confer session on August 11 and have not responded to either my voicemail or email asking to reschedule. This letter follows. We remain optimistic that ZeetoGroup will amend its responses and complete a timely production of all responsive documents in ZeetoGroup's possession to avoid escalation of this matter to the court. Thus, we appreciate the courtesy of a written response, preferably in the form of an amended response to the Subpoena by **Thursday, August 19, 2022**.

Without waiver of any argument, and in a good faith effort to meet and confer concerning ZeetoGroup's current positions, we request your timely response on the following topics:

A Pennsylvania Limited Liability Partnership

California    Colorado    Delaware    District of Columbia    Florida    Georgia    Illinois    Massachusetts    Minnesota    Missouri
Nevada    New Jersey    New York    North Carolina    Oklahoma    Pennsylvania    South Carolina    Texas    Washington



Jacob Gillick, Esq.
August 12, 2022
Page 2

**1.    Proper Place of Production.** ZeetoGroup objects to the Subpoena "on the grounds that the custodian is located more than 100 miles from the place of production." We await an explanation of the basis for this objection given the commonality of ZeetoGroup's state of incorporation, local agent for service, and the place of production.

Public records show that ZeetoGroup is a Delaware company. On July 12, 2022, after ZeetoGroup's counsel refused two requests to accept service of the Subpoena, Health IQ formally served the Subpoena on ZeetoGroup's Delaware-based agent for service The Corporation Trust Company. ZeetoGroup's response and any objections were required to be returned to counsel for Health IQ's Wilmington, DE office or (for convenience of the Subpoena recipient), we offered to accept responses electronically by email at [prosenthal@foxrothschild.com](mailto:prosenthal@foxrothschild.com). ZeetoGroup's objection to the distance between its corporate agent for service and place of production is baseless. The Corporation Trust Company was served at 1209 Orange Street, Wilmington, Delaware, which is under half-a-mile from the place identified for production of documents in the Subpoena, 919 N. Market Street, Suite 300, Wilmington, Delaware.

On August 10-11, we engaged in email discussion regarding ZeetoGroup's challenge to service and the response location; however, ZeetoGroup still has not answered the foundational questions posed by Health IQ: Are you saying that ZeetoGroup is not a Delaware corporation? Or that the service was not on your client's proper agent for service?

Assuming these issues remain undisputed, then any objection to service or the place of production is meritless and should be withdrawn. Please explain the nature of your objection concerning the place of production identified in the Subpoena or amend ZeetoGroup's response to remove that objection.

**2.    Failure to Timely Serve Objections**. On August 2, 2022, Health IQ learned (from Plaintiff's counsel) that ZeetoGroup had attempted to serve responses to the Subpoena but failed to serve them on either of the physical or electronic locations identified in the Subpoena. That morning, we raised this issue with ZeetoGroup's counsel in an email and asked for an opportunity to meet and confer regarding ZeetoGroup's positions. Over one week later, on August 10, we received a response. As detailed in our email correspondence on August 10-11, ZeetoGroup failed to send objections to either of the locations identified in the Subpoena and, therefore has not timely served any objections to the Subpoena. Please confirm whether ZeetoGroup intends to stand on its objections or concede that ZeetoGroup's failure to timely serve a response lacks any justification and, therefore, its objections have been waived?



**Fox Rothschild** LLP
ATTORNEYS AT LAW

Jacob Gillick, Esq.
August 12, 2022
Page 3

Despite the full waiver of objections, Health IQ would like to better understand ZeetoGroup's positions and, if possible, narrow the areas of dispute regarding the Subpoena; therefore, without waiver, Health IQ poses the following additional questions and requests concerning ZeetoGroup's July 29, 2022 response to the Subpoena.

**3.    Documents Responsive to the Subpoena.** No documents appear to have been served in response to the Subpoena. Please confirm that is accurate. Specifically, for each Request to which no documents are being produced, ZeetoGroup should state that position. As to documents responsive to each of the Requests:

a.    <u>Request No. 13</u> seeks "DOCUMENTS sufficient to identify the date(s) that HEALTH IQ was added to YOUR website(s), including GetitFree.us, as an affiliate and/or marketing partner." In response, ZeetoGroup states that "Responding Party has already produced these documents" but does not identify any specific documents. Please amend the response to identify by Bates number the document(s) responsive to Request No. 13.

b.    <u>For each of the other twenty-three requests,</u> ZeetoGroup appears to stand on objections and does not commit to production of any documents in its possession responsive the requests. Please confirm that is an accurate interpretation of ZeetoGroup's position? To the extent that ZeetoGroup has completed its investigation and has no documents responsive to any Request, ZeetoGroup should amend its response to say "none." Otherwise, Health IQ will proceed on the understanding that ZeetoGroup is withholding responsive documents from each of the other twenty-three Requests on the basis of the objections asserted.

**4.    Privilege Objections**. ZeetoGroup objects to nine (9) Requests on the basis of privilege; however, ZeetoGroup has not served the required log detailing information concerning the documents withheld or privilege applicable to each such document. This relates to Request Nos. 1-3, 7-9, and 22-24. For each, please confirm whether ZeetoGroup is withholding documents from production on the basis of privilege and, if so, confirm when we can expect to receive a log of such documents so that Health IQ can evaluate and, if necessary, challenge ZeetoGroup's decision to withhold documents on the basis of privilege. Alternatively, please amend to remove the privilege objection from any Request where it is not appropriately asserted.

**5.    Vague and Ambiguous Objections**. ZeetoGroup objects to seventeen (17) Requests as "vague" and "ambiguous" without providing any details or explanation concerning what, in any of those requests, was vague, ambiguous, or not capable of understanding based on the common usage and definition of the words in the Requests. This relates to Request Nos. 4-6, 10-12, and 14-24. In order to meet and confer further on these Requests, Health IQ needs to



Jacob Gillick, Esq.
August 12, 2022
Page 4

understand the nature of ZeetoGroup's questions or confusion. Please amend ZeetoGroup's responses to explain the specific nature of what is vague and ambiguous about each Request or remove these objections.

**6.**    **Confidentiality, Business Records, and Privacy Objections**. ZeetoGroup objects to seventeen (17) Requests on the basis that they seek "confidential and proprietary business records/information, including but not limited to financial information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution" or some variation of that same confidentiality position. This relates to Request Nos. 4-6, 10-12, and 14-24. As you know, on October 6, 2021, the Court entered a Stipulated Protective Order for Standard Litigation in this case. (Dkt. No. 27.) You have been aware of that Order since, at least, a January 6, 2022 email exchange with Plaintiff's counsel. That Order includes provisions sufficient to address and resolve each of ZeetoGroup's confidentiality and privacy objections. Please expand or explain ZeetoGroup's position as to why the Court's Protective Order is insufficient to protect the information sought by each of these Requests or amend the responses to remove these objections.

**7.**    **Specificity Objections**. ZeetoGroup objects to fourteen (14) Requests on the basis that "Each request should be made with specificity." This relates to Request Nos. 10-12, and 14-24. No additional explanation or context is provided for that objection in any of the Requests. Health IQ does not understand, and cannot respond to, ZeetoGroup's objections as stated. Please amend ZeetoGroup's responses to explain ZeetoGroup's position as to how each of these Requests should be more specific and otherwise lack specificity or remove these objections.

**8.**    **Undue Burden and Expense Objections**. ZeetoGroup objects to twenty-three (23) Requests on the basis that compliance "would be an undue burden and expense" on ZeetoGroup. This relates to Request Nos. 1-12, and 14-24. Please explain the burden posed by each Request, including the reasonable investigation conducted to date and the specific costs, fees, and work required to complete compliance with the Requests so that the parties can evaluate options for a path forward that potentially modifies the Requests or addresses the work required. In order to respond to any burden or expense objection, we necessarily need to understand the burden and expense posed. Absent such information, Health IQ cannot evaluate the merit of these objections. Please amend to include a full explanation of the alleged burden and expense posed by each of these Requests or remove the objections.

**9.**    **Overbreadth Objections**. ZeetoGroup objects to twenty-three (23) Requests on the basis that they are "overbroad." This relates to Request Nos. 1-12, and 14-24. For several, ZeetoGroup alleges that the Request is overbroad as to "time" despite those Requests being



Jacob Gillick, Esq.
August 12, 2022
Page 5

expressly limited to the "RELEVANT TIME PERIOD" set forth for the Subpoena. And, in fact, the Subpoena itself provided a RELEVANT TIME PERIOD linked to the claims at issue in this case. Similarly, ZeetoGroup includes meritless objections to "content" and "scope" as being overbroad without any valid basis or explanation, including for Requests narrowly tailored to seek information related to ZeetoGroup's declarations served in this case (Request Nos. 1-9) and other, similarly relevant Requests. Please amend ZeetoGroup's responses to explain the specific aspects of each Request that ZeetoGroup alleges to be overbroad or remove these objections.

10.    **Annoyance, Harassment, Embarrassment, and Oppression Objections**. ZeetoGroup objects to each of the twenty-four (24) Requests on the basis of some form of alleged annoyance, harassment, embarrassment, and/or oppression. Health IQ served the Subpoena to obtain unique information in the possession of ZeetoGroup relevant to the claims and defenses in this case. ZeetoGroup fails to offer any basis or explanation for how or why the Requests meet the standard for any of these objections. As ZeetoGroup knows, the information ZeetoGroup has regarding the lead and consent records for Plaintiff and the alleged class could be outcome determinative on liability in this putative consumer class action. This Subpoena narrowly seeks documents concerning ZeetoGroup's own records, work product, and declarations previously served by ZeetoGroup in this case. For example, several of the Requests seek documents relevant to or referenced in the declarations served by ZeetoGroup in this case (*see, e.g.,* Request Nos. 1-9.) ZeetoGroup's assertion of these objections appears based on rhetorical theater rather than presenting a valid legal objection to the Requests; such misuse of a discovery objection is improper. Please amend ZeetoGroup's responses to either explain the nature and basis of these objections or remove them.

11.    **Relevance Objections**. ZeetoGroup objects to twenty-three (23) Requests as seeking information "irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence." This relates to Request Nos. 1-12, and 14-24. No context or further explanation is provided for how and why a full and complete response to any of these Requests would include information irrelevant to the claims or defenses in this case. These boilerplate objections are presented even where the Requests seek specific, narrow information concerning Plaintiff and his telephone number (*e.g.,* Request Nos. 17-19), regarding ZeetoGroup's investigation concerning this litigation or the claims (*e.g.,* Request Nos. 20-21), and communications regarding Health IQ, Plaintiff, and this litigation (*e.g.* Request Nos. 22-24). Please amend ZeetoGroup's response to explain how and why, based on your reasonable investigation, each Request implicates irrelevant documents so that we can better understand the nature of your objections, or remove the objections.



Jacob Gillick, Esq.
August 12, 2022
Page 6

**12.    Objection that Information is Available from Defendant**. Request No. 20 seeks "DOCUMENTS sufficient to show the investigation performed concerning any lead(s) sold to CEGE that included the telephone number 515-808-0280." ZeetoGroup objects to Request No. 20, *inter alia*, on the basis "that these documents are available from Defendant and it is improper to be subpoenaing these documents from a third-party." As you know, Health IQ is the defendant in this case and was the party that served the Subpoena. For the avoidance of any confusion, in response to Request No. 20, Health IQ seeks documents sufficient to show the investigation that ZeetoGroup performed concerning any leads ZeetoGroup sold to CEGE that included Plaintiff's telephone number, 515-808-0280. Health IQ does not have possession of these documents nor could it have access to ZeetoGroup's system to identify them. Please amend ZeetoGroup's response to further explain this objection or remove it.

**13.    Subpoena for Deposition of ZeetoGroup**. On July 12, 2022, Health IQ also formally served a Subpoena for Deposition of ZeetoGroup. That subpoena included a list of specific topics relevant to this case upon which Health IQ seeks to depose ZeetoGroup's corporate representative. For efficiency of the parties' efforts to meet and confer on all open matters, please confirm whether ZeetoGroup intends to appear for that deposition on September 24, 2022, and/or whether ZeetoGroup is challenging that subpoena, including as to the place of service. We remain open to a meet and confer regarding the specific date for that deposition; however, and obviously, continued failure of ZeetoGroup to timely complete a full production of documents responsive to the Subpoena may create a need to adjourn the date noticed for ZeetoGroup's deposition.

This letter is a good faith effort to meet and confer regarding ZeetoGroup's response to the Subpoena. Based on further assessment, discussion, and meet and confer, Health IQ reserves the right to present additional arguments. We look forward to the courtesy of your written response— ideally in the form of an amended response to the Subpoena and complete production of all responsive documents—on or before **August 19, 2022**. If we do not receive a response by that date, we will assume ZeetoGroup intends to stand on its current positions and Health IQ will proceed accordingly.

Sincerely,

Paul A. Rosenthal

cc: Counsel for Plaintiff Toby Hoy: Anthony Paronich, Adrienne McEntee, and Jennifer Murray

# EXHIBIT 20

| | |
|---|---|
| **From:** | Rosenthal, Paul A. |
| **To:** | Jacob Gillick |
| **Subject:** | RE: Hoy v. Health IQ - Meet and Confer Letter to ZeetoGroup LLC |
| **Date:** | August 12, 2022 5:23:29 PM |
| **Attachments:** | 2022-08-12 Health IQ Meet and Confer Letter to ZeetoGroup.pdf |

Jacob,

If, as you suggest and contrary to ZeetoGroup's written responses, ZeetoGroup is willing to produce documents in response to the Subpoena, please amend the responses to confirm what documents will be produced and produce those documents. If that is your intention, we remain willing and ready to review and extend our meet and confer. However, if ZeetoGroup intends to stand on its current response, then we will proceed to motion practice. We offered to start with a telephonic meet and confer, but you did not appear. Thus, we have taken the time to provide ZeetoGroup with a detailed written accounting of questions and deficiencies concerning ZeetoGroup's response to the Subpoena. We are entitled to a complete, written response. If you are not willing to provide a written response to each of the issues raised by our letter, then we have reached an impasse and will proceed by seeking relief from the court.

I note that your efforts to deflect from ZeetoGroup by suggesting discovery against other third-parties are not material or relevant to this discussion. Health IQ's Subpoenas seek documents and testimony uniquely in the possession of ZeetoGroup. Any other parties or evidence is irrelevant and does not alter that reality.

As previously confirmed, Health IQ served a formal deficiency letter and is entitled to a complete response. We look forward to receiving a timely amended response to the Subpoena and/or a letter addressing each of the questions and challenges presented in that correspondence.

Paul

**Paul Rosenthal**
Partner
**Fox Rothschild LLP**
(973) 548-3388 - direct
PRosenthal@foxrothschild.com
www.foxrothschild.com

---

**From:** Jacob Gillick <jgillick@phglawgroup.com>
**Sent:** August 12, 2022 4:42 PM
**To:** Rosenthal, Paul A. <PRosenthal@foxrothschild.com>
**Subject:** [EXT] RE: Hoy v. Health IQ - Meet and Confer Letter to ZeetoGroup LLC

Paul,

I said that we discussed procedural issues. I am under no obligation to prepare a "formal" response for you. I am happy to get on a phone call. I am sure we can agree to some documents. But there are

other parties, like the one Health IQ hired, that you guys should be going after.

Let me know a date/time that works for you.

Thanks,

Jacob A. Gillick, Esq.
**PHG Law Group**
501 West Broadway, Suite 1480
San Diego, CA 92101
Tel. (619) 826-8060
Fax. (619) 826-8065

CONFIDENTIAL NOTICE: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain information protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges or confidentiality laws or regulations. If you are not an intended recipient, you may not review, use, copy, disclose or distribute this message or any of the information contained in this message to anyone. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of this message and any attachments. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

**From:** Rosenthal, Paul A. <PRosenthal@foxrothschild.com>
**Sent:** Friday, August 12, 2022 1:38 PM
**To:** Jacob Gillick <jgillick@phglawgroup.com>
**Subject:** RE: Hoy v. Health IQ - Meet and Confer Letter to ZeetoGroup LLC


Jacob,

Your email minimizes the issues addressed by Health IQ's Subpoena and the questions raised regarding ZeetoGroup's response. First, I disagree that we have already argued the issues raised by Health IQ's letter. That is not accurate. Multiple fundamental questions posed to ZeetoGroup remain unanswered. Additionally, there are extensive issues raised, for the first time, in our meet-and-confer letter that have not been addressed by ZeetoGroup. Please review our complete letter (attached again here) and respond to each of the significant challenges and questions presented.

Second, it is not accurate to say that "the question was narrowed down to when Health IQ was added to the site." That may have been the only issue remaining as to the subpoenas that Plaintiff served on ZeetoGroup, but that is not the only factual question at issue in Health IQ's Subpoena. The factual issues in Health IQ's Subpoena are relevant to the claims and defenses at issue in the Hoy case and we intend to pursue a complete response and production on each of the Requests from ZeetoGroup. We will not proceed based on your emailed or informal "explanation." We are entitled to receive, and look forward to prompt production of, all responsive documents followed by corporate representative testimony from ZeetoGroup concerning the Requests and Topics identified that will serve as ZeetoGroup's explanation. We are happy to discuss open issues during a telephonic meet and confer call, but that cannot serve as a substitute for a full, compliant response to the Subpoena.

Because you missed our scheduled telephonic meet and confer, we have taken the time to set forth detailed concerns with, and questions regarding, ZeetoGroup's response in our letter, which requests timely amendment to avoid the need to escalate this issue to the court. We look forward to ZeetoGroup's formal response. If you are unwilling to amend ZeetoGroup's response, please confirm that fact so that we can efficiently move forward with a motion.

Paul

**Paul Rosenthal**
Partner
**Fox Rothschild LLP**
(973) 548-3388 - direct
PRosenthal@foxrothschild.com
www.foxrothschild.com

---

**From:** Jacob Gillick <jgillick@phglawgroup.com>
**Sent:** August 12, 2022 4:22 PM
**To:** Rosenthal, Paul A. <PRosenthal@foxrothschild.com>
**Subject:** [EXT] RE: Hoy v. Health IQ - Meet and Confer Letter to ZeetoGroup LLC

Thanks, Paul.

We have already argued the procedural issues and it would just be a waste of time. I think if we get on a call I can give you an explanation. All of the correspondence surrounding Mr. Cardwell's research is privileged. He clicked on the 25 links and believed that each of the disclosed Health IQ the first time around not only because of the list, but because there were other disclosures that Health IQ may be considered under. That is at least my understanding right now.  We can discuss over the phone but the question was narrowed down to when Health IQ was added to the site.

What time works for you?

Best,

Jacob A. Gillick, Esq.
**PHG Law Group**
501 West Broadway, Suite 1480
San Diego, CA 92101
Tel. (619) 826-8060
Fax. (619) 826-8065

CONFIDENTIAL NOTICE: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain information protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges or confidentiality laws or regulations. If you are not an intended recipient, you may not review, use, copy, disclose or distribute this message or any of the information contained in this message to anyone. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of this message and any attachments. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

**From:** Rosenthal, Paul A. <PRosenthal@foxrothschild.com>
**Sent:** Friday, August 12, 2022 1:13 PM
**To:** Jacob Gillick <jgillick@phglawgroup.com>
**Subject:** RE: Hoy v. Health IQ - Meet and Confer Letter to ZeetoGroup LLC


Jacob,

I hope that all is well with your family. Since we were not able to connect on the scheduled meet and confer call, and to avoid further delay, we provided Health IQ's current requests for clarification and/or amendment in the letter circulated this morning. As discussed therein, the most helpful next step would be to see ZeetoGroup's responses to each of those issues – ideally in an amended response served along with responsive documents – in hopes that we can narrow the open issues and so Health IQ has clarity on what, if anything, ZeetoGroup intends to produce in response to each of the Requests. Once we have answers on each of those issues, I am happy to set up a call to discuss what, if anything, remains open concerning the Subpoena. We look forward to ZeetoGroup's response.

Paul

**Paul Rosenthal**
Partner
**Fox Rothschild LLP**
(973) 548-3388 - direct
PRosenthal@foxrothschild.com
www.foxrothschild.com

---

**From:** Jacob Gillick <jgillick@phglawgroup.com>
**Sent:** August 12, 2022 3:51 PM
**To:** Rosenthal, Paul A. <PRosenthal@foxrothschild.com>
**Subject:** [EXT] RE: Hoy v. Health IQ - Meet and Confer Letter to ZeetoGroup LLC

Hey Paul,

I had a family emergency and was stress traveling all day yesterday. My sincere apologies for missing the call. Can we do it another time? I promise to make it a priority.

---

**From:** Rosenthal, Paul A. <PRosenthal@foxrothschild.com>
**Sent:** Friday, August 12, 2022 8:57 AM
**To:** Jacob Gillick <jgillick@phglawgroup.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>; Jennifer Murray <jmurray@terrellmarshall.com>; Adrienne McEntee <amcentee@terrellmarshall.com>; Ensor, Kieran <KEnsor@foxrothschild.com>

**Subject:** Hoy v. Health IQ - Meet and Confer Letter to ZeetoGroup LLC


Jacob,

I have attached to this message a letter on behalf of Health IQ in our ongoing efforts to meet and confer with ZeetoGroup concerning its response to the third-party subpoena served in the Hoy case. We look forward to your response.

Paul

**Paul Rosenthal**
Partner
**Fox Rothschild LLP**
(973) 548-3388 - direct
PRosenthal@foxrothschild.com
www.foxrothschild.com


This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.


This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.


This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

# EXHIBIT 21

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TOBY HOY, individually and on behalf of all others similarly situated,

Plaintiff,

v.

HI.Q, INC. D/B/A HEALTH IQ

Defendant.

Case No.    4:21-CV-04875-YGR

STIPULATED PROTECTIVE ORDER FOR STANDARD LITIGATION

1. <u>PURPOSES AND LIMITATIONS</u>

Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 12.3, below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

2. <u>DEFINITIONS</u>

2.1    <u>Challenging Party</u>:  a Party or Non-Party that challenges the designation of information or items under this Order.

2.2    <u>"CONFIDENTIAL" Information or Items</u>:  information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

2.3    <u>Counsel (without qualifier)</u>:  Outside Counsel of Record and House Counsel (as well

as their support staff).

2.4    Designating Party:  a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL."

2.5    Disclosure or Discovery Material:  all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.6    Expert:  a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action.

2.7    House Counsel:  attorneys who are employees of a party to this action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.8    Non-Party:  any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.9    Outside Counsel of Record:  attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.10    Party:  any party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.11    Producing Party:  a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.12    Professional Vendors:  persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.13    Protected Material:  any Disclosure or Discovery Material that is designated as "CONFIDENTIAL."

2.14    Receiving Party:  a Party that receives Disclosure or Discovery Material from a Producing Party.

2

3.   SCOPE

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. Any use of Protected Material at trial shall be governed by a separate agreement or order.

4.   DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5.   DESIGNATING PROTECTED MATERIAL

5.1   Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

5.2     Manner and Timing of Designations.  Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" to each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "CONFIDENTIAL." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL" legend to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b) for testimony given in deposition or in other pretrial or trial proceedings, that the

4

Designating Party identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony.

(c)  for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL." If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

5.3    Inadvertent Failures to Designate.  If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

6.    CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1    Timing of Challenges.  Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2    Meet and Confer.  The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within 14 days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the

circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3     Judicial Intervention.  If the Parties cannot resolve a challenge without court intervention, the Designating Party shall file and serve a motion to retain confidentiality under Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) within 21 days of the initial notice of challenge or within 14 days of the parties agreeing that the meet and confer process will not resolve their dispute, whichever is earlier. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph. Failure by the Designating Party to make such a motion including the required declaration within 21 days (or 14 days, if applicable) shall automatically waive the confidentiality designation for each challenged designation. In addition, the Challenging Party may file a motion challenging a confidentiality designation at any time if there is good cause for doing so, including a challenge to the designation of a deposition transcript or any portions thereof. Any motion brought pursuant to this provision must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed by the preceding paragraph.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation by failing to file a motion to retain confidentiality as described above, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge.

7.     ACCESS TO AND USE OF PROTECTED MATERIAL

7.1     Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting,

defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 13 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2     Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)  the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

(b)  the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)  Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)  the court and its personnel;

(e)  court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f)  during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this

Stipulated Protective Order.

     (g)  the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

8.    <u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION</u>

    If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL," that Party must:

    (a)  promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

    (b)  promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

    (c)  cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

    If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

9.    <u>A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION</u>

    (a)  The terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional

1    protections.

2          (b)  In the event that a Party is required, by a valid discovery request, to produce a Non-

3    Party's confidential information in its possession, and the Party is subject to an agreement with the

4    Non-Party not to produce the Non-Party's confidential information, then the Party shall:

5          (1)  promptly notify in writing the Requesting Party and the Non-Party that some or

6    all of the information requested is subject to a confidentiality agreement with a Non-Party;

7          (2)  promptly provide the Non-Party with a copy of the Stipulated Protective Order in

8    this litigation, the relevant discovery request(s), and a reasonably specific description of the

9    information requested; and

10         (3)  make the information requested available for inspection by the Non-Party.

11        (c)  If the Non-Party fails to object or seek a protective order from this court within 14

12    days of receiving the notice and accompanying information, the Receiving Party may produce the

13    Non-Party's confidential information responsive to the discovery request. If the Non-Party timely

14    seeks a protective order, the Receiving Party shall not produce any information in its possession or

15    control that is subject to the confidentiality agreement with the Non-Party before a determination by

16    the court.  Absent a court order to the contrary, the Non-Party shall bear the burden and expense of

17    seeking protection in this court of its Protected Material.

18    10.    <u>UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL</u>

19        If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected

20    Material to any person or in any circumstance not authorized under this Stipulated Protective Order,

21    the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized

22    disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c)

23    inform the person or persons to whom unauthorized disclosures were made of all the terms of this

24    Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to

25    Be Bound" that is attached hereto as Exhibit A.

26    11.    <u>INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED</u>

27            <u>MATERIAL</u>

28        When a Producing Party gives notice to Receiving Parties that certain inadvertently produced

material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court.

12.    MISCELLANEOUS

12.1    Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the court in the future.

12.2    Right to Assert Other Objections. By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

12.3    Filing Protected Material. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request establishing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law. If a Receiving Party's request to file Protected Material under seal pursuant to Civil Local Rule 79-5(d) is denied by the court, then the Receiving Party may file the information in the public record pursuant to Civil Local Rule 79-5(e) unless otherwise instructed by the court.

13.    FINAL DISPOSITION

Within 60 days after the final disposition of this action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material.

10

As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60 day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED: Oct. 1, 2021            /s/ Antony Paronich
                                       Attorneys for Plaintiff

DATED: Oct. 1, 2021            /s/ Nathan Jamieson
                                     Attorneys for Defendant

PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED:     October 6, 2021        _____
                             United States _____

GRANTED

Jacqueline Scott Corley

Judge Jacqueline Scott Corley

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**EXHIBIT A**

**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Northern District of California on _____ in the case of *Toby Hoy v. Hi.Q, Inc. d/b/a Health IQ,* Case No. 3:21-cv-04875. I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the Northern District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of _____ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____