FOX ROTHSCHILD LLP
Paul A. Rosenthal (State Bar No. 338994)
prosenthal@foxrothschild.com
49 Market Street
Morristown, NJ 07960
Telephone: (973) 548-3388

Attorneys for Petitioner, Hi.Q, Inc. d/b/a Health IQ

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HI.Q, INC. D/B/A HEALTH IQ, | MISC. ACTION NO.: **'22 CV 1440 WQH WVG** |
| Petitioner, | |
| v. | **(RELATED ACTION CIV. NO. 4:21-CV-04875-TLT (N.D. CAL.))** |
| ZEETOGROUP, LLC, | **PETITIONER HI.Q, INC. D/B/A HEALTH IQ'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC** |
| Respondent. | |

Dated: September 23, 2022        **FOX ROTHSCHILD LLP**

By:    /s/*Paul A. Rosenthal*
Paul A. Rosenthal
Attorneys for Petitioner
Hi.Q, Inc. d/b/a Health IQ

# **TABLE OF CONTENTS**

I.    RELEVANT FACTUAL HISTORY AND PROCEDURAL POSTURE ..... 1

    A.    The Hoy Action ................................................................................ 2

    B.    Plaintiff's Subpoenas and Motion to Compel ...................................... 3

    C.    Health IQ's Subpoenas .................................................................... 4

    D.    ZeetoGroup's Response to the Subpoena ............................................ 5

    E.    Health IQ's Efforts to Meet and Confer .............................................. 6

II.   CERTIFICATION OF GOOD FAITH EFFORTS TO MEET AND CONFER ........................................................................................ 7

III.  LEGAL STANDARD ........................................................................ 7

IV.   ARGUMENT .................................................................................. 9

    A.    ZeetoGroup's Objections are Improper and Should be Overruled ....... 9

        1.    ZeetoGroup's jurisdictional objection is baseless ..................... 9

        2.    ZeetoGroup's boilerplate objections should be given no weight ..................................................................................... 10

    B.    The Court Should Compel ZeetoGroup To Produce Responsive Documents .................................................................................... 16

        1.    The documents sought in the subpoena duces tecum are highly relevant and needed by Health IQ ................................. 17

        2.    ZeetoGroup does not and cannot present any undue harm or burden from full compliance with the Subpoenas .................... 21

    C.    In the Alternative, this Court Should Transfer this Motion to the Northern District of California ........................................................ 22

V.    CONCLUSION ............................................................................. 23

i

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Apex Fin. Options, LLC v. Gilbertson,*
5
    2021 WL 965509 (D. Del. Mar. 15, 2021)............................................................7

6

*Baier v. Princeton Office Park, L.P.,*
7
    2018 WL 5253288 (D.N.J. Oct. 22, 2018)........................................................11

8

*Concord Boat Corp. v. Brunswick Corp.,*
9
    169 F.R.D. 44 (S.D.N.Y. 1996)..........................................................................9

10

*Cornell Pump Co. v. Thompson Pump & Mfg. Co., Inc.,*
11
    2017 WL 10059025 (M.D. Fla. Dec. 22, 2017)...............................................12

12

*Fober v. Mgt. and Tech. Consultants, LLC,*
13
    886 F.3d 789 (9th Cir. 2018)..............................................................................19

14

*Hancock v. Credit Pros Int'l Corp,*
    2021 WL 2948154 (D.N.J. Jul. 13, 2021).........................................................13

15

*Inventio AG v. ThyssenKrupp Elevator Americas Corp.,*
16
    662 F. Supp. 2d 375 (D. Del. 2009).....................................................................8

17

*Isenberg v. Chase Bank USA, N.A.,*
18
    661 F. Supp. 2d 627 (N.D. Tex. 2009).................................................................9

19

*Mannington Mills, Inc. v. Armstrong World Indus., Inc.,*
20
    206 F.R.D. 525 (D. Del. 2002)...........................................................................17

21

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Becton, Dickinson & Co.,*
22
    2018 WL 627378 (D.N.J. Jan. 30, 2018)............................................................7

23

*New Atl. Venture Fund III, L.P. v. Vir2us, Inc.,*
24
    2016 WL 3583797 (D. Del. June 30, 2016).......................................................17

25

*Pacitti v. Macy's,*
26
    193 F.3d 766 (3d Cir. 1999)................................................................................8

27

*Painters Joint Comm. v. Emp. Painters Tr. Health & Welfare Fund,*
28
    2011 WL 4573349 (D. Nev. Sept. 29, 2011)....................................................11

*Scientific Games Corp. v. AGS LLC*,
   2017 WL 3013251 (D. Nev. Jul. 13, 2017)........................................................11

*Scuderi v. Bos. Ins. Co.*,
   34 F.R.D. 463 (D. Del. 1964) ...........................................................................17

*Siddiq v. Saudi Arabian Airlines Corp.*,
   2011 WL 6936485 (M.D. Fla. Dec. 7, 2011) ....................................................12

*Walker v. Lakewood Condo. Owners Ass'n*,
   186 F.R.D. 584 (C.D. Cal. 1999) .....................................................................10

*Waymo LLC v. Uber Tech., Inc.*,
   2017 WL 2929439 (N.D. Cal. Jul. 7, 2017) ......................................................17

*Williams v. City of Dallas*,
   178 F.R.D. 103 (N.D. Tex. 1998)......................................................................17

**Statutes**

47 U.S.C. 227, *et seq*. ...........................................................................................2

Telephone Consumer Protection Act.....................................................................2

**Other Authorities**

47 C.F.R. §§ 64.1200(c) .......................................................................................2

California Constitution Article I, Sec. I.................................................................13

Fed. R. Civ. P. 26 .......................................................................................8, 17, 21

Fed. R. Civ. P. 26(b) ......................................................................................7, 17

Fed. R. Civ. P. 26(b)(1) ...............................................................................*passim*

Fed. R. Civ. P. 26(b)(2)(C)(i), (ii), and (iii) .........................................................8, 21

Fed. R. Civ. P. 34...............................................................................................10

Fed. R. Civ. P. 34(b)(2)(B) ................................................................................11

Fed. R. Civ. P. 37.............................................................................................1, 8

Fed. R. Civ. P. 37(a)(1).....................................................................................7, 8

Fed. R. Civ. P. 45 .................................................................................... 7, 9, 17, 22

Fed. R. Civ. P. 45(d)(2)(B) ..................................................................... 8, 9

Fed. R. Civ. P. 45(c)(2)(A) ........................................................................... 9

Fed. R. Civ. P. 45(e)(2)(A) ......................................................................... 12

Fed. R. Civ. P. 45(f) .......................................................................... 1, 22, 23

Fed. R. Civ. P. 45(3)(A)(ii) ........................................................................ 10

1  Pursuant to Rules 37 and 45 of the Federal Rules of Civil Procedure, HI.Q, Inc.
2  d/b/a Health IQ ("Health IQ") respectfully moves for an Order compelling
3  ZeetoGroup LLC ("ZeetoGroup") to produce documents that were requested in the
4  subpoena *duces tecum* served on ZeetoGroup on July 12, 2022, Exhibit 1, and to
5  appear for a deposition, which was requested in the subpoena *ad testificandum* served
6  on ZeetoGroup on July 12, 2022, Exhibit 2 (collectively the "Subpoenas"). In the
7  alternative, Health IQ respectfully requests the Court transfer this motion to the
8  Northern District of California pursuant to Rule 45(f). In support of its motion, Health
9  IQ states the following:

10  The Subpoenas were served as part of a case pending in the United States
11  District Court for the Northern District of California as *Toby Hoy, individually and
12  on behalf all others similarly situated v. HI.Q, Inc. d/b/a Health IQ*, No. 4:21-CV-
13  04875-TLT (the "Hoy Action"). The Court should compel ZeetoGroup's timely
14  production of all documents relevant and responsive to the subpoena *duces tecum*.
15  To date, ZeetoGroup has not produced any documents in response to that subpoena.
16  Instead, ZeetoGroup stands on a set of untimely, generic, boilerplate objections that
17  lack merit or any support. Further, a proper balancing of the need for the material
18  (potentially dispositive) information in ZeetoGroup's undisputed possession
19  outweighs any potential, unspecified burden or inconvenience from compelling a
20  non-party to provide a complete response.

21  ## I.    RELEVANT FACTUAL HISTORY AND PROCEDURAL POSTURE

22  This action relates to enforcement of a third-party subpoena for production of
23  documents and information. Non-party ZeetoGroup has possession of unique
24  information relevant to the claims and defenses at issue in the underlying case. Good
25  faith efforts to obtain that information without motion practice have failed. Thus, this
26  action follows.

27

28

1

### A.    The Hoy Action

Plaintiff in the Hoy Action, Toby Hoy ("Mr. Hoy"), on behalf of himself and a putative nationwide class of allegedly similarly situated consumers, filed suit against Health IQ alleging that Health IQ sent marketing text messages to consumers in violation of the Telephone Consumer Protection Act (47 U.S.C. 227, *et seq*. and 47 C.F.R. §§ 64.1200(c)). (*See* Exhibit 3.)

Health IQ did send marketing text messages to certain consumers regarding their expressed interest in insurance products and services; however, it limited those contacts to only those consumers for whom Health IQ understood it had valid prior express written consent to make such calls. Such valid consent is a complete defense to the claims at issue in the Hoy Action.

Evidence produced in the Hoy Action confirms that the subpoenaed party, ZeetoGroup—a Delaware limited liability company with a principal place of business in San Diego, California—has unique information concerning consent records for marketing calls and texts to Mr. Hoy and members of the putative class. Specifically, evidence in the Hoy Action confirms that on or about May 13, 2021, Health IQ purchased a data lead containing Mr. Hoy's telephone number—along with relevant, personal information commonly accompanying an insurance-related consumer lead, including name, address, email, age, etc.—from Enfuego Holdings d/b/a Cege Media ("Cege"). (Exhibit 4, at No. 4.) Mr. Hoy's lead was one of approximately 244,000 data leads that Cege reports originated with its vendor, ZeetoGroup. Specifically, Cege reports that on March 16, 2021, a consumer visited ZeetoGroup's website, www.GetItFree.us, and filled out a web form providing consent for marketing calls and texts to Mr. Hoy's telephone number concerning insurance products and services. ZeetoGroup owns the website GetItFree.us; therefore, ZeetoGroup has unique control over relevant information pertinent to Health IQ's defense that all calls to consumers in the alleged class, including Mr. Hoy, were made on the basis of valid consent.

### B.    Plaintiff's Subpoenas and Motion to Compel

On January 9, 2022, Plaintiff in the Hoy Action served subpoenas for documents and deposition on ZeetoGroup (which are separate and distinct from the Subpoenas that are the subject of this motion). On January 20, 2022, ZeetoGroup served a set of boilerplate objections and refused to provide any additional information or produce a witness for deposition. (Exhibit 5.)

In response to Plaintiff's subpoenas, ZeetoGroup produced multiple, materially inconsistent declarations. First, on March 10, 2022, ZeetoGroup served a sworn declaration from ZeetoGroup's Chief Revenue Officer Shayne Cardwell. (Exhibit 6 (the "March Cardwell Declaration").) The March Cardwell Declaration states that based on Mr. Cardwell's review of relevant ZeetoGroup information and documents, "Health IQ was disclosed at the time the subject consumers provided consent" and "during the relevant time period, each and every consumer who went through Zeeto's path would have seen Health IQ listed as an affiliate." (*Id.* at ¶¶ 9, 10.) Along with the March Cardwell Declaration, ZeetoGroup produced validation reports purporting to show compliant consent for marketing calls and text messages for twenty-six consumers. (Exhibit 7.) These records included specific consumer leads where Health IQ was individually identified as a marketing partner of consumers who submitted their information on the GetItFree.com website in at least January, 2021 and June, 2021. (*Id.*)

ZeetoGroup refused to produce data and documents supporting the March Cardwell Declaration and refused to produce a witness for deposition. Thus, Mr. Hoy filed a contested motion to compel in the United States District Court for the Southern District of California as *Toby Hoy, individually and on behalf of all others similarly situated v. ZeetoGroup, LLC,* Case No. 3:22-cv-00151-LL-MDD (S.D.Cal. Filed Feb. 11, 2022). (Exhibit 8 (Pl's Motion to Compel), Exhibit 9 (ZeetoGroup's Opposition), Exhibit 10 (Plaintiff's Reply).) Health IQ filed a Response to Plaintiff's

Motion to Compel that agreed with Plaintiff's assertion that ZeetoGroup has possession of evidence of consent obtained from Plaintiff and members of the putative class to receive telemarketing calls from Health IQ. (Exhibit 11.) Health IQ asked that the Court compel ZeetoGroup to timely and efficiently produce all information relevant to the claims and defenses in the Hoy Action that may be solely within the possession of ZeetoGroup. (*Id.*)

After full briefing on Mr. Hoy's motion to compel, Judge Dembin held multiple conferences wherein he agreed that the parties needed access to additional information from ZeetoGroup, but pressed ZeetoGroup and Mr. Hoy to meet and confer on a mutually agreeable path forward. On June 29, 2022, ZeetoGroup provided Mr. Hoy with a new declaration stating that "Health IQ did not appear on the marketing partner list or otherwise on Zeeto's websites." (Exhibit 12 (the "June Cardwell Declaration").) A few days later, ZeetoGroup served an additional sworn declaration that included that same statement. (Exhibit 13 (the "July Cardwell Declaration").) In the July Cardwell Declaration, ZeetoGroup also attempted to "withdraw" the March Cardwell Declaration. (*See id.*)[1] After receiving the July Cardwell Declaration, Mr. Hoy's counsel agreed that the motion to compel could be considered moot.

**C.    Health IQ's Subpoenas**

After the agreement between ZeetoGroup and Plaintiff to moot the motion to compel without a complete production, and in lieu of ZeetoGroup's change in position from the March Cardwell Declaration to the June and July Cardwell Declarations, Health IQ sought to obtain relevant information solely in the possession of ZeetoGroup. On July 12, 2022, Health IQ served the Subpoenas on ZeetoGroup's

---

[1] It remains unknown and unexplained the intention of Mr. Cardwell's attempt to "withdraw" a sworn statement executed subject to the penalties of perjury and upon which his employer and its counsel based extensive legal arguments throughout a motion to compel and multiple conferences with a federal judge. (*See, e.g.,* Exhibit 7, Exhibit 9.)

registered agent in Delaware, The Corporation Trust Company, located at 1209 Orange Street, Wilmington, Delaware 19801. (Exhibit 14.)[2]

The subpoena *duces tecum* seeks documents and information relevant to the claims and defenses in the Hoy Action that are uniquely within the possession, custody, and control of ZeetoGroup. Specifically, the subpoena seeks documents and communications relevant to the three declarations of Shayne Cardwell served in this case, including documents and information specifically referenced in those declarations; data and documents concerning operation of the website during the relevant time period that goes to the collection of consent for telemarketing calls; documents and communications relevant to ZeetoGroup's relationship with its customer Cege; and documents relevant to Mr. Hoy, his telephone number, and the lead that stands as the triggering event for telemarketing calls to Mr. Hoy. (Exhibit 1, Schedule A.)

**D.    ZeetoGroup's Response to the Subpoena**

On July 29, 2022, ZeetoGroup attempted to serve its response to the subpoena *duces tecum.* (Exhibit 17.)[3] Health IQ received a copy of ZeetoGroup's response from Mr. Hoy's counsel and, as of today, has never received hard copy or electronic service of ZeetoGroup's response at any of the physical or electronic addresses provided in the Subpoenas.

---

[2] Health IQ formally served its Subpoenas on ZeetoGroup's agent for service after counsel for ZeetoGroup refused Health IQ's requests to accept service of the Subpoenas. (Exhibit 15, Exhibit 16.)

[3] For unexplained reasons, ZeetoGroup's counsel served its response on Mr. Hoy's counsel and on an outdated email address for Health IQ's counsel. ZeetoGroup did not send its objections to any of the physical or electronic destinations identified in the Subpoenas. (*See* Exhibits 1 and 2.) Moreover, ZeetoGroup was provided direct notice of counsel's updated contact information, including a June 10, 2022 email at the time of change, as well as subsequent, ongoing communications between counsel for ZeetoGroup and Health IQ following that date. (*See, e.g.,* Exhibits 15,16.) Health IQ did not receive ZeetoGroup's purported objections until more than 14 days after proper service of the Subpoenas and, in fact, has not received service of any response directly from ZeetoGroup.

ZeetoGroup's response sets forth a series of generic objections to each document request. (*Id*.) ZeetoGroup's objections include "this request is overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression," "to comply with the request would be an undue burden and expense on Responding Party," "the request is calculated to annoy and harass Responding Party," "the request seeks information subject to the attorney-client privilege and attorney work-product doctrine," "the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence from a third party," and "this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information." (Exhibit 17.) None of ZeetoGroup's objections include a single fact in support.

ZeetoGroup has not produced any documents in response to Health IQ's subpoena *duces tecum*. In response to only one request, No. 13, did ZeetoGroup even attempt to identify documents in the record responsive to the Request. Request No. 13 seeks "DOCUMENTS sufficient to identify the date(s) that HEALTH IQ was added to YOUR website(s), including GetitFree.us, as an affiliate and/or marketing partner." In response, ZeetoGroup states that "Responding Party has already produced these documents" but ZeetoGroup does not identify any specific documents. For each of the other twenty-three requests, ZeetoGroup stands on objections and does not commit to production of any documents in its possession responsive to the requests.

**E.    Health IQ's Efforts to Meet and Confer**

Finding its objections nonresponsive and lack of production inadequate, Health IQ requested to meet and confer with ZeetoGroup's counsel. On August 10-11, 2022, counsel for ZeetoGroup and Health IQ engaged in preliminary meet and confer

discussions via email concerning ZeetoGroup's waiver of objections and the procedural propriety of the Subpoenas. (Exhibit 18.) Counsel agreed to conduct a telephonic meet and confer that same afternoon, on August 11, 2022, at 1:00 PT. (*Id.*) ZeetoGroup's counsel did not appear for the scheduled meet and confer, and in addition to a voicemail, Health IQ's counsel sent an email memorializing the efforts to meet and confer. (*Id.*)

In an effort to ensure any meet-and-confer efforts were not delayed further, on August 12, 2022, Health IQ served a written deficiency letter on ZeetoGroup. (Exhibit 19.) An email exchange followed; however, ZeetoGroup was unwilling to offer revised, substantive objections to the document requests or produce responsive documents. (Exhibit 20.) No additional documents or amended response has been served. No motion to quash has been filed regarding the Subpoenas.

## II. CERTIFICATION OF GOOD FAITH EFFORTS TO MEET AND CONFER

Consistent with Federal Rule of Civil Procedure 37(a)(1), Health IQ has in good faith attempted to confer with ZeetoGroup in an effort to obtain disclosure and production of relevant information and documents without court action. Those efforts were futile, and no additional information or documents were produced.

## III. LEGAL STANDARD

Under Rule 45 of the Federal Rules of Civil Procedure, a party may issue a subpoena commanding a party to attend a deposition and may also issue a separate subpoena commanding a party to produce documents, electronically stored information, or tangible things in that person's possession, custody, or control. Fed. R. Civ. P. 45. "[D]iscovery sought via a subpoena issued pursuant to Rule 45 must fall within the scope of discovery permissible under Rule 26(b)." *Apex Fin. Options, LLC v. Gilbertson*, 2021 WL 965509, at *3 (D. Del. Mar. 15, 2021) (quoting *Nat'l*

*Union Fire Ins. Co. of Pittsburgh, PA. v. Becton, Dickinson & Co.*, 2018 WL 627378, at *4 (D.N.J. Jan. 30, 2018)). Under Rule 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "It is well recognized that the federal rules allow broad and liberal discovery." *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999) (citation omitted). Moreover, "[f]or purposes of discovery, relevancy is broadly construed." *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 662 F. Supp. 2d 375, 380 (D. Del. 2009). Rule 26 only limits discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i), (ii), and (iii).

A non-party commanded to produce documents and tangible things may serve objections to a subpoena. Fed. R. Civ. P. 45(d)(2)(B). The objection must be served within 14 days after service of the subpoena, or before the time of compliance, whichever is earlier. *Id*. Under Federal Rule of Civil Procedure 37, "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1).

## IV.    ARGUMENT

### A.    ZeetoGroup's Objections are Improper and Should be Overruled

ZeetoGroup's objections are insufficient and deficient in material ways; thus, any objections should be overruled and a complete production ordered.[4]

### 1.    <u>ZeetoGroup's jurisdictional objection is baseless</u>

Rule 45(c)(2)(A) compels that a non-party may be commanded to produce documents, electronically stored information, or tangible things "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." The subpoena provides a place of production as Fox Rothschild LLP's office located at Citizens Bank Center, 919 N. Market Street, Suite 300, Wilmington, Delaware 19899. (Exhibit 1.) The physical place of production is approximately 0.3 mile from the office of ZeetoGroup's registered agent in Delaware. Alternatively, ZeetoGroup was given the option to provide documents electronically. (*See id*.)

ZeetoGroup offers no explanation for why a Delaware corporation cannot be served via its Delaware registered agent for documents to be produced at a location (less than a mile away) in Delaware. Certainly, a Delaware corporation cannot take the position that it does not "regularly transact business" in the state. ZeetoGroup's jurisdictional objection is baseless and was not made in good faith, as the subpoena *duces tecum* permits the Delaware corporation to produce documents less than 1 mile

---

[4] As a threshold matter, ZeetoGroup procedurally waived its right to object to the subpoena *duces tecum*. Under Rule 45, "[a] person commanded to produce documents . . . may serve on the party or attorney designated in the subpoena a written objection . . . [which] must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B); s*ee also Isenberg v. Chase Bank USA, N.A.*, 661 F. Supp. 2d 627, 629 (N.D. Tex. 2009) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996)) ("The failure to serve written objections to a subpoena within the time specified by Rule [45(d)(2)(B)] typically constitutes a waiver of such objections," as does failing to file a timely motion to quash). It is undisputed that ZeetoGroup did not properly serve its objections within 14 days of proper service of the subpoena and, in fact, has not (through today) *ever* properly served its response.

from the address of its Delaware registered agent. (*See* Exhibit 1.) Further, ZeetoGroup had the option to produce documents electronically. (*See id.*)

In response to Health IQ's meet and confer efforts, ZeetoGroup has not cited any basis for its jurisdictional objection. (*See* Exhibits 19, 20.) To the extent ZeetoGroup has concerns with the burden or logistics of production electronically or in Delaware, Health IQ remains willing and ready to meet and confer on logistics for a full and complete production; however, Health IQ understands that no documents were withheld solely on the basis of the requested physical place of production. The objection should be overruled and ZeetoGroup should be compelled to provide a complete production.

Alternatively, if the Court accepts ZeetoGroup's jurisdictional argument, Rule 45(3)(A)(ii) grants the Court power to modify the subpoena to adjust the place of compliance. Health IQ would request such a modification to permit efficient disclosure of relevant and responsive documents at a mutually agreeable location.

## 2.   ZeetoGroup's boilerplate objections should be given no weight

ZeetoGroup's objections to the document requests were not made in good faith, and its positions are materially deficient. ZeetoGroup has produced no documents in response to the subpoena *duces tecum*, despite undisputed recognition that it has unique possession of relevant (and potentially dispositive) information concerning claims asserted by Plaintiff and the putative class in the Hoy Action. The Court should dismiss ZeetoGroup's objections.

Boilerplate objections, without any factual basis or explanation, cannot relieve ZeetoGroup of its obligation to serve responsive documents in its possession. Such "[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999). Rule 34 confirms that when responding to a discovery request,

1  "the response must either state that inspection and related activities will be permitted
2  as requested or state with *specificity* the grounds for objecting to the request,
3  including the reasons." Fed. R. Civ. P. 34(b)(2)(B) (emphasis added). Health IQ
4  appropriately challenged ZeetoGroup's objections (Exhibit 19.) In response,
5  ZeetoGroup has failed to serve any documents or amend its responses.

6       It is undisputed that ZeetoGroup has possession of documents and information
7  responsive to each of the Requests in the subpoena *duces tecum*. The burden is on
8  ZeetoGroup to "clarify and explain its objections" and "specifically show how each
9  discovery request is objectionable." *Baier v. Princeton Office Park, L.P.,* 2018 WL
10 5253288, at *4 (D.N.J. Oct. 22, 2018); *see also Scientific Games Corp. v. AGS LLC,*
11 2017 WL 3013251, at *2 (D. Nev. Jul. 13, 2017) ("Conclusory or speculative
12 statements of harm, inconvenience, or expense are plainly insufficient."); *Painters
13 Joint Comm. v. Emp. Painters Tr. Health & Welfare Fund,* 2011 WL 4573349, at *5
14 (D. Nev. Sept. 29, 2011) (confirming "the party opposing discovery [by subpoena]
15 bears the burden of showing the discovery is overly broad and [un]duly burdensome,
16 or not relevant"). ZeetoGroup must, but fails to, "specifically detail" the basis for
17 each of its objections. *Painters Joint Committee,* at *5.

18      Because ZeetoGroup has refused to produce documents or provide any
19 explanation as to its baseless objections, Health IQ proceeds on the understanding
20 that ZeetoGroup is withholding documents on the basis of each of these objections.
21 Thus, we address each of ZeetoGroup's baseless objections in turn:

22      **Vague and Ambiguous Objections.** ZeetoGroup objects to seventeen (17)
23 Requests as "vague" and "ambiguous" without providing any details or explanation
24 concerning what, in any of the Requests, was vague, ambiguous, or not capable of
25 understanding based on the common usage and definition of the words in the
26 Requests. (Exhibit 17, Response to Request Nos. 4-6, 10-12, and 14-24.) "Objections
27 which state that a discovery request is 'vague, overly broad, or unduly burdensome'

28

are, by themselves, meaningless, and are deemed without merit. . . ." *Cornell Pump Co. v. Thompson Pump & Mfg. Co., Inc.*, 2017 WL 10059025, at *2 (M.D. Fla. Dec. 22, 2017) (quoting *Siddiq v. Saudi Arabian Airlines Corp.*, 2011 WL 6936485, at *3 (M.D. Fla. Dec. 7, 2011)). In response, Health IQ requested information concerning the nature of ZeetoGroup's questions or confusion. (Exhibit 19.) No further information or response was provided. ZeetoGroup's position is improper and the objections should be overruled.

**Privilege Objections.** ZeetoGroup objects to nine (9) Requests on the basis of privilege; however, ZeetoGroup has not provided any details concerning the nature of documents withheld on the basis of any privilege much less served a log detailing information concerning the documents withheld or privilege applicable to each such document. (Exhibit 17, Response to Request Nos. 1-3, 7-9, and 22-24.) In response, Health IQ requested confirmation of whether ZeetoGroup is withholding documents on the basis of these objections and, if so, a basis and explanation sufficient for Health IQ to evaluate and, if necessary, challenge ZeetoGroup's decision to withhold documents on the basis of privilege. (Exhibit 19.) No additional information has been provided. Rule 45(e)(2)(A) confirms that

> a person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

Fed. R. Civ. P. 45(e)(2)(A). ZeetoGroup has failed to meet that standard and its privilege objections should be overruled.

**Confidentiality, Business Records, and Privacy Objections.** ZeetoGroup objects to seventeen (17) Requests on the basis that they seek "confidential and proprietary business records/information, including but not limited to financial information containing a third party's private information, disclosure of which would

violate Article I, Sec. I of the California Constitution" or some variation of that same confidentiality position. (Exhibit 17, Response to Request Nos. 4-6, 10-12, and 14-24.) For at least nine months, ZeetoGroup has known that the Court in the Hoy Action entered a Stipulated Protective Order that is sufficient to address and resolve each of ZeetoGroup's confidentiality and privacy objections. (Exhibit 19; Exhibit 21.) Under similar factual circumstances, Courts have rejected meritless confidentiality concerns and compelled production where a confidentiality order is in place. *See Hancock v. Credit Pros Int'l Corp,* 2021 WL 2948154 (D.N.J. Jul. 13, 2021). Thus, Health IQ requested further information concerning how or why the Court's order was not sufficient to protect the information sought by each of these Requests. (Exhibit 19.) No additional information has been provided. The Stipulated Protective Order for Standard Litigation entered in this case is sufficient to protect the confidentiality of any documents or information responsive to the subpoena (Exhibit 21); thus, ZeetoGroup's confidentiality objections are baseless and cannot stand.

**Specificity Objections**. ZeetoGroup objects to fourteen (14) Requests on the basis that "Each request should be made with specificity." (Exhibit 17, Response to Request Nos. 10-12, and 14-24.) No additional explanation or context is provided for that objection in any of the Requests. In response, Health IQ requested explanation as to ZeetoGroup's position, including how each of these Requests should be more specific and otherwise lack specificity. (Exhibit 19.) No additional information has been provided. Given the narrowly tailored nature of these Requests, ZeetoGroup's position is objectively meritless and should be struck.

**Undue Burden and Expense Objections.** ZeetoGroup objects to twenty-three (23) Requests on the basis that compliance "would be an undue burden and expense" on ZeetoGroup. (Exhibit 17, Response to Request Nos. 1-12, and 14-24.) In response, Health IQ requested explanation of the burden posed by each Request, including the reasonable investigation conducted to date and the specific costs, fees,

and work required to complete compliance with the Requests so that the parties can evaluate options for a path forward that potentially modifies the Requests or addresses the work required. (Exhibit 19.) Absent such information, Health IQ cannot evaluate the merit of these objections. No additional information has been provided. As discussed further below, ZeetoGroup cannot stand on vague assertions of "burden" to overcome the significant relevance and need for information in its possession.

**Overbreadth Objections.** ZeetoGroup objects to twenty-three (23) Requests on the basis that they are "overbroad." (Exhibit 17, Response to Request Nos. 1-12, and 14-24.) For unexplained reasons, ZeetoGroup alleges that the Request is overbroad as to "time" despite at least three of those Requests being expressly limited to the "RELEVANT TIME PERIOD." (*See id.* at Nos. 10, 12, 16.) And, in fact, the subpoena itself expressly provided a RELEVANT TIME PERIOD linked to the claims at issue in this case. (Exhibit 1.) Similarly, ZeetoGroup offers no basis or explanation for its meritless objections that "content" and "scope" are overbroad, including for Requests narrowly tailored to seek information related to ZeetoGroup's declarations served in this case and other, similarly relevant Requests. (*See, e.g.,* Exhibit 17, Response to Request Nos. 1-9.) In response, Health IQ requested a basis for the aspects of these Requests that ZeetoGroup deemed overbroad in a good faith effort to meet and confer regarding any legitimate concerns (Exhibit 19); however, no additional information has been provided. ZeetoGroup's generic breadth objections lack merit and cannot prevent production.

**Annoyance, Harassment, Embarrassment, and Oppression Objections.** ZeetoGroup objects to each of the twenty-four (24) Requests on the basis of some form of alleged annoyance, harassment, embarrassment, and/or oppression. (Exhibit 17, Response to Request Nos. 1-24.) Health IQ served the subpoena *duces tecum* to obtain unique information in the possession of ZeetoGroup relevant to the

14

claims and defenses in this case. ZeetoGroup fails to offer any basis or explanation for how or why the Requests meet the standard for any of these objections. As ZeetoGroup knows, the information ZeetoGroup has regarding the lead and consent records for Plaintiff and the alleged class could be outcome determinative on liability in this putative consumer class action. This subpoena narrowly seeks documents concerning ZeetoGroup's own records, work product, communications, data, and declarations previously served by ZeetoGroup in this case. For example, several of the Requests seek documents relevant to or referenced in the (contradictory) declarations served by ZeetoGroup in this case. (*See,* Request Nos. 1-9.) ZeetoGroup's assertion of these objections appears based on rhetorical theater rather than presenting a valid legal objection to the Requests; such misuse of a discovery objection is improper. In response, Health IQ requested an explanation concerning the nature and basis of ZeetoGroup's objections. (Exhibit 19.) No additional information has been provided. ZeetoGroup's meritless and baseless allegations of "annoyance" and "harassment" should be rejected.

**Relevance Objections.** ZeetoGroup objects to twenty-three (23) Requests as seeking information "irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence." (Exhibit 17, Response to Request Nos. 1-12, and 14-24.) No context or further explanation is provided for how and why a full and complete response to any of these Requests would include information irrelevant to the claims or defenses in this case. ZeetoGroup's boilerplate objections are presented even where the Requests seek specific, narrow information concerning Mr. Hoy and his telephone number (*e.g., id.,* Response to Request Nos. 17-19), regarding ZeetoGroup's investigation concerning this litigation or the claims (*e.g., id.,* Response to Request Nos. 20-21), and communications regarding Health IQ, Mr. Hoy, and this litigation (*e.g., id.,* Response to Request Nos. 22-24). In response, Health IQ requested an explanation

as to how and why, based on ZeetoGroup's reasonable investigation, each Request implicates irrelevant documents so that it could better understand the nature of the objections. (Exhibit 19.) No additional information has been provided. The information sought from ZeetoGroup goes to the heart of Health IQ's consent defense in the Hoy Action and, if established, should be dispositive of the claims asserted by Mr. Hoy and on behalf of the putative class. The relevance of this information to the claims and defenses in the Hoy Action cannot be overstated and ZeetoGroup's objection must be rejected.

**Objection that "Documents are available from Defendant."** Request No**.** 20 seeks "DOCUMENTS sufficient to show the investigation performed concerning any lead(s) sold to CEGE that included the telephone number 515-808-0280." (Exhibit 1.) ZeetoGroup objects to Request No. 20, *inter alia*, on the basis "that these documents are available from Defendant and it is improper to be subpoenaing these documents from a third-party." (Exhibit 17.) In response, Health IQ clarified that Health IQ is, itself, the defendant in the Hoy Action and was the party that served the subpoena *duces tecum*. (Exhibit 19.) Health IQ also clarified that, in response to Request No. 20, Health IQ seeks documents sufficient to show the investigation that ZeetoGroup performed concerning any leads ZeetoGroup sold to Cege that included Plaintiff's telephone number, 515-808-0280. (*Id.*) Health IQ does not have possession of these documents, nor could it have access to ZeetoGroup's system to identify them. No additional information or response has been provided to support ZeetoGroup's unexplained and baseless objection. It must be overruled or otherwise dismissed as baseless.

**B.    The Court Should Compel ZeetoGroup To Produce Responsive Documents**

"When a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of Rule 26(b)(1)."

*Williams v. City of Dallas*, 178 F.R.D. 103, 110 (N.D. Tex. 1998); *Waymo LLC v. Uber Tech., Inc.,* 2017 WL 2929439, at *2 (N.D. Cal. Jul. 7, 2017) ("The scope of discovery under Rule 45 is the same as under Rule 26(b)."). As stated, under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The test of relevance for purposes of discovery is a liberal one. It requires only a reasonable probability of materiality and is not as strict as the standard of relevance at trial." *Scuderi v. Bos. Ins. Co.*, 34 F.R.D. 463, 466 (D. Del. 1964).

As detailed in Section A, ZeetoGroup's objections lack merit, explanation, or sufficient basis. On this record, ZeetoGroup cannot meet its burden to withhold relevant and responsive documents from production in response to the subpoena *duces tecum*. In determining the propriety and proportionality of a subpoena, the Court balances the relevance of the documents sought and the movant's needs for them against the potential harm and burden placed on the non-party to comply with the subpoena. *See New Atl. Venture Fund III, L.P. v. Vir2us, Inc.*, 2016 WL 3583797, at *3 (D. Del. June 30, 2016) (citing *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002)). In defending the Hoy Action, the documents sought by Health IQ are pertinent to one of its core defenses, and ZeetoGroup does not, because it cannot, present any valid basis for withholding the relevant and responsive documents in its possession.

1.   **The documents sought in the subpoena duces tecum are highly relevant and needed by Health IQ**

Plaintiff Hoy has alleged "the amount in controversy in the underlying litigation is billions of dollars, *before* the potential for treble statutory damages is considered." (Exhibit 8.) A record of valid consent for marketing text messages to Mr. Hoy, or members of the putative class, could be dispositive as to all claims at issue in the Hoy Action. Thus, ZeetoGroup's unsupported, boilerplate objections do

not and cannot overcome the material need for production of the responsive information in ZeetoGroup's possession.

**Request Nos. 1 through 9 seeking information concerning the three Cardwell Declarations**. ZeetoGroup has served three declarations in this case. (Exhibits 6, 12, 13.) These Requests seek documents and communications relevant to the declarations, including documents referenced in the declarations themselves. It remains unexplained, much less justified, why ZeetoGroup feels that documents and communications about, referenced in, or that serve as the factual basis for its declarations can be withheld. In addition, information in ZeetoGroup's possession that might serve to undermine one or the other of the contradictory positions presented by the Cardwell Declarations must be produced. As detailed above, leads generated on ZeetoGroup's website, www.GetItFree.us, were sold by Cege to Health IQ and led directly to the telemarketing text messages at issue in the Hoy Action. Those basic facts are not in dispute. Information concerning the website and any consent collected is not just relevant, but potentially dispositive, to the claims asserted by Mr. Hoy and the putative class. ZeetoGroup does not, because it cannot, provide any good faith basis upon which it can withhold relevant information in its possession.

**Request Nos. 10-15 seeking information concerning the consent records and identification of Health IQ on ZeetoGroup's website**. Access to documents concerning consumers' experience on GetItFree.us is crucial to the parties' understanding of the contradictory statements concerning the consent for telemarketing calls and text messages collected from Mr. Hoy and members of the putative class. The March Cardwell Declaration asserts that every consumer would have been provided disclosure of Health IQ as a "marketing partner" on ZeetoGroup's Website. (Exhibit 6.) That declaration was signed based on review of documents and information that have not been fully produced and have never been

explained. Some of the documents produced by ZeetoGroup undisputedly support the statements from the March Cardwell Declaration, while others do not. For example, Plaintiff's prior motion to compel argued that five of the validation reports produced by ZeetoGroup show Health IQ included as a marketing partner. (*See, e.g.,* Exhibit 10, at 7.) Those reports include web form submissions by consumers in January and June 2021. (Exhibit 7.) Thus, the limited documents produced by ZeetoGroup in response to Plaintiff's subpoenas also contradict statements concerning identification of Health IQ in the June and July Cardwell Declarations. (Exhibits 12, 13 (asserting that Health IQ was not identified as a marketing partner until January 2022).) The sworn statements from ZeetoGroup cannot be reconciled with the current record evidence. Thus, Health IQ seeks a complete production (and deposition) from ZeetoGroup in hopes of understanding how, when, and why Health IQ appears to have been disclosed as a marketing partner for some, but not all, of the consumers that visited GetItFree.us during the Relevant Time Period. (Exhibits 1, 2.) Regardless, ZeetoGroup's records concerning consent as to each of the leads Cege sold to Health IQ is relevant to Health IQ's defenses.[5]

**Request Nos. 16-24 seeking information concerning Cege and the Hoy Action.** The remaining Requests seek information concerning ZeetoGroup's contractual relationship with Cege, relevant leads ZeetoGroup sold to Cege, ZeetoGroup's investigation concerning the claims and defenses relevant to the Hoy Action, and ZeetoGroup's communications relevant to Health IQ, Mr. Hoy, and the Hoy Action. Health IQ does not have access to these materials and needs these

---

[5] Even if Cege violated its contract by selling Health IQ a lead that did not disclose Health IQ as a party that may contact the consumer, that does not mean the information in ZeetoGroup's possession is irrelevant. Even if the July Cardwell Declaration is accepted as true, consumers may have provided sufficient consent for calls from Health IQ even if Health IQ was not, itself, identified on the GetItFree.us website. *See, e.g., Fober v. Mgt. and Tech. Consultants, LLC*, 886 F.3d 789, 794 (9th Cir. 2018) (finding website authorization may be valid for third-party even if a company is not expressly disclosed on that website).

documents to understand the scope of its potential defenses. For example, information concerning the scope of ZeetoGroup's investigation is crucial to understanding the conflicting declarations served in this case as well as, potentially, rectifying a fundamental factual failure on the part of ZeetoGroup in assessing the relevant factual record. (*See* Exhibit 1 at Request No. 21.) This discovery could help establish that Mr. Cardwell's changed position is based, in part, on faulty information. Because ZeetoGroup based its investigation solely on a list of telephone numbers, and without consideration of timing or whether that lead submission was, in fact, the one sold to Cege, there appears to be a factual disconnect between some or all of the records Mr. Cardwell reviewed and the actual leads at issue in the Hoy Action. Cege produced "LeadID" information that would permit ZeetoGroup to identify the specific Visual Playback and validation report/data for leads ZeetoGroup sold to Cege that are relevant to this case. That information is more precise for the lead at issue than simply looking for leads associated with a telephone number. In fact, a cross-check of that LeadID information for the 26 reports produced by ZeetoGroup (Exhibit 9, at Ex. 11), confirmed they do not match the LeadID numbers provided by Cege for those telephone numbers. Put differently, the 26 reports may relate to leads that ZeetoGroup never sold to Cege but are, instead, different leads for the same telephone number on a different date.

In sum, the documents requested in the subpoena *duces tecum* are pertinent to Health IQ's defenses and the Plaintiff's claims in the Hoy Action. These documents could establish Health IQ's defense of valid consent from the putative class and are potentially dispositive of claims that Plaintiff's counsel estimates stretch into the billions. This Court should require ZeetoGroup to produce all responsive documents in its possession.

**2.**  **ZeetoGroup does not and cannot present any undue harm or burden from full compliance with the Subpoenas**

Rule 26 only limits discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i), (ii), and (iii). ZeetoGroup does not, because it cannot, present any valid argument for undue harm or burden.

First, the discovery sought is not unreasonably cumulative or duplicative, and it cannot be obtained from another source. As stated in the declarations of Mr. Cardwell—ZeetoGroup's Chief Revenue Officer—the documents he reviewed in making the declarations are in ZeetoGroup's care, custody, and control. (Exhibits 6, 12, 13.) Moreover, ZeetoGroup is the source of the consumer information based upon which Health IQ contacted Mr. Hoy, and it would necessarily have information regarding the Declarations drafted by its employee, its own website's operation, its investigation concerning the Hoy Action, communications with Plaintiff or Cege, and records of consent supporting consumer lead data that it sold to Cege. The subpoena *duces tecum* is narrowly tailored to seek information uniquely in ZeetoGroup's possession.

Second, Health IQ has not had ample opportunity to obtain the information by discovery, as ZeetoGroup is a non-party to the Hoy Action and is the entity that has the documents sought in its care, custody, and control. ZeetoGroup rebuffed Plaintiff's discovery efforts in the Hoy Action, standing on the three declarations and information (of questionable relevance) for only 26 of the approximately 244,000 leads it sold to Cege. Each of those leads was purchased by Health IQ on the understanding that it was supported by valid prior express written consent for

21

telemarketing calls and texts. (*See, e.g.,* Exhibit 4, No. 4.) Each of those leads stands as the basis for a potential class member's claims against Health IQ; thus, information concerning each of those consumer leads is relevant to understanding the scope (and merit) of that class member's claims.

Third, the documents sought are not outside the scope of Rule 26(b)(1), as the documents pass the relevance threshold, and ZeetoGroup has not presented any valid argument as to how or why their production would pose any, much less an undue, burden. Each of the Requests seek documents and information that Health IQ understands would be maintained in ZeetoGroup's ordinary course of business and that are uniquely within its control to identify and determine the logistics for collection and production. Absent any supporting information, it would be improper to accept a representation of burden.

For the foregoing reasons, the Court should order ZeetoGroup to comply with the Subpoenas.

**C.     In the Alternative, this Court Should Transfer this Motion to the Northern District of California**

Under Federal Rule of Civil Procedure 45(f), this Court may transfer this matter to the Court where the underlying Hoy Action is pending. "When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances."  Fed. R. Civ. P. 45(f). The advisory notes to Rule 45 further provide that "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when . . . the same issues are likely to arise in discovery in many districts."

On August 29, 2022, the Hoy Action was reassigned to Judge Trina Thompson who will assume control of all pending discovery in the case, as well as Plaintiff's August 3, 2022 Motion to Amend the Complaint. (Dkt. No. 52 (Order Reassigning

Case).) Given the broader implications this motion and discovery may have on the Hoy Action, transfer to the Northern District of California would be appropriate.

## V.    CONCLUSION

For the foregoing reasons, Health IQ respectfully requests this Court compel ZeetoGroup to produce documents responsive to the subpoena *duces tecum* and appear for a deposition in response to the subpoena *ad testificandum* at a mutually agreeable date and location. (Exhibits 1 and 2.) In the alternative, Health IQ respectfully requests this Court transfer this motion to the Northern District of California pursuant to Federal Rule of Civil Procedure 45(f).

Dated:  September 23, 2022              **FOX ROTHSCHILD LLP**

                                        By:     /s/*Paul A. Rosenthal*
                                                Paul A. Rosenthal
                                                Attorneys for Petitioner
                                                Hi.Q, Inc. d/b/a Health IQ