Jacob A. Gillick, Esq. 312336
jgillick@PHGLawGroup.com
PHG Law Group
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone:  (619) 826-8060
Facsimile:  (619) 826-8065

Attorneys for Respondent Zeetogroup, LLC,

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| HI.Q. INC D/B/A HEALTH IQ,<br><br>Petitioner,<br><br>v.<br><br>ZEETOGROUP, LLC,<br><br>Respondent. | Case No. 22-cv-1440-WQH-WVG<br><br>**OPPOSITION TO HI.Q, INC. D/B/A HEALTH IQ'S MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC** |
|---|---|

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................4

II. STATEMENT OF FACTS ....................................................................................5

III. ARGUMENT .......................................................................................................8

   A.   The Subpoena is Invalid Pursuant to Rule 45 ..................................................8

   B.   Petitioner's Requests are Vague, Ambiguous, and Non-Specific .................9

      i.   The Cardwell Declaration is Sufficient, and Any Request for Information has not been Specified ..........................................................................................9

      ii.   Information Regarding Disclosure Has been Produced ...........................10

      iii.   Zeeto's Vague and Ambiguous Objections Should be Sustained ............10

   C.   Confidentiality..................................................................................................12

   D.   The Documents Requested are Knowingly Privileged...............................12

   E.   Production of Documents in Response is Burdensome..............................13

   F.   Petitioner's Demands are Not Relevant.......................................................14

   G.   Petitioner's Demands are Overbroad...........................................................14

   H.   Harassment......................................................................................................14

      i.   Information Concerning Policyscout should be sought from Policyscout ..15

   I.   Transfer of the Matter is Unnecessary ..........................................................15

IV. CONCLUSION ..................................................................................................16

# TABLE OF AUTHORITIES

## RULES

Federal Rule of Civil Procedure, Rule 45 .......................................................... 2, 8

Federal Rule of Civil Procedure, Rule 45(1)-(B)(ii) ............................................... 8

Federal Rule of Civil Procedure, Rule 45(d)(1) ..................................................... 8

# I.

# INTRODUCTION

Toby Hoy ("Hoy") has filed a class action lawsuit against HI.Q, Inc. d/b/a/ Health IQ, ("Health IQ" or "Petitioner") in the Northern District of California under case number: 4:21-cv-04875-TLT. It is alleged in that case that Petitioner Health IQ sent marketing text messages to consumers in violation of the Telephone Consumer Protection Act. Health IQ claims that it had valid consent to send the messages.

Respondent ZeetoGroup ("Zeeto") provided lead generation services to a company called Policyscout (aka Cege and Enfuego) whereby Zeeto took consumers who clicked on relevant ads and put them through a "survey path" where the consumer is asked to provide their contact information, consent to Zeeto's disclosures, and answer a series of questions. The answers provided by the consumer may match them with an affiliate or advertiser, such as Policyscout, who was looking for leads to sell to Health IQ.

Hoy claims that Health IQ did not have consent to contact him. In furtherance of that claim, Hoy served multiple subpoenas on Zeeto and requested detailed information of over 24,000 leads. In response, Zeeto informed Hoy that all of the information related to the 24,000 leads was in the possession a third-party, Jornaya, that Zeeto had retained. Jornaya is a verification company that integrates with Zeeto's "survey path" and captures the consumer journey and provides a third-party certification, called LeadID, that includes a visual playback validating the consumer's actions. Zeeto Chief Revenue Officer, Shayne Cardwell, reviewed a sampling of the 24,000 leads, including Hoy, and provided those documents with a declaration that explained there was proper disclosure based on the reports.

Eventually, it was requested that Zeeto determine specifically when Health IQ was added to Zeeto's "affiliate disclosure" list. Zeeto was able to find the code changes and verify the time frame when Health IQ was added as an affiliate. Those

records have been produced with an accompanying declaration. It was at that point the Court and the parties agreed there was nothing further that Zeeto is obligated to provide. There was a big discussion about going to Jornaya regarding the leads.

Petitioner knows where all of the leads can be investigated and has evidence of when Health IQ was added to the affiliate disclosure list. As described below, Petitioner is unable to clarify what exactly it needs because there is nothing left for Zeeto to provide. If Petitioner's case is really about the proper disclosure, it should go to Jornaya and request all of the reports related to each lead. Attempting to pass off the labor and cost onto Zeeto is improper. Therefore, Zeeto requests that the Motion to Compel be denied.

## II.

## STATEMENT OF FACTS

On September 7, 2021, Defendant to the main case, Toby Hoy ("Hoy"), served his first subpoena on Zeeto. On September 20, 2021, Zeeto objected. Hoy did not move to compel the subpoena. On October 20, 2021, Hoy again asked Zeeto to accept service of a subpoena but then went "radio silent." On November 29, 2021, after confirming Zeeto will accept services, counsel for Hoy sent over a "Schedule A" which he attempted to pass off as a subpoena. A true and correct copy of declarations previously filed with this Court evidencing these facts is attached to the Declaration of Jacob A. Gillick as Exhibit B.

On December 9, 2021, Hoy served his third subpoena. On December 20, 2021, Zeeto responded with the same objections. Again, Hoy made no attempt to dispute the objections or compel the subpoena. On January 9, 2022, Hoy served his fourth subpoena on Zeeto with the same objections being asserted on January 22, 2022. On or around February 11, 2022, Hoy filed a motion to compel.

In order to assist in resolving the dispute, Zeeto requested the identifying information of consumers in dispute so it could contact Jornaya and research the issue. Mr. Hoy's counsel inexplicably refused this request until February 15, 2022,

when it sent over a list of over 24,000 numbers supposedly produced by Policyscout. Immediately thereafter, Zeeto contacted Jornaya.

On March 10, 2022, Zeeto produced a declaration of Shayne Cardwell along with 26 different reports from Jornaya. Jornaya utilizes a tool which converts code into a "visual playback" depicting what would have been seen by the consumer upon entering their information. Zeeto selected 26 different phone numbers at random to investigate, including Hoy's.

After reviewing the "video playback," it was uncovered that Policyscout ran the type of campaigns where they used Zeeto as a catalyst to provide free samples to consumers in exchange for phone numbers. Zeeto has no idea what Policyscout did with the consumers information after receiving it because that was not the relationship. However, each and every "video playback" included a disclosure that the information **would be shared with Zeeto's partners—which includes Policyscout who sold leads to Petitioner Hi.Q, Inc. ("Health IQ").**

Following a motion to compel and multiple informal conferences with this Court, the overbroad requests from Hoy were narrowed down to a point where Zeeto would not have to provide voluminous records or the records of Jornaya. Petitioner here was involved in each and every one of those conferences and was given a chance to speak up.

On June 29, 2022, Mr. Cardwell issued a declaration stating:

(1) "Among other things, Zeeto asks consumers to consent to be contracted by certain affiliates or marketing partners listed on the webform or included in an 'affiliates' hyperlink."

(2) "In the regular course of business, Zeeto maintains coding logs that identify, among other things, when the marketing partner was added to or removed from the list of companies disclosed as affiliates. Zeeto retain coding logs for its websites for at least three years. Attached as Exhibit 1 is a true and correct screenshot of Zeeto's coding logs, reflecting the addition of Health IQ to the list of marketing partners on or around January of 2022."

(3) Attached as Exhibit 2 is a true and correct screenshot of the list of marketing partners as it appeared on Zeeto's website on or around January 24, 2022, showing Health IQ listed as an affiliate."

(4) "I have reviewed Zeeto's coding logs and have verified that Health IQ did not appear on the marketing partner list or otherwise on Zeeto's websites between June 24, 2017, and December of 2021."

(5) "Attached as Exhibit 3 is a true and correct screenshot of the list of marketing partners as it appeared on Zeeto's websites on or around September 23, 2021, showing that Health IQ was not listed as an affiliate. This screenshot was taken after making amendments to the path."

(6) With regards to the March 14, 2022, subpoena, "I went through and did a sampling of the 24,000 numbers I received. Upon review of the sample, I believed that each and every consumer went through Zeeto's path and saw Health IQ. In the previous declaration, I stated that I limited the scope of my review to 26 randomly selected records, pulled Jornaya LeadID's for each, and checked to see if Health IQ was disclosed on the marketing partners list, which they were. I also stated that HealthIQ had never been removed from the Marketing Partners list. This declaration may still be helpful regarding details surrounding the link and managing the companies listed."

Finally, on July 1, 2022, after further meet-and-confer efforts, and requests to clarify the discrepancy between the declarations, Mr. Cardwell explained:

(1) "Zeeto asks consumers to consent to be contacted by certain affiliates or marketing partners [including Policyscout] listed on the webform or included in an 'affiliates' hyperlink."

(2) "I submitted a declaration [on March 14, 2022]. I hereby withdraw that declaration on the basis of newly discovered information (the coding logs) and further understanding of what the parties' dispute was."

A true and correct copy of this Declaration is attached to the Declaration of Jacob A. Gillick as Exhibit A. Petitioner now demands further information dating back to January 1, 2017, and a deposition of Mr. Cardwell over facts which have already been investigated, discussed, and disclosed. Even in its motion, Petitioner has a hard time describing what exactly it needs relevant to its action. The sole

issue, not to be confused, is the disclosure of Health IQ to leads. Coding logs and declarations have been produced evidencing the exact dates of the disclosure. Outside of this information, there is nothing more for Zeeto to provide—especially given the objectionable nature of the subpoena. The best option would be for Petitioner to request the reports for the 24,000 leads directly from Jornaya who is in possession of the consents.

## III.

## ARGUMENT

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. Proc., R. 45 subd., (d)(1).

### A. *The Subpoena is Invalid Pursuant to Rule 45*

"For a trial, Hearing, or Deposition. A subpoena may command a person to attend trial, hearing, or deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer." Fed. R. Civ. Proc., Rule 45 subd., (1)-(B)(ii).

Petitioner argues that this objection is improper because Zeeto's principal place of business is located in Delaware. MTC § IV subd., (1). As described above, this is not the standard. All of the declarations signed by Mr. Cardwell, the intended deponent, were signed in San Diego, California. Petitioner has been aware of this fact. *See* MTC Evidence, p. 68, 154, and 380. Issuing the deposition subpoena in Delaware, being made aware of it, then filing a Motion to Compel sans any supporting declaration is further proof that this subpoena is nothing more than a harassment/revenge mission.

Given the strict language of Rule 45, and Petitioner's admitted failure to seek compliance of the Subpoena within 100 miles of Mr. Cardwell or where Petitioner

knows Zeeto's principal place of business is, the Motion to Compel should be dismissed.

### B. *Petitioner's Requests are Vague, Ambiguous, and Non-Specific*

As described below, the requests are vague and would require a huge production of five years of code that Zeeto does not have (it only keeps three as stated in Mr. Cardwell's declarations) and 24,000 leads that are in the possession of Jornaya.

#### i. *The Cardwell Declaration is Sufficient, and Any Request for Information has not been Specified*

Petitioner demands "information in ZeetoGroup's possession that might serve to undermine one or the other of the contradictory positions presented by the Cardwell Declarations must be produced." MTC p. 18: 7-13.

First, the declarations are not contradictory as Mr. Cardwell withdrew his prior Declarations, provided documents, and explained the withdrawal. Further, documents evidencing when Health IQ was disclosed as an affiliate and an explanation as to the timing was included with the declaration. Petitioner is unable, anywhere in its subpoena, to specify what it needs because it has no idea and is using Zeeto for an improper fishing expedition. Given the lack of relevancy/specificity as to what Petitioner could use to possibly change the outcome of the Declaration, Zeeto requests the Motion to Compel be denied. Petitioner should shift its efforts towards Jornaya, which has all of the information related to all of the leads.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

        ii.       **_Information Regarding Disclosure Has been Produced_**

Petitioner claims that it "seeks a complete production (and deposition) from ZeetoGroup in hopes of understanding how, when, and why Health IQ appears to have been disclosed as a marketing partner for some, but not all, of the consumers." MTC p. 19:11-14. For some reason, instead of going to Jornaya, the company with information on each and every lead, Petitioner is seeking this information from Zeeto.

Petitioner is unable to articulate what it needs or how the Declaration of Shayne Cardwell, which included documents as to Health IQ's disclosure in the affiliate list, is insufficient. Petitioner simply wants Zeeto to prepare every single record for Petitioner to fish through. If Petitioner has a specific and narrowed request that does not require the in-depth analysis of 24,000 individual leads which is in the possession of Jornaya—Zeeto would listen. Given the failure to request any document with specificity, Zeeto requests the Motion to Compel be denied.

        iii.       **_Zeeto's Vague and Ambiguous Objections Should be Sustained_**

Without discussing the details of each request, Petitioner cites Florida law and makes a blanket assertion that the requests are not vague and ambiguous. MTC p. 11:22-12:4.

Requests four through six all seek documents regarding the "coding logs" from January 1, 2017, to present in connection with the June 29, 2022, Declaration of Shayne Cardwell. All of the coding logs relevant to the main action have been produced with the Shayne Cardwell Declaration to show when Health IQ was added as an affiliate. Nonetheless, these records are vague and ambiguous as to what specific records could be connected to the declaration dating back five years to 2017. This request demands Zeeto sift through mountains of information to figure out what Petitioner needs. This is not proper discovery.

///

Requests 10 and 11 are also vague and ambiguous as the subpoena fails to identify what "telemarketing calls" are—as the definition varies, or what the "use of prerecorded messages" or "web sessions" means.  The subpoena also requests services performed on behalf of Health IQ from January 1, 2017, to present.  It is unclear what information Zeeto would have that Petitioner may not or how Zeeto is directly related to Health IQ despite Policyscout being the intermediary.  Petitioner even admits that Plaintiff Hoy filed suit against Health IQ alleging that Health IQ, not Zeeto, sent marketing text messages to consumers in violation of the Telephone Consumer Protection Act.  MTC p. 1:2-6.  Request 12 is vague and ambiguous as to "websites," and "marketing partners and/or affiliates," from January 1, 2017, to present.

Requests 14 and 15 seeking the date Health IQ was removed as an affiliate are vague as Petitioner assumes Health IQ was removed as an affiliate or that there would be a reason to remove Health IQ as an affiliate.  It is also irrelevant to the action.

Request number 16 is vague as to "contract, agreement, insertion order, Terms of Use, and/or Terms of Service" related to CEGE (Policyscout) because Zeeto is not Policyscout.  If Petitioner would like to see what every consumer saw, they would have to go to Jornaya, a third-party, for the reports which would provide video playback of what each consumer saw upon consenting to being contacted by Health IQ.

Request numbers 17 through 20 are vague and ambiguous as to "web form submissions and/or consumer leads that include" the telephone number 515-808-0280 and Hoy.  Zeeto is unsure about what is being sought here compared to what has already been produced.  As described herein, Zeeto has already produced all Jornaya reports in its custody and control associated with Hoy.

Request 21 is vague as to what constitute an "investigation" into leads sold to CEGE.  It is unclear what kind of investigation may have taken place or what

constitutes an "investigation." Request numbers 22 through 24 are also vague as they do not specify the parties or dates.

### C.     *Confidentiality*

Petitioner argues that because it has entered into a protective order with another party, Zeeto should not be concerned about disclosing confidential information in response to Requests 4-6, 10-12, and 14-24.  MTC. p. 12:24-13:14. Not only are the parties clearly adverse to Zeeto's interests, but Zeeto has no contractual right under someone else's protective order and would be negligently disclosing information based on the "trust" of adverse parties.  Zeeto has a duty which it does not take lightly.  Given the fact that Zeeto has no contractual right under the protective order and is therefore not provided any security, disclosure of the confidential information by Zeeto would be improper.  Petitioner has a list of all 24,000 leads and the ability to get the information from Jornaya.  There is no reason for Zeeto hand out confidential information which may not be in its possession.

### D.     *The Documents Requested are Knowingly Privileged*

Petitioner has requested documents concerning Zeeto's response to a third-party subpoena (numbers 1-3, 7-9, 22-24) and now seems surprised that those requests include attorney-client communications.  Specifically, Petitioner demands through its MTC "confirmation of whether ZeetoGroup is withholding documents on the basis of these objections and, if so, a basis and explanation sufficient for Health IQ to evaluate and, if necessary, challenge ZeetoGroups' decision." MTC p. 12:12-16.

This is not a proper subpoena process as the requests should be specific and narrowly tailored.  The burden in and of itself in detailing every single legal communication from a legal proceeding is harassment.  Therefore, if Petitioner is willing to cover the costs imposed by the burdensome request, Zeeto will consider providing further information as requested.

///

### E. *Production of Documents in Response is Burdensome*

Zeeto has objected to Requests 1-12 and 14-24 on the grounds that they seek documents dating back five years and require a deep analysis of over 24,000 different leads which are in the possession of Jornaya. In response to the objection, Petitioner demands, without citing legal authority, a process where Zeeto discloses "the reasonable investigation conducted to date and the specific costs, fees, and work required to complete compliance with the Requests so that the parties can evaluate options for a path forward that potentially modifies the Requests or addresses the work required." MTC. p. 12:26-13:3.

That in and of itself is overly burdensome and appears to be a harassment tactic. Had the subpoena been more specific, all of these steps Petitioner wishes to require from a third party would be moot. Given the overly burdensome nature of these requests, Zeeto requests the Motion to Compel be denied. In the alternative, Petitioner should take the information it has and go to Jornaya who is in possession of the codes and information related to each of the leads at issue.

Petitioner also argues that the subpoena is "narrowly tailored to seek information uniquely in ZeetoGroup's possession." MTC p. 21:18-20. This is untrue as Petitioner almost immediately thereafter argues that "of the 244,000 leads it sold to Cege, each of those leads was purchased by Health IQ on the understanding that it was supported by valid prior express written consent for telemarketing calls and texts." MTC p. 21:26-22:1. This contention is unsupported by a declaration and any question as to the leads (24,000 or 244,000) should be investigated through the leads themselves, which are in the possession of Jornaya. Anything else relevant and specific to Zeeto has already been produced in response to Hoy's subpoena. Petitioner's argument that they have narrowly tailored their requests to "everything" is improper and imposes a huge financial burden on Zeeto to investigate the leads from Jornaya. Zeeto therefore requests the MTC be denied.

///

### F. *Petitioner's Demands are Not Relevant*

There is no relevancy to the documents being sought as the relevant information has already been litigated and produced (i.e., the Cardwell Declaration). For example, Petitioner states that the documents are proper because they seek information related to Hoy. However, there are only four questions related to Hoy. Even further, the records in Zeeto's possession of this person have already been produced. These may be found on pages 258-261 and 484-487 of the unverified evidence produced by Petitioner in support of its MTC. These reports were generated by a third party, Jornaya, who has all of the codes and information for each of the 24,000 leads.

Plaintiff's information regarding the disclosure timing of Health IQ and Hoy have been provided with supporting evidence. Any further information related would have to be discovered from Jornaya.

### G. *Petitioner's Demands are Overbroad*

Petitioner's Motion to Compel argues that "overbroad" objections are improper because it defined "RELEVANT TIME PERIOD" to "at least three" of the 23 requests objected to. MTC p. 14:8-22. Petitioner also fails to discuss what exactly that "Relevant Time Period" is because it is from January 1, 2017, to present. Five years of documents are overbroad considering the Cardwell declaration states a retention period of three years as to affiliate list changes. Given the knowingly overbroad nature of the subpoena, Zeeto requests the MTC be denied.

### H. *Harassment*

Zeeto has objected to the subpoena on the basis that the requests constitute unwarranted annoyance or harassment. Requesting five years of irrelevant documents instead of going to Jornaya for the reports related to the 24,000 leads is harassment. The final Declaration of Shayne Cardwell addresses the previous declarations by withdrawing them and is supported by documents. The fact that

Petitioner waited almost months to enforce the subpoena and is unable to specify what exactly it needs is evidence of harassment for which Zeeto requests the MTC be denied.

### i. *Information Concerning Policyscout should be sought from Policyscout*

Petitioner broadly seeks "information concerning ZeetoGroup's contractual relationship with Cege, relevant leads ZeetoGroup sold to Cege, ZeetoGroup's investigation concerning the claims and defenses relevant to the Hoy Action, and ZeetoGroup's communications relevant to Health IQ, Mr. Hoy, and the Hoy Action." MTC p. 19:18-22. In an attempt to add more specificity, Petitioner argues that "Zeetogroup's investigation is crucial to understanding the conflicting declarations served in this case as well as, potentially, rectifying a fundamental factual failure on the party of ZeetoGroup in assessing the relevant factual record." MTC p. 20:2-5.

Again, Petitioner is unable to identify with clarity *why* the documents already produced in support of the final subpoena are not sufficient or how there could be any misinterpretation given Petitioner was involved in every step of the previous subpoena process. Any further information related to the leads is in the possession of Jornaya. Given Petitioner's failure to identify how the documents or declaration of Mr. Cardwell could be changed, or what information is required to change it, or how going back to 2017 is at all relevant, Zeeto requests the Motion to Compel be denied.

### I. *Transfer of the Matter is Unnecessary*

In the alternative to a denial of Petitioner's motion, Petitioner invites this Court to give it a second "bite at the apple" by transferring the matter to the Northern District. If done, this would constitute the seventh time Zeeto is required to defend an overly broad subpoena. Further, Respondent has complete faith that this Court can understand the issues and law to make a fair ruling.

Finally, "[a] motion for an order to a party must be made in the court where the action is pending. A motion for an order to a nonparty must be made in the court where the discovery is or will be taken." Fed. R. Civ. Proc., Rule 37(a)(2). Therefore, Zeeto requests the matter not be transferred.

## IV.

## **CONCLUSION**

As described above, the logical next step for Petitioner is to go to Jornaya and request the reports for the leads and conduct an investigation which will answer all relevant questions. This subpoena is an attempt to pass off the labor and cost onto Zeeto. Zeeto has provided all of the relevant information it can and respectfully requests this Motion to Compel be denied.

**PHG Law Group**

Dated: October 25, 2022

*s/ Jacob A. Gillick*
Jacob A. Gillick, Esq.
jgillick@PHGLawGroup.com
Attorneys for Respondent Zeetogroup, LLC