| | |
|---|---|
| 1<br>2<br>3<br>4 | PAUL A. ROSENTHAL (CA Bar No. 338994)<br>PRosenthal@FoxRothschild.com<br>FOX ROTHSCHILD LLP<br>49 Market Street<br>Morristown, New Jersey 07960-5122<br>Telephone: 973.992.4800<br>Facsimile: 973.992.9125 |

*Attorneys for Petitioner Hi.Q, Inc. d/b/a Health IQ*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HI. Q, INC. D/B/A HEALTH IQ,<br><br>    Petitioner,<br><br>v.<br><br>ZEETOGROUP, LLC,<br><br>    Respondent. | Case No. 3:22-cv-01440-LL-MDD<br><br>(RELATED ACTION: 4:21-cv-04875-TLT (N.D. CAL.))<br><br>**PETITIONER HEALTH IQ'S REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC** |

PETITIONER HEALTH IQ'S REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL

## TABLE OF CONTENTS

I. ZeetoGroup's Request to Redirect Discovery is Improper ............................ 1

II. ZeetoGroup's Declaration is Not A "Sufficient" Response to the Subpoena .................................................................................................. 2

III. ZeetoGroup Fails to Meet its Burden to Withhold Production ..................... 5

    A. ZeetoGroup's Unjustified Vague and Ambiguous Objections ............ 5

    B. ZeetoGroup's Confidentiality Concerns are, at Best, a Red Herring ... 6

    C. ZeetoGroup's Overbroad Position on Privilege Lacks Merit ............... 7

    D. ZeetoGroup Fails to Substantiate Any Alleged Burden ....................... 8

    E. ZeetoGroup's Overbreadth Objection Remains Invalid ...................... 8

    F. ZeetoGroup's Harassment Allegations Remain Improper ................... 9

Health IQ, by and through its undersigned counsel, respectfully submits this reply memorandum in further support of its motion to compel (Dkt. No. 1, hereafter "Mtn.") and in response to ZeetoGroup's Opposition (Dkt. No. 6, hereafter "Opp."):

ZeetoGroup's Opposition asks this Court to deny access to relevant documents in ZeetoGroup's possession by arguing that its contradictory declarations are "sufficient" and other sources may exist for some of the information sought. Significantly, the Opposition cites zero case law. Not one precedent showing that any court has validated the obstructionist positions asserted by ZeetoGroup. Not one analogous or persuasive discussion from any Judge in any jurisdiction that has ever endorsed the meritless, boilerplate objections relied upon by ZeetoGroup in response to the Subpoena. That lack of legal support is telling.

ZeetoGroup does not, because it cannot, deny that it has possession of documents that are both relevant to the claims and defenses in the Hoy Action and responsive to the Subpoena. However, ZeetoGroup has produced no documents and asks this Court to prohibit Health IQ from obtaining any documents and information from ZeetoGroup. The Opposition fails to meet ZeetoGroup's burden to justify its position that each Request is objectionable; rather it asks the Court to accept the *ipse dixit* position that ZeetoGroup should not be forced to provide relevant discovery. ZeetoGroup's Opposition, like its response to the Subpoena, lacks substantive merit and it must be compelled to produce all responsive documents in its possession.

**I.  ZeetoGroup's Request to Redirect Discovery is Improper**

Throughout the Opposition, ZeetoGroup asks this Court to limit Health IQ to pursuing a different entity for documents as its sole remedy. (*See, e.g.,* Opp. 5, 8, 9, 13.) ZeetoGroup's position fails for both factual and legal reasons.

As a threshold matter, ZeetoGroup's "ask Jornaya" position misstates the scope of the Subpoena. ZeetoGroup limits its argument to the fact that some documents concerning consumer consent responsive to Request No. 10, may also be in the possession of Jornaya. (*See, e.g.,* Opp. 4, 9, 13.) If ZeetoGroup has documents

1

responsive to Request No. 10 in its possession, those must be produced; however, ZeetoGroup is incorrect when it argues, without citation, that "[t]he sole issue, not to be confused, is the disclosure of Health IQ to leads." (Opp. 7-8.) Apparently ZeetoGroup *is* confused because that is not the sole issue in the Subpoena. And even if Jornaya could fully respond to Request No. 10 (it cannot), Jornaya cannot, for example, provide: the factual basis for ZeetoGroup's contradictory declarations; copies of ZeetoGroup's contract with Cege; or copies of ZeetoGroup's communications regarding or related to Health IQ. (Ex. 1, Request Nos. 1-9, 16, 22.) Regardless, ZeetoGroup cannot avoid twenty-four Requests because documents responsive to one might also be in the possession of another non-party. ZeetoGroup does not, because it cannot, offer any basis for that illogical premise.

Significantly, ZeetoGroup never denies that it has responsive documents; rather, it argues that it would prefer that Health IQ seek those documents from Jornaya. However, ZeetoGroup's position is inconsistent with its own conduct in this case. ZeetoGroup provided evidence of some consumers' consent in support of the March Cardwell Declaration (Ex. 6), but now alleges that similar documents for other consumer leads it sold to Cege are not within ZeetoGroup's possession. Such responsive documents, even if maintained by ZeetoGroup's third-party vendor, are within the possession of ZeetoGroup. *See, e.g., Henderson v. United Student Aid Funds, Inc.*, 2015 WL 4742346, at *5 (S.D. Cal. July 28, 2015) ("The fact that documents are in the physical possession of a third-party custodian does not eliminate the responsibility of a responding party to search for and produce those documents when the party has a legal right to obtain the documents on demand.") (citation omitted). ZeetoGroup fails to justify its objection that any documents responsive to the Subpoena are outside its possession.

**II. ZeetoGroup's Declaration is Not A "Sufficient" Response to the Subpoena**

ZeetoGroup alleges the July Cardwell Declaration is "sufficient" to meet *all* of its discovery obligations, including because it "withdrew" the prior declarations.

(Opp. 9.) Even considering just the contradictory declarations, ZeetoGroup offers no rule or precedent supporting its effort to disclaim (much less block discovery about) sworn statements under penalty of perjury it cited to this Court. (Ex. 9.) The Opposition asks the Court to ignore Health IQ's right to obtain documents concerning the factual basis for ZeetoGroup's contradictory statements. (Ex. 1, Request Nos. 1-9.) And ZeetoGroup fails to explain how the July Cardwell Declaration is sufficient to satisfy Requests beyond the declarations. (*See, e.g., id.*, Request Nos. 10-24.)

While ZeetoGroup seeks to "withdraw" the March Cardwell Declaration (Opp. 9), it does not dispute that the declarations are contradictory (Opp. 6-7), nor does it address the disconnect between the July Cardwell Declaration and the factual record. Documents produced with the March Cardwell Declaration support, in part, the representation that Health IQ was disclosed as a "marketing partner" to at least some of the consumers that visited the Website during the Relevant Time Period. (Ex. 6 at ¶¶ 9, 10.) For example, ZeetoGroup served a Jornaya Guardian TCPA Report for a consumer lead submitted to the Website on June 7, 2021, whose visual playback (at 1:28) showed the following screen:

[Screenshot of web form titled "Order in Process — Complete the survey to qualify." with "Time Remaining 15:31", heading "Where should we ship your *FREEBIE*?", subtext "What's the best number to reach you at?", "Step 6 of 7", a Phone field showing *********, consent text: "By continuing, I consent to receiving SMS text messages and phone calls with information about free samples and other offers from Getitfree.us as well as phone calls from our Marketing Partners at this number. I understand that texts and calls may be generated using automated technology including autodialers, which may contain pre-recorded messages and that my consent is not required as a precondition for receiving any goods or services. Reply HELP for help, or STOP to opt out to any text message. 1 msg/day, Message and data rates may apply. SMS Privacy Policy, Privacy Policy, Terms of Service.", and an orange "Continue" button.]

3
PETITIONER HEALTH IQ'S REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL

Clicking the hyperlink for "Marketing Partners" reveals an alphabetical list of "Related Advertisers" that includes Health IQ:

> **Get it Free**
>
> **Related Advertisers**
>
> 100 Insure
> ADT
> ADT Solar
> Boost Health Insurance
> Finderish
> FundsFinder
> Get It Free
> GrabYourItems
> HealthIQ
> LightFoot Media Inc
> Madera Media, LLC
> Medicare Benefits Review Hotline
> Ok Hooray
> OkWow
> Salt Media Group
> ScoredIt
> Sunpro
> The Savvy Sampler
> The Smart Saver
> Tibrio, LLC
> TopJobSearcher.com

(Dkt. 1, pageID 191-94 (LeadID 0A11B61F-33FE-13AC-FAEB-FD74A7176B9E).) The same is true for the "Marketing Partners" list hyperlinked at 1:31 of the playback for the January 3, 2021 lead submitted to the Website as LeadID 855D0E68-6C2E-24A8-5481-8F9716ABEF5F. (Dkt. 1, pageID 232-35.) That Health IQ was identified as a Marketing Partner in January and June 2021 is relevant to the records of consent for the alleged class and, in particular, the named Plaintiffs.[1] Despite that record, the July Cardwell Declaration asserts, "Health IQ did not appear on the marketing partner list or otherwise on ZeetoGroup's websites between June 24, 2017, and December of 2021." (Ex. 13.) Even if ZeetoGroup were somehow permitted to ignore the sworn testimony, it cannot ignore (or "withdraw") the factual documentation it produced. The July Cardwell Declaration is not only not "sufficient," it is not accurate.

There is, at minimum, a flaw in ZeetoGroup's sworn statements that makes the July Cardwell Declaration insufficient to meet its discovery obligations. ZeetoGroup must be compelled to produce all documents concerning the factual basis for its

---

[1] The record in the underlying case shows that the web form leads including the telephone numbers for Plaintiffs Kennedy and Hoy were submitted to the Website, during the period between those examples, on May 1 and May 13, 2021, respectively.

declarations (Ex. 1, Request Nos. 1-9), as well as documents relevant to disclosure of Health IQ on the Website (*Id.*, Request Nos. 10-15.)

### III. ZeetoGroup Fails to Meet its Burden to Withhold Production

ZeetoGroup has the burden to justify its objections. (Mtn. 7-8.) Lacking any legal support, ZeetoGroup offers a series of unsupported allegations and mischaracterizations that fail to explain, must less justify, its obstruction.

As a threshold matter, ZeetoGroup asserts that information sought by the Subpoena is not relevant. (Opp. 14.) That is false. (Mtn. 17-20.) Even counsel for Plaintiffs in the Hoy Action agrees that the documents sought in the Subpoena are not just relevant, but "if proven, would dispose of their claims." (Dkt. 7, at 3.) And Plaintiffs' claims, on behalf of themselves and the putative class, expose Health IQ to potential liability alleged to be in the billions. (Ex. 8, at 12.) Health IQ has no interest in a "fishing expedition" (Opp. 9); rather, it seeks relevant evidence in ZeetoGroup's possession. ZeetoGroup does not, because it cannot, expand on its improper, boilerplate objections. Such objections are insufficient. (Mtn. 10-11.) The unsupported arguments concerning ZeetoGroup's objections are addressed in turn:

#### A. ZeetoGroup's Unjustified Vague and Ambiguous Objections

The Subpoena sets forth with reasonable particularity valid categories of discovery using defined and/or common terms. (Ex. 1.) ZeetoGroup asserts that seventeen Requests were "vague" and "ambiguous" but failed to identify any specific terms or phrases. (Ex. 17.) In its Opposition, ZeetoGroup raises (for the first time) disingenuous challenges to several common or defined terms. For example, the Opposition questions Health IQ's use of "website" (Opp. 11), despite that term's use, for the same purpose, in the July Cardwell Declaration and ZeetoGroup concession that it is in the business of operating websites. (Ex. 13, ¶¶ 8, 10.) Similarly, the Opposition challenges the use of "marketing partners and/or affiliates" in Request No. 12 (Opp. 11); however, "marketing partners" appears on the Website (*see* screen shot above), and the terms "marketing partners" and "affiliates" are used in same

context in the March Cardwell Declaration (Ex. 6, ¶¶ 9, 10), June Cardwell Declaration (Ex. 12, ¶¶ 8, 9, 10), and July Cardwell Declaration (Ex. 13, ¶¶ 8, 9, 10).

Similarly, while ZeetoGroup concedes that it provided services to third-party Cege (Opp. 4), it objects that the request for any "contract, agreement, insertion order, Terms of Use, and/or Terms of Service" relevant to its relationship with Cege as vague. (Opp. 11.) None of those terms (individually or collectively) are vague or ambiguous and, in fact, the Opposition argues only that "Zeeto is not Policyscout." (*Id.*) That non sequitur (nonsensical) statement does not justify withholding documents on the basis of ambiguity. ZeetoGroup presents a similarly incomplete position for the term "investigation" in Request No. 21. (Opp. 11-12.)

Further, ZeetoGroup objects to Request Nos. 17-20, which seek documents concerning Plaintiff Hoy and his telephone number, as vague and ambiguous because "Zeeto has already produced all Jornaya reports in its custody and control associated with Hoy." (Opp. 11.) It remains unexplained how or why that production is sufficient to meet its obligations under the Subpoena, much less how it meets the burden to justify objecting to each of these Requests as vague and ambiguous.

Even where the Subpoena provided defined terms, ZeetoGroup stands on these objections. Request Nos. 22-24 seek communications regarding Health IQ, Plaintiff, and the Hoy Action, and ZeetoGroup argues these Requests are vague and ambiguous because they "do not specify the parties or dates." (Opp. 12.) However, the Subpoena includes definitions for each of "Communications," "Health IQ," and "Plaintiff" (Ex. 1, at 4) and includes a Relevant Time Period. (*Id.*)

ZeetoGroup's *post hoc* efforts to allege vagueness and ambiguity do not meet its burden or justify its failure to produce responsive documents.

**B. ZeetoGroup's Confidentiality Concerns are, at Best, a Red Herring**

ZeetoGroup argues that it should not be required to produce responsive documents because (a) the documents are sought by "parties clearly adverse to Zeeto's interests," and (b) it "has no contractual right under someone else's protective

order." (Opp. 12.) ZeetoGroup cites no law to support its arguments and both are contrary to fundamental concepts of discovery and the record in the Hoy Action.

That a company may be compelled to produce documents to an "adverse" party is a fundamental tenant of American civil litigation. Fed. R. Civ. P. 26(b)(1); Judiciary Act of 1789, 1st Cong., SESS. I. CH. 20, § 15 (Sept. 24, 1789) ("[A]ll the said courts of the United States, shall have power in the trial of actions at law . . . to require the parties to produce books or writings in their possession or power, which might contain evidence pertinent to the issue. . . .") Further, ZeetoGroup fails to explain how or why either Health IQ or Plaintiffs are "adverse," much less how such adversity justifies withholding relevant documents responsive to the Subpoena.

Further, ZeetoGroup misstates the Protective Order entered in the Hoy Action. As ZeetoGroup knows, the October 6, 2021 Protective Order in the Hoy Action was signed by Judge Corley of the United States District Court for the Northern District of California. (Dkt. 27.) The protection offered to ZeetoGroup is not "contractual" and ZeetoGroup's allegation that the Court's Order would not protect the confidentiality of its documents (Opp. 12) is false. That Order discusses Non-Parties extensively (*see, e.g.*, Dkt. 27 §§ 2.4, 2.8, 5.1, 7.1), including a separate protocol for the handling of Non-Party documents. (*Id.* at § 9.) ZeetoGroup's suggestion that its documents would not be covered by the Court's Protective Order is meritless. ZeetoGroup's confidentiality objections should be overruled.

### C. ZeetoGroup's Overbroad Position on Privilege Lacks Merit

ZeetoGroup asks this Court to prohibit any discovery because the Subpoena "requested documents concerning ZeetoGroup's response to a third-party subpoena." (Opp. 12.) That relevant discovery concerns conduct during litigation is not a valid basis for refusing to produce responsive, factual information. *See generally Marsh v. County of San Diego*, 2007 WL 1994058 (S.D. Cal. Apr. 13, 2007) (compelling production of litigation-related factual records from non-party). Further, it is well established that a lawyer's involvement does not automatically shield documents

from discovery. *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) ("That a person is a lawyer does not, *ipso facto*, make all communications with that person privileged."); *United States v. Martin*, 278 F.3d 988, 999–1001 (9th Cir. 2002) (finding attorney-client privilege is strictly construed; thus, the party asserting privilege has burden to establish validity). ZeetoGroup does not, because it cannot, offer any precedent for its position or explain how it applies to factual documents and communications that predate the Hoy Action. (Opp. 12.) Further, ZeetoGroup refuses to produce a log of withheld documents and, despite the requirements of Rule 45(e)(2), takes the hyperbolic position that Health IQ's request for such information is "harassment." (*Id.*) ZeetoGroup's privilege objections are unsupported and it must produce all responsive, non-privileged documents as well as a log of any documents withheld on the basis of privilege.

### D. ZeetoGroup Fails to Substantiate Any Alleged Burden

ZeetoGroup asserts that the Subpoena is burdensome because it is burdensome. (Opp. 13.) ZeetoGroup's Opposition does not identify any investigation as to any of the twenty-three Requests for which a burden objection was asserted, much less provide the costs, fees, and work required to comply. Instead, ZeetoGroup offers the unsupported position that even an investigation of the work required for full compliance would be too burdensome. (*Id.*) ZeetoGroup offers neither legal justification nor factual explanation that would warrant blanket relief from all discovery obligations based on a bald allegation of burden. (Mtn. 13-14, 21-23.) ZeetoGroup's burden objections must be overruled and a complete production made.

### E. ZeetoGroup's Overbreadth Objection Remains Invalid

ZeetoGroup alleges that it need not produce responsive documents because (a) its document preservation protocol is shorter than the time period for which documents are sought; and (b) Health IQ sought documents for the entire class period at issue in its underlying litigation. (Opp. 14.) Neither argument provides a valid basis for ZeetoGroup's obstruction and withholding of existing evidence.

| | |
|---|---|
| 1 | ZeetoGroup misstates the record concerning the scope of documents sought in |
| 2 | an effort to justify its overbreadth objections. (Opp. 14.) The entire subpoena was |
| 3 | subject to a defined Relevant Time Period that tracks the alleged class period in the |
| 4 | Hoy Action. (Ex. 1, at 4.) To the extent Health IQ has sought documents that are no |
| 5 | longer in ZeetoGroup's possession (Opp. 14), the proper remedy is, at minimum, to |
| 6 | produce the documents that do exist. Further, ZeetoGroup has been on notice of the |
| 7 | Hoy Action since at least Plaintiff's September 7, 2021 subpoena (Opp. 4), seeking |
| 8 | *inter alia,* information regarding "affiliate list changes" that ZeetoGroup now alleges |
| 9 | are outside the scope of its three-year retention. (Opp. 14.) At minimum, ZeetoGroup |
| 10 | has conceded that it therefore should be able to provide responsive documents for |
| 11 | each topic for at least September 2019 to present. That additional documents are |
| 12 | sought from outside the period that ZeetoGroup may have retained documents is of |
| 13 | no moment and does not justify ZeetoGroup's refusal to produce any documents. |

### F. ZeetoGroup's Harassment Allegations Remain Improper

It is emblematic of ZeetoGroup's bad faith approach to the Subpoena and Opposition that it does not explain, much less justify, withholding documents based on its objection to each of the Requests for alleged annoyance, harassment, embarrassment, and/or oppression. Neither Health IQ nor the Court need to accept abusive litigation tactics improperly lodged in bad faith. *Lofton v. Verizon Wireless LLC*, 308 F.R.D. 276, 285–87 (N.D. Cal. 2015) (affirming court's inherent power to sanction a non-party subpoena target when its "efforts to hide the proverbial ball . . . was a bad faith effort to obfuscate the evidence"). In lieu of case citations or coherent explanation, ZeetoGroup leans on bombastic allegations, like framing the Subpoenas as a "harassment/revenge mission." (Opp. 8.) The Opposition's reliance on such rhetoric, rather than meeting its burden to justify ZeetoGroup's objections, is as improper as it is unjustified. Health IQ seeks relevant documents and testimony from ZeetoGroup. Nothing more. Counsel for Plaintiffs in the Hoy Action agrees the information in ZeetoGroup's possession is both relevant and potentially dispositive

of their claims. (Dkt. 7.) That ZeetoGroup would prefer to avoid responding to the Subpoena does not qualify as legal harassment nor does it justify withholding responsive documents. The Court should not countenance ZeetoGroup's obstructionist positions. ZeetoGroup's objections should be overruled, and it should be compelled to produce all responsive documents in its possession.

For the foregoing reasons, and those in the opening memorandum, Health IQ's motion to compel documents responsive to the Subpoena must be granted.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

*/s/ Paul Rosenthal*
Paul A. Rosenthal (CA Bar No. 338994)
PRosenthal@FoxRothschild.com
49 Market Street
Morristown, New Jersey 07960-5122
Telephone:  973.992.4800
Facsimile:   973.992.9125

*Attorneys for Petitioner*
*Hi.Q, Inc. d/b/a Health IQ*