1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| HI.Q, INC. D/B/A HEALTH IQ,<br><br>                          Petitioner,<br><br>v.<br><br>ZEETOGROUP, LLC,<br><br>                          Respondent. | Misc. Action No.: 22cv1440-LL-MDD<br><br>**ORDER GRANTING PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA**<br><br>[ECF No. 1] |

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

This is a subpoena-related dispute concerning a putative class action pending in the Northern District of California. *See Toby Hoy, individually and on behalf of all others similarly situated v. Hi.Q, Inc. d/b/a Health IQ*, 4:21cv4875-TLT (N.D. Cal.). In that case, Plaintiff Toby Hoy alleges that Defendant HI.Q, Inc. ("Health IQ") sent unlawful marketing texts and/or prerecorded telemarketing calls about its insurance products to Hoy and other consumers registered on the National Do Not Call list in violation of the Telephone Consumer Protection Act ("TCPA"). *See* 47 U.S.C. §§ 227, et seq. and 47 C.F.R. § 64.1200(c).

25
26
27

Health IQ maintains it had consent to contact Hoy, which would be a complete defense to Hoy's claims. Health IQ contends here that Respondent ZeetoGroup, LLC ("Zeeto") has records and testimony that could establish

Hoy's consent to contact from Health IQ.  Zeeto is a nonparty lead generation service with a principal place of business in San Diego, California. (ECF No. 1).

Health IQ served Zeeto with two subpoenas to help establish its affirmative defense of consent in the underlying case.  The subpoenas sought information, documents, and testimony about consumers who (1) went through Zeeto's lead-generation path, (2) provided their consent to telemarketing contact, and (3) arguably saw (or should have seen) Health IQ listed as an affiliated partner for purposes of consent.

Zeeto refused to comply with the subpoenas.  On September 23, 2022, Health IQ filed this action to compel Zeeto's subpoena responses. (ECF No. 1).  This Court issued a briefing schedule (ECF No. 4), and Zeeto filed its response on October 25, 2022.  (ECF No. 6).  Plaintiff Hoy also filed a response.  (ECF No. 7).  Health IQ filed a reply on November 1, 2022.  (ECF No. 13).  Zeeto opposes the motion to compel, arguing the subpoenas were procedurally defective and raising numerous substantive objections.

Brief Conclusion

The Court agrees the documents and deposition testimony that Health IQ subpoenaed are relevant, warranted, and proportional to the needs of the case, and therefore, **GRANTS** Health IQ's motion to compel Zeeto's response to the subpoenas.  Zeeto shall produce the subpoenaed materials within 21 days of this order, and the subpoenaed deposition shall occur within 30 days of such production.

## I.   Background

A. The Difficulty of Tracking Consumers' Consent to Telemarketing Contact By Companies Such As Health IQ

Whether Health IQ had Plaintiff Hoy's consent to telemarketing contact depends upon whether Health IQ was disclosed to Hoy (and other consumers) as Zeeto's affiliated partner at the time Hoy provided consent through Zeeto as a lead generator.  As a lead generator, Zeeto facilitated a "survey path" whereby online consumers, like Hoy, would interact with that path while viewing certain advertisements.  When consumers clicked on relevant advertisements, Zeeto's survey path would take those consumers through a series of questions, asking consumers to (1) provide their contact information, (2) give consent to Zeeto's standard disclosures, and (3) answer several other questions.  Consumers' answers matched them with Zeeto's "affiliated partners," or advertisers, such as a company named Policyscout (also known as "Cege" and "Enfuego"), who in turn sold leads to companies like Health IQ. (ECF No. 1 at 67 ¶ 3; ECF No. 6 at 4).

Health IQ and Hoy have both been seeking documents and testimony from Zeeto throughout the past year.  Plaintiff Hoy first subpoenaed Zeeto in connection with the underlying case in January 2022.  *See Hoy v. ZeetoGroup*, LLC, Case No. 22cv0151-LL-MDD (S.D. Cal. Feb. 11, 2022) (ECF No. 1-8).  At that time, Zeeto's counsel, Brian Gillick, accepted service of Hoy's subpoenas via email, but Zeeto asserted several objections.  *Id*. (ECF Nos. 26 and 30 [5/25/2022 Hr'g Tr.]).  Instead of producing documents or identifying a representative to provide deposition testimony, Zeeto produced three declarations over the course of four months from its Chief Revenue Officer, Shayne Cardwell.

On March 10, 2022, Cardwell initially declared that, based on his review of relevant information and documents, "Health IQ was disclosed at the time the subject consumers provided consent," and "during the relevant time period, each and every consumer who went through Zeeto's path would

have seen Health IQ listed as an affiliate." (ECF No. 1, Ex. 6 [3/10/2022 Cardwell Decl. ¶¶ 9-10]).  That sworn statement appeared to provide a defense for Health IQ, namely "that Health IQ was disclosed as a 'marketing partner' to at least some of the consumers that visited the Website during the Relevant Time Period." (ECF No. 13 at 5).

Along with Cardwell's March declaration, Zeeto produced "validation reports" purporting to show that 26 consumers, including Hoy, provided consent to marketing calls and text messages from Health IQ. (ECF No. 1, Ex. 7).  The validation reports came from a verification company that Zeeto hired called Jornaya that tracked consumers' path through Zeeto's business operations and provided a certification called "LeadID." (ECF No. 13 at 6; ECF No. 6, Ex. 11 [Cardwell Decl. ¶¶ 5-6]).  LeadID created a visual playback designed to validate a consumer's journey through Zeeto's survey path.  (*Id.*).  This Court previously examined in detail that sampling of 26 LeadID playbacks from Jornaya.  (*See Hoy v. ZeetoGroup*, Case No. 22cv0151-LL-MDD, ECF No. 30 [Hr'g Tr. from 5/25/2022]).  The playbacks included specific consumer leads purporting to show that Health IQ was individually identified as a marketing partner to consumers who submitted their information on Zeeto's website, "GetItFree.com," which is Zeeto's trade name. (*Id.*).

This Court held one hearing on the record concerning Hoy's motion to compel Zeeto's subpoena responses, and several telephone conferences.  (*See id.*).  Health IQ participated in those court proceedings.  During the May 25, 2022 hearing, the Court explained that Jornaya's 26 links gave "mixed results . . . some will work, some will not." (*Id.* [Hr'g Tr. at 12, 15]).  The Court next explained the importance of getting critical information from Zeeto to the parties in the underlying case.  (*Id.* [Hr'g Tr. at 14]).  Finally,

this Court urged Zeeto's compliance in getting "unfettered access to this consent file" into the hands of Hoy and Health IQ through a "gross approach," rather than a sampling.  (*Id.* [Hr'g Tr. at 14-16]).

The Court ordered Zeeto to cooperate with Plaintiff in the underlying case to get the "data related to the calls made by [Health IQ] – calls/texts – track them back to Jornaya, [and] get that data" to Hoy and Health IQ.  (*Id.* [Hr'g Tr. at 16]).  The parties expressed their perceived ability to exchange necessary documents and move the underlying case forward, so Hoy informed the Court that his motion to compel was resolved.  The Court denied Hoy's motion to compel as moot and closed that matter.  *See Hoy v. ZeetoGroup*, Case No. 22cv0151, ECF No. 26 (S.D. Cal. July 6, 2022).

On June 29, 2022, Zeeto provided a new declaration to Plaintiff Hoy, wherein Cardwell reversed his earlier position, stating instead that "Health IQ did not appear on the marketing partner list or otherwise on Zeeto's websites between June 24, 2017, and December of 2021."  (See ECF No. 1, Ex. 12 [6/29/2022 Cardwell Decl.], Ex. No. 13 at 6).  That sworn statement appeared to void Health IQ's affirmative defense of consent, at least as far as Zeeto's records could confirm.  A few days later, Zeeto provided a third Cardwell declaration, which included the same statement about Health IQ not appearing as a marketing partner, and Zeeto sought to "withdraw" Cardwell's March declaration.  (*Id.*, Ex. 13 [7/1/2022 Cardwell Decl.]).

Unfortunately, Zeeto never produced the documents the parties needed and anticipated receiving, so Health IQ served the subpoenas now in dispute. Based on the similarity between Hoy's motion to compel and the current action, this matter was transferred to the undersigned as a related-case pursuant to the district's "low-number rule."  (*See* ECF No. 3, ECF No. 6-1, Ex. B).

B. Health IQ's Current Subpoenas to Zeeto

On July 12, 2022, Health IQ issued two subpoenas to Zeeto, one for 24 document-production requests, and the second for deposition testimony related to the document production.  (ECF No. 1, Exs. 1-2).  Health IQ's subpoenas mimic Hoy's requests in part and add requests related to Cardwell's revised declarations.  (*Id*.).  Zeeto asserts many of the same objections it raised with Hoy's subpoenas, as well as new arguments.  (ECF No. 1, Ex. 17 [Objections]).

Health IQ contends that Zeeto failed to (a) produce documents, (b) properly object to the subpoenas, (c) appear for deposition, or (d) file a motion to quash/modify either subpoena.  Health IQ filed this motion to compel citing Federal Rules of Civil Procedure 37(a)(1) and 45, seeking an order for Zeeto to produce documents and appear for a deposition.  (ECF No. 1, Ex. 1 [subpoena *duces tecum*] and Ex. 2 [subpoena *ad testificandum*]).

Health IQ's subpoenas issued from the Northern District of California.  (*Id*.).  The subpoenas ordered Zeeto to produce documents to "Undersigned Counsel Electronically," by August 2, 2022, or to produce them at a specified address in Wilmington, Delaware.  Health IQ explained that it served its subpoenas in Delaware because Zeeto is a Delaware limited liability company with a registered agent in Wilmington, Delaware.  (ECF No. 1-1 at 3; *see also* ECF No. 1 at 7).  Zeeto's Corporation Trust Company is located at 1209 Orange Street, Wilmington, Delaware 19801.  Production responsive to the subpoena *duces tecum* was to be electronic, or at Fox Rothschild LLP's office located at Citizens Bank Center, 919 N. Market Street, Suite 300, Wilmington, Delaware 19899, 0.3 miles from Zeeto's registered agent.  (ECF No. 1-1 at 14).  The deposition was set to occur "Via remote means (TSG reporting)" on August 24, 2022, at 9:00 a.m. Pacific time.  (ECF No. 1 at 13).

1   Zeeto objected to Health IQ's subpoenas in part because Cardwell,

2   Zeeto's intended deponent, resides in San Diego, California, and San Diego is

3   Zeeto's principal place of business.  (*See* ECF No. 1 at 67-68 [Cardwell Decl.],

4   ECF No. 6 at 8-9).  Zeeto did not seek a protective order, nor did it file a

5   motion to quash or modify either subpoena.

6   Health IQ maintains that Zeeto waived any subpoena objections

7   because Zeeto erroneously sent objections to Plaintiff Hoy's counsel, rather

8   than Defendant Health IQ's counsel.  (ECF No. 1, Exs. 15-16; ECF No. 1-1 at

9   14 n.4).  When Health IQ's attorney learned from Plaintiff's counsel that

10  Zeeto had objections, Health IQ contacted Zeeto's counsel and confirmed that

11  Health IQ had provided its correct address to Zeeto on several occasions, and

12  that counsel for Health IQ and Zeeto previously communicated with each

13  other at that correct email address.  (ECF No. 1 at 549).  The proper contact

14  information for Health IQ was also included on the face of the subpoenas.

15  (ECF No. 1-1 at 10 & n.3, ECF No. 1 at 548-52).  Zeeto informed Health IQ

16  that any procedural errors on its part posed no prejudice to Health IQ, and

17  Zeeto continued to refuse compliance with both subpoenas.  (ECF No. 1 at

18  548).

19  Zeeto's counsel acknowledged the erroneous service of the objections to

20  Health IQ, but said his firm made immediate attempts to resolve the service

21  issue.  (ECF No. 1 at 550).  Health IQ disputes such attempts and maintains

22  that Zeeto has never provided its objections to Health IQ, and Zeeto does not

23  refute that position.  (*See* ECF No. 1 at 548).  Zeeto maintains that Health

24  IQ's subpoenas are procedurally deficient, as well as burdensome, irrelevant,

25  overbroad, harassing, vague, ambiguous, and non-specific, and Zeeto asserts

26  attorney-client privilege and confidentiality over a portion of the requested

27  material.  Zeeto never produced a privilege log.  (ECF No. 1-1 at 9-13).

Health IQ and Hoy maintain they need the subpoenaed documents and deposition testimony to move the underlying case forward and ask this Court to compel Zeeto's compliance with the Health IQ's subpoenas.  (ECF No. 1-1, ECF No. 7 at 3).

## II.   Legal Standard

Rule 45:  Subpoenas to Nonparties

Rule 45 of the Federal Rules of Civil Procedure governs the service of subpoenas for deposition testimony and documents to nonparties.  Fed. R. Civ. P. 45(c)(1) (deposition), (c)(2) (documents).  A valid subpoena must "command each person to whom it is directed to . . . attend and testify," or "produce designated documents" at "a specified time and place."  Fed. R. Civ. P. 45(a)(1)(A)(iii).  "Proper subpoenas issued by attorneys on behalf of the court are treated as orders of the Court."  *McKeon v. Cent. Valley Cmty. Sports Found.*, No. 1:18-CV-00358-BAM, 2019 WL 1208986, at *2 (E.D. Cal. Mar. 14, 2019) (collecting cases).

A party issuing a subpoena must take reasonable steps to avoid imposing "undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).  "The court for the district where compliance is required" must enforce that duty and impose an appropriate sanction on a party or attorney who fails to comply with that requirement.  Fed. R. Civ. P. 45(d)(1).

The rules protect nonparties from inconvenience by limiting issuance of a subpoena for production of documents "within 100 miles of where the person resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(2).  Similarly, deposition testimony must be commanded to occur to "within 100 miles of where the person resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(1)(A).

The purpose of resolving subpoena-related motions in nonparties' home district "is to protect them from the burden of challenging a subpoena in a remote location[.]" *Dr. Muhammad Mirza, et al. v. YELP, INC.*, No. 21-MC-80077-TSH, 2021 WL 2939922, at *3 (N.D. Cal. July 13, 2021) (considering a motion to transfer subpoena-related issues) (citation omitted); *Raap v. Brier & Thorn, Inc.*, No. 17-MC-3001, 2017 WL 2462823, at *3 (C.D. Ill. July 7, 2017) ("The purpose of protecting nonparties is defeated if a party could demand compliance in a location more than 100 miles from where the nonparty resides, is employed, or regularly transacts business in person and still require the nonparty to adjudicate a dispute over that subpoena in a distant forum").

### *Subpoena for Documents or Tangible Things*

Rule 45 permits a person commanded to produce *"documents or tangible things"* to serve the issuing party written objection within 14 days after the subpoena is served or before compliance is required (whichever is earlier). Fed. R. Civ. P. 45(d)(2)(B) (emphasis added). A nonparty that fails to timely and properly object to a subpoena generally waives any objection it may have had. *BNSF Ry. Co. v. Alere, Inc.*, No. 18cv291-BEN-WVG, 2018 WL 2267144, at *8 (S.D. Cal. May 17, 2018); *Baker v. Ensign*, 11-CV-2060-BAS(WVG), 2014 WL 3058323, *6 (S.D. Cal. July 3, 2014).

If a nonparty served with a subpoena *duces tecum* does not comply or serve timely objections, it may instead move to quash or modify the subpoena before the requested date for production of documents under Rule 45(d)(3). *See Franco v. Alorica Inc.*, 20cv05035-DOC-KESx, 2021 WL 6104816, at *3 (C.D. Cal. Nov. 5, 2021). The objecting person may also seek a protective order under Rule 26(c), which requires a showing of "good cause . . . to protect a party or person from annoyance, embarrassment, oppression, or undue

burden or expense." Fed. R. Civ. P. 26(c); *United States v. King Cnty., Washington*, No. 2:20-CV-00203-RJB, 2022 WL 16835866, at \*3 (W.D. Wash. Nov. 9, 2022); *see also Micro Motion, Inc. v. Kane Steel Co*., 894 F.2d 1318, 1322-23 (Fed. Cir. 1990) (outlining a nonparty's options in responding to a subpoena).

If a nonparty serves timely objections to a subpoena *duces tecum*, the issuing party must obtain an order from the district court where compliance is required compelling production or inspection pursuant to Rule 45(d)(2)(B)(i). *See Pennwalt Corp. v. Durand-Wayland, Inc.,* 708 F.2d 492, 494 & n. 5 (9th Cir. 1983) (although a subpoena itself is a court order and noncompliance may warrant contempt sanctions, once a nonparty objects, the party seeking discovery must obtain a court order directing compliance); *DeGeer v. Gillis,* 755 F. Supp. 2d 909, 930 (N.D. Ill. 2010) (same).

Under Civil Rule 45(g), a court may hold in contempt a person who fails "without adequate excuse" to obey a subpoena or order related to it. Fed. R. Civ. P. 45(g). "Adequate excuse" is not a defined standard. *See* Fed. R. Civ. P. 45 Advisory Committee's Note to 1991 Amendment. Instead, it is factually dependent. *Sanchez v. Albertson's, LLC*, No. 2:19-CV-2017-JAD-DJA, 2022 WL 656369, at \*8 (D. Nev. Mar. 3, 2022) (citing *Residential Constructors, LLC v. Ace Property and Casualty Ins. Co*., No. 2:05-cv-01318-BES-GWF, 2006 WL 8442461, at \*4 (D. Nev. Aug 8, 2008) (compiling cases)).

Timely served objections may constitute an "adequate excuse" for not responding to a subpoena *duces tecum*. *In re Plise,* 506 B.R. 870, 878 (B.A.P. 9th Cir. 2014); *DeGeer,* 755 F. Supp. 2d at 930; *see also In re Exxon Valdez,* 142 F.R.D. 380, 385 (D.D.C. 1992) If the serving party seeks an order for contempt, magistrate judges are required to refer contempt charges to the district court, *see Grimes v. City & County of San Francisco*, 951 F.2d 236,

240 (9th Cir. 1991), with specific certification of all facts supporting any recommendation that a particular individual be held in contempt.  28 U.S.C. § 636(e)(6)(iii).  Generally, an order for contempt is not issued until a person or company has failed to comply with an order compelling document production.  *See Poturich v. Allstate Insur. Co.*, EDCV 15-0081-GW(KKx), 2015 WL 12766048, at *3 (C.D. Cal. Aug. 11, 2015) (declining to award sanctions under Rule 45's contempt authority where there was no court order in place compelling discovery).

### *Subpoena for Deposition Testimony*

While a nonparty may challenge a subpoena *duces tecum* via written objection, a deposition subpoena may only be challenged by moving to quash or modify the subpoena pursuant to Federal Rule of Civil Procedure 45(c)(3)(A), or by moving for a protective order pursuant to Rule 26(c).  *See* 9 James Wm. Moore, *Moore's Federal Practice* § 45.30 (2007) ("The written objection procedure is available only for a subpoena commanding production or inspection . . ."); *BNSF Ry. Co.*, 2018 WL 2267144, at *7 (explaining that the proper method for a nonparty to seek the court's assistance after being served with a subpoena to testify at a deposition is to file a motion to quash or modify the subpoena).

If a nonparty were "simply able to serve objections to any subpoena and avoid compliance, there would be no need for a nonparty to quash or modify a subpoena.  A nonparty could simply lodge an objection to any subpoena and wait for the subpoenaing party to file a motion to compel compliance."  *See id.* (citing *Biliski v. Kappos*, 561 U.S. 593, 607-08 (2010) (noting canon against interpreting a provision in a manner that would render another provision superfluous)); *see generally Aetna Casualty and Surety Co. v. Rodco Autobody*, 130 F.R.D. 2 (D. Mass. 1990) ("the fact that objections were served

[by the nonparty] is *no excuse whatsoever* not to attend the deposition."). A motion to quash or modify "must be made promptly," allowing it to "be heard *and granted before* the scheduled deposition." *See Unigene Lab'ys, Inc. v. Apotex, Inc.*, No. C 07-80218SI, 2007 WL 2972931, at *2 (N.D. Cal. Oct. 10, 2007) (citation omitted); *see also Odyssey Reinsurance Co. v. Nagby*, No. 16-CV-3038-BTM(WVG), 2018 WL 1963665, at *2 (S.D. Cal. Apr. 26, 2018) ("Motions to quash under Rule 45(d)(3)(A)(iii) are required to be filed in a "timely" fashion, which courts have read to mean before the compliance date designated in the subpoena.").

### *Enforcing Subpoenas In the "Place of Compliance"*

Parties and nonparties seeking to quash or modify a subpoena must file in the district where compliance is required. Fed. R. Civ. P. 45(d)(3)(A). The court for the district where compliance is required must quash or modify a subpoena upon a timely motion if the subpoena:

(i)     fails to allow a reasonable time to comply;
(ii)    requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii)   requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv)    subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv).

## III.   **Discussion**

Health IQ cites Rules 37 and 45 of the Federal Rules of Civil Procedure in support of its motion to compel, but it limits its reliance on Rule 37 to affirming its good faith attempts to confer with Zeeto and provide notice to all parties prior to filing. (ECF No. 1-1 at 12-13). Under Rule 45, Health IQ asks the Court to modify, transfer and/or enforce the subpoena, but it does not specifically reference Rule 45(d)(2)(B)(i)), which governs orders to compel

a commanded person's compliance with a subpoena *duces tecum*, or Rule 45(g), which addresses a person's failure to obey a subpoena or order related to it without adequate excuse, as well as contempt orders for such failure. *See* Fed. R. Civ. P. 45(d), (g).  The Court will construe Health IQ's motion as one filed under Rule 45(d)(2)(B)(i) and (g) but will first address why Health IQ's motion is properly filed in this district.

> A.   The Motion to Compel is Properly Filed in the Southern District of California Because San Diego is the Nonparty's Principal Place of Business, and Zeeto's Deponent Resides Here

The parties do not challenge this Court's power to resolve Health IQ's motion to compel, but that question warrants consideration because the subpoenas were issued from the Northern District of California to a registered agent in the District of Delaware.  The parties here had discussed electronic production of documents and a remote video deposition, but if those efforts failed, Health IQ identified Wilmington, Delaware as the place of compliance on the face of the subpoenas.  (*See* ECF No. 1, Exs. 1-2).

This Court's power to consider the current dispute arises under Rule 45, which focuses on the burden placed on nonparties.  Rule 45 requires that disputes related to nonparty subpoenas be resolved locally, "where compliance is required," to avoid imposing undue travel or expense burdens on nonparties challenging a subpoena.  *See, e.g.*, Fed. R. Civ. P. 45(d)(2)(B)(i) (directing the serving party to file motions to compel in "the district where compliance is required").  But the question often arises as to what is meant by the "place of compliance."

Many courts reject labeling the "place of compliance" analysis as a jurisdictional question because that issue focuses on a forum state's power and notice to a potential witness, whereas Rule 45 focuses on the burden to

nonparties. *Regents of Univ. of California v. Kohne*, 166 F.R.D. 463, 465 (S.D. Cal. 1996) ("Jurisdictional analysis is inappropriate for analyzing Rule 45 because it responds to an entirely different set of concerns."); *see also Sol v. Whiting*, No. CV-10-01061-PHX-SRB, 2014 WL 12526314, at *2 (D. Ariz. July 22, 2014) ("If the 100-mile rule was jurisdictional, there would be limits on whether parties could stipulate to procedures that departed from Rule 45(c) and would raise questions whether a court could quash or modify a subpoena that transgressed the geographical limits found under that rule.").

The *Sol* court explained that parties often conflate jurisdictional analysis with non-jurisdictional objections raised under Rule 45, noting that Rule 82 excludes framing this as a jurisdictional matter because the federal rules "do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts." *Sol*, 2014 WL 12526314, at *2 (citing Fed. R. Civ. P. 82). The parties do not raise a jurisdictional concern, and this Court agrees without deciding that Rule 45 focuses on burdens placed on nonparties, rather than the Court's jurisdictional power.

In consideration of the burden on nonparties, courts are often called upon to decide whether the "place of compliance" refers to that named on the face of a subpoena, or whether those terms are tethered to the location of the documents sought or the person subpoenaed. The meaning of Rule 45's repeated use of "place of compliance" is not immediately apparent, and courts construing those terms are "decidedly split." *See Ello v. Brinton*, No. 2:14–CV–299–TLS–JEM, 2017 WL 56316, at *5 (N.D. Ind. Jan. 5, 2017) ("The authority defining the place of compliance is mixed.").

Case law suggests that making the "place of compliance" determination may vary based upon the type of motion filed and the facts available to the reviewing court. *See Merch. Consulting Grp., Inc. v. Beckpat, LLC*, No. 17-

11405-PBS, 2018 WL 4510269, at *3 (D. Mass. July 11, 2018), *report and recommendation adopted* (Aug. 1, 2018) ("In this instance, the issue arises under Rule 45(g).  The court has little information apart from the fact that the place of compliance designated in the subpoena *duces tecum* is Boston, Massachusetts, and Blue Square, although located in Arizona, has interposed no objections to the subpoena.").  For example, a court that only knows the place of compliance listed on the face of a subpoena cannot very well defer to the place of compliance where documents are stored, or a deponent resides.

Some courts have chosen to analyze the appropriate place for a subpoena dispute based on the location identified on the face of the subpoena, even if it is not where compliance is actually required.  *See Uniloc USA, Inc. v. Apple Inc.*, No. 19-cv-01692-EJD (VKD), 2020 WL 6262349, at *2 (N.D. Cal. Oct. 23, 2020) ("the Court concludes that under the plain language of Rule 45(d), Apple's motion to compel is properly filed in this district, as it is the place where compliance is required on the face of the subpoena, even if that place of compliance is not proper under Rule 45(c)"); *CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 709 (N.D. Tex. 2017) ("for purposes of a Rule 45(d)(2) or 45(d)(3) motion, the court or district 'where compliance is required' is determined by the location or 'place' for compliance identified on the subpoena"); *see also Adams v. Symetra Life Ins. Co.*, No. 19-MC-401-EFM-ADM, 2020 WL 489523, at *3 (D. Kan. Jan. 28, 2020) ("[T]he undersigned shares the view of courts that have determined that the place of compliance is the location for production identified on the subpoena.").

Many other courts, however, have held that the "place of compliance" depends on where the documents sought are located or where the nonparty subpoena recipient resides or works.  *Raap*, 2017 WL 2462823, at *2-3 ("In light of the purposes behind Rule 45, the Court finds that the better approach

is to tie the place of compliance to the location of the subpoenaed person or entity."); *Dennis v. Good Deal Charlie, Inc.*, No. 21-cv-01760-BEN-JLB, 2022 WL 62919, at *6 (S.D. Cal. Jan. 6, 2022) (recognizing that "the district where compliance is required" has been defined as the location of the subpoenaed person or entity, in keeping with Rule 45's purpose of protecting local nonparties and resolving disputes locally); *Koenig v. Johnson*, 2:18-cv-3599, 2020 WL 635772, at *2 (D.S.C. Feb. 11, 2020) ("Rule 37 and Rule 45 require that when a party seeks to compel a non-party's action pursuant to a subpoena *duces tecum*, the party must file its motion to compel in the district where the sought documents are located, not in the district where the subpoena was issued."); *Agincourt Gaming, LLC v. Zynga, Inc.*, No. 2:14-cv-0708-RFB-NJK, 2014 WL 4079555, at *4 (D. Nev. Aug. 15, 2014) ("Rule 45 makes clear that the place of compliance is tethered to the location of the subpoenaed person, where the individuals lived and were employed in the same district where the subpoena commanded production); *XTO Energy, Inc. v. ATD, LLC*, No. 14–1021 JB/SCY, 2016 WL 1730171, at *20 (D.N.M. Apr. 1, 2016) (noting that "revised rule 45(d)(3) provides that motions to quash or enforce a subpoena can be brought in the district where compliance is required—*i.e.*, the district in which the subpoena's recipient resides or works"); *Gilbert v. Rare Moon Media, LLC*, No. 15-MC-217-CM, 2016 WL 141635, at *2 (D. Kan. Jan. 12, 2016) ("The place of compliance for a deposition subpoena or subpoena for production of documents, however, must be within 100 miles of where the person resides, is employed, or regularly transacts business or within the state where the person resides, is employed, or regularly transacts business in person.").

The *Raap* court explained that:

22cv1440-LL-MDD

> [t]o protect local nonparties, local resolution of disputes about subpoenas is assured by the limitations of Rule 45(c) and the requirements in Rules 45(d) and (e) that the motions be made in the court in which compliance is required under Rule 45(c).

*Raap*, 2017 WL 2462823, at *3; *see also Sandifer v. Hoyt Archery, Inc.*, No. 12cv322, 2014 WL 3540812, at *4 (M.D. La. July 17, 2014) ("Any motion . . . to compel . . . compliance with a Rule 45 subpoena should have first been filed in the district where the discovery is or will be taken"); *see also Klein v. Gordon*, No. SACV 17-0123-AB (JPRx), 2018 WL 5099504, at *2 (C.D. Cal. Aug. 21, 2018) (denying motion to compel and explaining that party was "obligated to move to compel compliance with [the] subpoenas" in the district where the documents were located); *Europlay Cap. Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018) ("Rule 45 further requires that the place of compliance for the 'production of documents, electronically stored information, or tangible things [is] at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person.'"); *Youngevity Int'l, Corp. v. Smith*, No. 16cv704-BTM-JLB, 2017 WL 6418961, (S.D. Cal. Dec. 15, 2017) (Rule 45(c) "makes clear that the place of compliance is tethered to the location of the subpoenaed person.") (citation omitted).

The latter approach concluding that the place of compliance is where the documents are located, and where the deponent resides, makes more sense in this action for several reasons. First, Rule 45 expressly requires minimizing the burden placed on a nonparty. Fed. R. Civ. P. 45(d)(1). That is best accomplished by resolving this dispute and requiring production of documents and deposition testimony to occur where the nonparty's principal place of business, responsive documents, and the deponent are located: in San Diego. Even if the parties can manage the electronic production of documents and a remote deposition, the burden on Zeeto is reduced by

litigating here instead of in a Delaware court.  *See Black v. Wrigley*, No. 18cv2367-GPC-BGS, 2019 WL 1877070, at *5 (S.D. Cal. Apr. 26, 2019) (finding undue burden where a subpoena required production more than 100 miles from where the nonparty resided, was employed, or regularly conducted business in person).

Second, it makes little sense to require Health IQ to re-file a motion to compel in the district listed on the face of the subpoenas knowing the nonparty asserts that San Diego is the place of compliance.  This Court also rejects Health IQ's invitation to transfer this dispute to the Northern District of California, where the underlying action is pending.  (ECF No. 1-1 at 6, 27-28).  Zeeto opposes such a transfer.  (ECF No. 6 at 15-16).  Absent the parties' consent, a court may transfer a subpoena dispute in exceptional circumstances, and the proponent of transfer bears the burden of showing that such circumstances are present.  *Natural-Immunogenics Corp. v. Newport Trial Grp*., No. 15CV-02034-JVS (JCGx), 2017 WL 10562985, at *5 (C.D. Cal. Mar. 6, 2017).  Such exceptional circumstances are not presented here because this Court has already considered similar issues from Hoy's motion to compel, and the dispute is already well known to this Court.

The third reason this Court's resolution of the subpoena dispute makes sense is that Health IQ made several pre-filing attempts to address any procedural concerns that Zeeto raised about the subpoenas to no avail.  Health IQ explained that it served Zeeto's registered agent in person at its place of incorporation in Delaware after Zeeto exercised its lawful right to insist upon personal service.  The parties discussed the convenience of Zeeto electronically producing responsive documents and remotely appearing for deposition, and those options for production and testimony are expressly stated on the face of the subpoenas.  (ECF No. 1 at 551, 555).

When Health IQ belatedly learned that Zeeto had a procedural objection, Health IQ relentlessly sought to understand Zeeto's position on several occasions, including the following three written communications from Health IQ to Zeeto, all of which preceded Health IQ's motion to compel:

> Service on ZeetoGroup was formally and properly completed on July 12, 2022. ZeetoGroup is a Delaware company and, because your office refused to accept service of the subpoenas, Health IQ formally served a Subpoena for Documents and Subpoena for Deposition on ZeetoGroup's Delaware-based agent for service. ZeetoGroup's response and any objections were required to be returned to counsel for Health IQ's Wilmington, DE office or (for convenience of the subpoena recipient), we offered to accept responses electronically by email at prosenthal@foxrothschild.com. ZeetoGroup failed to send any objections to either of these locations and, therefore has not timely served any objections to the Subpoena for Documents.

(ECF No. 1 at 551, 8/2/2022 email).

> [W]e would like to better understand your service objection. As detailed in the email below, ZeetoGroup LLC was identified to be a Delaware corporation and, because you would not agree to accept service, the subpoenas were served on its Delaware agent with a response requested to be served at our firm's Wilmington, DE office. Are you saying that your client is not a Delaware corporation? Or that the service was not on your client's proper agent for service?

(ECF No. 1 at 550, 8/10/2022 email).

> On August 10-11, we engaged in email discussion regarding ZeetoGroup's challenge to service and the response location; however, ZeetoGroup still has not answered the foundational questions posed by Health IQ: Are you saying that ZeetoGroup is not a Delaware corporation? Or that the service was not on your client's proper agent for service?

(ECF No. 1 at 555, 8/12/2022 letter).

To the extent Zeeto had a valid objection to service of the subpoenas in Delaware, its remedies included properly served objections to the subpoena *duces tecum*, a motion for a protective order, a motion to quash, or a motion to modify either subpoena.  Zeeto failed to properly execute any of those options.

Finally, resolving the dispute here promotes judicial economy.  This Court considers Health IQ's motion and the subpoenas at issue within the policy enshrined in Rule 1 that "[t]hese rules . . . should be construed, administered, and employed by the court to secure the just, speedy, and inexpensive determination of every action."  Fed. R. Civ. P. 1.  Rule 45 does not unambiguously require courts to deem the "place of compliance" as that which the serving party names on the face of the subpoena, so there is "no reason to inflate the costs of litigation by ruling out . . . sensible option[s] for" resolving such disputes in this district, where compliance is actually required.  *See generally BBK Tobacco & Foods LLP v. Skunk Inc.*, No. CV-18-02332-PHX-JAT, 2020 WL 619675, at *2 (D. Ariz. Feb. 10, 2020) (applying Rule 1 concerning personal service of a subpoena) (citation omitted).

As the *BBK Tobacco & Foods* court noted, concerns about judicial economy are particularly acute in cases like this, where the serving party made several unsuccessful attempts to resolve the nonparty's complaints. *Id.*; *see generally Westmore Equities, LLC v. Vill. of Coulterville*, No. 3:15-cv-241-MJR-DGW, 2016 WL 695896, at *2 (S.D. Ill. Feb. 22, 2016) ("Importantly, the 2013 Advisory Committee Notes make clear that, while the rule now specifies default geographic limits on place of production, it is expected that lawyers will continue to cooperate and use common sense to facilitate the sensible production of documents and ESI and avoid putting nonparties to any unnecessary expense. . . the practical reality is that documents can be readily copied and shipped across the country via mail,

22cv1440-LL-MDD

courier, or others means.").

To the extent that Health IQ also cites Rule 37 of the Federal Rules of Civil Procedure in its motion to compel, that rule similarly provides that "[a] motion for an order to a nonparty must be made in the court where the discovery is or will be taken." Fed. R. Civ. P. 37(a)(2). For all those reasons, the Court finds the motion to compel is properly filed here, where compliance with the subpoenas will actually occur.

B.    The Court Will Construe Health IQ's Motion to Compel Under Rule 45 Rather Than Rule 37 of the Federal Rules of Civil Procedure

Rule 37 does not apply to a nonparty who fails to comply with a subpoena *duces tecum* in the Ninth Circuit. *See In re Plise*, 506 B.R. at 870 (reversing bankruptcy court's sanction against nonparty for failure to respond to subpoena *duces tecum* because that court relied upon rule 37 instead of rule 45); *Pennwalt Corp.*, 708 F.2d at 494 & n.4 (stating as dictum that Rule 37 motions to compel could apply to nonparties subpoenaed to attend depositions, but not motions to compel nonparties to produce documents); *see also Warkentin v. Federated Life Ins. Co.*, No. 1:10cv0221 DLB, 2012 WL 113745, *2 (E.D. Cal. Jan. 13, 2012) ("Rule 37 does not authorize an award of expenses for a motion to compel nonparties to produce documents.") (citation omitted).

Instead, courts consider challenges to a nonparty's objections to a subpoena *duces tecum* under Rule 45, which the Court will do here as well. *See McAllister v. St. Louis Rams, LLC*, Case No. 2:17-mc-157-AB (KSx), 2018 WL 6164281, at *2 n.4 (C.D. Cal. July 2, 2018) (applying sanctions against nonparty under Rule 45(d)(1), stating Rule 37 sanctions are inapplicable against nonparty) (citations omitted).

While it is less clear whether Rule 37 *may* be used to compel a nonparty's presence at a deposition, the Court concludes the better course here is to proceed with the motion to compel deposition testimony under Rule 45 as well.  *See Martinez v. City of Pittsburg*, No. C 11-01017 SBA LB, 2012 WL 699462, at *4 (N.D. Cal. Mar. 1, 2012) ("when a non-party does not comply with a subpoena and does not appear for deposition, the most appropriate procedural step is to file an application for an order to show cause, not a motion to compel") (citing, *e.g.*, *Prescott v. County of Stanislaus, et al.*, No. 1:10-cv-00592 JLT, 2012 WL 10617, at *4 (E.D. Cal. Jan. 3, 2012) (construing defendants' motion to compel a non-party to appear for deposition as a Rule 45 application for an order to show cause why the non-party should not be held in contempt); *Rodriguez v. County of Stanislaus, et al.*, No. 1:08-cv-00856 OWW GSA, 2010 WL 3733843, at *6 (E.D. Cal. Sept. 16, 2010) ("Because Ms. Torres is a non-party to this action, Defendants should have filed an application for an order to show cause why sanctions should not be imposed for Ms. Torres' failure to appear at the deposition.") (additional quotation omitted)); *Ceremello v. City of Dixon*, No. CIV S–04–1423 DFL EFB, 2006 WL 2989002, at *2 (E.D. Cal. Oct.18, 2006) ("As explained at the hearing, the 'motion to compel,' which is the remedy under the Federal Rules to compel a party's compliance with a discovery request, is not the applicable procedure to address [a non-party's] alleged refusal to obey a duly-issued subpoena.")); *see also Foshee v. Mastec Network Sols., Inc*, No. 1:20-cv-00890-AWI-SAB, 2021 WL 5529891, at *12 (E.D. Cal. Nov. 24, 2021) (discussing differences between enforcement of subpoena for deposition versus documents under Rules 37 and 45 and granting motion to compel nonparty to attend deposition) (citation omitted); *see also Morgutia-Johnson v. City of Fresno*, No. 1:14-cv-00127-LJO, 2015 WL 1021123, at *2 (E.D. Cal. Mar. 9,

22cv1440-LL-MDD

2015) (construing motion to compel nonparty to attend deposition as an order to show cause regarding contempt); *GREE, Inc. v. Supercell Oy*, No. 21-MC-80069-TSH, 2021 WL 1222487, at **2-3 (N.D. Cal. Apr. 1, 2021) (setting a Rule 45 show cause hearing where nonparty refuses to comply with subpoena for documents and testimony).

The Court first addresses and resolves Health IQ's motion to compel compliance with Health IQ's subpoena *duces tecum*, and then its subpoena for deposition testimony.

(i)   Zeeto Shall Comply with Health IQ's Subpoena for the Production of Documents

When a nonparty raises timely objections to a subpoena *duces tecum*, the nonparty is not required to produce documents, or even search for them, until the propounding party obtains an order directing compliance. *Pennwalt*, 708 F.2d at 494 & n.5; *DeGeer*, 755 F. Supp. 2d at 930.  Rule 45(d)(2)(B)(i) permits the serving party to seek an order compelling production or inspection of documents.  Fed. R. Civ. P. 45(d)(2)(B)(i) (commanding production of materials or permitting inspection).  And, if a serving party seeks sanctions, it must do so under Rule 45(g), which requires a finding of contempt if the served party fails to present an adequate excuse for refusing to comply with the subpoena.  *See generally Boards of Trustees of Cement Masons & Plasterers Health & Welfare Tr. v. Sound Floors Gypsum Concrete LLC*, No. 2:20-cv-01307-RAJ, 2021 WL 4307069, at *2 (W.D. Wash. Sept. 22, 2021) (rejecting a "sparsely supported" motion to compel a nonparty to produce documents because the appropriate relief is contempt under Rule 45(g)).

Here, it is unclear whether Zeeto served timely objections to health IQ's subpoena *duces tecum*.

1    *Zeeto's Objections to the Subpoena Duces Tecum*

2         Zeeto raised objections to every document production request that

3    Health IQ made.  Zeeto did so, however, very poorly.  First, it served the

4    objections on Plaintiff Hoy, instead of Defendant Health IQ.  But for Hoy's

5    communication to Health IQ, it is unclear when or if Health IQ would have

6    received those objections.  Second, Zeeto sent its objections to Health IQ at an

7    incorrect email address, despite having communicated with Health IQ at the

8    proper email address several times, and despite the proper address appearing

9    clearly on the face of the subpoenas.  (ECF No. 1-1, Exs. 1-2).  Finally, despite

10   Zeeto's representation to Health IQ that it would remedy its faulty service of

11   the objections, it never did so.

12        The failure to serve written objections to a subpoena within the time

13   specified by Rule 45(c)(2)(B) typically constitutes a waiver of such objections.

14   *See Leader Technologies, Inc. v. Facebook, Inc.,* No. 10–mc–80028, 2010 WL

15   761296, at *2 (N.D. Cal. Mar. 2, 2010) (internal citation and quotation marks

16   omitted).  Zeeto does not address whether it waived its right to object to the

17   subpoena.

18        Nonetheless, "'[i]n unusual circumstances and for good cause, . . . the

19   failure to act timely will not bar consideration of objections [to a Rule 45

20   subpoena].'"  *McCoy v. Sw. Airlines Co.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002);

21   *see also Twin Falls NSC, LLC v. S. Idaho Ambulatory Surgery Ctr., LLC*, No.

22   1:19-cv-00009-DCN, 2020 WL 5523384, at *15–16 (D. Idaho Sept. 14, 2020)

23   ("in unusual circumstances and for good cause, the failure to act timely will

24   not bar consideration of objections to a Rule 45 subpoena") (citing *Yousuf v.*

25   *Samantar*, 451 F.3d 248, 252 (D.C. Cir. 2006); *Moon v. SCP Pool Corp.*, 232

26   F.R.D. 633, 636 (C.D. Cal. 2005)).

27

Courts have found unusual circumstances where: (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a nonparty acting in good faith; or (3) counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged the legal basis for the subpoena. *Baker v. Ensign,* No. 11–CV–2060, 2014 WL 3058323, at *6 (S.D. Cal. July 3, 2014) (internal citation omitted); *In re Subpoena to Produce Documents of Clapp, Moroney, Bellagamba, Vucinich, Beeman & Scheley*, No. 14-MC-80191-RS (JSC), 2014 WL 3784112, at *3 (N.D. Cal. July 31, 2014) (failure to serve objections could be excused under second or third grounds). A court need only find one of these circumstances exists in order to consider untimely objections. *BNSF Ry. Co.*, 2018 WL 2267144, at *8 (citing *In re Denture Cream Products Liability Litigation*, 292 F.R.D. 120, 124 (D.D.C. 2013) (finding that contact between the parties regarding the subpoena by itself to be sufficient to consider untimely objections).

The Court will excuse Zeeto's failure to timely serve objections to the subpoena *duces tecum* because counsel for Health IQ and Zeeto were in contact before and after Zeeto served those objections. It remains unclear why Zeeto sent objections to the wrong counsel and the wrong address. Nonetheless, Health IQ did receive the objections, and the parties communicated about them, albeit quite poorly on Zeeto's part. The Court next considers, but overrules, Zeeto's objections.

"[C]ourts often conclude that a nonparty's objections under Rule 45(d)(2)(B) 'should be subject to the same requirements facing a party objecting to discovery under Rule 34,' including 'the same prohibition on general or boiler-plate objections and requirements that the objections must be made with specificity.'" *A&F Bahamas, LLC v. World Venture Grp., Inc.*,

No. CV 17-8523 VAP (SS), 2018 WL 5961297, at *4 (C.D. Cal. Oct. 19, 2018) (citing *Am. Fed'n of Musicians of the United States & Can. v. Skodam Films, LLC*, 313 F.R.D. 39, at 36 (N.D. Tex. 2015)).

The Court admonishes Zeeto for providing generalized boilerplate objections.  (ECF No. 1, Ex. 17); *see Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) (concerning interrogatories, "[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all.").  For example, Health IQ's first nine document requests focus on materials in support of Cardwell's declarations, and to each one, Zeeto makes the following objections, without including any factual support:

> Responding Party objects that this request is overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression.  To comply with the request would be an undue burden and expense on Responding Party.  Furthermore, the request is calculated to annoy and harass Responding Party.

> Responding Party further objects that the request seeks information subject to the attorney-client privilege and attorney work-product doctrine.

> Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence from a third party.

(ECF No. 1 at 530-31).

Next, Health IQ's fourth through sixth, and eleventh through twelfth document requests address the issue of coding logs for specified time periods, to which Zeeto modifies its categorical objections by stating the following meaningless, boilerplate objections:

22cv1440-LL-MDD

Responding Party objects that this request is vague, ambiguous, and overbroad as to content, scope, and time and constitutes unwarranted annoyance, embarrassment, and oppression. To comply with the request would be an undue burden and expense on Responding Party. Furthermore, the request is calculated to annoy and harass Responding Party.

Responding Party objects that this request seeks disclosure of confidential and proprietary business records/information, including but not limited to financial information and information containing a third party's private information, disclosure of which would violate Article I, Sec. I of the California Constitution.

Responding Party further objects that the request is irrelevant to the subject matter, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

(*Id.* at 531-32).  Zeeto asserts the same useless objections, sometimes with very slight additional, generic language, for request numbers: (1) seven through nine, which seek documents and communications relevant to Cardwell's declarations, but Zeeto substitutes attorney-client privilege assertions for the proprietary information objection, (*id.* at 533-35);[1] (2) ten, seeking documents showing consent Zeeto collected, (*id.* at 535); (3) eleven, twenty, and twenty-one, seeking web session data and documents including any investigation for leads Zeeto sold to Cege, (*id.*);[2] (4) fourteen and fifteen, concerning when Health IQ was removed and added as an affiliated partner,

---

[1] Zeeto asserts a conclusory attorney-client privilege objection, with no privilege log, to requests 1-3, 7-9, and 22-24.  Similarly, despite the existence of a Stipulated Protective Order in the underlying case that includes provisions for nonparties, Zeeto raises a "proprietary and confidential" objection for requests 4-6, 10-12, and 14-24.  (*See* ECF No. 13 at 9).
[2] Request 13 is not at issue.  (ECF No. 1 at 536-37, ECF 1-1 at 11).

22cv1440-LL-MDD

1
2
3
4
5
6

(*id.* at 537); (5) sixteen, concerning contracts between Zeeto and Cege, (*id.* at 538); (6) seventeen and eighteen, seeking documents, web form submissions and leads relating to Hoy's telephone number and name, (*id.* at 539); (7) nineteen, regarding web forms, leads, and documents for Robert Frueh,[3] (*id.* at 540); and (8) twenty-two through twenty-four, concerning all communication regarding Health IQ, Hoy, and this litigation, (*id.* at 542-44).

7
8
9
10
11
12
13
14

Zeeto has the burden to "clarify and explain its objections" and "specifically show how each discovery request is objectionable." *Baier v. Princeton Office Park, L.P.,* 3:08-cv-5296 PGS DEA, 2018 WL 5253288, at *4 (D.N.J. Oct. 22, 2018) (concerning parties); *see also Scientific Games Corp. v. AGS LLC,* 2:17-cv-00343-JAD-NJK, 2017 WL 3013251, at *2 (D. Nev. Jul. 13, 2017) ("Conclusory or speculative statements of harm, inconvenience, or expense are plainly insufficient."). Zeeto must, but failed to, specifically detail the basis for each of its objections.

15
16
17
18
19
20
21

Zeeto has provided slightly more detail about its objections in its opposition brief; however, those explanations are too late. For months, Health IQ endeavored to understand, narrow, and confer with Zeeto about its objections, even when Zeeto failed to properly serve its objections to Health IQ. Zeeto did not articulate any specific grounds for objecting until Health IQ filed its motion to compel. Even upon consideration of those articulated grounds, the Court is not persuaded that Zeeto's objections have merit.

22

*Relevance and Proportionality*

23
24

To succeed on its Motion, Health IQ must demonstrate that the discovery it seeks is both relevant to the claims and defenses at issue in its

25
26
27

---

[3] Robert Frueh is the previous owner of the telephone number associated with Plaintiff Hoy. (ECF No. 1 at 7, 17).

litigation and that the discovery is proportionate to the needs of the case. Fed. R. Civ. P. 26(b)(1). This is a particularized analysis as to each specific request. *Starz Ent., LLC v. MGM Domestic Television Distribution LLC.*, No. 220CV04085DMGKSX, 2022 WL 2230129, at *8 (C.D. Cal. May 31, 2022). The Court must examine each of Health IQ's requests against the requirements of Rule 26(b)(1), which also defines the proper scope of discovery from a non-party under Rule 45. *See Gonzales v. Google*, 234 F.R.D. 674, 679 (citing Advisory Committee Notes to the 1970 Amendment to Rule 45).

The Court has already explained to the parties here the relevance of information and documentation that Health IQ now seeks; it did so even before Cardwell reversed his position about the disclosure of Health IQ as Zeeto's affiliated partner. Health IQ is entitled to better understand the documents and information that led to Zeeto's withdrawal of its first declaration, and the subsequent conclusions that Zeeto reached about consumers' consent to contact from Health IQ. The Court finds Health IQ's subpoena requests relevant and proportional to the underlying case.

### *Burdensome, Harassing, Vague, Ambiguous & Non-Specific Objections*

District courts have broad discretion to determine whether a subpoena is unduly burdensome. *See Exxon Shipping Co. v. U.S. Dep't, of Interior*, 34 F.3d 774, 779 (9th Cir. 1994). A subpoena is unduly burdensome where it seeks to compel production of documents regarding topics unrelated to or beyond the scope of litigation. *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813–14 (9th Cir. 2003). "[A]n evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party," and requires the court's consideration of "such factors as relevance, the need of the party for the

documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (internal citation and quotation marks omitted); *AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-cv-03393-YGR-JSC, 2014 WL 6706873, at *2 (N.D. Cal. Nov. 25, 2014) ("The Court thus exercises its inherent authority under Federal Rule of Civil Procedure 26(c) which provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" and considers whether the discovery here poses an undue burden on the non-party.").

The Court has balanced the parties' needs for the requested documents and deposition testimony to move forward in the underlying case against any burden upon Zeeto to produce and explain information and data comprising Cardwell's declarations, and the Court concludes that such burdens are outweighed by the importance of that information to the underlying case. Health IQ requests documents kept in the ordinary course of business by Zeeto that are uniquely within Zeeto's control. The Court rejects Zeeto's efforts to pass its obligations onto the third-party verification company, Jornaya, or to Policyscout. *See, e.g., Henderson v. United Student Aid Funds, Inc.*, No. 13cv1845-JLS (BLM), 2015 WL 4742346, at *5 (S.D. Cal. July 28, 2015) ("The fact that documents are in the physical possession of a third-party custodian does not eliminate the responsibility of a responding party to search for and produce those documents when the party has a legal right to obtain the documents on demand.") (citation omitted).

Zeeto's harassing, vague, ambiguous, and non-specific objections amount to nothing more than generalized labels. They are not tailored to specific requests and are repeatedly copied verbatim. As such, they are

boilerplate objections, tantamount to no objections at all. *Amazing Ins., Inc. v. DiManno*, No. 2:19-cv-01349-TLN-CKD, 2020 WL 5440050, at **4-5 (E.D. Cal. Sept. 10, 2020) (collecting cases).

### Attorney-Client Privilege

Rule 45(e)(2)(A)(ii) requires that, "[a] person withholding subpoenaed information under a claim that it is privileged" must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A)(ii). Because Zeeto provides no specific attorney-client privilege argument within its objections or in the briefing (ECF No. 6 at 12), Zeeto fails to establish that attorney-client privilege applies here. *See United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) ("The party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication.").

### Trade-Secret Privilege

Likewise, Zeeto's argument that trade secrets would be disclosed through a compelled production is not sufficiently supported. Zeeto does not specify which requested documents contain trade secrets and provides no authority to support its argument. Zeeto has the initial burden to establish that this information is subject to trade-secret protection under Rule 45. *See Orthofix, Inc. v. Hunter (In re Subpoena of DJO, LLC)*, 295 F.R.D. 494, 497 (S.D. Cal. 2014) ("Once the nonparty shows that the requested information is a trade secret or confidential commercial information, the burden shifts to the requesting party[.]") (citing Rule 45(d)(3)(C)(i) and (ii)).

The Court overrules Zeeto's objections to the subpoena *duces tecum* and orders Zeeto to comply to all Health IQ's document requests within 21 days.

If Zeeto fails to comply with this Court's order, Health IQ is directed to inform this Court so that a show cause hearing or order may be filed pursuant to Rule 45(g).

### (ii)   Zeeto Shall Comply with Health IQ's Subpoena for Deposition Testimony

Rule 45(g) permits a court "for the district where compliance is required" to "hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). The advisory committee notes to Rule 45 state, "[i]n civil litigation, it would be rare for a court to use contempt sanctions without first ordering compliance with a subpoena." Fed. R. Civ. P. 45(g) advisory committee's note to 2013 amendment.

A subpoenaed organization must designate one or more persons to "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). The Federal Rules of Civil Procedure do not permit Zeeto to object to the subpoena for deposition testimony. *See Abbot v. Kidder, Peabody & Co.*, No. 97 C 3251, 1997 WL 337228, *3 (E.D. Ill. June 16, 1997) (finding that written objections to service of subpoena did not excuse nonparty from attending deposition absent a motion to quash or a protective order).

Zeeto's excuse for refusing to comply with the subpoena for deposition testimony was that its deponent resided in California, not Delaware. (ECF No. 6 at 8). Zeeto's remedy was to file a motion to quash or modify, or for protective order, but Zeeto failed to do so. Health IQ has in turn asked this Court to compel the deposition here, where Zeeto's deponent resides.

The Court agrees with Health IQ and orders Zeeto's compliance with the subpoena for deposition testimony to occur in this district, where the

deponent is located.  Fed. R. Civ. P. 45(c)(1).  Zeeto shall make Cardwell, or an appropriate designated witness, available for deposition within 30 days of producing the documents ordered herein.  Unless the parties agree to conduct a remote deposition, the deposition shall occur in this district, within 100 miles of where Cardwell resides or regularly conducts business for Zeeto.  Fed. R. Civ. P. 45(c)(1); *see Gordy v. Granlund*, No. 19-MC-80180-JSC, 2019 WL 3753184, at *2 (N.D. Cal. Aug. 8, 2019) (ordering nonparty's compliance with a subpoenaed deposition prior to any consideration for a show cause order under Rule 45(g)).

## IV.   Conclusion

The Court **GRANTS** Health IQ's motion to compel Zeeto's response to the subpoenas for document production and deposition testimony.  (ECF No. 1).  Zeeto shall produce the subpoenaed materials within 21 days of this Order, and the parties shall set a deposition to occur within 30 days of such production.  If the parties cannot agree upon electronic production of documents or a remote video deposition, then compliance shall occur where Zeeto's documents are located and where its deponent resides, in this district pursuant to Rule 45.

**IT IS SO ORDERED.**

Dated:   November 29, 2022

Hon. Mitchell D. Dembin
United States Magistrate Judge