UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HI Q, INC. d/b/a HEALTH IQ,<br><br>　　　　　　　　Petitioner,<br><br>v.<br><br>ZEETOGROUP, LLC,<br><br>　　　　　　　　Respondent. | Case No.: 22-cv-1440-LL-DDL<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO COMPEL;**<br><br>**(2) DENYING MOTION FOR PROTECTIVE ORDER;**<br><br>and<br><br>**(3) TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED**<br><br>[Dkt. Nos. 15, 19] |

Before the Court are a motion to compel by Toby Hoy ("Hoy") and Constance Kennedy (with Hoy, the "TCPA Plaintiffs") and a motion for a protective order by Carley Miller ("Miller"). Dkt. Nos. 15, 19 (collectively, the "Motions"). For the reasons stated below, the Court **GRANTS** the motion to compel and **DENIES** Miller's motion for a protective order. Miller is **ORDERED** to appear for deposition within 14 days of the date of this Order.

# I.

# **BACKGROUND**

TCPA Plaintiffs represent a putative class of consumers in an action currently pending in the Northern District of California against Hi Q, Inc. ("Hi Q") for alleged violations of the Telephone Consumer Protection Act. *See* Dkt. No. 15-1 at 5. In the class action, Hi Q asserts as a defense that TCPA Plaintiffs consented to be contacted. *See id.* at 6. Zeetogroup, LLC ("Zeeto") is not a party to the class action, but allegedly collected telephone numbers from consumers and provided them to Hi Q. *Id.* at 5-6. Miller is an employee of Zeeto.

In January 2022, Hoy subpoenaed Zeeto for documents and testimony in the class action to obtain discovery as to whether it was disclosed to consumers that Hi-Q was an affiliated partner of Zeeto's, such that consent to be contacted by Zeeto constituted consent to be contacted by Hi Q. When Zeeto refused to comply, Hoy sought this Court's assistance in enforcing the subpoena. However, upon Hoy's representation that Zeeto had agreed to produce information in satisfaction of the subpoena, the Honorable Mitchell D. Dembin (the magistrate judge assigned to the case) denied Hoy's motion as moot.[1]

Zeeto did not produce the promised information, leading to Hi Q issuing its own subpoena to Zeeto, which largely sought the same information as Hoy's subpoena. Hi Q later moved in this District to enforce compliance with its subpoena. *See* Dkt. No. 1. The matter was again assigned to Judge Dembin. On November 29, 2022, Judge Dembin ordered Zeeto to comply with Hi Q's subpoena, including by producing a Rule 30(b)(6) witness to testify. Dkt. No. 14.

Zeeto's designee, Shayne Cardwell ("Cardwell"), appeared for deposition on January 19, 2023. Dkt. No. 15-2 at 4; *see also* Dkt. No. 19-2. It is undisputed

---

[1] Hoy's motion to enforce his subpoena to Zeeto proceeded in this District under the title *Hoy v. Zeetogroup, LLC*, Case No. 22-cv-151-LL-MDD.

Cardwell could not answer certain questions and identified Miller as the individual at Zeeto likely to have relevant information on those issues. Following Cardwell's deposition, therefore, the parties began discussing a deposition of Miller.

On January 31, 2023, Anthony Paronich ("Paronich"), counsel for TCPA Plaintiffs, emailed Jacob Gillick ("Gillick"), counsel for Zeeto, stating, "[W]e intend to issue a deposition subpoena for Carley Miller. Are you able to accept service?" Dkt. No. 15-9 at 3. Gillick confirmed three days later he would accept service. *Id.* A little more than a week later, Paronich again emailed Gillick, asking if Miller had preferred dates for her deposition or if Paronich should suggest possible dates. *Id.* at 2. Gillick responded on February 21, 2023, stating:

> I have spoke [*sic*] with my client and I think the best way to move forward would be to issue your subpoena (I will accept service) with a unilaterally set date and we will likely have to discuss the topics and documents requested. Once we get that taken care of, we can set a date to get this done with. Please send us the subpoena and we will get going.

*Id.* On February 24, 2023, Paronich responded to Gillick's email, attaching a subpoena to Miller. He requested they discuss dates and stated, "We're not requesting any documents at this time because all of the documents that Ms. Miller could have would be documents that we should have already received from [Zeeto]." *Id.* at 1.

Attached to TCPA Plaintiffs' motion to compel is a "Subpoena to Testify at a Deposition in a Civil Action" to Miller dated March 28, 2023 and signed by Paronich (the "Subpoena"). Dkt. No. 15-5 at 1-2. It commands Miller to appear for a deposition by remote means on April 20, 2023 at 9:00 a.m. and refers to a "Schedule A" which purportedly identifies the matters for examination, although there is no Schedule A attached. *Id.* The Subpoena also requires Miller to bring documents to the deposition, described as "All documents responsive to the previously [sic] served subpoenas." *Id.*

On April 17, 2023, Miller served a document titled "Objections to Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Civil Action" (the "Objections") on TCPA Plaintiffs and Hi Q. Dkt. No. 15-6. The Objections were signed by Gillick and his law firm as "attorneys for the deponent." *Id.* Miller objected that the Subpoena required production of documents more than 100 miles from where the custodian was located, that the request for "all documents responsive to previously served subpoenas" was insufficiently specific and overbroad, and that the Subpoena called for the production of confidential and private information "unrelated to the instant lawsuit." *Id.* at 2-3. She further objected:

> The subpoena is beyond the scope of general discovery and burdensome. Ms. Miller as an individual has nothing to do with the instant lawsuit or the alleged purpose of the deposition. A deposition of Ms. Miller as an individual will not produce any relevant information to the party's claim or defense, nor is it proportional to the needs of the case . . . Ms. Miller should be noticed, if at all, as an employee in order to ensure her deposition is proper and reasonably tailored. The burden for her to prepare for a deposition which references every aspect of her life is improper, overbroad and burdensome.
>
> . . . This subpoena should have been issued to the person most knowledgeable regarding the limited issue the subpoenaing party needs for its deposition. Instead, a subpoena has been issued to an individual who is now in danger of having to disclose her entire life for no reason other than harassment. . . . Ms. Miller is not an officer of the company and because the subpoena is not reasonably tailored, there is a concern over the disclosure of privileged business information unrelated to the instant lawsuit or the very narrow issue in dispute here. Had the subpoena been narrowly tailored to the relevant information at issue, this would not cause any problems.

*Id*. at 2-3. There is no other correspondence coincident with the service of the Objections in the record, but the transcript of Miller's nonappearance indicates Paronich informed Gillick about his intent to "go[] on the record," and his "position that the time for objections had passed." Dkt. No. 15-7 at 7.

1 On April 20, 2023, the date identified in the Subpoena for Miller's deposition, Paronich and Paul Rosenthal ("Rosenthal"), counsel for Hi Q, appeared via videoconference for Miller's deposition at the appointed time. *Id.* Neither Miller nor her counsel appeared. *See generally id.* The court reporter recorded the nonappearance and Paronich entered the Subpoena as an exhibit. *Id.* at 4-5. Paronich also related the history of his communications with Gillick regarding the Subpoena on the record. *Id.* at 5-8. Miller did not move for a protective order, nor did she move to quash or modify the Subpoena, at any time before April 20, 2023.

On May 8, 2023, counsel met and conferred regarding Miller's failure to appear. Dkt. No. 15-2 at 5; Dkt. No. 15-8 at 3. In an email of the same date, Paronich reiterated that TCPA Plaintiffs "have put in writing that Ms. Miller is not obligated to produce any documents." *Id.* Paronich advised Gillick TCPA Plaintiffs would move to compel Miller's deposition, but offered to waive costs if Miller would agree to appear on a newly selected date. *Id.* Gillick responded the same day, stating he would produce Miller pursuant to an "appropriate and limited subpoena," or alternatively for a deposition by written questions. He was otherwise unwilling to "thr[o]w [Miller] at [Paronich] without the proper procedures and law being followed." *Id.* Rosenthal responded that the subpoenaing party is neither obligated to specify topics for a deposition of an individual pursuant to Rule 30(b)(1) nor to accept written discovery in lieu of live testimony, which sentiments were echoed by Paronich in his response later that day. *Id.* at 1-2.

Paronich summed up the parties' meet and confer as follows: "(a) we all agree that Ms. Miller has relevant information (b) we agree that your [*sic*] accepted her deposition subpoena with a specified date and time that you provided and (c) you did not appear for that deposition because we did not limit the topics of testimony, which you've provided no legal support [or] case law for." *Id.* These Motions followed.

/ / /

## II.
## **LEGAL STANDARDS**

Rule 26 permits a broad scope of discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . .." Fed. R. Civ. P. 26(b)(1). Documents and testimony are discoverable from nonparties by means of a subpoena. Fed. R. Civ. P. 45. "The scope of discovery through a subpoena under Rule 45 is the same as the scope of discovery permitted under Rule 26(b)." *Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215, 1217 (N.D. Cal. 2015).

Rules 26 and 45 both provide a mechanism for the subpoena recipient to seek relief from a subpoena that is unduly burdensome or otherwise improper. *See* Fed. R. Civ. P. 26(c)(1) (providing a person from whom discovery is sought may seek an order protecting them from "annoyance, embarrassment, oppression or undue burden," which the Court should grant for good cause); Fed. R. Civ. P. 45(d)(3) (providing a subpoena recipient may move the court to quash or modify a subpoena). Given the "liberal discovery principles" of the Federal Rules, however, the burden is on the person resisting discovery to "show discovery should not be allowed, and . . . of clarifying, explaining and supporting its objections." *Indep. Living Ctr. of S. Cal. v. City of L.A.*, 296 F.R.D. 632, 634 (C.D. Cal. 2013) (citations and internal quotation marks omitted).

## III.
## **DISCUSSION[2]**

As a threshold matter, the Court finds Miller's testimony is relevant to the class action. TCPA Plaintiffs relate that Zeeto's Rule 30(b)(6) witness identified

---

[2] Because the arguments in support of and opposition to both Motions largely overlap, the disposition of one motion will necessarily dispose of the other and the Court therefore addresses the Motions in tandem in this Order.

Miller as having further information regarding the topics on which he had been designated to testify. Dkt. No. 15-1 at 7. Miller, in turn, acknowledges her "name came up" during the Rule 30(b)(6) deposition and that she has information relevant to "specific issues" in the case. Dkt. No. 19-1 at 3. Attached to Miller's motion for protective order are several excerpts of the Rule 30(b)(6) deposition in which the witness deferred to Miller as being more capable of answering counsel's questions. *See* Dkt. No. 19-2. Thus, notwithstanding Miller's protestation that her deposition "will not produce any relevant information," Dkt. No. 20 at 3, the Court finds her testimony is well within the broad scope of discovery permitted under Rule 26.

**A.    Deposition By Written Questions**

Hoping to avoid a "scary deposition," Miller proposes TCPA Plaintiffs "issue written interrogatories" to her instead. Dkt. No. 19-1 at 4, 6. However, interrogatories are not properly served on a nonparty to an action, and, as Miller states, neither she nor her employer are parties to the class action. *Id.* at 5; *see also* Fed. R. Civ. P. 33(a) (providing that "a *party*" may serve interrogatories on "any other *party*") (emphasis added). Although Rule 31 provides that a nonparty may be deposed "by written questions," *see* Fed. R. Civ. P. 31(a)(1), parties are generally entitled to pursue discovery by "their choice of the discovery methods authorized by the Federal Rules . . . ." *U.S. E.E.O.C. v. Caesars Ent., Inc.*, 237 F.R.D. 428, 433 (D. Nev. 2006). The Court does not find Miller's reluctance to be deposed by the "Wolf of the TCPA World" (Dkt. No. 19-1 at 5) good cause to depart from this principle or to require her deposition to proceed in writing. *See* Fed. R. Civ. P. 26(c)(1)(C) (the court may "prescrib[e] a discovery method other than the one selected by the party seeking discovery" only upon a showing of good cause).

**B.    Miller's Demand to Be Deposed "As An Employee"**

As an alternative to "written discovery," Miller requests TCPA Plaintiffs be required to reissue the Subpoena "to her as an employee of Zeeto, instead of as an individual," regarding "specific topics" of testimony. Dkt. No. 19-1 at 6. She also

1  requests her deposition be limited to two hours to avoid "a fishing expedition she
2  may not be prepared for." *Id.*

3  The Court has carefully examined the text of Rule 30 and finds no support
4  for Miller's position that she should not have to "sit[] for a deposition in her own
5  name." *Id.* at 7. Miller is a natural person whose identity is known to all parties.
6  Her deposition is governed by Rule 30(b)(1), which requires only adequate notice
7  to the deponent and that the subpoena state the date, time, and place of the
8  deposition. *See* Fed. R. Civ. P. 30(b)(1). The Subpoena satisfies these
9  requirements. A deposition under Rule 30(b)(1) probes the witness's personal
10 knowledge and recollection and does not require the noticing party to specify or
11 limit the subjects for examination in advance. *See id.* Since her testimony is not
12 binding on Zeeto, it does not matter whether Miller is "prepared" for her deposition
13 because "I don't know" and "I don't recall" are acceptable responses (if true). *See*
14 *Pres. Techs. LLC v. Mindgeek USA, Inc.*, No. 217CV08906DOCJPR, 2020 WL
15 10965164, at *2 (C.D. Cal. Nov. 12, 2020) (distinguishing Rule 30(b)(1) from Rule
16 30(b)(6) in that a deponent may "refuse to testify on the ground of lack of personal
17 knowledge" and the testimony "will likely not bind the employer").

18 Rule 30(b)(6), in contrast, provides a mechanism for deposing an
19 organization. The Rule requires the party noticing the deposition to describe the
20 matters upon which the organization will be asked to testify "with reasonable
21 particularity," Fed. R. Civ. P. 30(b)(6), which obligates the responding party to
22 select and educate the witness. *See Memory Integrity, LLC v. Intel Corp.*, 308
23 F.R.D. 656, 661 (D. Or. 2015) (explaining the noticing party's obligation to
24 designate "the particular subject areas" for examination and the responding party's
25 corollary obligation to "prepare [the witnesses] so that they may give complete,
26 knowledgeable and binding answers on behalf of the corporation" are necessary
27 "to allow the Rule to effectively function") (citations omitted). "In a Rule 30(b)(6)
28 deposition, there is no distinction between the corporate representative and the

corporation," and the witness's testimony binds the company. *Memory Integrity*, 308 F.R.D. at 660 (citations and internal quotation marks omitted). In other words, a Rule 30(b)(6) deposition elicits the organization's knowledge and not that of any particular person within the organization.[3]  Simply put, the Court has found no procedure within Rule 30 by which such a deponent can be deposed "as an employee" and not "as an individual." Dkt. No. 19-1 at 6.

## C.  Miller's Request for Safeguards

The Court is also not persuaded that the scope of the deposition should be limited. *See* Fed. R. Civ. P. 26(c)(1). Miller speculates TCPA Plaintiffs will use the deposition to "get[] into personal aspects of her life" or conduct a "fishing expedition," and states she is unwilling to "sit for an intimidating deposition without any procedural safeguards." Dkt. No. 19-1 at 6. The Court finds the necessary safeguards are provided by, and amply described in, the Federal Rules. Rule 26 limits the permissible scope of the deposition testimony to information relevant to the litigation. Rule 30 permits Miller's counsel to object to improper questions, to instruct Miller not to answer if necessary to guard privileged information, and to move to terminate the deposition if it is conducted "in a manner that unreasonably

---

[3]  Miller states her testimony was "needed to complete some of the gaps left after Mr. Cardwell's deposition." Dkt. No. 19-1 at 5. To the extent Miller's position is that she should testify as a Rule 30(b)(6) designee for her employer, Zeeto (and it is not at all clear to the Court that she does), the Court reminds Miller that TCPA Plaintiffs already subpoenaed Zeeto pursuant to Rule 30(b)(6), and Zeeto was ordered to comply. Although the question of Cardwell's preparedness is not before the Court, if it became clear during the deposition he was unable to provide complete and binding answers on Zeeto's behalf, Zeeto was obligated to offer another witness who could, and was at liberty to select Miller as its witness. *See* Fed. R. Civ. P. 30(b)(6) (stating the organization must designate "one or more" witnesses to testify). But in that event, a new subpoena directed to Miller personally was unnecessary, and Miller's insistence otherwise suggests she did not intend to offer her testimony as a Rule 30(b)(6) witness for Zeeto.

annoys, embarrasses, or oppresses the deponent . . .." See Fed. R. Civ. P. 30(c)(2) and (d)(3).[4]  These safeguards are supplemented by the applicable state, local and chambers rules regarding counsel's conduct,[5] and the protective order in place in the class action, pursuant to which Miller can seek protection for any sensitive information.  See Dkt. No. 15-4.

Miller states she has "great and legitimate concern" that Paronich will exceed the bounds of propriety and requests the Court implement limitations on the deposition "to protect her."  Dkt. No. 19-1 at 5-6.  The Court reiterates Miller is already adequately protected under the Federal Rules but takes the opportunity to admonish Miller and her counsel that insinuations of improper or unethical conduct are not taken lightly by the undersigned.  Miller has offered no basis for her "great and legitimate" fear of Paronich beyond the simple fact that he is a well-known TCPA litigator who "fil[es] a large volume of cases." Id. at 5.  Having reviewed the record, including excerpts of Zeeto's deposition, the Court does not share Miller's concerns.  Accusations of impropriety are a serious matter and must be well supported, and the Court will not tolerate further unsupported accusations.

**D.    Request for Documents**

Finally, the Court turns to the matter of TCPA Plaintiffs' request (or lack thereof) for documents.  Miller devotes most of her opposition brief to the TCPA Plaintiffs' assertedly burdensome request for "[a]ll documents responsive to the previously discussed subpoenas."  Dkt. No. 20 at 2; see also Dkt. No. 15-5.  Despite TCPA Plaintiffs' repeated retractions of this request, Miller states the

---

[4]   The parties are directed to follow the Chambers Rules of the District Judge presiding over the class action, or the Magistrate Judge if one is assigned, regarding any dispute that arises during the deposition.

[5]   See, e.g., Northern District of California Guidelines for Professional Conduct, available at https://cand.uscourts.gov/forms/guidelines-for-professional-conduct/ (last accessed June 15, 2023).

10

22-cv-1440-LL-DDL

"argument that no documents are at issue is false" because the Subpoena includes a document request. Dkt. No. 20 at 3.

The Subpoena is not a model of clarity; as Miller points out, it refers to a nonexistent "attached Schedule A" and demands the production of potentially a large volume of documents. Dkt. No. 15-5. TCPA Plaintiffs' motion to compel also makes sporadic reference to documents. *See* Dkt. No. 15-1 at 12, 14. Nevertheless, that TCPA Plaintiffs have abandoned any request for documents from Miller is unambiguous from the record as a whole. First, TCPA Plaintiffs plainly state they "do not seek any documents in connection with the deposition subpoena." Dkt. No. 15-1 at 16. Second, the only relief requested in the motion to compel is an order compelling Miller to appear for deposition. *See id*. at 7 ("Ms. Miller should be compelled to appear for the deposition she already agreed to attend"); *id.* at 15 ("the Court should order Ms. Miller to appear for deposition"); *id.* at 17 (same). Third, Paronich advised Gillick on multiple occasions that no documents were required from Miller. Dkt. No. 15-8 at 3; Dkt. No. 15-9 at 1. Fourth, Paronich confirmed on the record of Miller's nonappearance that no documents were sought from Miller because "based on our conversations with Mr. Gillick, we understood that she didn't possess any documents" which were not already in the custody and control of Zeeto and subject to production pursuant to the Court's prior order. Dkt. No. 15-7 at 8. Accordingly, the Court overrules Miller's objections to the Subpoena on this basis and finds her refusal to appear at deposition based on those objections was improper.

## IV.

## ORDER ON MOTIONS

For the foregoing reasons, the Court **GRANTS** TCPA Plaintiffs' motion to compel [Dkt. No. 15] and **DENIES** Miller's motion for a protective order [Dkt. No. 19]. Miller is **ORDERED** to appear for deposition within **14 days** of the date of this Order, on a date and time mutually agreed to by all parties. For the avoidance of

doubt, Miller is not obligated to produce any documents before or at the deposition. The deposition may proceed by remote means upon the agreement of all parties.

## V.
## **ORDER TO SHOW CAUSE**

For the third time, this Court has been called upon to enforce Zeeto's or its employee's compliance with an unobjectionable subpoena. The issues presented by the Motions were neither esoteric nor novel but were easily resolved by a plain reading of the Federal Rules of Civil Procedure. The Court finds Miller's objections to the Subpoena, opposition to the motion to compel, and motion for a protective order have been so lacking in legal and factual support as to indicate bad faith.

Accordingly, the Court **ORDERS** Jacob Gillick and Carley Miller to appear in person before the undersigned on **July 6, 2023** at **12:00 p.m.** in **Courtroom 14A** of the **James M. Carter and Judith N. Keep United States Courthouse, 333 W. Broadway, San Diego, California 92101** to show cause why they should not, jointly or severally, be required to reimburse TCPA Plaintiffs for their reasonable expenses in bringing the motion to compel, including their attorneys' fees.

TCPA Plaintiffs' counsel must appear at the hearing but may do so remotely. TCPA Plaintiffs' counsel should be prepared to answer any questions regarding their fees and costs as stated in the declaration of Beth Terrell and accompanying exhibits. Dkt. No. 18. Counsel for Hi Q may appear at the hearing but is not required to do so. If TCPA Plaintiffs' or Hi Q's counsel wishes to appear remotely they must so advise the Court by not later than **July 3, 2023**.

**IT IS SO ORDERED.**

Dated: June 20, 2023

_David Leshner_
Hon. David D. Leshner
United States Magistrate Judge